**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MICHELLE CAIN and RADHA SAMPAT, individually, and on behalf of all others similarly situated, | Case No. 12-15014 |
| Plaintiffs, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company, | |
| Defendant. | |

Plaintiffs Michelle Cain and Radha Sampat (collectively "Plaintiffs") bring this Class Action Complaint ("Complaint") against Defendant Redbox Automated Retail, LLC ("Redbox") to obtain redress for all persons injured by Redbox's intentional and unlawful disclosure of its customers' highly personal and sensitive information. For their Complaint, Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

**NATURE OF THE CASE**

1.      Redbox is a company that rents and sells movies to consumers through automated kiosks located at retail outlets throughout the country.

2.      Unbeknownst to its customers and without their consent, Redbox discloses their detailed information—including their first and last names, email addresses, movie rental and purchase histories, and debit and/or credit card information (collectively, the "Personal Viewing Information")—to unrelated third party companies each and every time a customer rents or purchases a movie or video from a Redbox kiosk.

1

3.      These disclosures violate Michigan's Video Rental Privacy Act, M.C.L. §§ 445.1711–15 ("VRPA"), which prohibits companies like Redbox from disclosing information that personally identifies any of their customers as having rented or purchased specific movie or video titles.

4.      Accordingly, Plaintiffs bring this Complaint against Redbox for its intentional and unlawful disclosure of their Personal Viewing Information in violation of the VRPA, for breach of contract, and, in the alternative, for unjust enrichment.

## PARTIES

5.      Plaintiff Michelle Cain is a natural person and citizen of the State of Michigan.

6.      Plaintiff Radha Sampat is a natural person and citizen of the State of Michigan.

7.      Defendant Redbox Automated Retail, LLC is a limited liability company organized in and existing under the laws of the State of Delaware with its headquarters and principal place of business located at One Tower Lane, Oakbrook Terrace, Illinois 60181. Redbox conducts business throughout the State of Michigan and the United States.

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over Redbox because Redbox regularly conducts business in this District, including soliciting consumer business from, and entering into consumer transactions with, Michigan consumers. Further, the unlawful conduct alleged in the Complaint occurred in, was directed at, and/or emanated from, this District.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a different state than Defendant, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and none of the exceptions under that subsection apply to this action.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claim occurred in this District. 28 U.S.C. § 1391(b)(2). Venue is additionally proper because Plaintiff Sampat resides in Macomb County (a county within this District), and Defendant conducts significant business in this District, including soliciting consumer business and entering into consumer transactions.

## FACTUAL BACKGROUND

### *Michigan's Video Rental Privacy Act*

11.     Michigan's legislature enacted the VRPA with the focused goal of creating strong consumer protections that would "preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials." H.B. No. 5331, 1988 Mich. Legis. Serv. 378.

12.     To achieve that goal, the VRPA broadly and plainly defines those consumers protected by the statute as any "person who purchases, rents, or borrows . . . a video recording." M.C.L. § 445.1711.

13.     The VRPA forbids persons or entities in possession of any consumer's Personal Viewing Information from disclosing it to others:

> a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending . . . video recordings . . . *shall not disclose* to any person, other than the customer, a record or information concerning the purchase, lease, [or] rental . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712 (emphasis added).

14.     Further, the VRPA only enumerates five (5) narrow and specific circumstances where disclosure of Personal Viewing Information is permitted. According to § 445.1713:

> [Personal Viewing Information] may be disclosed *only* in 1 or more of the following circumstances:
>
> (a) With the *written permission* of the customer.
>
> (b) Pursuant to a court order.

3

(c) To the extent reasonably necessary to collect payment for the materials or the rental of the materials, if the customer has received written notice that the payment is due and has failed to pay or arrange for payment within a reasonable time after notice.

(d) If the disclosure is for the exclusive purpose of marketing goods and services *directly to the consumer*. The person disclosing the information shall inform the customer by *written notice* that the customer may *remove* his or her name at any time by written notice to the person disclosing the information.

(e) Pursuant to a search warrant issued by a state or federal court or grand jury subpoena.

M.C.L. § 445.1713 (emphasis added).

