**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHELLE CAIN and RADHA SAMPAT,
Individually, and on behalf of all others similarly
Situated,

|  |  |
|---|---|
| **Plaintiffs,** | Case No. 2:12-cv-15014-GER-LJM |
|  | Honorable Gerald E. Rosen |
|  | Mag. Judge Laurie J. Michelson |
| v. |  |
| REDBOX AUTOMATED RETAIL, LLC, |  |
| **Defendant.** |  |

_____/

**NOTICE OF HEARING ON REDBOX AUTOMATED RETAIL, LLC'S**
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR 12(b)(1)**

PLEASE TAKE NOTICE that the hearing on Defendant Redbox Automated Retail,

LLC's Motion to Dismiss Pursuant to Rule 12(b)(6) or 12(b)(1) shall take place on a date and at

a time to be set by the Court.

Dated:  February 13, 2013          Respectfully submitted,

/s/Carol G. Schley_____
One of the attorneys for Defendant Redbox
Automated Retail, LLC

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
pkupelian@clarkhill.com
cschley@clarkhill.com

*And*

Donna J. Vobornik (Admission Pending)
John Grossbart
Anthony T. Eliseuson (Admission Pending)
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@snrdenton.com
john.grossbart@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys Defendant Redbox Automated Retail, LLC*

8785972.1 41513/159498

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION**

MICHELLE CAIN and RADHA SAMPAT,
Individually, and on behalf of all others similarly
Situated,

|  |  |
|---|---|
| Plaintiffs, | Case No. 2:12-cv-15014-GER-LJM |
|  | Honorable Gerald E. Rosen |
|  | Mag. Judge Laurie J. Michelson |

v.

REDBOX AUTOMATED RETAIL, LLC,

          Defendant.

### REDBOX AUTOMATED RETAIL, LLC'S
### MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR 12(b)(1)

Defendant Redbox Automated Retail, LLC ("Redbox"), by and through its undersigned counsel, and pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Complaint with prejudice. In support of this Motion, Redbox is contemporaneously filing a Brief, which is incorporated herein.

Redbox hereby certifies that pursuant to Local Rule 7.1(a), there was a conference between attorneys for Plaintiffs and for Redbox on February 11, 2013 in which Redbox explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

\* \* \* \*

**WHEREFORE**, Defendant Redbox Automated Retail, LLC respectfully requests that this Court enter an Order granting this motion and dismissing Plaintiffs' Complaint with prejudice, and granting such other and further relief as this Court deems necessary and proper.

Dated:  February 13, 2013                    Respectfully submitted,


                                             /s/Carol G. Schley
                                             One of the attorneys for Defendant Redbox
                                             Automated Retail, LLC

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
pkupelian@clarkhill.com
cschley@clarkhill.com

*And*

Donna J. Vobornik (Admission Pending)
John Grossbart
Anthony T. Eliseuson (Admission Pending)
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@snrdenton.com
john.grossbart@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys Defendant Redbox Automated Retail, LLC*

8785943.1 41513/159498

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHELLE CAIN and RADHA SAMPAT,
Individually, and on behalf of all others similarly
Situated,

                Plaintiffs,

v.

REDBOX AUTOMATED RETAIL, LLC,

                Defendant.

Case No. 2:12-cv-15014-GER-LJM
Honorable Gerald E. Rosen
Mag. Judge Laurie J. Michelson

## BRIEF OF REDBOX AUTOMATED RETAIL, LLC
## <u>IN SUPPORT OF MOTION TO DISMISS</u>

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
pkupelian@clarkhill.com
cschley@clarkhill.com

Donna J. Vobornik (Admission Pending)
John Grossbart
Anthony T. Eliseuson (Admission Pending)
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@snrdenton.com
john.grossbart@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

LOCAL RULE 7.1 STATEMENT OF ISSUES PRESENTED ...................................... v

CONTROLLING AND MOST APPROPRIATE AUTHORITIES ............................... vii

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS .................................................................................. 2

    I.     Redbox's Business Model.......................................................................2

    II.    Background To The Michigan VRPA. ....................................................2

    III.   The Plaintiffs.......................................................................................4

ARGUMENT .................................................................................................. 4

    I.     The Disclosures Alleged Do Not Violate The Michigan VRPA. ...........4

    II.    Plaintiffs' Claims Also Fail Because The Alleged Disclosures Are Expressly
         Permitted By The VRPA. ....................................................................5

         A.    Plaintiffs consented in writing to the alleged disclosures. .......... 5

         B.    The alleged disclosures are permissive as part of Redbox's "ordinary
             course of business." ................................................................. 8

    III.   Plaintiffs' Claims Are Time-Barred By The Redbox Terms Of Use......................9

    IV.   Plaintiffs Have Not And Cannot Allege "Actual Damages" Or Any Injury In
         Fact.....................................................................................................10

    V.    Plaintiffs' Unjust Enrichment Claim Also Fails Because The Rental
         Transaction Was Subject To The Terms Of Use And Redbox Was Not
         Unjustly Enriched. .............................................................................14

