**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MICHELLE CAIN and RADHA SAMPAT, individually, and on behalf of all others similarly situated, | Case No. 12-15014-GER-LJM |
| Plaintiffs, | Hon. Gerald E. Rosen |
| v. | Mag. Judge Laurie J. Michelson |
| REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT REDBOX AUTOMATED RETAIL, LLC'S MOTION TO DISMISS**

Christine E. Ficks (P64625)
BODMAN PLC
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, Michigan 48226
Tel: 313-259-7777
cficks@bodmanlaw.com

Ari J. Scharg
EDELSON LLC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
ascharg@edelson.com

*Counsel for Plaintiffs Cain and Sampat and the Putative Class*

<u>**TABLE OF CONTENTS**</u>

PRELIMINARY STATEMENT ..............................................................................1

FACTUAL BACKGROUND ..............................................................................2

    *Michigan's Video Rental Privacy Act ("VRPA")* ......................................2

    *Redbox Discloses Its Michigan Customers' Private Viewing Information Without Permission* ........................................................................................3

    *Plaintiffs Never Gave Redbox Permission To Disclose Their Personal Viewing Information* ....................................................................................4

ARGUMENT .....................................................................................................4

I.     **Plaintiffs Allege Facts Demonstrating Redbox's Violation Of The VRPA**..................5

    A.     **Redbox's Disclosures To Third Parties Violate the VRPA** .............................5

    B.     **Redbox Hasn't Shown That It Obtained Consent From Any Customer So As To Satisfy The VRPA's "Written Permission" Exception**...........................7

        1.     **The Court May Not Properly Consider The Documents Redbox Attaches to its Motion** .....................................................7

        2.     **Plaintiffs' Express Allegations That They Didn't Consent To The Terms Of Use Control At This Stage** ...................9

        3.     **In Any Event, Redbox's Privacy Policy Doesn't Even Address The Disclosures At Issue** ......................................11

    C.     **Redbox Can't Hide Behind The Federal Video Privacy Protection Act's "Ordinary Course of Business" Exception** .........................12

        1.     **The Federal VPPA's "Ordinary Course of Business" Exception Does Not Override Michigan's VRPA** ...................13

        2.     **In Any Case, Redbox's "Ordinary Course of Business" Defense Cannot Be Resolved On A Motion To Dismiss**......................16

    D.     **Plaintiffs' Claims Are Not Time Barred** ........................................16

    E.     **Plaintiffs Have Standing Under the VRPA Because Their Personal Viewing Information Was Disclosed Without Their Consent** ........................17

        1.     **The VRPA Does Not Require Plaintiffs To Plead Actual Damages** ....18

2.    **Redbox's Article III Standing Argument Seriously Misunderstands The Instant Case And Controversy** ..........................21

3.    **Plaintiffs Also Plead Economic Loss—Not That Doing So Was Required To Establish Either Statutory Or Article III Standing** .......22

II.   **REDBOX'S ATTACK ON PLAINTIFFS' UNJUST ENRICHMENT CLAIM IGNORES THE COMPLAINT'S PLAIN LANGUAGE** ............................24

**CONCLUSION** ....................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>United States Supreme Court Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 4-5

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ...................................................21

*Doe v. Chao*, 540 U.S. 614 (2004) ..........................................................................19, 20

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .............................................17

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ...................................................................7

*U.S. Dep't. of State v. Ray*, 502 U.S. 164 (1991) .......................................................22

*Warth v. Seldin*, 422 U.S. 490 (1975) .........................................................................21

### <u>United States Circuit Court of Appeals Cases</u>

*Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009),
    *cert. denied* 130 S. Ct. 2379 (2010) ................................................................. 18-19

*Bergin Fin., Inc. v. First Am. Title Co.*, 397 F. App'x. 119 (6th Cir. 2010) ..................6

*Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762 (6th Cir. 2005) ................. 14-15

*Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Reinsurance*
    *Agreements F96/2922/00 and No. F97/2992/00 v. Warrantech Corp.*,
    461 F.3d 568 (5th Cir. 2006) ...........................................................................15

*Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934 (6th Cir. 1989) .............25

*Cornelius v. Mich. Atty. Grievance Comm.*, No. 12-1449,
    2013 WL 58772 (6th Cir. Jan. 7, 2013) ...........................................................17

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ...............................................24

*Guzman v. U.S. Dept. of Homeland Sec.*, 679 F.3d 425 (6th Cir. 2012) .......................7

*Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999) ..................................8

*Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844 (7th Cir. 2012) .................................15

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) .............................23

*In re Carter*, 553 F.3d 979 (6th Cir. 2009) ...........................................................21, 22

*Kehoe v. Fidelity Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005) .........................19

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012) ....................................................10

*Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271 (6th Cir. 2006) ..............19, 21

*Mediacom S.E. LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396 (6th Cir. 2012) .........9

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) ...................................... 22, 24-25

*Specht v. Netscape Commc'ns. Corp.*, 306 F.3d 17 (2d Cir. 2002) ..............................11

*Song v. City of Elyria*, 985 F.2d 840 (6th Cir. 1993) ......................................................9

*Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) .......................19

*U.S. v. Ntreh*, 279 F.3d 255 (3d Cir. 2002) ...................................................................15

*Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009) .........................20

*White v. U.S.*, 601 F.3d 545 (6th Cir. 2010) ...................................................................4

**<u>United States District Court Cases</u>**

*Claridge v. RockYou*, 785 F. Supp. 2d 855 (N.D. Cal. 2011) .......................................22

*Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090 (N.D. Cal. 2011) ..........................20, 21

*Deacon v. Pandora Media, Inc.*,
    No. 11-cv-04674, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012).................19, 20, 21

*Dilorenzo v. BAC Home Loans Servicing, LP*, No. 12-cv-12116,
    2012 WL 6328666 (E.D. Mich. Oct. 26, 2012) .....................................................9

*Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) ................................. 23-24

*Druyan v. Jagger*, 508 F. Supp. 2d 228 (S.D.N.Y. 2007) .............................................9

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) .....................................9

*In re Hulu Privacy Litig.*, No. 11-cv-03764,
    2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .....................................................16

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Pracs.,*
   *and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010)......................................23

*Kinder v. United Bancorp. Inc.*, No. 11-cv-10440,
   2012 WL 44900874 (E.D. Mich. Sept. 28, 2012)............................................................19

*Lipton v. Chattem, Inc*., No. 11-cv-2952, 2012 WL 1192083 (N.D. Ill. Apr. 10, 2012)..............23

*Rabbah v. Fed. Home Loan Mortg. Corp.*, No. 12-14599,
   2013 WL 153729 (E.D. Mich. Jan. 15, 2013)..................................................................25

*Sensations, Inc. v. City of Grand Rapids*, Nos. 06-cv-300, 06-cv-60
   2006 WL 5779504 (W.D. Mich. Oct. 23, 2006) *aff'd* 526 F.3d 291 (6th Cir. 2008)..........8

*Steele v. RadioShack Corp.*, No. 11-cv-14021,
   2012 WL 368329 (E.D. Mich. Feb. 3, 2012)....................................................................10

*Sterk v. Redbox Automated Retail, LLC*, 806 F. Supp. 2d 1059 (N.D. Ill. 2011)
   *rev'd on other grounds*, 672 F.3d 535 ........................................................................ 9-10

*Sterk v. Best Buy Stores, L.P.*, No. 11-cv-1894,
   2012 WL 5197901 (N.D. Ill. Oct. 17, 2012)....................................................................24

*Swift v. Zyga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011)....................................9

