IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE CAIN and RADHA SAMPAT,
Individually, and on behalf of all others
similarly situated,

        Plaintiffs,

v.

REDBOX AUTOMATED RETAIL, LLC,

        Defendant.

Case No. 2:12-cv-15014-GER-LJM
Honorable Gerald E. Rosen
Mag. Judge Laurie J. Michelson

## REPLY BRIEF OF REDBOX AUTOMATED RETAIL, LLC
## IN SUPPORT OF ITS MOTION TO DISMISS

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
pkupelian@clarkhill.com
cschley@clarkhill.com

Donna J. Vobornik (Admission Pending)
John Grossbart
Anthony T. Eliseuson (Admission Pending)
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@dentons.com
john.grossbart@dentons.com
anthony.eliseuson@dentons.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

# TABLE OF CONTENTS

                                                                                                                                               **Page**

I.     Plaintiffs' Allegations Demonstrate The "Disclosures" Are To Redbox "Agents." ............2

II.    The Alleged Disclosures Are Permitted Under The "Ordinary Course Of Business" Exception That Michigan Incorporated Into Its VRPA. ......................................4

III.   Redbox's Terms Of Use Are Properly Considered And Demonstrate Plaintiffs Consented To The Alleged Disclosures And That Their Claims Are Time-Barred. ...........6

       A.     This Court Can Consider The TOU And The Privacy Policy At This Stage ...................................................................................................................6

       B.     The TOU And Privacy Policy Provide Sufficient Notice To Customers To Make Plaintiffs' Consent Enforceable Under the VRPA. .......................................7

       C.     Plaintiffs' Reliance On The "Continuing Violations" Rule To Attempt To Avoid The Valid And Enforceable One-Year Contractual Limitations Provision Fails. ......................................................................................................8

IV.   Plaintiffs Lack Standing Because They Have Suffered No Injury. ......................................9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adams v. Berger Chevrolet, Inc.*,
  Nos. 00-cv-225, 226, 228, 2001 WL 533811 (W.D. Mich. May 7, 2001) ................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................6

*Belleville Toyota v. Toyota Motor Sales*, *U.S.A.*,
  199 Ill. 2d 325 (2002) ...............................................................................................................8

*Covington v. Mitsubishi Motors N. Am., Inc.*,
  No. 04-cv-1315, 2007 WL 1428659 (C.D. Ill. Mar. 27, 2007)..................................................8

*Currithers v. FedEx Ground Package Sys., Inc.*,
  No. 04-10055, 2012 WL 458466 (E.D. Mich. Feb. 13, 2012)................................................8, 9

*Daniel v. Cantrell*,
  375 F.3d 377 (6th Cir. 2004) .....................................................................................................6

*Dasgupta v. Univ. of Wis. Bd. of Trustees*,
  121 F.3d 1138 (7th Cir. 1997) ...................................................................................................9

*Elezovic v. Ford Motor Co.*,
  697 N.W.2d 851 (Mich. 2005)...................................................................................................3

*F.C.C. v. Fox Television Stations, Inc.*,
  129 S.Ct. 1800 (2009)................................................................................................................6

*In re Carter*,
  553 F.3d 979 (6th Cir. 2009) .....................................................................................................9

*Lincoln v. Fairfield-Nobel Co.*,
  257 N.W.2d 148 (Mich. Ct. App. 1977) ................................................................................2, 3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...................................................................................................................9

*Nic Sand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) .....................................................................................................2

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)...................................................................................................................9

*Thomas v. Galt Enterprises, Inc.*,
  No. 01 CV 10384 BC, 2002 WL 1349928 (E.D. Mich. June 20, 2002)...................................6

*United States v. Thompson/Ctr. Arms Co.*,
    504 U.S. 505 (1992)...................................................................................................6

*Warth v. Seldin*,
    422 U.S. 490 (1975)...................................................................................................9

