# Exhibit A

2:12-cv-15014-GER-LJM Doc # 20-2 Filed 04/03/13 Pg 1 of 5 Pg ID 387

Not Reported in F.Supp.2d, 2001 WL 533811 (W.D.Mich.)
**(Cite as: 2001 WL 533811 (W.D.Mich.))**

Only the Westlaw citation is currently available.

United States District Court, W.D. Michigan.
Benjamin F. ADAMS, Plaintiff,
v.
BERGER CHEVROLET, INC., a Delaware corporation, Defendant.
Sandra Frost PIENTA, Plaintiff,
v.
BERGER CHEVROLET, INC., a Delaware corporation, Defendant.
Tina COLE, Plaintiff,
v.
BERGER CHEVROLET, INC., a Delaware corporation, Defendant.

Nos. 1:00CV225, 1:00CV226, 1:00CV228.
May 7, 2001.

*PARTIAL JUDGMENT*

ENSLEN, Chief J.

***1** In accordance with the Opinion of this date;

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment as to Count One (Dkt. No. 38) is GRANTED and the Court determines as a matter of law that Defendant is liable to Plaintiffs pursuant to 15 U.S.C. § 1681n for willful violation of the Fair Credit Reporting Act. Determination of the remaining counts and damages is reserved for trial.

*OPINION*

*FACTS*

This is an consolidated case involving three separate actions, in which Plaintiffs each allege liability against Defendant Berger Chevrolet, Inc. based on the criminal acts of a car salesman/employee who wrongly obtained credit reports for Plaintiffs and used Plaintiffs' credit to secure financing for car sales or leases for applicants with bad credit histories without the consent of Plaintiffs. The employee (Robert Gordon) was convicted on a federal fraud criminal charge (violation of 18 U.S.C. § 1028(a)(7)) in Case No. 1:99-CR-152. These actions seek to establish the Defendant's liability on Count One for the intentional violation of the Fair Credit Reporting Act ("FCRA"), and more particularly 15 U.S.C. §§ 1681b(f) and 1681n, on the agency theories of *respondeat superior* and apparent authority.

Plaintiffs have moved for summary judgment on the FCRA claim. The parties in their briefing and exhibits describe the essential facts under which Gordon and another individual, Carla Jo Davis, used the credit of all the Plaintiffs, without their authority, to obtain credit for persons otherwise ineligible for financing. (Plaintiffs' Brief at 4-5; Defendant's Brief at 3-4.) Thus, there is no disagreement in the record that Robert Gordon intentionally violated 15 U.S.C. §§ 1681b(f) and 1681n, by using the credit reports of Plaintiffs, without authority of Plaintiffs, to assist others in obtaining financing as to vehicles he sold/leased for the Defendant and as to which he earned a commission. There is also no dispute that the credit reports in question were obtained when Gordon presented forged credit applications to his finance manager and had his finance manager request credit reports

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 533811 (W.D.Mich.)
**(Cite as: 2001 WL 533811 (W.D.Mich.))**

*via* terminal from TransUnion, a reporting agency. There also appears to be no dispute that Gordon consummated the financing and the sales and leases and that the sales and leases initially benefitted Berger Chevrolet.

While the facts are essentially agreed, the parties dispute a stark legal question. Namely, whether the Defendant car dealership should be liable under the FCRA for the intentional fraud of its car salesman, of which Defendant did not approve nor know at the time of the illicit acts.

STANDARD FOR SUMMARY JUDGMENT

Plaintiffs' Motion for Summary Judgment is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). If the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. Celotex Corp., 477 U.S. at 323.

LEGAL ANALYSIS

**\*2** Preliminary to the legal question of *respondeat superior,* Defendant contends that it cannot be liable under the FCRA because that the FCRA does not impose liability for a user of a credit report (as opposed to a credit reporting agency) who wrongfully uses the credit report. In support of this argument, Defendant cites the case of DiCarlo v. Maryland Automobile Insurance Fund, 855 F.Supp. 823 (D.Md.1994). The Defendant's argument, in this regard, is feeble. The *DiCarlo* decision was decided before the enactment by Congress of Public Law 104-208, in 1996, which added Section 1681b(f) to the statutory regime, extending liability to users of credit reports. To the extent that this was not clear enough in the words of Congress, the Sixth Circuit Court of Appeals in its holding in Jones v. Federated Department Stores, 144 F.3d 961, 964 (6th Cir.1998) made explicit that the FCRA imposes liability on "users" of credit information for both willful and negligent conduct. Accordingly, the Court determines that liability under the FCRA extends to "users" of credit information which is wrongfully obtained.

This brings us to the primary question presented in the briefing-whether Defendant may be liable under the FCRA as the employer of Robert Gordon in the absence of any evidence the company approved of or consented to the unauthorized use of the credit reports. Defendant cites a number of state law cases for the propositions that "an employer is not liable for intentional torts committed by an employee who is acting in the course but beyond the scope or apparent scope of his employment" and "intentional and reckless torts are generally held to be beyond the scope of employment." These cases are distinguishable, if for no other reason, because they are state law cases not interpreting the FCRA.

