# Exhibit B

Not Reported in F.Supp.2d, 2002 WL 1349928 (E.D.Mich.)
**(Cite as: 2002 WL 1349928 (E.D.Mich.))**

Only the Westlaw citation is currently available.

United States District Court, E.D. Michigan, Northern Division.
Michael David THOMAS, Plaintiff,
v.
GALT ENTERPRISES, INC., a Foreign Corporation, and API Travelers, Inc., a Foreign Corporation, Defendant.

Case Number 01–CV–10384–BC.
June 20, 2002.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS BY DEFENDANT API TRAVELERS, INC. AND DENYING MOTION TO DISMISS BY DEFENDANT GALT ENTERPRISES, INC.*

DAVID M. LAWSON, District Judge.

*1 The plaintiff, Michael David Thomas, has filed a lawsuit claiming that the defendants breached various contractual agreements with him, interfered with contracts and business expectancies, and defamed him. The defendants have responded with motions to dismiss. API Travelers, Inc. (API) has filed a motion stating that the plaintiff has failed to state a claim against it in each of the four counts of the plaintiff's complaint and therefore it is entitled to an order of dismissal pursuant to Fed.R.Civ.P. 12(b)(6). Defendant Galt Enterprises, Inc. (Galt) argues that this Court has no jurisdiction over it due to a forum selection clause in the contract between it and the plaintiff, and contends that the Court ought to dismiss the case against it under Fed.R.Civ.P. 12(b)(2). The plaintiff has responded and the defendants have replied, and the Court has heard the arguments of the parties through their respective counsel in open court on June 17, 2002. The Court finds that the plaintiff has not stated a proper claim against API in counts one, three, and four of the complaint but does state a cause of action in count two. The Court also finds that the forum selection clause does not serve to oust jurisdiction and therefore it does not provide a basis to dismiss the case against Galt. Accordingly, the Court will grant API's motion in part and deny it in part, and it will deny Galt's motion to dismiss.

I.

API is engaged in the business of selling after-market service contracts to purchasers of automobiles. It sells extended warranties, credit life, health and accident insurance, and similar such contracts which are underwritten by separate companies. These service contracts are typically sold to customers through contacts at automobile dealerships.

Through a written contract, API retained Galt as its agent to solicit automobile dealerships which would offer API's service contracts to dealership customers. Galt in turn entered into a written agreement with Michael Thomas and his company, Michael Thomas Agency, to actually market the contracts in the field. One of API's customers was Labadie Oldsmobile in Bay City, Michigan. Galt and, its subagent, Thomas, were the agents responsible for this dealership.

On February 19, 1999, Gary Labadie, the proprietor at Labadie Oldsmobile, informed API that his dealership was experiencing some problems with respect to API's level of customer service. Specifically, Labadie stated that it was encountering problems identifying who API's service agent was for that dealership, there was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1349928 (E.D.Mich.)
**(Cite as: 2002 WL 1349928 (E.D.Mich.))**

delayed payment of claims, there was poor response time to customer needs, and Labadie Oldsmobile experienced negative employee attitudes when they dealt with API's claims department.

A representative from API purportedly addressed these problems and responded to Labadie Oldsmobile with a letter dated April 9, 1999. The letter recounted the problems and outlined the corrective measures taken by API. In the letter, API "apologize[d] for the lack of service from our agent." The letter also stated that "Don Goldberg with Galt Agency, the servicing agent, had assured [API] that the Labadie dealerships [sic] needs will be a # 1 priority and attended to on an ongoing basis." Although the plaintiff's name was not mentioned in the letter, the plaintiff alleges that the letter suggested unprofessional conduct and implied that it was the plaintiff himself that was providing the lack of service and failing to perform as expected. The plaintiff contends that API, Galt and Labadie knew that he was the agent assigned to the Labadie dealership and that the letter, combined with other activities, which included the failure to furnish forms, training and instructions which would assist the plaintiff in performing his obligation under the agency contract, constituted an effort on the part of API to terminate the plaintiff's agency contract and take over the account itself.

*2 On August 29, 2001, more than two years after API's letter to Labadie Oldsmobile, Galt terminated the plaintiff's employment agreement effective August 31, 2001. The plaintiff has filed a four-count complaint in this court alleging (1) breach of contract, (2) tortious interference with a contract in a business expectancy, (3) violation of a third party beneficiary agreement, and (4) defamation. The defendants have responded with the motions to dismiss, as noted above.

II.

