# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MICHELLE CAIN** and **RADHA SAMPAT**,
individually, and on behalf of all others
similarly situated,

               Plaintiffs,

                                    No. 2:12-cv-15014
vs.                            Hon. Gerald E. Rosen

**REDBOX AUTOMATED RETAIL, LLC**, a
Delaware Limited Liability Company,

               Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S
## <u>MOTION TO DISMISS</u>

### I. INTRODUCTION

Plaintiffs Michelle Cain and Radha Sampat (Plaintiffs) bring this putative class action against Defendant Redbox (Defendant), a video rental company, based upon Defendant's alleged disclosure to third parties of certain personal information obtained during Defendant's rental process. They assert three causes of action: (1) a violation of Michigan's Video Rental Privacy Act, M.C.L. § 445.1711 *et seq*; (2) breach of contract; and (3) unjust enrichment. Defendant has now moved to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6), which the parties have fully briefed.  Both parties have also filed supplemental material with this Court.[1]  Having reviewed and considered the parties' briefs, supplemental authorities, supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion.  Accordingly, the Court will decide Defendant's motion "on the briefs."  *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

### A.    The Michigan Video Rental Privacy Act

This case involves interpreting several provisions of Michigan's Video Rental Privacy Act (VRPA), which, as another Eastern District of Michigan Court recently noted, "is a state statute that lacks any significant litigation history." *Halaburda v. Bauer Pub. Co., LP*, 2013 WL 4012827, at *2 (E.D. Mich. Aug. 6, 2013) (Steeh, J.).  The VRPA has its origins in Judge Robert H. Bork's nomination to the United States Supreme Court, during which a Washington weekly

---

[1] On August 8, 2013, Plaintiffs filed a Motion for Leave to Submit Supplemental Authority. (Dkt. # 22).  Defendant timely responded. (Dkt. # 23).  On August 22, 2013, Defendant filed a Notice of Supplemental Authority and Plaintiffs filed a timely response. (Dkt. ## 24, 25).  The Court hereby grants Plaintiffs' Motion for Leave to Submit Supplemental Authority and takes notice of Defendant's supplemental authority.

newspaper obtained and published "a profile" of Judge Bork based on the titles of 146 films Judge Bork's family rented from a video store.  S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342.  Congress and several states responded, passing laws regulating the disclosure of video rental and purchase records.

The relevant provisions of the federal legislation, the Video Privacy Protection Act of 1988 (VPPA),[2] are as follows:

(1) A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d).

(2) A video tape service provider may disclose personally identifiable information concerning any consumer--

* * *

(B) to any person with the informed, written consent of the consumer given at the time the disclosure is sought;[3]

* * *

(E) to any person if the disclosure is incident to the ordinary course of business[4] of the video tape service provider;

---

[2] Plaintiffs do not assert a violation of the VPPA.  The Court sets forth its relevant provisions because as discussed further in text, the parties disagree over the extent to which the VPPA shapes the VRPA.

[3] After the events at issue in this lawsuit, Congress passed the Video Privacy Protection Act Amendments Act of 2012, amending this "written consent" exception.  18 U.S.C. § 2710(b)(2) (effective Jan. 10, 2013).

* * *

18 U.S.C. § 2710(b).

A year later, Michigan enacted the VRPA. The VRPA differs from the federal VPPA in several ways. It, in certain aspects, contains broader consumer protections. The VRPA, for example, also applies to "books or other written materials" and "sound recordings." M.C.L. § 445.1712. Moreover, though the VRPA's disclosure exceptions generally track the VPPA's disclosure exceptions, it does not include the VPPA's "ordinary course of business" exception. The VRPA's relevant provisions are as follows:

> Section 2:   Except as provided in section 3 or as otherwise provided by law, a person, or an employee[5] or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer,[6] a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.
>
> Section 3:   A record or information described in section 2 may be disclosed only in 1 or more of the following circumstances:

[4] "[T]he term 'ordinary course of business' means only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2).

[5] "'Employee' means a person who works for an employer in exchange for wages or other remuneration." M.C.L. § 445.1711(b). An "'[e]mployer' means a person who has 1 or more employees." § 445.1711(c).

[6] "'Customer' means a person who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording." M.C.L. § 445.1711(a).

4

(a) With the written permission of the customer.

\* \* \*

(d) If the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer. The person disclosing the information shall inform the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information.