15.     Absent one of these enumerated exceptions, it is a violation of the VRPA for a person or business to disclose the Personal Viewing Information of any customer to *any* other person or entity for *any* reason.

16.     As discussed throughout this Complaint, none of the VRPA's exceptions apply in this case.

### *Redbox Violates the VRPA as a Matter of Course*

17.     Redbox is in the business of renting video materials, including movies on DVDs and Blu-ray discs, to consumers through a nationwide network of self-service kiosks, each of which utilizes an interactive touch screen (used to browse through, select, and rent/purchase movie titles) and credit/debit card reader, a robotic disc array system (used to vend rented/purchased movie titles), and a web-linked electronic communications system (used to store and transmit consumers' personal information, including Personal Viewing Information).

18.     When renting a movie through Redbox's kiosks, every Redbox customer must, at minimum, (1) identify the movie title he or she wishes to rent, (2) provide Redbox with his or her payment card information (*i.e.*, there is no option to pay for rentals or purchases in cash), (3) manually enter his or her email address, and (4) manually enter his or her billing ZIP code.

4

19.     Redbox charges consumers between $1.00 and $2.00 per day for each movie rental.

20.     At no point during the above-described rental process does Redbox seek or obtain the consent of a customer to share or otherwise disclose his or her Personal Viewing Information to third parties for any purpose.

21.     Nevertheless, Redbox disclosed and continues to this day to disclose each and every piece of information that it collects from its customers—including their Personal Viewing Information—to third parties for its own self-serving purposes.

22.     For example, at all times relevant to Plaintiffs' claims, Redbox has disclosed and continues to this day to disclose its customers' Personal Viewing Information to an unrelated third party for something it calls "service support," as described in public filings. *See Sterk v. Redbox Automated Retail, LLC*, Case No. 11-cv-1079 (N.D. Ill.) (Dkt. No. 131 at 1).

23.     Redbox made and continues to make these disclosures without any permission— let alone "written permission"—from its customers, *see* § 445.1713(a), and these disclosures do not fall under any of the other VRPA exceptions, *see* § 445.1713(b)–(e).

24.     In fact, far from seeking its customers' written permission to disclose their Personal Viewing Information, Redbox actively misleads its customers by stating on its website that "Redbox *never shares your information* . . . [with] third parties." (emphasis added.)

25.     In addition, upon information and belief based upon the statements made on its website, Redbox also discloses and continues to disclose its customers' Personal Viewing Information to unrelated third parties for analytics and promotions purposes.

26.     Upon information and belief, Redbox made and continues to make these disclosures without any permission—let alone "written permission"—from its customers, *see*

5

§ 445.1713(a), and these disclosures do not fall under any of the other VRPA exceptions, *see* § 445.1713(b)−(e).

## FACTS RELATING TO PLAINTIFF MICHELLE CAIN

27.     Plaintiff Cain rented movies from Redbox kiosks located in the State of Michigan on or around February 2, 2011 and February 5, 2011.

28.     Cain paid for all such rentals at the time the rentals were made, and has never owed outstanding rental fees to Redbox.

29.     Cain has never utilized Redbox's website to rent or reserve a movie or other video material from a Redbox kiosk.

30.     Cain has never consented, agreed, or given her permission to Redbox to disclose her Personal Viewing Information to any third party, including third party customer service vendors.

31.     Further, Redbox has never informed Cain by written notice or otherwise that she may remove her name at any time from its third party disclosures.

32.     Likewise, Cain has never been given the opportunity to prohibit or prevent the disclosure of her Personal Viewing Information to third parties, including the third party "service support" company or any third parties providing analytics and/or promotional services.

33.     In fact, Cain has never agreed to allow Redbox to disclose her Personal Viewing Information to anyone.

34.     Nevertheless, each time Cain rented a movie from Redbox, Redbox disclosed— and continues to this day to disclose—her Personal Viewing Information to third parties including the third party "service support" company and, on information and belief, third parties providing analytics and/or promotional services, as a matter of course.

**FACTS RELATING TO PLAINTIFF RADHA SAMPAT**

35.     Plaintiff Sampat rented movies from Redbox kiosks located in the State of Michigan beginning in November 2010.

36.     Sampat paid for all such rentals at the time the rentals were made, and has never owed outstanding rental fees to Redbox.