CONCLUSION................................................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ass'n Benefit Servs., Inc., v. Caremark RX, Inc.,*
   493 F.3d 841 (7th Cir. 2007) .................................................................14, 15

*Barber v. SMH (US), Inc.,*
   202 Mich. App. 366, 509 N.W.2d 791 (1993) .......................................14

*Bassett v. Nat'l Collegiate Athletic Ass'n,*
   528 F.3d 426 (6th Cir. 2008) ...................................................................6

*Brown v. Outboard Marine Corp.,*
   No. 95-72224, 1995 WL 795704 (E.D. Mich. July 12, 1995) .................10

*Canadian Pac. Ry. Co. v. Williams Hayward Protective Coatings, Inc.,*
   No. 2 C 8800, 2003 WL 1907943 (N.D. Ill. April 17, 2003) .................15

*Cerdant, Inc. v. DHL Express (USA), Inc.,*
   No. 2:08-cv-186, 2009 WL 723149 (S.D. Ohio Mar. 30, 2009) ............14

*Certain Underwriters at Lloyd's London v. Warrantech Corp.,*
   461 F.3d 568 (5th Cir. 2006) ...................................................................8

*Cloverdale Equip. Co. v. Simon Aerials, Inc.,*
   869 F.2d 934 (6th Cir. 1989) ...................................................................14

*Cohen v. Facebook, Inc.,*
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) .................................................11

*Daniel v. Cantrell,*
   375 F.3d 377 (6th Cir. 2004) ...................................................................9

*Deacon v. Pandora Media, Inc.,*
   Case No. C 11-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012)............11

*Doe v. Chao,*
   540 U.S. 614 (2004)................................................................10, 12

*Druyan v. Jagger,*
   508 F. Supp. 2d 228 (S.D.N.Y. 2007)......................................................7

*Fteja v. Facebook, Inc.,*
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)......................................................6, 7

*Halasa v. ITT Educ. Servs.*,
    690 F.3d 844 (7th Cir. 2012) ...................................................................8

*Havenick v. Network Express*,
    981 F. Supp. 480 (E.D. Mich. 1997)......................................................10

*Hendricks v. DSW Shoe Warehouse, Inc.*,
    444 F. Supp. 2d 775 (W.D. Mich. 2006) ...............................................14

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    131 Ill. 2d 145 (1989) ............................................................................15

*In re DoubleClick Inc. Privacy Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001)...................................................13

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ..................................................12

*In re iPhone Application Litig.*,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .....................................12

*In re JetBlue Airways Corp. Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................................12

*Katz v. Pershing, LLC*,
    672 F.3d 64 (1st Cir. 2012)....................................................................13

*Key v. DSW, Inc.*,
    454 F. Supp. 2d 684 (S.D. Ohio 2006) .................................................13

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ...............................................................13

*Lujan v. Secretary of the Interior*,
    504 U.S. 555 (1992)...............................................................................11

*Martin v. East Lansing Sch. Dist.*,
    193 Mich. App. 166, 483 N.W.2d 656 (1992).......................................14

*Medrano v. Prod. Eng'g Co.*,
    774 N.E.2d 371 (Ill. App. Ct. 2002) .......................................................9

*National Organization for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994)...............................................................................11

*Pisciotta v. Old Nat'l Bancorp*,
    499 F.3d 629 (7th Cir. 2007) .................................................................13

*Rabbah v. Federal Home Loan Mortg. Corp.*,
    No. 12-14599, 2013 WL 153729 (E.D. Mich. Jan. 15, 2013) ...................................15

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011).......................................................................13

*Rory v. Cont'l Ins. Co.*,
    703 N.W.2d 23 (Mich. 2005).....................................................................9

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ...................................................12

*Sterk v. Best Buy Stores, L.P.*,
    No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ....................12

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)...............................................................................11

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) .....................................................6

*United States v. Ntreh*,
    279 F.3d 255 (3d Cir. 2002)....................................................................8

*Van Alstyne v. Elec. Scriptorium, Ltd.*,
    560 F.3d 199 (4th Cir. 2009) .................................................................11

*Vinton v. CG's Prep Kitchen and Café*,
    No. 09-cv-707, 2010 WL 748221 (W.D. Mich. Mar. 2, 2010)..................11

*Wiley v. Department of Veterans Affairs*,
    176 F. Supp. 2d 747 (E.D. Mich. 2001)...................................................11

**STATUTES**

MCL § 445.1711, *et seq.*.............................................................1, 3, 4, 5, 8, 10

18 U.S.C. § 2710, *et seq*................................................................3, 8, 9, 12

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(1) .................................................2

Federal Rule of Civil Procedure 12(b)(6) .......................................2, 10, 16

## LOCAL RULE 7.1 STATEMENT OF ISSUES PRESENTED

In this putative state wide class action asserting claims under the Michigan Video Rental Privacy Act, MCL § 445.1711, *et seq.* ("Michigan VRPA") (Count I), and related claims for breach of contract (Count II) and unjust enrichment (Count III), the questions presented by this Motion are:

1.      Are all the claims in Plaintiffs' Complaint subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the only alleged "disclosures" do not violate the Michigan VRPA?