*Vinton v. CG's Prep Kitchen & Café*, No. 09-cv-707,
   2010 WL 748221 (W.D. Mich. Mar. 2, 2010)..................................................................20

*Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011)....................................... 22-23

*Zibbell v. Marquette Cnty. Res. Mgt.*, No. 12-cv-302,
   2013 WL 625062 (W.D. Mich. Feb. 20, 2013)................................................................17

## State Court Cases

*In re Acquisition of Land for Va. Park Neighborhood Development Program,*
   *Michigan A-4-2*, 283 N.W. 2d 771 (Mich. App. 1979) ..............................................22, 23

*Jackson v. Goodman*, 244 N.W.2d423 (Mich. Ct. App. 1976)......................................................6

*Lagalo v. Allied Corp*., 592 N.W.2d 786 (Mich. Ct. App. 1999) ..................................................6

*Lincoln v. Fairfield-Nobel Co.*, 257 N.W.2d 148 (Mich. App. 1977) ...........................................6

*Mayer v. Auto-Owners Ins. Co.*, 338 N.W.2d 407 (Mich. App. 1983)..........................................6

*Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41 (2003)....................................................12

## United States Statutes

Fair Credit Reporting Act, 15 U.S.C. § 1681n...............................................................18

Video Privacy Protection Act, 18 U.S.C. § 2710...................................2, 12, 13, 15, 16

## State Statutes

M.C.L. § 14.321(2) ..................................................................................................20 n.9

M.C.L. § 445.257(1) ................................................................................................20 n.9

M.C.L. § 445.964(2) ................................................................................................20 n.9

Video Rental Privacy Act, M.C.L. §§ 445.1711–15........................................... *passim*

## Federal and Local Rules

Fed. R. Civ. P. 12 ..........................................................................................................8

## Legislative History Materials

*Privacy: Sales, Rentals of Videos, etc*., House Legislative Analysis Section,
    H.B. No. 5331 (Jan. 20, 1989) ................................................................. 1, 2-3

Video and Library Privacy Protection Act, S. 2361, 100th Cong. (1988)....................2

S. Rep. No. 100-599 (1988) reprinted in 1988 U.S.C.C.A.N. 4342 ......................13, 16

## Secondary Sources

Timothy Baughman, David G. Chardavoyne, Kenneth M. Mogill, Hon. Cynthia D. Stephens,
    Hon. William B. Murphy, John VandenHombergh, *Michigan Non-Standard Jury Instr.
    Civil § 32:10* ............................................................................................18

Expert Witness Report of Dr. Serge Egelman, Ph.D.,
    *In re Netflix Privacy Litig.*, No. 5:11-cv-00379-EJD,
    Dkt. No. 191-2, Ex. 2 (N.D. Cal. Oct. 31, 2012) ..........................................23

## STATEMENT OF ISSUES PRESENTED

Should the Court deny Defendant's Motion to Dismiss Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6) because Michigan's Video Rental Privacy Act confers privacy rights, the invasion of which are sufficient to confer both statutory and constitutional standing?

Plaintiff Answers: Yes.

Should the Court deny Defendant's Motion to Dismiss Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6) because Plaintiffs allege that Defendant's unlawful conduct caused them economic harm, thereby providing an additional basis for statutory and constitutional standing?

Plaintiff Answers: Yes.

Should the Court deny Defendant's motion to dismiss Plaintiffs' claims under the Video Rental Privacy Act because none of the Act's exceptions permit the alleged disclosures, and even if they did, Defendant cannot satisfy their requirements at the pleadings stage?

Plaintiff Answers: Yes.

Should the Court deny Defendant's motion to dismiss Plaintiffs' unjust enrichment claims under Rule 12(b)(6) because the claims are adequately pled?

Plaintiff Answers: Yes.

## <u>CONTROLLING AND MOST IMPORTANT AUTHORITY</u>

**ARGUMENT**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

*White v. U.S.*, 601 F.3d 545 (6th Cir. 2010).

Fed. R. Civ. P. 12.

**I.     Plaintiffs Allege Facts Demonstrating Redbox's Violation of the VRPA.**

Video Rental Privacy Act, M.C.L. §§ 445.1711–1715.

**A.     Redbox's Disclosures to Third Parties Violate the VRPA.**

*Guzman v. U.S. Dept. of Homeland Sec.*, 679 F. 3d 425 (6th Cir. 2012).

*Lincoln v. Fairfield-Nobel Co.*, 257 N.W.2d 148 (Mich. App. 1977).

**B.     Redbox Hasn't Shown That It Obtained Consent From Any Customer So As To Satisfy The VRPA's "Written Permission" Exception.**

*Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999).

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012).

*Specht v. Netscape Commc'ns. Corp.*, 306 F.3d 17 (2d Cir. 2002).

*Song v. City of Elyria*, 985 F.2d 840 (6th Cir. 1993).

*Steele v. RadioShack Corp.*, No. 11-cv-14021, 2012 WL 368329 (E.D. Mich. Feb. 3, 2012).

**C.     Redbox Can't Hide Behind The Federal Video Privacy Protection Act's "Ordinary Course of Business" Exception.**

*Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762 (6th Cir. 2005).

*In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012 WL 328960 (N.D. Cal. Aug. 10, 2012).

S. Rep. No. 100-599 (1988) reprinted in 1988 U.S.C.C.A.N. 4342.

Video Privacy Protection Act, 18 U.S.C. § 2710.

D.      **Plaintiffs' Claims Are Not Time Barred.**

*Cornelius v. Mich. Atty. Grievance Commn.*, No. 12-1449, 2013 WL 58772 (6th Cir. Jan. 7, 2013).

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

E.      **Plaintiffs Have Standing Under The VRPA Because Their Personal Viewing Information Was Disclosed Without Their Consent.**

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).

*Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009).

*Deacon v. Pandora Media, Inc.*, No. 11-cv-04674, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012).

*Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010).

*In re Carter*, 553 F.3d 979 (6th Cir. 2009).

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011).

*Kehoe v. Fidelity Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005).

*Kinder v. United Bancorp Inc.*, No. 11-cv-10440, 2012 WL 4490874 (E.D. Mich. Sept. 28, 2012).

*Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271 (6th Cir. 2006).

*Lipton v. Chattem, Inc.*, 11-cv-2952, 2012 WL 1192083 (N.D. Ill. Apr. 10, 2012).

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012).

Timothy Baughman, David G. Chardavoyne, Kenneth M. Mogill, Hon. Cynthia D. Stephens, Hon. William B. Murphy, John VendenHombergh, *Michigan Non-Standard Jury Instr. Civil § 32:10*.

II.     **Redbox's Attack On Plaintiffs' Unjust Enrichment Claim Ignores The Complaint's Plain Language.**

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007).

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012).

## PRELIMINARY STATEMENT

Defendant Redbox Automated Retail, LLC ("Redbox" or "Defendant") violates Michigan's Video Rental Privacy Act, M.C.L. §§ 445.1711–15 ("VRPA" or the "Act"), as a matter of routine policy and procedure. Its transgression: Redbox discloses detailed customer information—including first and last names, email addresses, movie rental and purchase histories, and debit and/or credit card information (collectively, their "Personal Viewing Information")—to third parties without permission. The VRPA prohibits companies from disclosing their customers' reading, listening, and video viewing records unless the customer consents in writing. *See Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331 (Jan. 20, 1989) (attached hereto as Exhibit A). Disregarding the existence of the Act, Redbox routinely shares its customers' Personal Viewing Information without consent to do so. Under the Act, each violation subjects Redbox to statutory damages of $5,000.00, or actual damages, whichever is greater. M.C.L. § 445.1715.