*Weiner v. Klais & Co.*,
    108 F.3d 86 (6th Cir. 1997) .......................................................................................6

**STATUTES**

MCL
    § 445.1712................................................................................................................4
    § 445.1713................................................................................................................5
    § 445.1715..............................................................................................................10

18 U.S.C. § 2710 *et seq*................................................................................................ passim

**OTHER AUTHORITIES**

Black's Law Dictionary (6th ed.)....................................................................................3

Senate Report No. 100-599 (1988) ................................................................................6

The crux of Plaintiffs' Response is that they should receive statutory penalties of $5,000 each simply because Redbox contracted with outside vendors to perform back office functions rather than hiring and directly using employees to perform those same tasks. Such a formalistic theory has no basis in the VRPA's text, legislative history, or purpose for at least four reasons:

First, Plaintiffs' own factual allegations demonstrate that the "disclosures" at issue relate solely to the performance of customer service functions, such as providing service "agents" to respond to customer questions. Under the VRPA, disclosures to agents are not within the scope of disclosures prohibited by the Act.

Second, all of the alleged disclosures clearly were within the "ordinary course of business" exception incorporated into the VRPA from the federal VPPA. Plaintiffs' argument that the federal VPPA is not preemptive misses the point. Rather, it is the Michigan legislature that took the affirmative step of incorporating the disclosures allowed by the federal VPPA into the Michigan Act. Plaintiffs' argument would improperly require this Court to read the "otherwise provided by law" language completely out of the statute and, indeed, is contrary to the legislative history relied upon by Plaintiffs, which demonstrates that Michigan legislature sought to enact a law that substantively mirrored the federal law.

Third, Plaintiffs cannot avoid the Terms of Use that they voluntarily accepted when they completed each and every one of their rental transactions by relying upon a conclusory, implausible, and, frankly, factually untrue allegation in their Complaint. Those Terms demonstrate both that Plaintiffs consented to the alleged disclosures, and that their claims are time barred by the one-year contractual limitations period set forth in the Terms.

Finally, even if Redbox's conduct violated the VRPA (and it did not) the alleged disclosures could not possibly cause, and did not cause, any injury in fact to Plaintiffs. The mere fact that the person viewing Plaintiffs' information when (and if) they called for customer service

might be employed by a Redbox contractor/vendor, rather than by Redbox directly, is entirely irrelevant to Plaintiffs because the person viewing the information would be the same in either case.

## ARGUMENT

I.     **Plaintiffs' Allegations Demonstrate The "Disclosures" Are To Redbox "Agents."**

Plaintiffs seek to avoid the legal effect of their own allegations by asserting that whether the vendors Redbox uses to provide customer service or other services are Redbox's agents—and therefore outside the scope of the VRPA—is a factual question. (Resp. at 5-6.) But the question of whether an agency relationship exists based on undisputed facts is a question for the Court as Plaintiffs' own authorities demonstrate. *See generally Lincoln v. Fairfield-Nobel Co.*, 257 N.W.2d 148, 150 (Mich. Ct. App. 1977) (recognizing that only *if* there is conflicting evidence question of agency is a fact question for the jury); *see also Adams v. Berger Chevrolet, Inc.*, Nos. 00-cv-225, 226, 228, 2001 WL 533811, at *1 (W.D. Mich. May 7, 2001) (noting that the "facts are essentially agreed," and the parties dispute the "legal question" of agency for purposes of statutory liability) (Ex. A). As Plaintiffs repeatedly note, this Court accepts Plaintiffs' well-pled allegations as true for purposes of this motion. (*E.g.*, Resp. at 4.) And that rule applies even where, as here, the outcome of accepting those allegations is that Plaintiffs have pled themselves out of Court and defeated their own claims. *E.g., Nic Sand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) ("When 'the complaint itself gives reasons' to doubt plaintiff's theory . . . it is not [the Court's] task to resuscitate the claim but to put it to rest. Nothing prevents a plaintiff from pleading itself out of court, which is all that happened here.") (quotation omitted).