More importantly, the legal principles of agency under the FCRA were specifically addressed by the Sixth Circuit Court of Appeals in its *Jones* decision. The *Jones* case involved a domestic relations dispute between Karen Jones and Randy Lind, two persons whose marriage had been annulled. Lind used an employee of Federated Department Stores, Janice Caylor, to obtain a credit report on Jones to contact her about reconciliation. When Jones was contacted, she investigated the incident and then sued Federated Department Stores for the wrongful and unauthorized use of the report. On the subject of agency, the Sixth Circuit said as follows:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 533811 (W.D.Mich.)
**(Cite as: 2001 WL 533811 (W.D.Mich.))**

Because the FCRA does not directly address vicarious liability, we look to the statute's purposes for guidance in determining whether to interpret the FCRA's words to include liability based on the apparent authority of an employee.... We are additionally guided by the fact that the FCRA is to be liberally construed in favor of the consumer, ... as well as the rule of statutory construction which requires us to read a statutory provision in a manner consistent with the statute's other provisions....

**\*3** Congress articulated the FCRA's underlying purpose as to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this [Act]. 15 U.S.C. § 1681b. Congress also made a finding in enacting the FCRA that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681a(4). Thus, the FCRA is aimed at protecting consumers from inaccurate information in consumer reports and at the establishment of credit reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner....

In deciding whether an apparent authority rule applies under the FCRA, we first should define the three major types of agency liability. First, a principal may be vicariously liable for an agent's tortious conduct if the principal expressly or implicitly authorized the conduct.... However, such liability is not applicable here, because it is not alleged that Federated expressly or implicitly authorized Caylor's conduct. Second, a principal may be vicariously liable for an agent's torts under a *respondeat superior* theory. Under a *respondeat superior* rule, a principal is only held vicariously liable for torts committed by an agent when the agent acts for the benefit of his principal within the scope of his employment....

Third, a principal may be vicariously liable for an agent's tortious conduct based upon an apparent authority theory, if the principal cloaked its agent with apparent authority, *i.e.,* held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority.... Under an apparent authority theory, vicarious "[l]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business provided to him." ... Accordingly, liability may be imposed on a principal under an apparent authority theory irrespective of whether the agent acted for his own purposes, rather than those of his principal....

In the absence of specific language regarding the imposition of vicarious liability based on apparent authority, we must consider whether an apparent authority theory is consistent with Congress's intent behind the FCRA. Protecting consumers from the improper use of credit reports is an underlying policy of the FCRA. An apparent authority theory is in keeping with the FCRA's underlying deterrent purpose because employers are in a better position to protect consumers by use of internal safeguards....

**\*4** Because a company like Federated can act only through its agents, it is difficult to imagine a situation in which a company would ever be found to have willfully violated the statute directly by obtaining a credit report for an impermissible purpose. The FCRA's deterrence goal would be subverted if a corporation could escape liability for a violation that could only occur because the corporation cloaked its agent with the apparent authority to request credit reports.

If the trier of fact finds that Federated created an appearance of authority that caused the credit reporting

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

agency reasonably and prudently to believe that Caylor had made a proper request for a permissible purpose, and that there was reliance on Caylor's apparent authority, ..., then it may find Federated liable for negligent or willful violations of the FCRA....

*Id.* at 964-66 (citations omitted).

Applying the doctrines of *respondeat superior* and apparent authority, as explained in *Jones,* the Court determines as a matter of law that the Defendant is responsible for the intentional and wrongful acts of Gordon under the doctrines of apparent authority and *respondeat superior.* Given the conduct of Gordon and Berger Chevrolet in requesting the credit information from TransUnion, this transaction appeared for all practical purposes like any other legal transaction conducted by Berger Chevrolet.[FN1] Thus, Berger is bound to the transaction because of the apparent authority of Gordon and the finance manager as manifest to the credit reporting agency. Further, Berger Chevrolet is bound to the transaction because of *respondeat superior.* The transactions in questions were sales and leases of cars. As such, they were within Gordon's regular duties as a sales person (notwithstanding the extralegal manner in which Gordon obtained financing). The transactions also directly benefitted the dealership (until the fraud was discovered) by generating sales and lease revenues to the dealership. Therefore, there is no genuine issue of material fact on this record but that these transactions are attributable to Berger Chevrolet under the doctrines of apparent agency and *respondeat superior.*

> FN1. Defendant has attempted to argue that the transaction appeared irregular because the secret purchasers met off-premises with Gordon and made secret payments to him. However, since the issue is apparent authority, the secret transactions by Gordon are not relevant to the apparent authority of Gordon and his finance manager to act for the dealership.

In reaching this holding, the Court reiterates the logic of the Sixth Circuit's decision in *Jones.* As between an innocent consumer and an employer, the law favors an understanding of agency which shifts the costs of the injuries to the employer because the employer has ultimate control over both the hiring, tasking and supervision of the wrongdoing employee. This is all the more true as to consumer protection legislation, such as the FCRA, which was specifically designed to protect consumers and remedy wrongs done consumers related to credit reporting. Under such a statute, Berger Chevrolet's pleas that it had not expressly authorized the conduct cannot immunize it from liability for willful violations by its employee. Accordingly, Plaintiffs are entitled to summary judgment on Count One for intentional violation of the FCRA.[FN2]

> FN2. As indicated in Plaintiffs' briefing, in light of such determination, Defendants' potential liability for negligent violation of the FCRA is a moot issue.

## CONCLUSION

**\*5** Accordingly, Plaintiffs' Motion for Summary Judgment as to Count One shall be granted and a partial judgment shall issue determining liability as to Count One in favor of Plaintiffs and against Defendant. Determination of the remaining counts and damages is reserved for trial.

W.D.Mich.,2001.
Adams v. Berger Chevrolet, Inc.
Not Reported in F.Supp.2d, 2001 WL 533811 (W.D.Mich.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.