In a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the allegations in the complaint are taken as true and are viewed favorably to the non-moving party. *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995), *Herrada v. City of Detroit,* 275 F.3d 553, 556 (6th Cir.2001). The Court may consider only whether the allegations contained in the complaint state a claim for which relief can be granted. *Roth Steel Prod. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983). The motion shall be granted only if "no set of facts in support of [the plaintiff's] claim would entitle [the plaintiff] to relief." *Broyde v. Gotham Tower, Inc.,* 13 F.3d 994, 996 (6th Cir.), *cert. denied,* 511 U.S. 1128 (1994). In a motion to dismiss filed under Rule 12(b)(6), generally the Court should confine its review to the pleadings and exhibits. If "matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment" and all parties shall be given an opportunity to respond in accordance with Rule 56. Fed.R.Civ.P. 12(b). However, in certain circumstances, a document that is not attached to the complaint or incorporated by a reference may still be considered part of the pleadings when the document is referred to in the complaint and central to the plaintiff's claim. *Greenburg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir.1999).

In this case, the plaintiff has invoked this Court's diversity jurisdiction. In federal cases based upon diversity jurisdiction, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.' " *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995) (quoting *Bailey v. v. & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985)). "Relevant data" includes the state's intermediate appellate court decisions, *id.,* as well as the state supreme court's relevant *dicta,* "restatements of law, law review commentaries, and the 'majority rule' among other states." *Angelotta v. American Broad. Corp.,* 820 F.2d 806, 807 (6th Cir .1987).

In this case, Michigan law governs. The Court shall, therefore, examine the plaintiff's complaint and the de-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

fendant's motion under Michigan law to determine whether the plaintiff states a valid cause of action.

A.

**\*3** In the first count of the complaint, the plaintiff pleads a breach of contract claim against "the defendants." At oral argument, the plaintiff clarified that he did not intend to direct count one's allegations against defendant API. In fact, the plaintiff conceded that there is no valid contract in existence between the plaintiff and API, and therefore any claim for breach of contract against this defendant attempted to be stated in count one must fail. The first essential step in a breach of contract case, of course, is to prove the existence of a contract between the parties. *Williams v. DeMan,* 7 Mich.App. 71, 76, 151 N.W.2d 247, 250 (1967). Count one of the complaint, therefore, will be dismissed as to defendant API.

B.

Count two of the complaint alleges tortious interference with a contract and a business expectancy against both defendants. To state a tortious interference claim, the plaintiff must establish the following: (1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy by the defendant, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) damage resulting from the breach. *Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.,* 175 Mich.App. 723, 735, 438 N.W.2d 349, 354 (1989). The "intentional interference" element of this claim is satisfied by demonstrating an unjust instigation of the breach of contract or termination of the business relationship by the defendant. *Mahrle v. Danke,* 216 Mich.App. 343, 350, 549 N.W.2d 56, 60 (1996). To establish this element, then, the plaintiff

> must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship. Under the latter instance, plaintiff necessarily must demonstrate, with specificity, affirmative acts by the interferor which corroborate the unlawful purpose of the interference.

> *Feldman v. Green,* 138 Mich.App. 360, 369–70, 360 N.W.2d 881, 886 (1984).

In this case, the plaintiff clearly alleges in the complaint the existence of a valid business relationship with Galt. He also alleges a valid business expectancy with Labadie Oldsmobile, the subject dealership to whom he was providing service. He also alleges that his relationship under these business arrangements was terminated, causing him damage. The point of contention, then, is whether or not the complaint sufficiently alleges an intentional interference, that is, an unjustified instigation of a breach of contract, by API.

API focuses on the text of the April 9, 1999 letter, which it characterizes as the plaintiff's principal allegation of interference. API contends that the letter itself does not constitute a wrongful act, and that it was sent for a legitimate business reason. Indeed, the Michigan Court of Appeals has held that actions "motivated by legitimate business reasons ... would not constitute improper motive or interference." *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.,* 217 Mich.App. 687, 699, 552 N.W.2d 919, 925 (1996).

**\*4** If the allegations of wrongful interference were confined solely to sending the April 19, 1999 letter, the Court would have little trouble agreeing with API's contention. But the allegations in the complaint are broader than that. In paragraph 20 of the complaint, the plaintiff alleges that the defendants failed to perform their obligations under their respective contracts by refusing to supply company forms, supplies, instructions and certificates to the plaintiff and to customers. The allegation is clarified in paragraph 26 in which it is alleged that API did not perform essential services under its contract with Galt. In paragraph 28, the plaintiff alleges that API's

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

failure of performance interfered with the plaintiff's ability to service its customers, including Labadie Oldsmobile. In paragraph 35, the plaintiff alleges that API's conduct was intentional so as to eliminate plaintiff as a servicing agent on the Labadie Oldsmobile account, and the plaintiff further alleges that API was so motivated in order to "cut out the middle man" and increase its own net revenue. According to the complaint, the April 9, 1999 letter was part of the pattern intended to point a finger at the plaintiff as the cause of poor performance under the contract and to advance the defendant's objective of eliminating the plaintiff from the transaction.