\* \* \*

Section 5:   Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act. The customer may bring a civil action against the person and may recover both of the following:

(a) Actual damages, including damages for emotional distress, or $5,000.00, whichever is greater.

(b) Costs and reasonable attorney fees.

M.C.L. §§ 445.1712, 1713, 1715.

## B.      Redbox's Business Model and Plaintiffs' Allegations

Defendant rents (and sells) videos -- including those on DVDs and Blu-ray discs -- through a nationwide network of self-service kiosks. (Plfs' Compl., Dkt. # 1, at ¶ 17). When renting (or purchasing) a video at a kiosk, a customer must, at a minimum: (1) select a movie title; (2) pay with a credit/debit card; (3) enter an email address; and (4) enter a billing zip code. (*Id.* at ¶ 18). Defendant charges between $1.00 and $2.00 per day for each movie rental. (*Id.* at ¶ 19). Plaintiff

5

Cain rented movies from Michigan kiosks "on or around February 2, 2011 and February 5, 2011." (*Id.* at ¶ 27). Similarly, Plaintiff Sampat rented movies from Michigan kiosks "beginning in November 2010." (*Id.* at ¶ 35).

This lawsuit deals not with the rental process, but rather with what Defendant allegedly does with information collected during that process. In no uncertain terms, Plaintiffs assert that Defendant discloses customers' first and last names, email addresses, movie rental and purchase history, and debit/credit card information (characterized by Plaintiffs as "Personal Viewing Information") to third parties "each and every time a customer rents or purchases a movie or video from a Redbox kiosk." (*Id.* at ¶ 2). According to Plaintiffs, Defendant discloses this Personal Viewing Information to "an unrelated third party for something it calls 'service support' . . . [and] for analytics and promotions purposes." (*Id.* at ¶¶ 22, 25, 34, 42). Defendant disclosed this practice during the course of litigation involving a similar VPPA claim in the Northern District of Illinois. (*Id.* at ¶ 22; *see Sterk v. Redbox Automated Retail, LLC*, 11-cv-01729 (N.D. Ill. June 8, 2012)).

Plaintiffs claim that Defendant does not "seek or obtain the consent of a customer to share or otherwise disclose his or her Personal Viewing Information to third parties for any purpose." (*Id.* at ¶ 20). Plaintiffs did not give consent to Defendant to disclose their Personal Viewing Information to any third party and Defendant did not inform Plaintiffs in writing or otherwise that they could remove

6

their names at any time from third party disclosures.  (*Id.* at ¶¶ 30, 31, 33, 38, 39, 41).  As a result, Plaintiffs assert that Defendants caused "privacy and economic injuries," and additionally "deprived them of the full value of their paid-for rentals . . . [b]ecause Plaintiffs ascribe monetary value to the privacy of their Personal Viewing Information (including . . . Redbox's obligation to not disclose such information to third parties)."  (*Id.* ¶¶ 62-64).  They also "would not have rented or purchased any movie or video material from Redbox had they known that Redbox would disclose their Personal Viewing Information to third parties in violation of the VRPA."  (*Id.* at ¶ 71).

Based upon this alleged practice, Plaintiffs bring three causes of action: a violation of the VRPA, breach of contract, and unjust enrichment.  First, Plaintiffs assert that Defendant's disclosure of Personal Viewing Information for the purpose of "service support" and for "analytics and promotions purposes" violates the VRPA.  Second, Plaintiffs claim that they entered into a binding contract with Defendant for video material rentals, that they would not have done so had they known Defendant was going to disclose their Personal Viewing Information to third parties, that the VRPA imposed non-disclosure terms on the contract, and that Defendant breached this contract by disclosing their Personal Viewing Information to third parties.  Third and finally, Plaintiffs assert a claim of unjust enrichment in the alternative to their breach of contract claim.

7

Defendant has now moved to dismiss Plaintiffs' Complaint, raising issues concerning Plaintiffs' standing, timeliness, and statutory interpretation. For the reasons set forth below, this Court denies Defendant's Motion.

### III. DISCUSSION

**A.     Rule 12 Standard**

**1.     Rule 12(b)(1)**

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison–Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996). A district court may "resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction." *Id.* Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Ritchie,* 15 F.3d at 598. In matters regarding subject matter jurisdiction, the

8

court may look to evidence outside the pleadings. *Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir. 2003).