37.     Sampat has never utilized Redbox's website to rent or reserve a movie or other video materials from a Redbox kiosk.

38.     Sampat has never consented, agreed, or given her permission to Redbox to disclose her Personal Viewing Information to any third party, including third party customer service vendors.

39.     Further Redbox has never informed Sampat by written notice or otherwise that she may remove her name at any time from its third party disclosures.

40.     Likewise, Sampat has never been given the opportunity to prohibit or prevent the disclosure of her Personal Viewing Information to third parties, including the third party "service support" company or any third parties providing analytics and/or promotional services.

41.     In fact, Sampat has never agreed to allow Redbox to disclose her Personal Viewing Information to anyone.

42.     Nevertheless, each time Sampat rented a movie from Redbox, Redbox disclosed—and continues to this day to disclose—her Personal Viewing Information to third parties including the third party "service support" company and, on information and belief, third parties providing analytics and/or promotional services.

**CLASS ACTION ALLEGATIONS**

43.     **Class Definition:** Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3)

of the Federal Rules of Civil Procedure on behalf of themselves and a proposed Class, defined as follows:

> All Michigan residents who had their Personal Viewing Information disclosed by Redbox to a third party "service support" vendor or any other third party without written consent.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendant, and (5) the legal representatives, successors, or assigns of any such excluded person.

44. **Numerosity:** The exact number of Class members is unknown to Plaintiffs at this time, but it is clear that individual joinder of each class member is impracticable. Defendant has deceived and profited from thousands of consumers who fall into the definition set forth above. Ultimately, members of the Class will be easily identified from within Defendant's records.

45. **Typicality:** Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's disclosure of Plaintiffs' and the Class's Personal Viewing Information.

46. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the

Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other Class members.

47.     **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class, and predominate over any questions affecting only individual members. Those questions with respect to the Class include, but are not limited to:

(a)     Whether Redbox is "engaged in the business of selling at retail, renting, or lending" video recordings;

(b)     Whether Redbox obtained consent before disclosing Plaintiffs' and the Class's Personal Viewing Information to third parties;

(c)     Whether Redbox's disclosure of Plaintiffs' and the Class's Personal Viewing Information violated § 445.1712 of the Video Rental Privacy Act;

(d)     Whether Redbox disclosed Plaintiffs' and the Class's Personal Viewing Information pursuant to any of the five enumerated exceptions contained in § 445.1713 of the Video Rental Privacy Act; and

(e)     Whether Redbox's disclosure of Plaintiffs' and the Class's Personal Viewing Information constitutes breach of contract, or, in the alternative, unjust enrichment.

48.     **Superiority:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all Class members is impracticable. The damages suffered by the individual Class members will likely be small

relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the Class members to obtain effective relief from Defendant's misconduct on an individual basis. Even if Class members could sustain individual litigation, it would not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

49.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

50.     Plaintiffs reserve the right to revise the definition of the Class as necessary based upon information learned in discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Video Rental Privacy Act, M.C.L. § 445.1712**
**(On Behalf of Plaintiffs and the Class)**

51.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

52.     As a company that rents and sells video recordings to consumers, including

10

movies on DVD and Blu-Ray discs, Redbox is "engaged in the business of selling at retail, renting, or lending . . . video recordings." M.C.L. § 445.1712.

53.      Plaintiffs rented video recordings from Redbox by renting movies on DVD from Redbox's kiosks, and thus, are "customers" within the meaning of the VRPA. M.C.L. § 445.1711(a).

54.      At all times relevant to this lawsuit, and beginning on the date that Plaintiffs rented their first DVD movies from Redbox, Redbox disclosed—and continues to this day to disclose—their Personal Viewing Information to third parties, including a third party "service support" company and, on information and belief, third parties providing analytics and/or promotional services.

55.      Such disclosures plainly prohibited by the VRPA because they contained Plaintiffs' full names, unique email addresses, and credit card information, along with the specific movie titles that they rented and purchased from Redbox.

56.      Redbox never obtained Plaintiffs' or the Class's "written permission" to disclose their Personal Viewing Histories to third parties, including a third party "service support" company or to third parties providing analytics and/or promotional services.