**Defendant says:  YES.**

2.      Are all the claims in Plaintiffs' Complaint subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the only alleged "disclosures," even assuming they are disclosures within the scope of the Michigan VRPA, fall within permissive exceptions to that Act?

**Defendant says:  YES.**

3.      Are all the claims in Plaintiffs' Complaint subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure because their transactions were governed by Terms of Use to which Plaintiffs are bound, and those Terms require any suit to be filed within one-year of the rental, a time period that expired before this suit was filed?

**Defendant says:  YES**

4.      Are all the claims in Plaintiffs' Complaint subject to dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because even if the alleged disclosures were both within the scope of the Michigan VPRA, and did not fall within permissive exceptions of that Act, Plaintiffs have not suffered any "actual damage" or injury in fact as a result of such disclosures?

**Defendant says:  YES**

5.      Is Plaintiffs' unjust enrichment claim (Count III) subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure because here an express contract governs the parties' relationship, and also because the alleged benefit that is unjustly being retained is merely the benefit of the parties' bargain?

**Defendant says:  YES**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

I.    **The Disclosures Alleged Do Not Violate The Michigan VRPA.**

    1.    Michigan Video Rental Privacy Act, MCL § 445.1711, *et seq.*

    2.    Rule 12(b)(6) of the Federal rules of Civil Procedure.

II.   **Plaintiffs' Claims Also Fail Because The Alleged Disclosures Are Expressly Permitted By The VRPA.**

    1.    Michigan Video Rental Privacy Act, MCL § 445.1711, *et seq.*

    2.    Federal Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*

    3.    *Daniel v. Cantrell*, 375 F.3d 377 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 874 (2005).

    4.    Rule 12(b)(6) of the Federal rules of Civil Procedure.

III.  **Plaintiffs' Claims Are Time-Barred By The Redbox Terms Of Use.**

    1.    *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23 (Mich. 2005).

    2.    *Medrano v. Prod. Eng'g Co.*, 774 N.E.2d 371 (Ill. App. Ct. 2002).

    3.    Rule 12(b)(6) of the Federal rules of Civil Procedure.

IV.   **Plaintiffs Have Not And Cannot Allege "Actual Damages" Or Any Injury In Fact.**

    1.    *Doe v. Chao*, 540 U.S. 614 (2004).

    2.    *Lujan v. Secretary of the Interior*, 504 U.S. 555 (1992).

    3.    *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994).

    4.    *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009).

    5.    Rule 12(b)(6) of the Federal rules of Civil Procedure.

    6.    Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**V.     Plaintiffs' Unjust Enrichment Claim Also Fails Because The Rental Transaction Was Subject To The Terms Of Use And Redbox Was Not Unjustly Enriched.**

1.  *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934 (6th Cir. 1989).

2.  *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 509 N.W.2d 791 (1993).

3.  *Martin v. East Lansing Sch. Dist.*, 193 Mich. App. 166, 483 N.W.2d 656 (1992).

4.  Rule 12(b)(6) of the Federal rules of Civil Procedure.

## INTRODUCTION

In this putative state wide class action, Plaintiffs seek to recover statutory damages under Michigan's Video Rental Privacy Act, MCL § 445.1711, *et seq*. (the "VRPA"), based on their allegation that Redbox has violated the VRPA by disclosing Plaintiffs' movie rental history. Notably, Plaintiffs do not allege any *public* disclosure of their movie rental history occurred here, but instead challenge Redbox's alleged use of vendors to perform back office services on its behalf, such as customer call center support.  Plaintiffs also assert common law claims for breach of contract and unjust enrichment based on the same alleged conduct.  All of their claims are without merit and should be dismissed for several reasons, including:

*First*, the alleged "disclosures" to companies with whom Redbox contractually outsourced customer service related inquiries from Redbox customers, and to streamline communications with its customers, are not proscribed by the VRPA.

*Second*, the "disclosures" complained of, in all events, are expressly permitted because Plaintiffs consented to those disclosures, and because they took place in Redbox's "ordinary course of business."

*Third,* Plaintiffs' rental transactions with Redbox are subject to Terms of Use that contain a one year contractual limitations period that runs from the date of the rental.  Here, Plaintiffs themselves allege that their rental transactions occurred "beginning in November 2010," and in February 2011, respectively, which are well outside that one-year period.

*Fourth*, even if the "disclosures" alleged violate the VRPA, those disclosures—all internal to Redbox and companies with whom it contracts to provide rental-related services— did not cause any "actual damage," as expressly required by the VRPA, and resulted in no "injury in fact" necessary to establish subject matter jurisdiction.

For these and other reasons discussed more fully below, Redbox respectfully submits that

Complaint should be dismissed under either one or both of Rules 12(b)(1) or 12(b)(6) of the

Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

**I.    Redbox's Business Model.**

Since Redbox's inception in 2002, Redbox has rented and sold digital video disks

("DVDs") to consumers through automated, self-service kiosks located in various retail outlets.