Plaintiffs Michelle Cain and Radha Sampat ("Plaintiffs") are former Redbox customers whose Personal Viewing Information Redbox disclosed to third parties without their consent. Rather than bringing their business in line with the VRPA, Redbox attacks Plaintiffs' claims with a handful of arguments, none of which require dismissal. Redbox claims that: (1) the disclosures at issue fall outside the VRPA because they were supposedly made by a Redbox "agent," (2) Plaintiffs consented to the disclosures, (3) the disclosures are allowed under the federal Video Privacy Protection Act's "ordinary course of business" exception, (4) Plaintiffs haven't suffered damages as supposedly required, and (5) the unjust enrichment claim fails because, according to Redbox, Plaintiffs supposedly received the full benefit of their video rental agreements.

Each of Redbox's arguments lack merit. Redbox improperly disclosed Plaintiffs'

Personal Viewing Information to unrelated third party companies, violated the Act, invaded their privacy, and caused them to overpay for movie rentals that they never would have rented in the first place had they known that their rental habits would be disclosed. Further, Plaintiffs allege that they never consented to the disclosure of their Personal Viewing Information, and such allegations control at this stage of the case—particularly given the incompleteness and doubt surrounding Redbox's so-called "evidence." Nor can Redbox seek refuge in the federal VPPA's "ordinary course of business" exception, which specifically allows statutes like Michigan's VRPA to afford even greater protections to consumers. Finally, the Complaint specifically details how Redbox has unjustly enriched itself through its unlawful disclosures and any suggestion to the contrary ignores the Plaintiffs' allegations.

For all these reasons, as discussed more fully below, Redbox's Motion to Dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

### *Michigan's Video Rental Privacy Act ("VRPA")*

Michigan's VRPA was approved in the wake of federal passage of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), which Congress voted into law in 1988 granting substantial privacy protections to consumers' video purchase and rental histories. The original draft of the federal VPPA was quite broad, protecting video and audio recordings as well as library rentals. *See* Video and Library Privacy Protection Act, S. 2361, 100th Cong. (1988). In its final form, however, its protections were scaled down to video rental and purchase records. *See* 18 U.S.C. § 2710.

As contemplated under the VPPA, the Michigan state legislature went a step further and passed the VRPA to more broadly "preserve personal privacy with respect to the purchase,

rental, or borrowing of written materials, sound recordings, and video recordings." (Ex. A.) The VRPA "recognize[s] [that] a person's choice in reading, music, and video entertainment is a private matter, and not a fit subject for consideration by gossipy publications, employers, clubs, or anyone else, for that matter." (*Id*.) To safeguard consumer privacy, the Act provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . *shall not disclose* to any person, other than the customer, *a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.*

M.C.L. § 445.1712 (emphasis added). Any customer whose information is disclosed in violation of the VRPA "may bring a civil action against the person and may recover both of the following: (a) Actual damages, including damages for emotional distress, or $5,000.00, whichever is greater; [plus] (b) Costs and reasonable attorney fees." M.C.L. § 445.1715. Though the original draft of the VRPA did not provide for a private right of action, the civil action provision was added to "offer more in the way of recourse for injured parties." (*See* Ex. A.)

### *Redbox Discloses Its Michigan Customers' Private Viewing Information Without Permission*

Redbox rents and sells video materials, including movies on DVDs and Blu-ray discs, to consumers through automated, self-service kiosks located at retail outlets throughout the country. (Class Action Complaint, Dkt. No. 1 ["Compl."], ¶ 17.) Each kiosk—basically a vending machine for DVDs—utilizes an interactive touch screen that customers use to browse through, select, and rent/purchase movie titles, a credit/debit card reader, a robotic disc array system (used to vend movie titles), and a web-linked electronic communications system (used to store and transmit consumers' personal information, including Personal Viewing Information). (*Id*.) Redbox charges consumers between $1.00 and $2.00 per day for each movie rental and maintains a digital record system that details the rental histories of every customer. (*Id*. ¶ 19.)

At no point during the rental process does Redbox seek or obtain the consent of a

customer to share or otherwise disclose his or her Personal Viewing Information to third parties for any purpose. (*Id.* ¶ 20.) In fact, just the opposite is true. Far from seeking its customers' permission to disclose their Personal Viewing Information, Redbox actively misleads its customers by stating on its website that "Redbox *never shares your information . . .* [with] third parties." (*Id.* ¶ 24.) (emphasis added.) Nonetheless, and unbeknownst to its customers, Redbox discloses its customers' Personal Viewing Information—including their first and last names, email addresses, and, most importantly, movie rental histories—to unrelated third parties, including a so-called "service support" vendor, and other companies for analytics, promotional, and other self-serving purposes. (*Id.* ¶¶ 21, 22, 25.)

***Plaintiffs Never Gave Redbox Permission To Disclose Their Personal Viewing Information***

Plaintiffs Cain and Sampat are Michigan residents and former Redbox customers who rented movies from Redbox kiosks in February 2011 and November 2010, respectively. (*Id.* ¶¶ 27, 35.) Neither Cain nor Sampat ever agreed to allow Redbox to disclose their Personal Viewing Information to any third party whatsoever. (*Id.* ¶¶ 30, 33, 38, 41.) Further, Redbox never informed either Plaintiff by written notice or otherwise that they may remove their name at any time from its third party disclosures. (*Id.* ¶¶ 31, 32, 39, 40.) Nevertheless, Redbox disclosed—and continues to this day to disclose—Cain's and Sampat's Personal Viewing Information to third parties, including a third party "service support" vendor and other third parties providing analytics and/or promotional services. (*Id.* ¶¶ 34, 42.)

## ARGUMENT

On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *White v. U.S.,* 601 F.3d 545, 551 (6th Cir. 2010). A complaint survives dismissal where it allows the Court "to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## I.      Plaintiffs Allege Facts Demonstrating Redbox's Violation Of The VRPA.

To state a claim under the VRPA, the Plaintiffs must plead that: (1) Redbox was "engaged in the business of selling at retail, renting, or lending . . . video recordings," (2) Redbox disclosed "a record or information concerning the . . . rental" of their video recordings, (3) such disclosures were made to "any person, other than the customer," and (4) such disclosures "indicat[ed] the identity of the customer." M.C.L. § 445.1712. Redbox first argues that the alleged disclosures are not actionable because they were supposedly made to Redbox's agents. Failing that, Redbox contends that Plaintiffs consented to the disclosures, that the disclosures are permitted by the federal VPPA's "ordinary course of business" exception, and that Plaintiffs failed to allege that they suffered actual damages (as Redbox presumes is required under the statute). Each of these arguments falls apart.

### A.      Redbox's Disclosures To Third Parties Violate The VRPA.

Redbox first argues that Plaintiffs don't allege that their Personal Viewing Information was disclosed "publicly," and instead, they merely plead "disclosures among and between Redbox and service providers with whom it contracts to provide services for its own customers." (Def. Mot. at 4.) According to Redbox, because the statute applies to disclosures made by "a person, or an employee or agent of the person," any disclosures made to such employees or agents, as the Complaint supposedly alleges, are not actionable. (*Id*. at 5.) This argument is both unsupported and unsupportable.

First, Redbox inappropriately asks the Court to presume, without evidence, that the "service providers with whom it contracts to provide services for its own customers" are automatically Redbox's "agents" under the VRPA. However, the existence and scope of a

5

disputed agency relationship is inappropriate for resolution on a motion to dismiss. *See Lincoln v. Fairfield-Nobel Co.*, 257 N.W.2d 148, 150 (Mich. Ct. App. 1977) ("the existence of a principal-agent relationship is generally for the jury to decide.") (citing *Jackson v. Goodman*, 244 N.W.2d 423 (Mich. Ct. App. 1976)). And although it is true that under Michigan law an agency relationship can be created by contract,[1] Redbox fails to present *any* contract or agreement with its supposed service providers.[2] Thus, whether an agency relationship exists here cannot be decided at the pleadings stage. *Lincoln*, 257 N.W.2d at 151.