Here, Plaintiffs have alleged that the *only* disclosures at issue were from Redbox to its agents—namely a vendor that provides customer service support for Redbox's customers as well as a marketing analytics company. (Doc. 1, Compl. at ¶¶ 24, 30, 32, 38, 54) (alleging that Redbox

disclosed their Personal Viewing Information to a "customer service vendor" and "third parties *providing* analytics and/or promotional services," emphasis added). By definition, these vendors are ones that "act[] on behalf of [Redbox], particularly with regard to the conduct of business transactions." *Lincoln*, 257 N.W.2d at 150; *see also Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 867 n.4 (Mich. 2005) (recognizing that the normal and plain meaning of "agent" includes a "'person authorized by another (principal) to act for or in place of him; one intrusted with another's business.'") (quoting Black's Law Dictionary (6th ed.)). That is precisely how Plaintiffs have pled the relationship between Redbox and its vendors.

Indeed, Plaintiffs do not even seriously dispute that disclosures to employees or agents are outside the scope of the VPRA's prohibitions. Rather, Plaintiffs' only statutory argument is to create a strawman—a slippery slope in which the entire VRPA could be circumvented by merely designating the recipient of a disclosure as an "agent" regardless of the purpose for the disclosure (Resp. at 6-7.) But that argument ignores the very meaning of the word "agent," which only covers relationships in which the recipient is acting to assist the business of the principal—as is the case here between Redbox and the customer service and marketing analytics vendors with whom Redbox contracts.

For the same reason, Plaintiffs' assertion that Redbox cannot show the alleged disclosures are to agents involved in assisting Redbox in its movie rental business ignores the functions of the vendors—even based on Plaintiffs' own allegations. (Resp. at 6.) By definition the vendors providing customer service support and marketing assistance are furthering the core of Redbox's movie rental business. Redbox is *not* arguing that other vendors that have nothing to do with the movie rental aspects of its business—for example vendors that provide office maintenance services—would be entitled to access movie rental histories. But certainly a vendor that performs the exact same functions as would an employee who necessarily requires access to movie rental

history (such as alleged here) falls within the scope of an "agent" as used in the VRPA. Any other conclusion would lead to the absurdity that the VRPA was intended to impose substantial penalties on movie rental companies merely because they used vendors instead of hiring the same individuals as employees to perform the same functions and to have access to the same customer information. There is no support for such a result in the VRPA's text, legislative history, or common sense.

**II.     The Alleged Disclosures Are Permitted Under The "Ordinary Course Of Business" Exception That Michigan Incorporated Into Its VRPA.**

Plaintiffs do *not* argue that the disclosures they have alleged fall outside the ordinary course of Redbox's business. Nor could they. Instead, Plaintiffs only argue that this exception was not incorporated into the VRPA, and that that issue cannot be resolved on a motion to dismiss. (Resp. at 12-16.) Both arguments fail. Plaintiffs first argument—that the VRPA does not incorporate the "ordinary course of business" exception from the federal VPPA—flips the analysis on its head. Plaintiffs focus on the fact that the federal VPPA is not preemptive. (*Id*. at 13-15.) But Redbox did not argue the federal VPPA preempted the Michigan VRPA; rather, it is the VRPA itself that *expressly incorporated* the permissive disclosures of the VPPA when the Michigan legislature stated quite clearly that permissive disclosures included **both** those "provided in section 3 [of the VRPA] *or as otherwise provided by law*." MCL § 445.1712 (emphases added.)