API notes that the timing of its alleged actions in sending the letter, when compared to Galt's termination of its contract with the plaintiff over two years later, casts considerable doubt on the credibility of the plaintiff's exclusion theory. API's argument may have substantial merit, but the Court is not called upon to weigh or evaluate the quality of the evidence at this stage of the proceedings. The sole question is whether the complaint and relevant exhibits combine to state a valid claim under state law. The Court concludes that the plaintiff has successfully pleaded a claim for tortious interference with a business expectancy against API in count two of the complaint. The motion to dismiss count two of the complaint as to API, therefore, will be denied.

C.

The plaintiff attempts to plead a breach of contract claim based upon a third party beneficiary theory in count three of the complaint. Third party beneficiary status requires the existence of a valid contract between a promisor and a promisee in which the promisor expressly agrees to act for the benefit of a third party. *Dynamic Constr. Co., v. Barton Malow Co.,* 214 Mich.App. 425, 428, 543 N.W.2d 31, 33 (1995).

> A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefitted does not give him the right to sue for its breach.

> *Id.* at 428, 543 N.W.2d at 33–34.

In this case, the plaintiff makes reference in the complaint to a contract between Galt and API, claiming that the plaintiff was a known and intended beneficiary of a promise under this agreement (Compl.¶ 41), and that API breached the contract by failing to provide goods and services as agreed to Galt. (Compl.¶ 42). Although a copy of the contract was not attached to the plaintiff's complaint, API furnished a copy attached to its motion to dismiss. There is no contest that the contract submitted is an authentic copy of the document referenced by the plaintiff in his complaint, and the Court therefore may consider this document in deciding the motion under Rule 12(b)(6) without converting the motion to one for summary judgment under Rule 56. *Greenberg,* 177 F.3d at 514; *see also Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir.1997).

**\*5** At oral argument, the plaintiff was unable to identify in the contract between API and Galt a promise which API made for the benefit of any third-party beneficiary, specifically a "subagent," as individuals in the position of the plaintiff were identified. There is no statement in the contract in which subagents are identified as intended beneficiaries of the agreement between API and Galt. To the contrary, paragraph 5.01 of the contract specifically states that agreements with subagents "shall be pursuant to contracts between Agent and Subagents" and that "[i]n no event shall Subagents be deemed employees or agents of API."

The plaintiff is not specifically named or referred to in the contract between API and Galt, and the contract makes no guarantees to persons who might be hired as subagents. The contract clearly could not have contemplated a promise for the benefit of the plaintiff in his individual capacity, because the contract was formed more

Not Reported in F.Supp.2d, 2002 WL 1349928 (E.D.Mich.)
**(Cite as: 2002 WL 1349928 (E.D.Mich.))**

than seven years before Galt hired the plaintiff as a subagent. The Court has thoroughly reviewed the contract between Galt and API, and is unable to discern any language creating a third party beneficiary relationship. The Court concludes, therefore, that the plaintiff has failed to state a claim for relief against API in count three of the complaint.

D.

Count four of the complaint alleges defamation, and the focus of the defamatory conduct is exclusively on the April 9, 1999 letter.

To state a defamation claim, the plaintiff must establish (1) that a false and defamatory statement concerning the plaintiff was made, (2) the defendant published the defamatory statement to a third party, (3) the defendant was at fault in publishing the statement, at least to the extent of being negligent in issuing the falsehood, and (4) actionability of the statement because it is defamatory *per se,* or the existence of special harm caused by the publication. *Colista v. Thomas,* 241 Mich.App. 529, 538, 616 N.W.2d 249, 254 (2000).

In this case, API contends that the April 9, 1999 letter is not defamatory with respect to the plaintiff because the plaintiff is not identified by name in the letter. The Michigan Court of Appeals has held that where the "plaintiff's identity is readily ascertainable from the content of the publication," the connection between the plaintiff and the defamatory words is present. *Lins v.. Evening News Ass'n,* 129 Mich.App. 419, 427, 342 N.W.2d 573, 578 (1983). However,

> a defamation defendant cannot be held liable for the reader's possible inferences, speculations, or conclusions, where the defendant has not made or directly implied any provably false factual assertion, and has not, by selective omission of crucial relevant facts, misleadingly conveyed any false factual implication. In sum, the overall implications that may flow from true factual statements straightforwardly presented are ordinarily as privileged for defamation purposes as the statements themselves.

*\*6 Locricchio v. Evening News Ass'n,* 438 Mich. 84, 144, 476 N.W.2d 112, 139 (1991) (Cavanaugh, J., concurring).