### 2. Rule 12(b)(6)

In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

The Sixth Circuit has emphasized that the "combined effect of *Twombly* and *Iqbal* [is to] require [a] plaintiff to have a greater knowledge . . . of factual details

in order to draft a 'plausible complaint.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (citation omitted). Put another way, complaints must contain "plausible statements as to when, where, in what or by whom," *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011), in order to avoid merely pleading an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## B.    Standing

Defendant claims that Plaintiffs satisfy neither Article III nor statutory standing. When faced with a question of subject matter jurisdiction, a court must address that issue before all others. *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983); *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood,* 327 U.S. 678, 682 (1946) ("The Court will consider the 12(b)(1) motion first, as the 12(b)(6) challenge becomes moot if subject matter jurisdiction is lacking."). "[A] plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007).

Judge Steeh of this District recently, and comprehensively, addressed Article III and statutory standing in the context of a VRPA claim. In *Halaburda*, the plaintiffs asserted a VRPA claim against magazine publishers for allegedly selling

their information to third-parties without permission.  2013 WL 4012827, at *1.
The *Halaburda* plaintiffs sought, just as Plaintiffs do here, injunctive relief, the
greater sum of actual damages or $5,000, and costs and reasonable attorneys' fees.
*Id*. at *2.  The publishers then moved to dismiss the plaintiffs' complaint, arguing
that "because plaintiffs have not pleaded any 'damages' under the act, they do not
have standing to bring suit under it."  *Id.*

In finding that the *Halaburda* plaintiffs met Article III's injury-in-fact
requirement, Judge Steeh found that "[u]nlike the VPPA, a close reading of the
VRPA reveals that it contains absolutely no language to require that a claimant
suffer any actual injury apart from a violation of the statute."  *Id.* at *4.  Judge
Steeh "ha[d] some hesitation in finding that these allegations meet the definition of
an injury in fact, which the Supreme Court has described as 'an invasion of a
legally protected interest which is . . . concrete and particularized,' and an
'irreducible constitutional minimum of standing."  *Id.* at *5 (quoting *Lujan v.
Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).  Hesitation aside, Judge Steeh
could not "sufficiently distinguish [*Halaburda*] from that of *Beaudry v. TeleCheck
Servs., Inc.* 579 F.3d 702 (6th Cir. 2009), a case where the Sixth Circuit
determined that the Fair Credit Reporting Act included 'actual damages' as a form
of relief in the *alternative* to statutory damages, and thus found the statute did not

require a showing of actual damages." *Id.* Judge Steeh then quoted extensively

from *Beaudry*:

> No Article III (or prudential) standing problem arises, it bears adding,
> if Beaudry is permitted to file this claim. Congress "has the power to
> create new legal rights, [including] right[s] of action whose only
> injury-in-fact involves the violation of that statutory right," *In re
> Carter,* 553 F.3d 979, 988 (6th Cir.2009), and the two constitutional
> limitations on that power do not apply here. First, Beaudry must be
> "among the injured," in the sense that she alleges the defendants
> violated her statutory rights. *Id.; see Sierra Club v. Morton,* 405 U.S.
> 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (string citation
> omitted). Yet that limit poses no obstacle here: Beaudry alleged that
> she was one of the consumers about whom the defendants were
> generating credit reports based on inaccurate information due to their
> failure to update their databases to accommodate the new Tennessee
> driver's license numbering system. She thus has alleged that the
> defendants' failure to follow "reasonable procedures to assure
> maximum possible accuracy" of credit reporting information occurred
> "with respect to" her, as the statute requires. 15 U.S.C. §§ 1681 e(b),
> 1681 n(a). Second, although a right created by Congress "need not be
> economic in nature, it still must cause individual, rather than
> collective, harm." *Carter,* 553 F.3d at 989. The Act's statutory
> damages claim clears this hurdle as well: It does not "authorize suits
> by members of the public at large," *id.;* it creates an individual right
> not to have unlawful practices occur "with respect to" one's own
> credit information, 15 U.S.C. § 1681 n. This nexus between the
> individual plaintiff and the legal violation thus suffices to sustain this
> statutorily created right. *See Havens Realty Corp. v. Coleman,* 455
> U.S. 363, 373, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (string citation
> omitted) (sustaining the right of Fair Housing Act market testers to
> receive "truthful information concerning the availability of housing"
> from sellers, even in the absence of any further harm).