57.      On information and belief, Redbox's disclosure of Plaintiffs' Personal Viewing Information to third parties was not made pursuant to a court order or a search warrant.

58.      Further, because Plaintiffs paid for their rentals at the time they were made, Redbox has never had any reason to disclose their Personal Viewing Information for the purposes of collecting outstanding payment for rented materials, and thus, the VRPA's debt-collection exception is inapplicable.

59.      Redbox never informed Plaintiffs by written notice (or otherwise) that they may

remove their names from lists relating to the marketing of goods and services, or otherwise

informed Plaintiffs that Redbox had disclosed their Personal Viewing Information to third parties

for any purpose, let alone for marketing purposes.

60.     Further, Plaintiffs never agreed to Redbox's Terms of Service (which can

presently be found on Redbox's website) because all of Plaintiffs' transactions were conducted at

Redbox kiosks, and the Terms of Service were never displayed, or even referred to, during their

transactions. Nor did the kiosks direct Plaintiffs to Redbox's website or condition their rentals

upon acceptance of such Terms.

61.     In sum, Plaintiffs never consented, in any way, to Redbox's disclosure of their

Personal Viewing Information to third parties.

62.     By disclosing their Personal Viewing Information to third parties as described

herein, Redbox violated Plaintiffs' statutorily-protected right to privacy in their video viewing

habits as set forth in the VRPA, *see* M.C.L. § 445.1712, as well as their common law right to

privacy.

63.     Additionally, because Plaintiffs paid for the DVD movies they rented from

Redbox kiosks, and Redbox was obligated to comply with the VRPA, Redbox's unlawful

disclosure of Plaintiffs' Personal Viewing Information deprived them of the full value of their

paid-for rentals. Because Plaintiffs ascribe monetary value to the privacy of their Personal

Viewing Information (including, here, Redbox's obligation to not disclose such information to

third parties), Redbox's unlawful disclosure of their Personal Viewing Information deprived

them of the full paid-for value, thereby causing them economic damages.

64.     As a result of Redbox's unlawful and continued disclosure of their Personal

Viewing Information, Plaintiffs and the Class members have suffered privacy and economic

12

injuries. On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Redbox to cease the unlawful disclosures discussed herein; (2) actual damages or statutory damages of $5,000, whichever is greater, to each class member pursuant to M.C.L. § 445.1715(a); and (3) costs and reasonable attorneys' fees pursuant to M.C.L. § 445.1715(b).

**SECOND CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

65.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

66.    Redbox offered to sell and rent movie and video materials to Plaintiffs and the Class members for specific prices.

67.    Plaintiffs and the Class members accepted Redbox's offers by agreeing to pay the agreed-upon prices as consideration for renting the video materials.

68.    Accordingly, Redbox, on the one hand, and Plaintiffs and the Class members, on the other, entered into binding contracts for video material rentals.

69.    Because the laws existing at the time and place of the making of a contract are incorporated into it, the contracts between Redbox and Plaintiffs and the Class members included obligations for the parties to abide by all applicable laws, including the VRPA.

70.    Plaintiffs and the Class members performed their obligations under the contracts by paying the consideration owed to Redbox for the rental of the video materials, and by complying with all applicable laws.

71.    The ability to control disclosure of sensitive personal information—such as Personal Viewing Information—is material to any consumer transaction because it is likely to affect a consumer's decision to actually purchase the product or service. In fact, Plaintiffs would

13

not have rented or purchased any movie or video material from Redbox had they known that Redbox would disclose their Personal Viewing Information to third parties in violation of the VRPA.

72.     Redbox's failure to perform its contractual obligations imposed by the VRPA— *i.e.*, maintaining confidentiality of customers' Personal Viewing Information—constitutes a material breach of its contracts with Plaintiffs and the Class members.

73.     Plaintiffs and the Class members have suffered actual damages as a result of Redbox's breach in the form of the value Plaintiffs and the Class members paid for and ascribed to the confidentiality of their Personal Viewing Information. This amount is tangible and will be calculated at trial.