(*See generally* Compl. at ¶ 17.)  These kiosks are located at grocery stores, mass merchant

retailers, drugstores, restaurants, and convenience stores nationwide.  The kiosk allows

consumers to view the movies available at that location and select the DVD they would like to

rent or purchase.  After selecting the DVD, consumers swipe a credit card, and the kiosk

dispenses the DVD.  (*Id.*)  The consumer is then charged a set amount per day for the rental until

the DVD is returned to a Redbox kiosk.  (*Id.* at ¶ 19.)

**II.    Background To The Michigan VRPA.**

In 1987, during then Judge Robert Bork's Supreme Court nomination hearings, a reporter

for a weekly newspaper in Washington published a "profile" based on the 146 movies Judge

Bork's family had rented from a local video store.  *See* Senate Report No. 100-599, at 5 (1988),

available at 1988 WL 243503 [hereinafter the "1988 Senate Report"].  In response to that

incident, the federal government and several states, including Michigan, passed laws principally

aimed at preventing *public* disclosure of an individual's movie rental information, which was

- 2 -

deemed private.  *Id.*  Specifically, Michigan passed the VRPA in December of 1988.[1]  That act,

in pertinent part, provides:

> Except as provided in section 3 or as otherwise provided by law, a person,
> or an employee or agent of the person, engaged in the business of selling at
> retail, renting, or lending books or other written materials, sound
> recordings, or video recordings shall not disclose to any person, other than
> the customer, a record or information concerning the purchase, lease, rental,
> or borrowing of those materials by a customer that indicates the identity of
> the customer.

MCL § 445.1712.  In addition to recognizing exceptions "otherwise provided by law," the VRPA

also expressly sets forth several additional specific exceptions, including disclosures made: (i)

"[w]ith the written permission of the customer;" (ii) pursuant "to a court order" or "search

warrant," (iii) for certain debt collection activities; and (iv) for "the exclusive purpose of

marketing goods and services directly to the customer," if the customer is provided with written

notice of the ability to "remove his or her name at any time by written notice."  MCL §

445.1713.

Plaintiffs brought this action seeking statutory damages under the Michigan VRPA

alleging that Redbox improperly disclosed their "first and last names, email addresses, movie

rental and purchase histories, and debit and/or credit card information," which Plaintiffs

collectively define as their "Personal Viewing Information." (Compl. at ¶ 2.)  Importantly,

Plaintiffs **do not allege** that Redbox disclosed Personal Viewing Information *publicly* or for any

purpose other than one directly related to Redbox's servicing of its own customers.  Rather, the

Complaint cryptically alleges, "on information and belief," that disclosures were made for

"service support" and for "analytics and promotions purposes."  (*Id.* at ¶¶ 22, 25.)  Based on

---

[1] The Federal Video Privacy Protection Act of 1988, 18 U.S.C. § 2710, was signed into law just
weeks prior.

these general allegations, Plaintiffs assert three causes of action for (1) an alleged violation of the Michigan VRPA (*id.* at ¶¶ 51-64); (2) breach of contract (*id.* at ¶¶ 65-75); and (3) unjust enrichment (*id.* at ¶¶ 76-85 ).

### III.    The Plaintiffs.

Plaintiff Michelle Cain alleges she rented from Redbox on or around February 2, 2011 and February 5, 2011.  (*Id.* at ¶ 27.)  Plaintiff Radha Sampat alleges that her rentals began in November of 2010.  (*Id.* at ¶ 35.)  Plaintiffs also seek to represent a state wide class they define as:

> All Michigan residents who had their Personal Viewing Information disclosed by Redbox to a third party "service support" vendor or any other third party without written consent.

(*Id.* at ¶ 44.)  No time period for the putative class is alleged.

**ARGUMENT**

### I.    The Disclosures Alleged Do Not Violate The Michigan VRPA.

To state a claim for a violation of the Michigan VRPA, Plaintiffs must allege that (1) Redbox rented a "video recording" to Plaintiffs; (2) Redbox, "or an employee or agent of" Redbox "disclosed[d] to a person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of [the video recording] by a customer that indicates the identity of the customer"—"Personal Viewing Information" using Plaintiffs' term; (3) the disclosure caused "actual damage" to the customer whose information was disclosed; and (4) the disclosure was not permitted by the VRPA.  MCL §§ 445.1712, 445.1715.

Here, Plaintiffs do not allege that Redbox disclosed their "Personal Viewing Information" *publicly*; rather, Plaintiffs' allegations refer only to disclosures among and between Redbox and service providers with whom it contracts to provide services for its own customers.  (Compl. at ¶ 22 (alleging information was disclosed for "service support").)

- 4 -

Importantly, the VRPA makes clear that the disclosure must be to a person other than

Redbox's "employee or agent," because it expressly provides that a violation only occurs if a

disclosure runs from the company, its employee, or its agent, to some other "person."  MCL §

445.1712 ("a person, or an employee or agent of the person, engaged in the business of . . .

renting . . . video recordings shall not disclose to any person, other than the customer . . .").