In any event, Redbox ignores that the VRPA doesn't create a broad exception that would allow for the disclosure of covered materials to *every* agent of a company—rather, the Act prohibits unlawful disclosures by "a person, or an employee or agent of the person, *engaged in the business of selling at retail,* renting, or lending books or other written materials, sound recordings, or video recordings…." M.C.L. § 445.1712 (emphasis added). Redbox offers nothing to show the supposed agents with whom it shared its customers' private information were "engaged in the business of selling at retail" or renting videos, or that they performed functions integral to Redbox's ability to carry out such business activity. This is because it can't—the Complaint plainly alleges that the disclosures were made to unrelated third parties, including analytics providers and for promotional purposes. (Compl. ¶ 21, 22, 25.)

Finally, under Redbox's reading of the VRPA, companies would be allowed to freely disclose every customer's personal information simply by designating the recipient as an

---

[1]     *See Bergin Fin., Inc. v. First Am. Title Co.*, 397 F. App'x 119, 127 (6th Cir. 2010) ("written agency agreements govern the scope of an agent's authority"); *see also Mayer v. Auto-Owners Ins. Co.*, 338 N.W.2d 407, 409 (Mich. App. 1983) (the agreement defines the scope of the agent's undertaking) (citing 2 Restatement 2d, Agency, § 376, comment a, p. 173).

[2]     Redbox's failure to provide such contracts gives rise to an adverse inference that the contracts between Redbox and its service providers don't create any relevant agency relationship. *Lagalo v. Allied Corp.*, 592 N.W.2d 786, 789 (Mich. Ct. App. 1999).

employee or agent of the company—irrespective of the purpose of the agency relationship. *See Guzman v. U.S. Dept. of Homeland Sec.*, 679 F.3d 425, 432 (6th Cir. 2012) ("Interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). The Act already delineates the exceptions to its provisions, and the Court should resist Redbox's invitation to add another one to save it from liability. *See* M.C.L. 445.1713; *see also TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

Accordingly, Redbox's insistence that it provided the information to its "agents," without more, is insufficient to move the disclosures beyond the VRPA's purview.

**B.  Redbox Hasn't Shown That It Obtained Consent From Any Customer So As To Satisfy The VRPA's "Written Permission" Exception.**

Redbox next insists that its disclosures were allowed under the VRPA's "written permission" exception. *See* M.C.L. § 445.1713(a). According to Redbox, Plaintiffs consented to the disclosure of their Personal Viewing Information when they agreed to Redbox's Privacy Policy, which Redbox claims was incorporated into its Terms of Use. The problem for Redbox is that the Court cannot consider its supposed Terms of Use or Privacy Policy—those papers contradict the allegations of the Complaint and both their authenticity and applicability are in dispute. And even if the Terms of Use and Privacy Policy could be considered at this point *and* were found to govern, neither document even addresses the disclosures challenged in this litigation. As a result, Redbox's "written permission" defense falls flat.

**1.  The Court May Not Properly Consider The Documents Redbox Attaches To Its Motion.**

Redbox's argument—that the Plaintiffs agreed to the disclosure of their Personal

Viewing Information—relies entirely on five extrinsic materials: (1) testimony from Redbox employee Eric Hoersten about the rental transaction process, (2 & 3) two screenshots apparently taken from a kiosk at some point in 2010 and 2011, and the (4) Terms of Use and (5) Privacy Policy that Redbox claims Plaintiffs agreed to.

Consideration of these materials, however, would improperly convert the motion into one for summary judgment. Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). A document that is not expressly incorporated by reference or attached to a complaint may still be considered part of the pleadings if it is "referred" to in the complaint and "central" to the plaintiff's claim. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also Sensations, Inc. v. City of Grand Rapids*, Nos. 06-cv-300, 06-cv-60, 2006 WL 5779504, at *3 (W.D. Mich. Oct. 23, 2006) *aff'd* 526 F.3d 291 (6th Cir. 2008) ("items of unquestioned authenticity that are referred to in the challenged pleading and are integral to the case may be considered by the court without conversion of the motion into one for summary judgment."). Redbox's documents fail this test. The proffered Terms of Use, Privacy Policy, and kiosk screenshots were not attached to or incorporated in the Complaint, and Redbox offers no explanation as to why any of these materials should be considered at the pleadings stage. The Complaint also makes no mention of the Privacy Policy or kiosk rental screenshots. And the only reference to the Terms of Use is to specifically allege that it was never presented to the Plaintiffs at any time during the rental transaction. (Compl. ¶ 60.) As such, Plaintiffs' claims exist independently of—and in no way arise under—the proffered materials. Thus, the contents of these documents cannot be considered central to Plaintiffs' claims.

Redbox's authorities are of no help. Two of its cases don't even address evidence

8

submitted in support of a Rule 12 motion. *See Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) (outside evidence considered in the context of a motion to compel arbitration); *see also Fteja v. Facebook*, *Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y 2012) (extrinsic material considered in the context of a motion to transfer under 28 U.S.C. § 1404(a)). In the third case, the court considered three outside documents but only because the plaintiff expressly relied on them in her complaint. *See Druyan v. Jagger*, 508 F. Supp. 2d 228, 236 (S.D.N.Y. 2007). Plaintiffs neither refer to nor rely on the Terms of Use, Privacy Policy, or screenshots when stating their claims. Just the opposite is true: they allege such terms were never presented to them.

Accordingly, the authenticity and applicability of these materials is disputed and the Court may not properly consider them at this time.

> ### 2.      Plaintiffs' Express Allegations That They Didn't Consent To The Terms Of Use Control At This Stage.

Consideration of Redbox's extrinsic materials is also prohibited because they contradict Plaintiffs' allegations. The court may not consider items that "rebut, challenge, or contradict anything in the plaintiffs' complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993); *see Dilorenzo v. BAC Home Loans Servicing, LP*, No. 12-cv-12116, 2012 WL 5328666, at *1 (E.D. Mich. Oct. 26, 2012) (on a motion to dismiss, "the Court cannot consider items that would refute the factual allegations"); *see also Mediacom S.E. LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396 (6th Cir. 2012) (reversing trial court's dismissal when it considered the settlement agreement that directly conflicted with the allegations made in the complaint).