This "otherwise provided by law" language includes the federal VPPA. Indeed, Plaintiffs themselves attach VRPA legislative history that shows the Michigan legislature was fully aware of the then soon to be effective federal VPPA when it enacted the VRPA. (Doc. 16-2 at 2 (noting that a similar bill had been introduced in the United States Congress, and that the Michigan law would prohibit disclosures of a person's movie rental history "[e]xcept as otherwise provided by law," such as the referenced federal law).) That legislative history expressly states that the proposed Michigan Act was intended to provide the *same* protection as federal law. *Id*. ("[T]he incident

prompted the introduction in Congress of a bill to protect the privacy of those who rent or buy videotapes. *Many in Michigan also . . . suggest the enactment of a statute to explicitly protect a consumer's privacy*" in such information) (emphasis added).

Nothing in the statutory text or the legislative history suggests Michigan's law was intended to be *stricter* than the federal VPPA. To the contrary, the plain language shows the laws are virtually identical and that Congress and Michigan legislature were going through the legislative process at the same time to pass laws designed to cover the same conduct. It was for this very reason that the "otherwise provided by law" language was included in the VRPA, to pick up any additional exceptions that Congress included in their version. Consistent with this plain language reading of the VRPA, its five express exceptions contain virtually identical counterparts in the federal VPPA:

- Both allow for disclosure with the written permission of the customer;
- Both allow disclosure pursuant to a court order;
- Both allow disclosure pursuant to a search warrant;
- Both allow disclosures to other companies to market that other company's goods or services directly to the customer, so long as the customer can opt-out; and
- Both allow disclosures for debt collection activities, albeit the federal VPPA includes this within the ordinary course of business provision.

*Compare* MCL § 445.1713 *with* 18 U.S.C. § 2710(b)(2). Thus, the federal VPPA and VRPA are very consistent. This is true even for the "ordinary course of business" exception because one of the primary purposes of this provision was to allow movie rental companies to use vendors like those allegedly at issue in this case. As the official Senate Report for the federal VPPA noted, this provision "takes into account that video tape service providers may use third parties in their business operations . . . . [including] mailing houses, warehouses, computer services, and similar companies for marketing to their customers." Senate Report No. 100-599, at 14 (1988) (Doc. 16-

18); *see also Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004). The VRPA accomplishes the same objective by excluding disclosures to "agents" from its scope, and the inclusion of the "ordinary course of business" exception furthers that legislative intent.[1]

### III. Redbox's Terms Of Use Are Properly Considered And Demonstrate Plaintiffs Consented To The Alleged Disclosures And That Their Claims Are Time-Barred.

#### A. This Court Can Consider The TOU And The Privacy Policy At This Stage.

This Court need not accept Plaintiffs' invitation to avoid ruling on this issue now based on the conclusory allegations that the Terms of Use were not presented to Plaintiffs. Such allegations are implausible. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that conclusory allegations, particularly implausible ones, can be ignored). This is particularly true given the documents Redbox attached to its motion, which are, in effect, the contractual documents that govern the parties' relationship, and which are not subject to any reasonable dispute. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.") (citations omitted). Courts routinely recognize that the contract that governs the parties' relationship is properly considered in resolving a Rule 12 motion. *E.g. Thomas v. Galt Enterprises, Inc.*, No. 01 CV 10384 BC, 2002 WL 1349928 (E.D. Mich. June 20, 2002) (reviewing contract upon which plaintiff attempted to state a claim but had not attached to

---

[1] Even if the VRPA was ambiguous in this regard, and it is not, the rule of lenity and other cannons of statutory interpretation would mandate a reading of the statute that avoided imposing penalties on Redbox for conduct that was not clearly prohibited. *See, e.g., United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518, n.10 (1992) (in civil action, rule of lenity applies when construing ambiguous statute that "has criminal applications"). In contrast, the reading Plaintiffs' propose would cast a shadow of constitutional doubt over the VRPA and subject it to constitutional challenges on First Amendment, due process, and other grounds, which should be avoided. *F.C.C. v. Fox Television Stations, Inc.*, 129 S.Ct. 1800, 1811 (2009).

complaint on a motion to dismiss) (Ex. B). Those documents demonstrate that Plaintiffs did accept the Terms and that the Terms and related Privacy Policy put Plaintiffs on notice that their information might be shared with certain vendors that provide services to Redbox.