It is apparent, therefore, that under Michigan law a cause of action for defamation by implication is recognized, but the defamatory statement must contain an actual falsehood or a clear-cut and specific material omission. The April 9, 1999 letter falls far short of this measure. Paragraph two of the letter contains API's apology to its customer "for the lack of service from our agent." Although the plaintiff contends that the inference should be drawn that the words refer to him, the last page of the letter describes "Don Goldberg with Galt Agency" as "the servicing agent." The letter read piecemeal or in its entirety simply does not contain a clear-cut falsehood or material omission with respect to the *plaintiff's* professional performance under the contract, nor does the statement imply a falsehood absent inference, speculation or conclusion by the reader.

The Court, therefore, holds that the plaintiff has not properly pleaded a claim for defamation against API in count four of the complaint.

III.

Defendant Galt has moved to dismiss for want of personal jurisdiction, alleging that this Court does not have the authority to proceed against it by virtue of a clause in the contract which states:

> This Agreement shall be governed by and construed under the laws of the State of Ohio. Any legal or equit-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1349928 (E.D.Mich.)
**(Cite as: 2002 WL 1349928 (E.D.Mich.))**

able action arising out of this Agreement, its performance, breach or default, shall be commenced and determined in an appropriate court of competent jurisdiction in Cuyahoga County, Ohio.

In a motion to dismiss under Fed.R.Civ.P. 12(b)(2), the non-moving party has the burden of establishing personal jurisdiction over the moving party. *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002). If there is no evidentiary hearing on the issue of personal jurisdiction, the non-moving party "need only make a prima facie showing of [personal] jurisdiction." *Id.* (quoting *CompuServe, Inc., v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996)). A prima facie showing is made if the moving party has "minimum contacts" with the forum state to support jurisdiction. *Id.* The Court shall "construe the facts in the light most favorable to the nonmoving party in reviewing a dismissal [motion] pursuant to Rule 12(b)(2)." *Id.* "A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Id.* at 888.

Under Michigan law, a court has limited personal jurisdiction over a non-resident defendant when the cause of action arises out of certain of the defendant's contacts with the state. Mich. Comp. Laws § 600.715(1); *see Theunissen v. Mathews,* 935 F.2d 1454, 1464 (6th Cir.1991). In this case, Galt is an Ohio corporation but does not seriously contest the extent of its contacts with Michigan, nor does it claim that compelling it to litigate here would violate its rights under the Due Process Clause. The presence in the contract of a forum selection clause does not alter this conclusion.

**\*7** A forum selection clause implicates questions of venue, not jurisdiction. The Supreme Court has held that 28 U.S.C. § 1404(a) controls requests to give effect to the parties' contractual choice of venue. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). Title 28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A contractual "forum-selection clause" is "one of the factors to consider in [the § 1404(a) ] calculus.... Such a clause should receive neither dispositive consideration ... nor no consideration ... but rather the consideration for which Congress provided in § 1404(a)." *Kerobo v. S.W. Clean Fuels, Corp .,* 285 F.3d 531, 537–38 (6th Cir.2002). Although the forum-selection clause is a "significant factor" in deciding a change of venue motion, the Court should also consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.' " *Moses v. Bus. Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir.1991). There is little question that the Court has jurisdiction, that is, the power to adjudicate the claim, with respect to defendant Galt. The defendant's motion to dismiss based on Fed.R.Civ.P. 12(b)2, therefore, will be denied. However, the defendant may file a motion to transfer venue, if it now chooses to do so, on the basis of the forum selection clause in the contract and the applicable statute. However, in determining such a motion, the Court will be mindful of the inconvenience to the parties in splitting the cause of action which granting such a motion will require.

IV.

The Court finds that the plaintiff has stated a valid claim for tortious interference with a contract or business expectancy against defendant API. The plaintiff has failed in its attempt to state a valid cause of action in counts one, three and four of the complaint, however. Defendant Galt has not persuaded the Court that it lacks the power to adjudicate the claim against it.

Accordingly, it is ORDERED that the motion by defendant API Travelers, Inc. to dismiss the complaint for failure to state a claim upon relief can be granted [dkt # 10] IS GRANTED IN PART and DENIED IN PART.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1349928 (E.D.Mich.)
**(Cite as: 2002 WL 1349928 (E.D.Mich.))**

Counts one, three and four of the complaint are DISMISSED against defendant API Travelers, Inc. only.

It is further ORDERED that the motion by defendant Galt Enterprises, Inc. to dismiss for want of personal jurisdiction [dkt # 5] is DENIED.

E.D.Mich.,2002.
Thomas v. Galt Enterprises, Inc.
Not Reported in F.Supp.2d, 2002 WL 1349928 (E.D.Mich.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.