*Id.* (quoting *Beaudry*, 579 F.3d at 707). Judge Steeh further reconciled the

*Beaudry* case with the Supreme Court's statement in *Raines v. Byrd*, 521 U.S. 811,

820 n.3 (1997), that "[i]t is settled that Congress cannot erase Article III's standing

requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing:"

> [T]he issue in *Raines* was altogether different than that in this case. There, six members of the U.S. Congress whose votes on a particular law were in the minority, sought to invalidate a federal law as unconstitutional.  Plaintiffs in *Raines* were found to lack Article III standing for the reason that they had alleged only a "wholly abstract and widely dispersed" institutional injury, and no individual injury. This case falls in line with *Beaudry,* but not with *Raines.*  Here, a statute was created by a state legislature to protect individual consumers from certain disclosures of their personal information.

*Halaburda*, 2013 WL 4012827, at * 5-6 (internal citation omitted).  Accordingly, the *Halaburda* plaintiffs, "as those in the *Beaudry* case, . . . satisfied Article III standing requirements."  *Id.* at *6.

Judge Steeh also succinctly addressed whether the *Halaburda* plaintiffs had statutory standing given that they did not allege injuries other than statutory violations:

> Concerning the issue of statutory standing, defendants contend that the VRPA "does not allow a cause of action based on a mere statutory violation."  (Doc. # 29 at 6.)  Defendants concede that the Michigan courts have not made this determination, but cite to a federal case from the Western District of Michigan, *Vinton v. CG's Prep Kitchen and Café,* 2010 WL 748221 at *1, to support this assertion.  The *Vinton* plaintiff's claim was brought under the Michigan Consumer Protection Act ("MCPA"), asserting a violation based on the defendant's issuance of a credit card receipt containing the entirety of his credit card number.  Because the court found the MCPA did not confer standing to a person alleging only a technical violation of the statute, but required the demonstration of "a loss as a result of a

13

violation of this Act," it found no claim had been stated under the MCPA.

As plaintiffs argue, unlike the MCPA, which limits recovery to individuals suffering "a loss as a result of violation of this Act," Mich. Comp. Laws Ann. § 445.911(2), there is no such requirement in the VRPA. In fact, the VRPA explicitly provides for statutory damages of $5,000 as an alternative to actual damages. The court questions how liability under the statute could possibly be construed to require a showing of actual damages when the state legislature has explicitly allowed for statutory damages.

In contrast, defendants contend that the language of the VRPA itself supports their position. Defendants quote from the section of the statute that states "a person who violates this act shall be liable in a civil action for *damages to the customer* identified in a record or other information that is disclosed in violation of this act." Mich. Comp. Laws Ann. § 445.1715. Defendants highlight the four words "damages to the customer" and assert that where a customer has shown no damages he or she can have no viable claim under the statute. However, the court notes that the four words "damages to the customer" have been taken out of the context of the rest of that sentence by defendants. In fact, the word damages is part of the phrase "for damages," and the word customer is a part of the phrase "to the customer (identified in a record or other information . . . )." The court reads these words simply as meaning that the entity violating the statute will face liability for damages, payable to individuals improperly identified as prohibited by the act. Moreover, this reading is in harmony with the fact that the legislature included a statutory damages provision, discussed above. Dismissal of the VRPA claims will not be granted for a lack of statutory standing.

*Id.* at *6.

Judge Steeh's discussion on Article III and statutory standing in *Halaburda* is well-reasoned and persuasive. This Court also echos Judge Steeh's "hesitation" with regards to whether Plaintiffs meet the "injury-in-fact" definition, but like

14

Judge Steeh, cannot distinguish this matter from *Beaudry*.  Defendant attempts to distinguish *Halaburda* by noting that unlike in that case, Plaintiffs here do not allege that Defendant *sold* customer information.  (Def's Resp., Dkt. # 23, at 1).  How Defendant allegedly violated the VRPA makes no difference for the purpose of Article III standing.  Here, as with in *Halaburda* and *Beaudry*, Plaintiffs have sufficiently alleged a violation of their statutory rights under the VRPA to trigger Article III standing.