74.     Further, a portion of the price of each Redbox rental paid for by Plaintiffs and the Class members was intended to ensure the confidentiality of Plaintiffs' and the Class members' Personal Viewing Information, as required by the VRPA. Because Plaintiffs and the Class members were denied services they paid for and were entitled to receive—*i.e.*, confidentiality of their Personal Viewing Information—they incurred actual monetary damages.

75.     Accordingly, Plaintiffs and the Class members seek an Order declaring that Redbox's conduct constitutes a breach of contract, and awarding Plaintiffs and the Class damages in an amount to be calculated at trial.

### THIRD CAUSE OF ACTION
### Unjust Enrichment
### (in the alternative to the Breach of Contact claim)
### (On Behalf of Plaintiffs and the Class)

76.     Plaintiffs incorporate paragraphs 1 through 64 as if fully set forth herein.

77.     This unjust enrichment claim is explicitly brought in the alternative to the breach of contract claim alleged in Count II.

78.     Plaintiffs and the Class members conferred a benefit on Redbox by paying Redbox for their video recording rentals. Redbox received and retained the payment belonging to Plaintiffs and the Class when Plaintiffs and the Class rented from Redbox.

79.     Redbox appreciates or has knowledge of such benefits.

80.     Under the VRPA, Plaintiffs and the Class members were entitled to have their Personal Viewing Information kept confidential as part of their rental transactions.

81.     Under principles of equity of good conscience, Redbox should not be allowed to retain the full amount of money Plaintiffs and the Class paid for their rentals because Redbox failed to comply with the VRPA,

82.     Plaintiffs and the Class members have suffered actual damages as a result of Redbox's unlawful conduct in the form of the value Plaintiffs and the Class members paid for and ascribed to maintaining the confidentiality of their Personal Viewing Information. This amount is tangible and will be calculated at trial.

83.     Further, a portion of the rental price paid by Plaintiffs and the Class members was intended to ensure the confidentiality of Plaintiffs' and the Class members' Personal Viewing Information, as required by the VRPA. Because Plaintiffs and the Class members were denied services they paid for and were entitled to receive—*i.e.*, the confidentiality of their Personal Viewing Information—they incurred actual monetary damages.

84.     To prevent inequity, Redbox should return to Plaintiffs and the Class the value they ascribe to the confidentiality of their Personal Viewing Information.

85.     Accordingly, Plaintiffs and the Class members seek an Order declaring that Redbox's conduct constitutes unjust enrichment, and awarding Plaintiffs and the Class restitution in an amount to be calculated at trial and equal to the value Plaintiffs and the Class ascribe to the

15

confidentiality of their Personal Viewing Information.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Michelle Cain and Radha Sampat, on behalf of themselves

and the Class, pray that the Court enter judgment in their favor and against Redbox and for the

following relief:

(1)    Certify the Class as defined above, appoint Plaintiffs as Class Representatives, and designate their counsel as Class Counsel;

(2)    Declare that Redbox's conduct as described herein violates the Video Rental Privacy Act, M.C.L. § 445.1712;

(3)    Declare that Redbox's conduct as described herein constitutes a breach of contract, or, in the alternative, unjust enrichment;

(4)    Award actual damages or statutory damages of $5,000, whichever is greater, to each class member, as provided by the Video Rental Privacy Act, M.C.L. § 445.1715(a);

(5)    Award injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Redbox to cease the unlawful disclosures discussed herein;

(6)    Award reasonable attorneys' fees, interest, and costs, M.C.L. § 445.1715(b); and

(7)    Such other and further relief as the Court deems equitable and just.

## DEMAND FOR TRIAL BY JURY

Plaintiffs request trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: November 13, 2012

**MICHELLE CAIN and RADHA SAMPAT**, individually and on behalf of all others similarly situated,

By:/s/  Ari J. Scharg
                    One of Plaintiffs' Attorneys

Christine E. Ficks (P64625)
BODMAN PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
Tel: (313) 393-7561
Fax: (313) 393-7579
cficks@bodmanlaw.com

Rafey S. Balabanian
Ari J. Scharg
EDELSON MCGUIRE, LLC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
rbalabanian@edelson.com
ascharg@edelson.com

*Counsel for Plaintiffs Michelle Cain and Radha Sampat and the Putative Class*

17