Thus, by definition, any disclosure among and between Redbox and any of its contractors

specially retained to provide customer-service related responsibilities cannot properly be viewed

as a violation of this provision.[2]

Because the alleged disclosures do not violate the Michigan VRPA, that claim must be

dismissed.  Moreover, Plaintiffs' other claims—for a breach of contract claim and unjust

enrichment—also fail because they are contingent upon a violation of the VRPA.  (*See, e.g.*,

Compl. at ¶ 72 (alleging Redbox breached the "contract" by its "failure to perform its contractual

obligations imposed by the VRPA"); *id*. at ¶¶ 80-83 (alleging that Plaintiffs are entitled to a

refund under an unjust enrichment theory because Redbox "failed to comply with the VRPA").)

## II.   Plaintiffs' Claims Also Fail Because The Alleged Disclosures Are Expressly Permitted By The VRPA.

### A.   Plaintiffs consented in writing to the alleged disclosures.

Section 3 of the VRPA enumerates several express exceptions to the disclosure

prohibition, including "[w]ith the written permission of the customer," as well as disclosures for

certain debt-collection activities, and for marketing goods and services to the customer if the

customer is informed of a method of opting-out of that process.  MCL § 445.1713.  Although the

---

[2] Plaintiffs' also cryptically reference the disclosure of this information to other Redbox contractors for marketing "analytics," or "promotions" purposes.  (Compl. at ¶ 25.)

VRPA fails to provide any specificity as to what is meant by "written permission," here both Plaintiffs were bound by contractual Terms of Use to which they affirmatively agreed, and which were at all times posted both on the kiosks they used for their transactions, as well as on Redbox's website. (*See* Exhibit A, Decl. of Eric Hoersten at ¶ 3 and Exhibit 1 thereto.)[3] Every single rental transaction made through a Redbox kiosk requires the customer to affirmatively agree to be bound by these Terms, stating: "By pressing 'PAY' or 'USE Credits' you agree to the Terms." (*Id.* at ¶¶ 5-7 and Exhibits 3 and 4 thereto.)[4]

Such hybrid "clickwrap" agreements[5]—online contracts that a customer accepts by affirmatively pressing a button acknowledging they are bound—are valid and enforceable. *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (holding Terms of Use were enforceable contract because the plaintiff and putative class were required to click "on an 'Accept' button directly above a statement that clicking on the button served as assent to the

---

[3] This Court may consider these materials without converting this Rule 12(b)(6) motion to one for summary judgment because the Terms of Use are central to Plaintiffs' claims and are referenced in the Complaint. (Compl. at ¶ 60). *See generally Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (holding that on motion to dismiss courts "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein").

[4] The version of the Kiosk software that existed prior to the current version similarly stated "By pressing the 'CHECK OUT' button you agree to our Terms of Use. To read the Terms of Use, press the 'HELP' button and then press the 'TERMS OF USE' button." (*Id.* at ¶ 5, Exhibit 3.)

[5] Courts have distinguished between two types of online contracts: clickwrap agreements and browsewrap agreements. The primary distinction is that a clickwrap agreement involves an affirmative act manifesting agreement, such as pressing an "I Accept" button or, here, the "Pay" button, accompanied by text explaining that pressing that button constitutes agreement to the Terms. With a browsewrap agreement, the customer is deemed bound simply by continuing to use the website after being put on notice that such use is governed by terms of use, which may not even be presented to the customer unless they click on a link. *See generally Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836-37 (S.D.N.Y. 2012) (noting that even browsewrap agreements are often enforced, collecting cases, and enforcing a modified clickwrap agreement).

YoVille terms of service along with a blue hyperlink directly to the terms of service"); *Fteja v. Facebook, Inc*, 841 F. Supp. 2d 829, 836-37 (S.D.N.Y. 2012) (enforcing Facebook's modified clickwrap terms in which the user is bound to the terms by pressing the "Sign Up" button next to text indicating that pressing such button binds them to the terms, which can only be viewed on a separate page if the user follows a hyperlink). This is true even if Plaintiffs failed to read the Terms. *Druyan v. Jagger*, 508 F. Supp. 2d 228, 237 (S.D.N.Y. 2007) (holding, in context of browsewrap agreement, that "[c]ontrary to plaintiff's suggestion, the enforceability of the Terms of Use does not depend on her actually having read them[,]" and charging the plaintiff with knowledge of the terms due to her use of the website).

The Terms of Use in place at the time of Plaintiffs' transactions expressly referenced Redbox's written Privacy Policy, available on Redbox's website, which fully described the "disclosures" on which Plaintiffs' Complaint is based:

> Companies may from time to time be engaged by Redbox to perform a variety of functions, such as fulfilling orders, assisting with promotions, providing technical services for our web site, etc. These companies may have access to personal information if needed to perform such functions. However, these companies may only use such personal information for the purpose of performing that function and may not use it for any other purpose.

(*See* Exhibit A at ¶ 4 and Exhibit 2 thereto.) By completing their transaction at the kiosk after being put on notice of Redbox's Privacy Policy, Plaintiffs provided "written permission" to Redbox to disclose the information in the manner that Redbox told them it would before they completed their transaction. Thus, even if there was a "disclosure" outside those allowed by the VRPA, Plaintiffs provided their "written consent" to such disclosures within the meaning of that express VRPA exception.