This rule should come as no surprise to Redbox. In a similar case pending in the Northern District of Illinois over its alleged violation of the federal VPPA, Redbox moved to dismiss arguing that it was allowed to use the plaintiffs' video rental histories for marketing and advertising purposes because its "Terms of Service and Privacy Policy provided a method for

customers to prohibit disclosure." *Sterk v. Redbox Automated Retail, LLC*, 806 F. Supp. 2d 1059, 1069 (N.D. Ill. 2011) *rev'd on other grounds,* 672 F.3d 535. The court rejected this defense because it contradicted the pleadings. *See id.* (finding that plaintiff expressly alleged that "Redbox's policy was not identified or made available to him and thus that he was not given an opportunity, in a clear and conspicuous manner, to prohibit disclosure."). Accordingly, the court concluded, it "cannot resolve this conflict in the context of a motion to dismiss." *Id.*

Again, and like the plaintiff in *Sterk*, Plaintiffs here specifically plead that Redbox's Terms of Use—which Redbox claims incorporated its Privacy Policy—was *never* presented, displayed, or even referred to, during their kiosk rental transactions. (Compl. ¶ 60.) Plaintiffs further allege that they never consented, agreed, or gave permission to Redbox to disclose their Personal Viewing Information to anybody at any time, (*id*. ¶¶ 30–31, 33, 38–39, 41), and that they were unable to prevent the disclosures at issue. (*Id*. ¶¶ 32, 40.) Try as it may, Redbox cannot obtain dismissal simply by disputing the allegations. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (the court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true.").[3] Put simply, Plaintiffs' allegations that they never received notice of, or consented to, Redbox's Terms of Use, or any other document that would allow disclosure of their Personal Viewing Information (such as the Privacy Policy), control on the pleadings.[4]

---

[3]     The issue of consent shouldn't even be resolved on a motion for summary judgment. *See Steele v. RadioShack Corp.*, No. 11-cv-14021, 2012 WL 368329, at *3 (E.D. Mich. Feb. 3, 2012) (denying motion for summary judgment where "[t]he complaint and Plaintiff's response to the motion suggest there are questions of fact for a jury to decide, including, but not limited to, the scope of consent given by Plaintiff to Defendant" and whether defendant complied with its own Privacy Policy).

[4]     It's worth noting that Redbox's documents actually support Plaintiffs' allegations that they never agreed to any document that would allow the disclosure of their Personal Viewing Information. According to Mr. Hoersten, the Privacy Policy (which supposedly describes the

### 3. In Any Event, Redbox's Privacy Policy Doesn't Even Address The Disclosures At Issue.

Even if the Court could consider the Privacy Policy, Redbox's "written permission" defense still fails because the Privacy Policy doesn't cover the disclosure of video rental histories. In support, Redbox cherry-picks a single paragraph from its Privacy Policy that states:

> Companies may from time to time be engaged by Redbox to perform a variety of functions, such as fulfilling orders, assisting with promotions, providing technical services for our web site, etc. These companies may have access to personal information if needed to perform such functions. However, these companies may only use such personal information for the purpose of performing that function and may not use it for any other purpose.

(Def. Mot. at 7.) Pointing to this paragraph, Redbox baldly concludes that it was allowed to disclose Plaintiffs' Personal Viewing Information "in the manner that Redbox told them it would before they completed their transaction." (*Id*.) This argument fails for at least three reasons.

First, the cited paragraph doesn't even mention the possibility that a customer's *Personal Viewing Information* could be disclosed. (*See* Dkt. 10-2 at 9.) Instead, it merely states that certain companies may have access to a customer's "personal information," which is described elsewhere in the Privacy Policy as "first and last names, addresses, email addresses, and telephone numbers." *Id*. Because Redbox's Privacy Policy omits that Redbox discloses information identifying its customers as having rented specific video materials—the very information the VRPA was enacted to protect, M.C.L. § 445.1712—Redbox cannot rely on the

---

disclosures at issue) was not available at the kiosk, and thus, was not accessible or available to Plaintiffs—or any other Redbox customer—at any point during the rental transaction. Instead, the Privacy Policy was only available on Redbox's website. (Dkt. No. 10-2 at ¶ 4.) Because the Privacy Policy was not presented to Plaintiffs at the kiosks, Redbox cannot enforce it. *See Specht v. Netscape Commc'ns. Corp.*, 306 F.3d 17, 32–33 (2d Cir. 2002) (finding a contract provision that a user would not encounter until he had scrolled down multiple screens was not enforceable because "a reference to the existence of license terms on a [different] screen is not sufficient to place consumers on inquiry or constructive notice of those terms.").

Privacy Policy to claim it obtained written permission from customers.[5]

Second, even if "personal information" included a customer's movie rental records, the alleged disclosures still fall outside the proffered paragraph. Indeed, Redbox's sharing of Plaintiffs' Personal Viewing Information had nothing to do with "fulfilling orders, assisting with promotions, or providing technical services for [its] website."

Third, the Privacy Policy states that, "Redbox does not sell, transfer or disclose personal information to third parties." (Dkt. No. 10-2 at 9.) This affirmation flatly contradicts the paragraph cited by Redbox (at least insofar as Redbox reads it), indicating that, at best, the Privacy Policy is ambiguous on this issue. *See Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 61 (Mich. 2003) ("longstanding principles of contract law require that the ambiguous provision be construed against the drafter.").[6] Accordingly, even if the Court could consider the Privacy Policy, if anything, it reveals that Redbox failed to unambiguously obtain customer consent to share their personal video rental histories.

## C.   Redbox Can't Hide Behind The Federal Video Privacy Protection Act's "Ordinary Course of Business" Exception.

Redbox next argues that its disclosures are exempted from the Michigan VRPA because they are permissible under the federal VPPA's "ordinary course of business" exception. (Def. Mot. at 8.) It is true that the disclosure of personally identifiable movie rental records disclosed for the purposes of "debt collection activities, order fulfillment, request processing, and the transfer of ownership" doesn't violate the federal VPPA. *See* 18 U.S.C. § 2710(a)(2), (b)(2)(E).

---

[5]   As will be explained at the appropriate time, that Redbox subjects each of its customers to the same contract terms with respect to its ability to share their personal information raises common issues of law and fact that render this case a textbook class action.

[6]   In any event, the Privacy Policy at issue—titled "Redbox Automated Retail, LLC *Internet* Privacy Policy" (Dkt. 10-2 at 9) (emphasis added)—doesn't even apply to kiosk rental transactions. Rather, its title suggests that its scope is strictly limited to internet usage.

Redbox claims that Michigan's VRPA incorporates the federal VPPA through the phrase "Except as provided in section 3 *or as otherwise provided by law*," *see* M.C.L. § 445.1712 (emphasis added), which Redbox asks the Court to conclude "can *only* be interpreted to include the federal VPPA." (Def. Mot. at 8.)

As explained below, Redbox badly misreads both laws. Redbox's interpretation ignores that the VPPA specifically provided a baseline level of consumer protection upon which the states were free to build (which Michigan did) and, if accepted, would render several provisions of the VRPA superfluous. Further, whether Redbox's disclosures were made in the "ordinary course of business" is a factual question that cannot be resolved at the pleadings stage.

### 1.    The Federal VPPA's "Ordinary Course of Business" Exception Does Not Override Michigan's VRPA.

First, the federal VPPA expressly states that it "preempt[s] only the provisions of State or local law that require disclosure prohibited by this section." 18 U.S.C. § 2710(f); *see* S. Rep. No. 100-599, at 15 (1988) reprinted in 1988 U.S.C.C.A.N. 4342 ("Section 2710(f) explicitly preserves the rights of consumers to seek redress under state laws that may provide a greater degree of protection than is afforded by the federal statute. The bill does not preempt state laws that provide greater privacy protection for video users."). As such, the federal VPPA does not expand the exceptions that are available under related state laws; but rather, it provides a minimum level of privacy to consumers throughout the country.

Michigan's VRPA is one state law that provides protections that go beyond those afforded by the federal VPPA. The VRPA, for example, covers "books and other written materials" and "sound recordings" in addition to movie and videos, and it doubles the penalty provided under federal law for an unlawful disclosure to $5,000. The VRPA also narrows the instances in which the disclosure of movie rental records may be made. Thus, the less-protective

13

federal VPPA doesn't trump or override the more-generous Michigan VRPA.