      **B.     The TOU And Privacy Policy Provide Sufficient Notice To Customers To Make Plaintiffs' Consent Enforceable Under the VRPA.**

Plaintiffs' argument that Redbox's Terms of Use and Privacy Policy did not sufficiently put them on notice that Redbox may disclose their personal viewing information is belied by the very text of these documents themselves. First, Redbox's Privacy Policy does not define "personal information" to only mean "first and last names, addresses, e-mail addresses, and telephone numbers," as Plaintiffs claim. Instead, the Privacy Policy lists these pieces of information as representative *examples*, not limitations, of what personal information Redbox may collect. (Doc. 10-2 at 9 ("Redbox only gathers personal information, ***such as*** . . . .") (emphasis added).) Moreover, the Privacy Policy goes on to give an example of the use of personal information that necessarily would also include the use of one's personal viewing information: "[P]ersonal information may be collected from you in order to provide you with an e-mail receipt following a DVD rental . . . ." *Id.* Thus, Plaintiffs were on notice that this information might be disclosed to vendors and consented to such disclosures by completing the rental transaction.[2]

Similarly, Plaintiffs' argument that Redbox does not provide sufficient notice to consumers that third party companies may have access to their personal information also falls flat. Redbox discloses that "[c]ompanies may . . . be engaged by redbox to perform a *variety* of functions, ***such as*** fulfilling orders, assisting with promotions, providing technical services for our web site, *etc.*" (Doc. 10-2 at 9; emphasis added.) Certainly, the alleged disclosures of Plaintiffs' viewing

---

[2] Plaintiffs' argument that the Privacy Policy is inapplicable because it is labeled the "Internet Privacy Policy" ignores the language of the Terms, which incorporate the Privacy Policy, and which state that they "govern your use of the Disc Vending Kiosks. . . ." (Doc. 10-2 at 5.)

information to third parties for "promotions" purposes (*e.g.* Compl. ¶ 25) is clearly disclosed in this language, as "promotions" is one of the enumerated examples of Redbox's use of third party vendors to assist in the ordinary course of its business. And the remainder of alleged disclosures are encompassed as well, as Redbox lists various functions as examples of how it may engage vendors to assist with routine business activities, and Plaintiffs consented to such disclosures.

      C.      **Plaintiffs' Reliance On The "Continuing Violations" Rule To Attempt To Avoid The Valid And Enforceable One-Year Contractual Limitations Provision Fails.**

Plaintiffs do not deny that the one year contractual limitations period in the Terms of Use is valid and enforceable; instead they *only* argue that their claims are subject to a "continuing violations" rule. But the continuing violation rule does not apply here for at least two reasons.

First, the continuing violation rule does not apply to contractual limitations periods, or contractual claims.[3] *Belleville Toyota v. Toyota Motor Sales, U.S.A.*, 199 Ill. 2d 325, 345, 354-55 (2002) (holding the continuing violation theory did not apply to contractual claims, and therefore those claims were time barred); *Covington v. Mitsubishi Motors N. Am., Inc.*, No. 04-cv-1315, 2007 WL 1428659, at *7 (C.D. Ill. Mar. 27, 2007) (rejecting argument that a breach of contract claim can be a continuing violation for limitations purposes) (applying Illinois law) (Ex. C); *see also Currithers v. FedEx Ground Package Sys., Inc.*, No. 04-10055, 2012 WL 458466, at *10 (E.D. Mich. Feb. 13, 2012) ("Application of the 'continuing wrong' doctrine has been rejected in the context of claims for breach of contract . . . .") (applying Michigan law) (Ex. D).

Second, the continuing violations doctrine is limited to situations when the first violation "could not reasonably have been expected to be made the subject of a lawsuit . . . because its character as a violation did not become clear until it was repeated," which is not the situation here.