As to statutory standing, Defendant repeats the same argument put forth by the magazine publishers in *Halaburda*, stating "[t]he VRPA expressly requires a plaintiff asserting a civil claim to have been 'damage[d],' and although the statute provides a minimum quantification of such damages, $5,000, it does not provide for any award without actual damages having occurred."  (Def's Br., Dkt. # 10, at 23) (alteration in original).  As Judge Steeh pointed out, such an interpretation lifts words out of context.  *Halaburda*, 2013 WL 4012827, at *6.  The entire provision -- "a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act" -- simply "mean[s] that the entity violating the statute will face liability for damages, payable to individuals improperly identified as prohibited by the act. Moreover, this reading is in harmony with the fact that the legislature included a statutory damages provision."  *Id.* (citing M.C.L. § 445.1712).

Accordingly, the Court declines to dismiss Plaintiffs' Complaint for want of standing.  *See also Sterk v. Redbox Automated Retail, LLC*, 2013 WL 4451223, at *3-4 (N.D. Ill. Aug. 16, 2013) (allegation that Redbox violated the plaintiffs' "privacy rights, recognized and protected by the VPPA" by disclosing customer information to third-party vendors was "sufficient to confer standing").

## C.      Plaintiff's Count I – Violation of the VRPA

Having found that Plaintiffs have standing, the Court next addresses Defendant's remaining arguments concerning Plaintiffs' VRPA claim: (1) the VRPA only prohibits the public disclosure of information; (2) the VRPA's "otherwise provided by law exception" reads in the VPPA's "ordinary course of business exception;" and (3) Plaintiffs agreed to certain terms governing their rental of DVDs, including consenting to the disclosure of their information and a one-year statute of limitations.  Each of these arguments, at this stage in the litigation, are without merit.

### 1.      Public disclosure of information

Defendant asserts that Plaintiffs have failed to state a claim under the VRPA because they have not alleged that it "disclosed their 'Personal Viewing Information' *publicly*; rather, Plaintiffs' allegations refer only to disclosures among and between Redbox and service providers with whom it contracts to provide services for its own customers."  (Def's Br., Dkt. # 10, at 17).  In support of this

16

position, Defendant focuses on Section 2 of the VRPA, which prohibits disclosure by "a person, or an employee or agent of the person, engaged in the business of . . . renting . . . video recordings."  M.C.L. § 445.1712.  It argues that "by definition, any disclosure among and between Redbox and any of its contractors specifically retained to provide customer-service related responsibilities cannot properly be viewed as a violation of this provision."  (Def's Br., Dkt. # 10, at 18).  Plaintiff counters, asserting that Section 2 requires agents to also be "engaged in the business of . . . renting . . . video recordings" and that the Complaint affirmatively identifies the third-party vendors as "unrelated" entities engaged in providing "service support," "analytics," and "promotions."  (Plfs' Resp., Dkt. # 16, at 16).

The Court need not decide, however, whether the VRPA only prohibits "public" disclosures.  The nature and scope of an agency relationship is generally a question of fact.  *Cent. States Se. and Sw. Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1112-13 (6th Cir. 1986); *Innotext, Inc. v. Petra'Lex USA Inc.,* 694 F.3d 581, 589-90 (6th Cir. 2012); *Friedman v. Freidberg Law Corp.*, 44 F. Supp. 2d 902, 908 (E.D. Mich. 1999) (collecting cases); *Lincoln v. Fairfield-Nobel Co.*, 76 Mich. App. 514, 519 (1977).  If a written agreement defines the scope of an agent-principal relationship, however, a Court must determine the nature of the relationship.  *See, e.g., Birou v. Thompson-Brown Co.*, 67 Mich. App. 502, 506-07 (1976).  Even assuming that the VRPA only prohibits "public disclosures," this

17

Court must take Plaintiffs' allegations regarding the relationship between Defendant and its "unrelated" vendors as true. Whether these third-party vendors are agents within the VRPA's statutory definition, therefore, is best left for discovery.

### 2.    Otherwise provided by law exception

Next, Defendant posits another interesting statutory interpretation argument. The VRPA essentially provides two general categories of exceptions to its non-disclosure mandate: (1) those exceptions contained in Section 3, like upon consent or "[i]f the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer;" and (2) those that are "otherwise provided by law." M.C.L. § 445.1712; 445.1713. Focusing on this latter category, Defendant asserts that the "otherwise provided by law" language "can only be interpreted to include the federal VPPA," and more specifically, its "ordinary course of business" exception. (Def's Br., Dkt. # 10, at 21). "The term 'ordinary course of business' is 'narrowly defined' in the [VPPA] to mean 'only debt collection activities, order fulfillment, request processing, and the transfer of ownership.'" *Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004) (citation omitted). Plaintiffs' claim fails, asserts Defendant, because "[t]he use of a vendor to provide customer service . . . falls within th[e] definition as a core ordinary course of business activity and is therefore expressly permitted." (Def's Br., Dkt. # 10, at 21).