**B.    The alleged disclosures are permissive as part of Redbox's "ordinary course of business."**

Any alleged disclosures also are permissible because even if they occurred exactly as alleged, such disclosures were in Redbox's "ordinary course of business."  The Michigan VRPA expressly incorporates other permissible disclosures as provided by other applicable law:

> Except as provided in section 3 *or as otherwise provided by law*, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

MCL § 445.1712 (emphasis added).  This adoption can only be interpreted to include the federal VPPA, which was enacted shortly before the Michigan VRPA.  *See generally United States v. Ntreh*, 279 F.3d 255, 259 (3d Cir. 2002) (recognizing that the inclusion of the phrase "as otherwise provided by law" in the statute at issue created additional exceptions by incorporating the terms of statutes that related to the same subject matter); *Halasa v. ITT Educ. Servs.*, 690 F.3d 844, 852 (7th Cir. 2012) (recognizing that the phrase "except otherwise provided by law" allows other laws to override the terms of the provision, even later enacted ones); *Certain Underwriters at Lloyd's London v. Warrantech Corp.*, 461 F.3d 568, 576 (5th Cir. 2006) (finding that the reference to removal procedures "otherwise provided by law" in statute "incorporates" provisions in other related statutes).

The federal VPPA plainly regulates the same subject matter as the Michigan VRPA—specifically, disclosure of "personally identifiable information" or "PII" (which Plaintiffs here call Personal Viewing Information), which is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(4).  Under the federal VPPA, such a "service provider" is

permitted to disclose PII to "any person" in the "ordinary course of business of the video tape

service provider." 18 U.S.C. § 2710(b)(2)(E). "Ordinary course of business" is defined to

include "debt collection activities, order fulfillment, request process, and the transfer of

ownership." 18 U.S.C. § 2710(a)(2). As the Sixth Circuit has recognized in a key VPPA case,

"order fulfillment" and "request processing" were defined in the legislative history to broadly

include "the use, by [video tape service providers], of mailing houses, warehouses, computer

services, and similar companies for marketing to their customers." *Daniel v. Cantrell*, 375 F.3d

377, 382 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 874 (2005) (citing 1988 Senate Report). The

use of a vendor to provide customer support, which by definition entails the processing of

requests from customers, falls within this definition as a core ordinary course of business activity

and is therefore expressly permitted.

**III.    Plaintiffs' Claims Are Time-Barred By The Redbox Terms Of Use.**

At the time of the alleged rentals, in November 2010 and February of 2011, the Terms of

Use agreed to by both plaintiffs (as more fully described above) provided that:

> Regardless of any statute or law to the contrary, any claim or cause of
> action (whether arising in contract or tort, law or equity) by you arising out
> of or related to these Terms of Use, your access and use of the Kiosks, or
> the relationship between you and us, must be filed within one (1) year after
> such claim or cause of action arose or be forever barred.

(Exhibit A at ¶ 3 and Exhibit 1 thereto at 3.) The Terms of Use also include a binding choice of

law provision selecting Illinois law to govern the interpretation of the Terms, including the one-

year limitation provision. (*Id.*)

Under Illinois law (and Michigan law), contractual limitations provisions such as this one

are valid and enforceable. *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005) ("[W]e hold

that an unambiguous contractual provision providing for a shortened period of limitations is to be

enforced as written unless the provision would violate law or public policy."); *Medrano v. Prod.*

*Eng'g Co.*, 774 N.E.2d 371, 382 (Ill. App. Ct. 2002) (holding that a one-year contractual

limitations periods that shortened the statute of limitations period must be enforced because it

was reasonable) (citation omitted).

Plaintiffs filed this lawsuit on November 13, 2012, yet they expressly allege their rental

transactions occurred more than one year prior to that date. Plaintiff Michelle Cain alleges she

rented from Redbox on or around February 2, 2011 and February 5, 2011 (more than a year and a

half prior to the filing of this Complaint). (Compl. at ¶ 27.) Plaintiff Radha Sampat alleges her

rentals began in November of 2010 (two years prior to the filing of this Complaint). (*Id.* at ¶ 35.)

Accordingly, Plaintiffs' own allegations establish that their claims are time-barred and the

Complaint should be dismissed with prejudice on that basis. *See, e.g., Havenick v. Network

Express*, 981 F. Supp. 480 (E.D. Mich. 1997) (dismissing putative class complaint with

prejudice under Rule 12(b)(6) because the allegations in the complaint demonstrated the claims

were time barred); *Brown v. Outboard Marine Corp.*, No. 95-72224, 1995 WL 795704, at *2

(E.D. Mich. July 12, 1995) (Exhibit B) (dismissing complaint with prejudice under Rule

12(b)(6), noting "[t]he Sixth Circuit and other courts have repeatedly dismissed cases which are

time-barred pursuant to this rule").