Redbox's proposed reading also ignores the VRPA's statutory language, which indicates that the drafters never intended to create a broad "ordinary course of business" exception. Although the VRPA accounts for the business needs that the VPPA's "ordinary course of business" exception was meant to address—such as disclosing information to third parties for debt collection and marketing purposes—the VRPA goes further and protects Michigan consumers' privacy by limiting the instances in which such disclosures are permitted. For example, while the federal VPPA allows a company to disclose protected information for "debt collection" purposes, the Michigan VRPA limits such disclosures:

> [t]o the extent reasonably necessary to collect payment for the materials or the rental of the materials, if the customer has received written notice that the payment is due and has failed to pay or arrange for payment within a reasonable time after notice.

M.C.L. § 445.1713(c). Similarly, rather than exempting disclosures for "order fulfillment" and "request processing" purposes—which, according to Redbox, simply means that disclosures to third parties are permitted for the purposes of "marketing to their customers" (Def. Mot. at 9)—the Michigan VRPA only allows such disclosures:

> [i]f the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer. The person disclosing the information shall inform the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information.

M.C.L. § 445.1713(d). These more narrow exceptions demonstrate that the drafters of the VRPA chose not to adopt the broader language of the federal VPPA's "ordinary course of business" exception and opted instead to provide Michigan residents with a greater degree of protection. As such, accepting Redbox's reading would render the Michigan VRPA's more narrow exceptions meaningless. *See Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762,

769 (6th Cir. 2005) ("Courts are to make every effort to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless.").[7]

Predictably, none of Redbox's authorities support its proposition that the phrase "as otherwise provided by law" incorporates the VPPA's exceptions at the expense of the VRPA's exceptions. Rather, the specific laws at issue in Redbox's cases each referenced, superseded, or were consistent with certain rules, procedures, or statutes. *See U.S. v. Ntreh*, 279 F.3d 255, 259 (3d Cir. 2002) (holding in a limited circumstance that the phrase "as otherwise provided by law" created an additional exception to a federal rule where it "appeared" to reference a certain federal law); *Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 852 (7th Cir. 2012) (holding that a *later-enacted* federal rule superseded a *conflicting* statutory provision); *Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Reinsurance Agreements F96/2922/00 and No. F97/2992/00 v. Warrantech Corp.*, 461 F.3d 568, 576 (5th Cir. 2006) (holding that the procedure for removal of cases from state courts under 9 U.S.C. § 205 incorporates certain non-conflicting procedures from 28 U.S.C. § 1447). Here, the Michigan VRPA doesn't reference the federal VPPA, was not superseded by the federal VPPA, and conflicts with the broad exceptions allowed by the federal VPPA. Therefore, Redbox's reliance upon such cases is inapposite. Put simply, Michigan's VRPA doesn't incorporate the federal VPPA's "ordinary course of business" exception.

---

[7]     If the Michigan legislature had intended to incorporate the federal VPPA's "ordinary course of business" exception, it would have included language to that effect. As Redbox is quick to point out, the Michigan VRPA was enacted *after* the VPPA. (Def. Mot. at 3, n.1.) Furthermore, adopting Redbox's view—that the "otherwise provided by law" language incorporates *all* of the VPPA's exceptions—would render several of the VRPA's exceptions duplicative and superfluous. *Compare* M.C.L. § 445.1713(a) *and* 18 U.S.C. § 2710(b)(2)(B) (exception for disclosures with permission); M.C.L §§ 445.1713(b), (e) *and* 18 U.S.C. § 2710(b)(2)(C) (allowing disclosures pursuant to warrant, subpoena, or court order). Thus, Redbox's interpretation must be denied. *See Broadcast Music*, 396 F.3d at 769.

      **2.**      **In Any Case, Redbox's "Ordinary Course of Business" Defense Cannot Be Resolved On A Motion To Dismiss.**

In any event, whether Redbox's disclosures were made in the "ordinary course of business" is a fact-based question. The term "ordinary course of business" is "narrowly defined" in the statute to mean "only debt collection activities, order fulfillment, request processing, and transfer of ownership." 18 U.S.C. § 2710(a)(2); *see also* S. Rep. No. 100-599, at 14 (noting that the "activities that constitute 'ordinary course of business' are narrowly defined so as to avoid possibility that a subsequent interpretation would undercut the purpose of [the VPPA], as occurred with the phrase 'routine use' in the 1974 Privacy Act."). "Order fulfillment" and "request processing" are defined in the legislative history as the use, by a videotape service provider, of "mailing houses, warehouses, computer services, and similar companies for marketing to their customers." S. Rep. No. 100-599, at 14.

None of the disclosures at issue were made for order fulfillment or request processing—the Complaint alleges they were made for service support, promotional, and analytics purposes. (Compl. ¶¶ 22, 25.) To the extent that Redbox challenges these allegations, it raises a factual question that is inappropriate for resolution on a motion to dismiss. *See In re Hulu Priv. Litig.*, No. 11-cv-03764, 2012 WL 3282960, at *7 (N.D. Cal. Aug. 10, 2012) (applicability of the VPPA's "ordinary course of business" exception is a "factual question [] that cannot be resolved in a motion to dismiss.").[8]

      **D.**      **Plaintiffs' Claims Are Not Time Barred.**

As a fallback argument, Redbox suggests that Plaintiffs' claims are time-barred because

---

[8]      Even if Redbox's argument could be considered at this stage, Redbox fails to explain why disclosures of Personal Viewing Information for analytics and promotional purposes should be considered to be within its "ordinary course of business." Instead, Redbox only argues that the "use of a vendor to provide *customer support* . . . falls within this definition as a core ordinary course of business activity, and is therefore expressly permitted." (Def. Mot. at 9.)

16

Redbox's Terms of Use supposedly required Plaintiffs to file their action "within one (1) year after such claims or cause of action arose." (Def. Mot. at 9.) This is not true.

First, as explained repeatedly above, Plaintiffs allege that they never agreed to Redbox's Terms of Use. (Compl. ¶ 60.) Such allegations control at this stage and Redbox cannot avoid this lawsuit on such grounds.

Second, even if the Terms of Use were enforceable at this stage, the supposed one-year limitations period is inapplicable because Plaintiffs allege that Redbox's violations are ongoing and that Redbox continues to disclose their Personal Viewing Information "to this day." (*See id*. ¶¶ 22, 34, 42, 54.) When a violation of law is continuing in nature, the limitations period does not begin to run until the wrongful conduct is finished. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982); *see also Cornelius v. Mich. Atty. Grievance Commn.*, No. 12-1449, 2013 WL 58772 (6th Cir. 2013) (a continuing violation can occur when a defendant's past unlawful conduct continues into the present); *Zibbell v. Marquette Cnty. Res. Mgt.*, No. 12-cv-302, 2013 WL 625062, at *11 (W.D. Mich. Feb. 20, 2013) (when a continuing violation of the law is found, a plaintiff is entitled to have the court take into consideration all relevant actions taken pursuant to the defendant's wrongful policy or conduct, including those that would otherwise be time-barred by the statute of limitation).

Even if Redbox could overcome Plaintiffs' allegations that they were never presented with the Terms of Use, it can't invoke its one-year limitation because its violations are ongoing.

**E.    Plaintiffs Have Standing Under The VRPA Because Their Personal Viewing Information Was Disclosed Without Their Consent.**

Redbox's final argument is that the Plaintiffs lack statutory and Article III standing. Redbox asserts that showing injury here requires Plaintiffs to plead actual damages, which they supposedly fail to do. (Def. Mot. at 10.) The problem for Redbox is that actual damages are not

required. Rather, the VRPA allows for statutory damages to any "customer identified in a record or other information that is disclosed in violation of [the] act," M.C.L. § 445.1715, and Plaintiffs plead an invasion of privacy sufficient to establish injury in fact. Moreover, Plaintiffs allege economic harm in the form of overpaying for their movie rentals.