---

[3] As noted in Redbox's opening memorandum, the Terms contain a binding choice of law provision that selects Illinois law. (Doc. 10 at 9.)

*Dasgupta v. Univ. of Wis. Bd. of Trustees*, 121 F.3d 1138, 1139 (7th Cir. 1997); *Currithers*, 2012 WL 458466, at *10 (same principle under Michigan law).  Here, the alleged violation was made known to Plaintiffs and the putative class even *before* their first rental was completed because it was disclosed in Redbox's Terms of Use and Privacy Policy.

**IV.     Plaintiffs Lack Standing Because They Have Suffered No Injury.**

Finally, Plaintiffs cannot demonstrate an injury in fact because the alleged disclosures do not cause Plaintiffs any *factual* injury.  Although in some cases a statutory violation is of such a nature that it would involve a *per se* factual injury, that is not the case here.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) (even for statutory causes of action, "[o]f course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction **that cannot be removed by statute**.") (emphasis added).  The legislature does not simply create an injury when creating a new cause of action in a statute; rather, it is "elevating to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992).

Plaintiffs' reliance on *In re Carter* is not to the contrary.  In that case, plaintiffs alleged they were harmed by the receipt of and reliance upon biased information sullied by kickbacks in violation of the Real Estate Settlement Procedures Act.  553 F.3d 979, 988 (6th Cir. 2009).  Here, however, the mere fact that movie rental histories are disclosed does not necessarily give rise to an injury in fact unless, at a minimum, Plaintiffs can allege and establish that they view that information as private and sensitive; that they have taken steps to keep it private; and that the disclosure itself somehow violated their privacy interests in a way that caused an actual injury.

Ironically, the expert report from an entirely different lawsuit that Plaintiffs, themselves, improperly submitted with their opposition brief further confirms they have not suffered any injury

in fact, as the report shows that consumers have little or no privacy interest in their movie rental history, ranking it as least private among *all* of the items in the study.  (Doc. 16-19 at 8.)  Indeed, movie rental history is ranked as less private than *publicly available information* such as a persons' name.  (*Id.*)  Thus, Plaintiffs' own evidence further undermines their conclusory claims of injury.

Recognizing the jurisdictional floor of actual injury, the Michigan legislature limited private causes of actions in the VRPA to those consumers who were actually "damaged."  *See* MCL § 445.1715 ("[A] person who violates this act shall be liable in a civil action for *damages to the customer* identified in a record or other information that is disclosed in violation of this act.") (emphasis added).  While Plaintiffs rely on a secondary source that asserts there is no actual damages requirement (Resp. Br. at 18), the opinion of those authors is directly contrary to the plain text of the statute, particularly when no Michigan court has addressed this issue, and the better reasoned case law construing similar provisions has required a showing of actual damage.  (*See* Redbox's Opening Br., Doc. 10 at 10-11.)

Dated:  April 3, 2013                                    Respectfully submitted,

/s/  John Grossbart

| | |
|---|---|
| Peter B. Kupelian (P31812) | Donna J. Vobornik (Admission Pending) |
| Carol G. Schley (P51301) | John Grossbart |
| CLARK HILL PLC | Anthony T. Eliseuson (Admission Pending) |
| 500 Woodward Avenue, Suite 3500 | DENTONS US LLP |
| Detroit, MI  48226 | 233 South Wacker Drive, Suite 7800 |
| pkupelian@clarkhill.com | Chicago, IL  60606 |
| cschley@clarkhill.com | (312) 876-8000 |
| | (312) 876-7934 (fax) |
| | donna.vobornik@dentons.com |
| | john.grossbart@dentons.com |
| | anthony.eliseuson@dentons.com |

*Attorneys for Defendant Redbox Automated Retail, LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 3, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

                                              /s/ John Grossbart