Plaintiffs naturally disagree with this interpretation. They note that the VPPA "preempt[s] only the provisions of State or local law that require disclosure prohibited by [the VPPA]." 18 U.S.C. § 2710(f). Accordingly, because "Michigan's VRPA is one state law that provides protections that go beyond those afforded by the federal VRPA" -- it covers more than just videos and does not provide for an "ordinary course of business" exception -- Plaintiffs argue Defendant's interpretation would essentially render the VRPA meaningless. (Plfs' Br., Dkt. # 16, at 13-15).

As with the public disclosure issue, this Court need not make a determination as to whether the VRPA's "otherwise provided by law" exception incorporates those disclosures permitted by the VPPA. Here, Plaintiffs' assertions that Defendant shared information for the purpose of service support, promotions, and analytics do not appear to fall into the narrow categories of "debt collection activities, order fulfillment, request processing, and transfer of ownership." 18 U.S.C. § 2710(a)(2). Their factual allegations do not -- on their face -- fit into the definition of "ordinary course of business" exception. This is a question that is best answered during discovery, not upon a motion to dismiss. *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *7 (N.D. Cal. Aug. 10, 2012) (whether defendant's disclosures to third-parties were in the "ordinary course of business . . . are factual questions that cannot be resolved in a motion to dismiss").

19

### 3.    Consent and Timeliness

Defendant's remaining arguments regarding Plaintiffs' VRPA claim center around two provisions contained within Defendant's "Terms of Use" (Terms) and its "Privacy Policy" (which is incorporated into the Terms) that it asserts sets the conditions of Plaintiffs' DVD rentals.   Specifically, Defendant argues that the Terms: (1) show that Plaintiffs provided Defendant with permission to disclose their information to third-parties that "perform a variety of functions [for Defendant], such as fulfilling orders, assisting with promotions, providing technical services for our web site, etc.;" and (2) required Plaintiffs to file this action "within one (1) year after such claim or cause of action arose."  (Ex. A to Def's Mtn., Dkt. # 10-2, at ¶¶ 3-4 and Exs. 1 & 2 thereto).  In support, Defendant attaches copies of the applicable Terms, screenshots of the kiosk screens where consumers "agree" to the Terms, its Privacy Policy, and an affidavit attesting that "it is impossible for a customer to complete a rental or purchase transaction without clicking a button accepting the Terms of Use."  (*Id.* at Exs. 1-4). Consideration of these arguments and materials are, however, inappropriate at this stage in the litigation.

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ.

P. 12(d).  It is well-settled that a court "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the motion to dismiss so long as they are referred to in the Complaint and central to the claims contained therein."  *Bassett v. Nat'l Collegiate Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008); *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.") (internal citations omitted).  A court may not, however, consider materials outside the pleading that "rebut, challenge, or contradict anything in the plaintiffs' complaint" without converting the motion to a Rule 56 motion for summary judgment.  *Song v. City of Elyria*, 958 F.2d 840, 842 (6th Cir. 1993); *Mediacom Se. LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396, 399-400 (6th Cir. 2012) (reversing district court's dismissal when it relied upon material that "directly conflict[ed]" with the facts set forth in the plaintiff's complaint); *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) (similar).  In short, while "documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of

the document." *Mediacom*, 672 F.3d at 400 (internal citations, quotations, and alterations omitted).

In addition to these general principles governing motions to dismiss under Fed. R. Civ. P. 12(b)(6), the Sixth Circuit has emphasized that because the statute of limitations is an affirmative defense, a motion under 12(b)(6) "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). There are exceptions to this general rule, including if "the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* (citing *Jones v. Bock,* 549 U.S. 199, 215 (2007)).