**IV.    Plaintiffs Have Not And Cannot Allege "Actual Damages" Or Any Injury In Fact.**

Plaintiffs also do not, and cannot, allege that they suffered any "actual damages" or injury

in fact as required. The VRPA expressly requires a plaintiff asserting a civil claim to have been

"damage[d]," and although the statute provides a minimum quantification of such damages,

$5,000, it does not provide for any award without actual damages having occurred—just as

numerous courts have held addressing similarly worded statutes. *Compare* MCL § 445.1715

*with Doe v. Chao*, 540 U.S. 614, 619 (2004) (plaintiff must demonstrate actual damages under

Privacy Act of 1974 to recover under statute that provides recovery for "actual damages

sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery received less than the sum of $1,000"); *Wiley v. Department of Veterans Affairs*, 176 F. Supp. 2d 747, 757-58 (E.D. Mich. 2001) (same principle); *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing claims because the minimum statutory damages amount did not absolve plaintiff from pleading and proving actual injury where statutory language stated "the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use"); *see also Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 205 (4th Cir. 2009) (claims for violation of Stored Communications Act require proof of actual damages); *Vinton v. CG's Prep Kitchen and Café*, No. 09-cv-707, 2010 WL 748221, at *1 (W.D. Mich. Mar. 2, 2010) (Exhibit C) (dismissing claims under Michigan Consumer Protection Act because alleged violation—printing a receipt with all 16 digits of a credit card number—"merely allege[d] a technical violation of the statute" without any allegation plaintiff "suffered a loss" to state a claim for damages).[6]

Similarly, standing is a fundamental jurisdictional requirement, and standing requires proof of an injury in fact. *See, e.g., Lujan v. Secretary of the Interior*, 504 U.S. 555, 560 (1992); *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). The mere allegation that a statute was violated is insufficient to provide standing unless that statutory violation actually causes an injury in fact. *See, e.g., Summers v. Earth Island Inst.*, 555 U.S. 488,

---

[6] The court in *Deacon v. Pandora Media, Inc.*, Case No. C 11-04674 SBA, 2012 WL 4497796, at *4 (N.D. Cal. Sept. 28, 2012) (Exhibit D), without analysis regarding the specific language or other statutes with similar language, concluded that the Michigan VRPA does not require an allegation of actual damages. Respectfully, that conclusion was in error particularly given that the authorities cited above were not mentioned much less distinguished by the *Deacon* court. Moreover, given that the *Deacon* court granted the motion to dismiss on other grounds, this discussion is mere dicta.

497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."); *Doe*, 540 U.S. at 624 (same principle). This is particularly so where, as discussed above, there is *no* allegation that Plaintiffs' information was disclosed *publicly*—the harm sought to be prevented by the VRPA. Rather, Plaintiffs' own allegations demonstrate the only disclosures were among and between Redbox and the providers with whom it contracts to service its customers. Conspicuously absent is any allegation that Plaintiffs' Personal Viewing Information was used to their detriment or harm by anyone.

Furthermore, Plaintiffs' allegation that they were somehow injured because they "ascribe monetary value to the privacy of their Personal Viewing Information . . . [and] Redbox's unlawful disclosure of their Personal Viewing Information *deprived them of the full paid-for value, thereby causing them economic damages*," has been roundly rejected by federal courts. *Compare* Compl. at ¶ 63 (emphasis added) and *id.* at ¶ 73 (same)[7] *with, e.g., In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 n.10 (N.D. Cal. 2011) (holding that personal information does not "equate[] to money or property" and that mere disclosure of personal data was insufficient to establish injury in fact); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("[T]here is absolutely no support for the proposition that the personal information of an individual . . . had any value for which that [individual] could have expected to be compensated."); *In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (Exhibit E) (similar principle); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121,

---

[7] Plaintiffs also allege, in the context of their breach of contract claim, that a portion of the amount they paid for the rental was intended to provide for confidentiality of their information and, therefore, since it was allegedly not kept confidential the rental price should be reduced. (Compl. at ¶ 74.) This precise theory was rejected in another suit brought by Plaintiffs' counsel under the VPPA. *Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *7 (N.D. Ill. Oct. 17, 2012) (Exhibit F) ("Nor are Plaintiff's allegations that he overpaid Best Buy sufficient to establish actual injury.").

1127 (N.D. Cal. 2008); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525

(S.D.N.Y. 2001) ("[A]lthough demographic information is valued highly . . the value of its

collection has never been considered an economic loss to the subject. . . . [W]e are unaware of

any court that has held the value of this collected information constitutes damage to

consumers.")

Moreover, even if a non-permitted disclosure occurred here, that fact alone would not

create actual damages or injury.  In data breach cases, several courts have held that even where

the information was disclosed to an unauthorized individual, there is no injury in fact without an

allegation that the information had been **used** by that unauthorized third-party in a manner that

harmed the plaintiff.  *See, e.g., Katz v. Pershing, LLC*, 672 F.3d 64, 79-80 (1st Cir. 2012)

(holding jurisdiction was lacking because claim that "defendant's failure to adhere to privacy

regulations increase[d plaintiff's] risk of harms associated with the loss of her data" failed to

establish an injury in fact when "no interest or right of the plaintiff has been harmed by any

violation of applicable privacy laws"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 43-46 (3d Cir.