### 1.   The VRPA Does Not Require Plaintiffs To Plead Actual Damages.

Redbox's argument first ignores that the VRPA doesn't have an actual damages requirement. Rather, the Act provides:

> Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act. The customer may bring a civil action against the person and may recover both of the following . . . (a) Actual damages, including damages for emotional distress, *or $5,000.00, whichever is greater* [plus] (b) Costs and reasonable attorney fees.

M.C.L. § 445.1715 (emphasis added); *see also* Timothy Baughman, David G. Chardavoyne, Kenneth M. Mogill, Hon. Cynthia D. Stephens, Hon. William B. Murphy, John VandenHombergh, *Michigan Non-Standard Jury Instr. Civil § 32:10* (attached as Exhibit B) ("These instructions are patterned on MCLA §§ 445.1715 (civil action for damages), 445.1711 (definitions), and 445.1713 (defenses). A plaintiff who successfully pursues a civil action under the Preservation of Personal Privacy Act is entitled to actual damages, including damages for emotional distress, or $5,000, whichever amount is greater. ***Thus, a plaintiff can recover even if actual damages were not established*.**") (emphasis added).

Faced with similar language under the Fair Credit Reporting Act, 15 U.S.C. § 1681n, the Sixth Circuit has explained that "Because 'actual damages' represent an *alternative* form of relief and because the statute permits a recovery when there are no identifiable or measurable actual damages, this subsection implies that a claimant need not suffer (or allege) consequential damages to file a claim." *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705–06 (6th Cir.

2009), *cert. denied* 130 S. Ct. 2379 (2010). The Honorable Judge Hood recently found the same with respect to the Electronic Funds Transfer Act. *See Kinder v. United Bancorp Inc.,* No. 11-cv-10440, 2012 WL 4490874, at *2 (E.D. Mich. Sept. 28, 2012) (Where a statute "allow[s] consumers to recover actual damages, *if any,* [and] statutory damages . . . [t]he statute allows recovery even when there are no actual damages.") (emphasis in original).

Courts routinely reject arguments that actual damages are required when statutory damages are provided as an alternative, especially in consumer privacy cases. *See*, *e.g.*, *Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271, 275–76 (6th Cir. 2006) (Cable Act does not require actual damages); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) (Video Privacy Protection Act allows "$2,500 in 'liquidated damages,' without the need to prove 'actual damages,'" on a claim of unlawful disclosure); *Kehoe v. Fidelity Fed. Bank & Trust*, 421 F.3d 1209, 1216 (11th Cir. 2005) (stating that the Driver's Privacy Protection Act "does not require actual damages as a condition precedent to awarding liquidated damages").

Not surprisingly, the only court to have interpreted the VRPA refused to find any actual damages requirement. *See Deacon v. Pandora Media, Inc.*, No. 11-cv-04674, 2012 WL 4497796, at *4 (N.D. Cal. Sept. 28, 2012) (explaining that the VRPA "does not explicitly impose an actual injury requirement. Rather, the statute's civil remedy provision allows for recovery based on a showing of actual damages *or* statutory damages.") (emphasis in original). Redbox attacks *Deacon* in a footnote, claiming that it is dicta and that it conflicts with the rulings of courts interpreting other privacy statutes. (Def. Mot. at 11, n.6.) Redbox is wrong. Although the Court in *Doe v. Chao*, 540 U.S. 614 (2004) found that the Privacy Act of 1974 required a showing of actual damages, that statute provides for "actual damages sustained by the individual . . . but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id*. at 619. As the

*Doe* Court held, such language does not present statutory damages as an alternative since "a person entitled to recovery" is limited by those who suffered "actual damages." *Id.* at 620–21. The VRPA contains no analogous language.

Redbox's other cases offer it even less help. In *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009), the court found that statutory damages under the Stored Communications Act were only available upon a showing of actual damages because the act's language mirrored that in *Chao. Id.* at 205. The Fourth Circuit was careful to explain that if Congress wanted to provide free-standing statutory damages, it "could have written a simpler, unambiguous statute," stating that "the United States shall be liable to the individual in an amount equal to the sum of (A) whichever is greater: actual damages sustained by the individual as a result of the refusal or failure, or $1,000"—language basically identical to the VRPA. *Id.* at 205 (distinguishing the Wiretap Act and Driver's Privacy Protection Act on such grounds).

To be sure, the only case from any Michigan Court that Redbox discusses—*Vinton v. CG's Prep Kitchen & Cafe*, No. 09-cv-707, 2010 WL 748221 (W.D. Mich. Mar. 2, 2010)—is both unreported and off-point. The statute involved in that case, the Michigan Consumer Protection Act, specifically limits recovery to a person "who suffers a loss as a result of violation of this Act." M.C.L. § 445.911(2).[9] The VRPA contains no similar loss requirement, as the *Deacon* Court correctly explained. *See Deacon*, 2012 WL 4497796, at *4.[10]

---

[9]     Other statutes demonstrate the Michigan legislature's ability to impose an actual damages requirement when it wants to. *See* M.C.L. § 445.257(1) (limiting claim to a person "who suffers injury, loss, or damage"); M.C.L. § 445.964(2) (limiting claim to "[a] person who suffers loss as a result of a violation"); M.C.L. § 14.321(2) (same).

[10]     Redbox's reliance on *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090 (N.D. Cal. 2011), is also misplaced. The plaintiffs in *Cohen* sought relief for the misappropriation of their names and likenesses without demonstrating actual harm. *Id.* at **5–6. Unlike the VRPA, however, "[r]esulting injury is the *sine qua non* of a cause of action for misappropriation of name," and "statutory minimum[s]" were provided for instances where victims suffered from mental harm

20

Redbox's attempt to read the VRPA as requiring actual damages should be rejected.

> **2.      Redbox's Article III Standing Argument Seriously Misunderstands The Instant Case And Controversy.**

Redbox next argues that Plaintiffs lack Article III standing because they don't allege that their Personal Viewing Information was disclosed "publicly," "used to their detriment or harm," or that they suffered actual damages. (Def. Mot. at 12.) While it is unclear what Redbox means by using the term "publicly," as discussed in Section I.A, Plaintiffs sufficiently allege that Redbox unlawfully disclosed their Personal Viewing Information to unrelated third parties. Nothing more is required to establish standing or injury.

Standing "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *In re Carter*, 553 F.3d 979, 989 (6th Cir. 2009) (emphasis in original) (internal quotation omitted); *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (violation of statutory right causes "a legal injury" sufficient to confer standing). In cases involving statutory rights, "the standing question . . . is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Here, the VRPA creates a right to privacy in movie purchase and rental records, and it grants a right of relief to any "customer identified in a record or other information that is disclosed in violation of this act." *See* M.C.L. §§ 445.1712, 15. Plaintiffs allege that Redbox violated their right to privacy in the movies that they rented, (*see* Compl. ¶¶ 2–3, 62, 64), and they have brought suit to exercise their right to relief. (*See id*. ¶¶ 4, 64; M.C.L. § 445.1715.) Thus, Plaintiffs have Article III standing to sue. *See Deacon*, 2012 WL 4497796, at *4 (violation of the VRPA confers Art. III standing); *see also Klimas*, 465 F.3d at 276 (violation of Cable

---

but incurred no commercial loss. *Id*. at *5.