Plaintiffs' factual averments render consideration of Defendants' materials inappropriate at this time. It is true that Plaintiffs referred to the Terms in their Complaint. That said, Plaintiffs, in no uncertain terms, *only* alleged that the Terms "were never displayed, or even referred to, during their [rental] transactions" and that the kiosks did not "direct Plaintiffs to Redbox's website or condition their rentals upon acceptance of such Terms." (Plfs' Compl., Dkt. # 1, at ¶ 60). They also affirmatively state that they "never consented, in any way, to Redbox's disclosure of their Personal Viewing Information to third parties." (*Id.*). Plaintiffs' factual assertions necessitate a finding that Defendant's materials are *not* central to Plaintiffs' claims, and even if they were, they improperly contradict Plaintiffs'

assertions that they *did not* agree to the Terms. The Court, therefore, excludes these materials from consideration. *See also Sterk v. Redbox Automated Retail, LLC*, 806 F. Supp. 2d 1059, 1070 (N.D. Ill. 2011), *rev'd on other grounds*, 672 F.3d 535 (7th Cir. 2012) (rejecting Redbox's similar argument in VPPA litigation because the plaintiff's complaint alleged that "Redbox's policy was not identified or made available to him and thus that he was not given an opportunity, in a clear and conspicuous manner, to prohibit disclosure").

After excluding these materials, Defendant's waiver and statute of limitations arguments do not hold water at this juncture.

**D.   Plaintiff's Remaining Claims -- Breach of Contract and Unjust Enrichment**

Defendant asserts that Plaintiffs' contract and quasi-contract claims fail, resting mainly on the argument that these claims are "contingent upon a violation of the VRPA." (Def's Br., Dkt. # 10, at 18). Given the discussion above concerning Plaintiffs' VRPA claim, the Court now turns to Defendant's alternative arguments.

As to the breach of contract claim, Defendant essentially repeats its standing argument -- "Plaintiffs' breach of contract claim . . . fails without an allegation of actual damage." (*Id.*). Plaintiffs respond by asserting that "they didn't receive the full benefit of their bargain with Redbox (which included protecting their Personal Viewing Information in accordance with the VRPA)." (Plfs' Br., Dkt. # 16, at 35).

23

In other words, Plaintiffs allege that "they incurred actual monetary damages" because "a portion of the price of each Redbox rental paid for by Plaintiffs . . . was intended to ensure the confidentiality of Plaintiffs' . . . Personal Viewing Information."  (Plfs' Compl., Dkt. # 1, at ¶ 74.).  Though the Court expresses some skepticism regarding this overpayment theory, taking this allegation as true, Plaintiffs have adequately alleged some actual damage.  Moreover, the Court notes that Michigan "law infers some damage -- at least nominal damage -- from the breach of a contract."  *4041-49 W. Maple Condominium Ass'n v. Countrywide Home Loans, Inc.*, 282 Mich. App. 452, 460 (2009) (citation omitted).

Defendant similarly attacks Plaintiffs' unjust enrichment claim on the grounds that Plaintiffs received the benefit of the bargain -- the movies they rented. (Def's Br., Dkt. # 10, at 27-28) (citing, *inter alia*, *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934 (6th Cir. 1989)).   As set forth above, however, Plaintiffs assert part of the bargain was not just to rent movies.  Though the Court again expresses skepticism as to the ability of Plaintiffs to prove this is the case during discovery, this Court must take Plaintiffs' Complaint at its word.  Finally, Defendant is absolutely correct that parties cannot recover under the theory of unjust enrichment when an express contract exists. *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996) ("Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party

24

cannot recover for promissory estoppel and unjust enrichment.").  The problem, however, is that Defendant cannot rely upon the Terms to "preclude any unjust enrichment claim as a matter of law" as it suggests (Def's Br., Dkt. # 10, at 27) because Plaintiffs expressly allege that they never agreed to the Terms.  And, to the extent Defendant argues that the Plaintiffs' breach of contract claim -- which is not predicated upon the Terms -- also defeats their unjust enrichment claim, they have pled this quasi-contract claim in the alternative.  Plaintiffs have, in so many words, "kept [their] options open [for the possibility that Defendant] . . . may deny the existence of a contract."  *Terry Barr Sales Agency*, 96 F.3d at 182 (reinstating dismissal of quasi-contract claims and noting that if the defendant admits the existence of a valid contract, "it will be appropriate for the district court to dismiss [plaintiffs]' claims for unjust enrichment and promissory estoppel at that time.").

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [Dkt. # 10] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to Submit Supplemental Authority in Support of Their Response to Defendant's Motion to Dismiss [Dkt. # 22] is GRANTED.

**IT IS SO ORDERED.**

Dated:  November 12, 2013             s/Gerald E. Rosen
                                     GERALD E. ROSEN
                                     CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 12, 2013, by electronic and/or ordinary mail.

                                     s/Julie Owens
                                     Case Manager, 313-234-5135