2011) (finding no injury in fact when unauthorized person accessed but did not yet misuse

plaintiffs' data and distinguishing and criticizing *Pisciotta* and *Krottner, infra* n.8);[8] *see also Key

v. DSW, Inc.*, 454 F. Supp. 2d 684, 688-89 (S.D. Ohio 2006) (dismissing putative class action for

lack of standing because even though information was improperly disclosed no allegation it had

been misused in a manner that harmed plaintiffs; alleged "'substantial increased risk of identity

---

[8] While other courts have a lower threshold standard, those courts still require a *plausible* allegation showing an "increased risk" of identity theft as a result of the unauthorized disclosure. *See, e.g., Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (finding injury in fact when plaintiffs plausibly pled increased risk of harm following theft of a laptop that contained their personal data); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) (finding injury in fact when plaintiffs plausibly alleged an increased risk of data theft after their information had been accessed by a malicious and sophisticated hacker).

theft or other financial crimes' is insufficient to confer standing"); *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 781-82 (W.D. Mich. 2006).[9]

**V.     Plaintiffs' Unjust Enrichment Claim Also Fails Because The Rental Transaction Was Subject To The Terms Of Use And Redbox Was Not Unjustly Enriched.**

Michigan law is clear—an unjust enrichment claim can only be sustained "if there is no express contract covering the same subject matter." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 509 N.W.2d 791, 796 (1993); *Martin v. East Lansing School District*, 193 Mich. App. 166, 483 N.W.2d 656 (1992). Here, there can be no dispute an express contract covers the transactions at issue, namely the Terms of Use. Those Terms preclude any unjust enrichment claim as a matter of law. *See Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2009 WL 723149, at *6 (S.D. Ohio Mar. 30, 2009) (Exhibit G) (granting Rule 12(b)(6) motion and holding that unjust enrichment claim failed as a matter of law because "[t]here is also a contract governing the relationship between DHL and customers using the website, which is set forth in DHL's online Terms and Conditions . . . [t]hus, as a matter of law, Plaintiffs' claims for equitable relief [unjust enrichment] cannot stand").

Additionally, as the Sixth Circuit has recognized in applying Michigan law, a claim for unjust enrichment fails when a party receives the benefit of the bargain and here Plaintiffs received the movie rental that they paid for. *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 939-40 (6th Cir. 1989) (holding actions did not constitute unjust enrichment where the

---

[9] Plaintiffs' breach of contract claim also fails without an allegation of actual damage. *See Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 780 (W.D. Mich. 2006) (dismissing breach of contract claim under Michigan law in putative class action because even though data breach occurred, no allegation that the information had been misused and therefore element that "the breach caused the plaintiff's injury," was lacking) (quotation omitted, emphasis supplied by court); *Ass'n Benefit Servs., Inc., v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (similar principle under Illinois law).

- 14 -

parties both received the benefit of the bargain to which they agreed even if defendant received

significant profit from the transaction); *see also Rabbah v. Federal Home Loan Mortg. Corp.*,

No. 12-14599, 2013 WL 153729, at *4-5 (E.D. Mich. Jan. 15, 2013) (Exhibit H) (dismissing

unjust enrichment claim with prejudice relating to a foreclosure sale under Rule 12(b)(6) because

no "inequity" existed when any benefit received by defendant was part of the parties' agreed

upon transaction).[10]

\* \* \* \*

---

[10] The same basic principles apply under Illinois law. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill. 2d 145 (1989) (claim for unjust enrichment requires allegation that defendant's "retention of the benefit violates the fundamental principles of justice, equity, and good conscience."); *see also Assoc. Ben. Serv. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[O]ur survey of the relevant Illinois precedent indicates that Illinois courts have held that conduct rises to the level of *wrongful*, in the context of an unjust enrichment claim, when it violates the law.") (emphasis in original); *Canadian Pac. Ry. Co. v. Williams Hayward Protective Coatings, Inc.*, No. 2 C 8800, 2003 WL 1907943, *4-5 (N.D. Ill. April 17, 2003) (Exhibit I) ("Where a specific contract governs the relationship of the parties, 'the doctrine of unjust enrichment has no application.'") (quotation omitted) (applying Illinois law).

## CONCLUSION

For the foregoing reasons, Redbox respectfully requests that this Court should dismiss this action either for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6).

Dated:  February 13, 2013                              Respectfully submitted,


                                                        /s/ Carol G. Schley_____
                                                        One of the attorneys for Defendant Redbox
                                                        Automated Retail, LLC


Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
pkupelian@clarkhill.com
cschley@clarkhill.com

And

Donna J. Vobornik (Admission Pending)
John Grossbart
Anthony T. Eliseuson (Admission Pending)
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@snrdenton.com
john.grossbart@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

8787115.1 41513/159498

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

s/Carol G. Schley
CAROL G. SCHLEY (P51301)
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
(313) 965-8300
cschley@clarkhill.com