Act's privacy provisions confer Art. III standing); *In re Carter*, 553 F.3d at 988 ("Congress no doubt has the right to create legal rights, and it generally has the authority to create a right of action whose only injury-in-fact involves the violation of that statutory right"); *cf. U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 (1991) ("Although disclosure of [individuals'] personal information constitutes only a *de minimis* invasion of privacy when the identities of the [individuals] are unknown, the invasion of privacy becomes significant when the personal information is linked to particular [individuals]").[11]

### 3. Plaintiffs Also Plead Economic Loss—Not That Doing So Was Required To Establish Either Statutory Or Article III Standing.

Though Redbox focuses only on allegations that its disclosure diluted the value of Plaintiffs' personal information,[12] Plaintiffs also allege that: (i) Redbox forced them to overpay for their movie rentals, and (ii) that they would never have rented movies from Redbox in the first place had they known Redbox would disclose their Personal Viewing Information.

Where a plaintiff alleges that he paid for a good or service and did not receive the full benefit of the bargain, the plaintiff alleges economic injury in the form of overpayment. *See*, *e.g.*, *In re Acquisition of Land for Va. Park Neighborhood Devel. Program, Mich. A-4-2*, 283 N.W. 2d 771, 773 (Mich. App. 1979); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (finding unjust enrichment where Plaintiff alleged she did not receive paid-for data security protections); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 628 (N.D. Cal. 2011) (the plaintiff overpaid and suffered economic loss because Defendant's "conduct caused him either to buy a product that he would not have bought, or to buy a product that was inferior, of lower

---

[11]     Redbox's attempt to analogize this case to "data breach" cases fails. Unlike the information that was accessed in those cases (such as credit card numbers), the Personal Viewing Information disclosed here is specifically protected by law.

[12]     Allegations that a defendant disclosed valuable personal information alone can confer Article III standing. *See Claridge v. RockYou*, 785 F. Supp. 2d 855, 861 (N.D. Cal. 2011).

22

quality and less value, than that offered"); *In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1163 (C.D. Cal. 2010) (plaintiffs overpaid and suffered economic loss where they alleged "that he or she would probably not have purchased or leased his or her Toyota vehicle had the defect been known at the time of purchase, but certainly would not have paid as much for it"); *Lipton v. Chattem, Inc.*, No. 11-cv-2952, 2012 WL 1192083, at *3 (N.D. Ill. Apr. 10, 2012) (plaintiff alleged economic loss where "she claim[ed] that she purchased a product worth less than what she paid for it, and also that she would not have purchased the product had she known it contained [a defect].") (citing *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011)).

Here, Plaintiffs are Michigan residents that paid money for their movie rentals, (Compl. ¶¶ 27–28, 35–36), which entitled them to the level of privacy in their movie rental records required by the VRPA. (*Id.* ¶¶ 63, 69–70, 74, 80, 82–83.) Redbox's unlawful disclosures, however, prevented Plaintiffs from receiving the full benefit of those privacy protections. (*Id.*) Moreover, Plaintiffs allege that they would not have rented movies from Redbox (or would have paid substantially less for them) had they known that Redbox would not protect their Personal Viewing Information in the manner required by Michigan law. (*Id.* ¶ 71.) As such, Plaintiffs plainly allege that they overpaid for their movie rentals, and therefore, plead economic harm because they did not receive the full benefit of the bargain they paid for.[13] *See In re Acquisition of Land*, 283 N.W. 2d at 773; *see also Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) (finding economic harm where "disclosure of [Class's] undeniably sensitive information is not something that [they] bargained for when they signed up and paid fees for

---

[13]     Recent studies confirm that consumers price privacy into their purchases. *See* Expert Witness Report of Dr. Serge Egelman, Ph.D., *In re Netflix Priv. Litig.*, No. 5:11-cv-00379-EJD, Dkt. No. 191-2, Ex. 2 (N.D. Cal. Oct. 31, 2012) (confirming that consumers would command a discount in exchange for waiving privacy protections, and describing similar studies).

23

[Defendant's] service.").

Redbox relies on only one case—*Sterk v. Best Buy Stores, L.P.*, No. 11-cv-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012), which it cites in a footnote—to attack Plaintiffs' overpayment theory. (Def. Mot. at 12 n.7.) That case is fully distinguishable. Unlike the plaintiff in *Best Buy Stores*, Plaintiffs here specifically allege that they would not have rented or purchased any movie or video material from Redbox at that price (or at all) had they known that Redbox would disclose their Personal Viewing Information to third parties in violation of the VRPA. Therefore, Redbox's reliance on *Best Buy Stores* is misplaced.

In the end, neither Article III nor the VRPA requires actual damages to confer standing. And even if they did, Plaintiffs allege actual economic harm by virtue of overpayment.

## II.   REDBOX'S ATTACK ON PLAINTIFFS' UNJUST ENRICHMENT CLAIM IGNORES THE COMPLAINT'S PLAIN LANGUAGE.

Redbox asserts that Plaintiffs' unjust enrichment claim must be dismissed because the Terms of Use govern the transactions at issue and Plaintiffs received the "benefit of the bargain" when they received the movie they rented. (Def. Mot. at 14.) Both arguments fail.

First, Plaintiffs expressly allege that they never agreed to the Terms of Use. Redbox cannot contradict these allegations on the pleadings. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Second, Redbox's "benefit of the bargain" argument ignores that Plaintiffs and the Class expected that their Personal Viewing Information would be kept confidential as part of their rental transactions, (Compl. at ¶ 80), and that Redbox's duty to maintain such confidentiality represented part of the price of the movies they rented. (*See id*. at ¶ 83) ("a portion of the rental price paid by Plaintiffs and the Class members was intended to ensure the confidentiality of [their] Personal Viewing Information, as required by the VRPA."). As such, Plaintiffs allege that Redbox improperly retains benefits they conferred. *See Resnick*, 693 F.3d at

24

1238 (finding plaintiff stated unjust enrichment claim where she alleged that privacy was included in the price of a paid service, but not provided).

And as with its other authorities, Redbox's cited cases are inapposite. Unlike the plaintiffs in *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 939 (6th Cir. 1989) and *Rabbah v. Fed. Home Loan Mortg. Corp.*, No. 12-14599, 2013 WL 153729 (E.D. Mich. Jan. 15, 2013), the Plaintiffs here expressly allege that they didn't receive the full benefit of their bargain with Redbox (which included protecting their Personal Viewing Information in accordance with the VRPA), and there is no express contract in place to compare the benefits owed with the benefits received. Thus, Plaintiffs' unjust enrichment claim should survive dismissal.

## CONCLUSION

Redbox disclosed Plaintiffs' Personal Viewing Information to unrelated third parties, plainly violating the Michigan VRPA and its own Privacy Policy in the process. None of Redbox's arguments warrant dismissal. Accordingly, Plaintiffs respectfully ask that this Court deny Redbox's Motion to Dismiss in its entirety and allow the case to proceed to discovery.

Dated: March 13, 2013

Respectfully submitted,

**MICHELLE CAIN and RADHA SAMPAT**, individually and on behalf of all others similarly situated,

By: /s/ Ari J. Scharg
    One of Plaintiffs' Attorneys

Christine E. Ficks (P64625)
BODMAN PLC
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, Michigan 48226
Tel: 313-259-7777
cficks@bodmanlaw.com

Ari J. Scharg
EDELSON LLC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
ascharg@edelson.com

*Counsel for Plaintiffs Cain and Sampat and the Putative Class*

25

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, certify that on March 13, 2013 I served the above and foregoing ***Plaintiffs' Response in Opposition to Defendant Redbox Automated Retail, LLC's Motion to Dismiss***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 13th day of March 2013.

/s/ Ari J. Scharg
