## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

MICHELLE CAIN and RADHA SAMPAT,

       Plaintiffs,

v.

REDBOX AUTOMATED RETAIL, LLC,

       Defendant.

Case No. 2:12-cv-15014-GER-LJM
Honorable Gerald E. Rosen
Mag. Judge R. Steven Whalen

_____

## REDBOX AUTOMATED RETAIL, LLC'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Redbox Automated Retail, LLC ("Redbox") hereby moves for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on all counts of Plaintiffs' Complaint. In support of this Motion, Redbox is contemporaneously filing a Brief and the Declaration of Michael Wokosin, which are incorporated herein.

Redbox hereby certifies that pursuant to Local Rule 7.1(a), there was a conference between attorneys for Plaintiffs and for Redbox on August 28, 2014 in which Redbox explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

**WHEREFORE**, Defendant Redbox Automated Retail, LLC respectfully requests that this Court enter an Order granting this motion, entering judgment in Redbox's favor and against Plaintiffs on all claims, and granting such other and further relief as this Court deems necessary and proper.

Dated:  September 5, 2014          Respectfully submitted,

                                   /s/  John Grossbart

Peter B. Kupelian (P31812)         Donna J. Vobornik
Carol G. Schley (P51301)           John Grossbart
CLARK HILL PLC                     Anthony T. Eliseuson
500 Woodward Avenue, Suite 3500    DENTONS US LLP
Detroit, MI  48226                 233 South Wacker Drive, Suite 7800
pkupelian@clarkhill.com            Chicago, IL  60606
cschley@clarkhill.com              (312) 876-8000
                                   (312) 876-7934 (fax)
                                   donna.vobornik@dentons.com
                                   john.grossbart@dentons.com
                                   anthony.eliseuson@dentons.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHELLE CAIN and RADHA SAMPAT,

      Plaintiffs,

                                  Case No. 2:12-cv-15014-GER-LJM

v.                               Honorable Gerald E. Rosen

                                  Mag. Judge R. Steven Whalen

REDBOX AUTOMATED RETAIL, LLC,

      Defendant.

_____

## BRIEF OF REDBOX AUTOMATED RETAIL, LLC
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Peter B. Kupelian (P31812)
Carol G. Schley (P51301
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, MI  48226
pkupelian@clarkhill.com
cschley@clarkhill.com

Donna J. Vobornik
John Grossbart
Anthony T. Eliseuson
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@dentons.com
john.grossbart@dentons.com
anthony.eliseuson@dentons.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

# TABLE OF CONTENTS

**Page**

LOCAL RULE 7.1 STATEMENT OF ISSUES PRESENTED...............................i

CONTROLLING AND MOST APPROPRIATE AUTHORITIES...................... iii

INTRODUCTION ..............................................................................................1

STATEMENT OF UNDISPUTED FACTS ........................................................3

I.  Redbox's Business Model. ....................................................................3

II.  Plaintiffs Cain's And Sampat's Rental History...............................................4

III.  Redbox's Use Of Agents In The Ordinary Course Of Its Business. ...............4

    A.  Service providers that do *not* have *any* personal rental histories..........4
    B.  Redbox's customer service agents may access personal rental history in order to respond to a specific customer's request................6

IV.  Plaintiffs' Claims. ....................................................................................8

LEGAL STANDARDS ........................................................................................8

ARGUMENT .......................................................................................................9

I.  Redbox is Entitled to Summary Judgment Against Michelle Cain Because Her Personal Rental History Was Never Disclosed.........................9

II.  Plaintiff Sampat's Information Was Only Accessed By Redbox's Customer Service Agents, Which Is Not Prohibited By The VRPA. ...........10

    A.  Ms. Sampat's call with Redbox's customer service agent.................10
    B.  The VRPA does not prohibit disclosure of information between Redbox and its employees or agents. ..................................................11

        1.  Redbox's customer service agents are "agents" as that term is ordinarily used.........................................................................11
        2.  Redbox's customer service agents serve as Redbox's primary business representative with its customers. .............................12
        3.  Redbox's control of the customer service process further demonstrates the agency relationship for VRPA purposes.......13

C.      No other service provider receives personal rental history.................15

III.    Any Disclosure To Redbox's Customer Service Agents Also Falls Within Two Express Exceptions To The VRPA...........................................16

      A.      Plaintiffs consented to the disclosure of their personal rental histories to Redbox's agents................................................16

      B.      The "ordinary course of business" exception also applies.................19

IV.    Plaintiffs' Claims Are Also Time Barred. ....................................................21

V.    Plaintiffs' Complaint Should Be Dismissed For Lack Of Article III Jurisdiction Given Plaintiffs Suffered No Injury In Fact. ............................23

CONCLUSION ................................................................................................24

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avio Inc. v. Alfoccino, Inc.*,
  No. 2:10-cv-10221, 2014 WL 1870108 (E.D. Mich. May 9, 2014)...........8, 9, 24

*Beaudry v. TeleCheck Servs., Inc.*
  579 F.3d 702 (6th Cir. 2009) ..............................................................................23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...............................................................................................9

*Certain Underwriters at Lloyd's London v. Warrantech Corp.*,
  461 F.3d 568 (5th Cir. 2006) ...............................................................................20

*Clay v. Kuhl*,
  727 N.E.2d 217 (Ill. 2000)...................................................................................22

*Druyan v. Jagger*,
  508 F. Supp. 2d 228 (S.D.N.Y. 2007) .................................................................16

*Freedberg v. Ohio Nat'l Ins. Co.*,
  975 N.E.2d 1189 (Ill. App. Ct. 2012) .................................................................19

*Fteja v. Facebook, Inc*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................................................................16

*Halasa v. ITT Educ. Servs.*,
  690 F.3d 844 (7th Cir. 2012) ...............................................................................19

*Medrano v. Prod. Eng'g Co.*,
  774 N.E.2d 371 (Ill. App. Ct. 2002) ...................................................................22

*Moldowan v. City of Warren*,
  578 F.3d 351 (6th Cir. 2009) .................................................................................9

*Montgomery Ward & Co. v. Williams*,
  330 Mich. 275 (1951) ..........................................................................................19

*Pack v. Damon Corp.*,
  434 F.3d 810 (6th Cir. 2006) .................................................................................9

*Rory v. Cont'l Ins. Co.*,
    703 N.W.2d 23 (Mich. 2005)..............................................................................22

*Smith v. Prime Cable of Chicago*,
    658 N.E.2d 1325 (Ill. App. Ct. 1995) ................................................................19

*St. Clair School Dist. v. Intermediate Educ. Ass'n./Mich. Educ. Ass'n.*,
    458 Mich. 540 (1998) .................................................................................12, 13

*Sterk v. Redbox Automated Retail, LLC*,
    11 C 1729, 2013 WL 4451223 (N.D. Ill. Aug. 16, 2013) ..........................*passim*

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
    3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007).....................18

*Travis v. ADT Sec. Servs., Inc.*,
    884 F. Supp. 2d 629 (E.D. Mich. 2012) ............................................................18

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)...........................................................................................20

*United States v. Ntreh*,
    279 F.3d 255 (3d Cir. 2002) ............................................................................19

*W. Michigan Univ. Bd. of Control v. State*,
    455 Mich. 531 (1997) ......................................................................................11

*Whyde v. Rockwell Int'l Corp.*,
    101 F. App'x 997 (6th Cir. 2004) ....................................................................10

## Statutes

18 U.S.C. § 2710 *et seq.*....................................................................................*passim*

Mich. Comp. Laws § 445.1711 *et seq.* ...............................................................*passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(1)............................................................................................ ii

Fed. R. Civ. P. 56 ...............................................................................................8, 9

## **LOCAL RULE 7.1 STATEMENT OF ISSUES PRESENTED**

In this putative state wide class action, in which Plaintiffs assert claims against Defendant Redbox Automated Retail, LLC ("Redbox") under the Michigan Video Rental Privacy Act, MCL § 445.1711, *et seq*. ("VRPA") (Count I), and derivative claims for breach of contract (Count II) and unjust enrichment (Count III), the questions presented by this Motion are:

1.     Whether Redbox is entitled to summary judgment because there is no evidence Plaintiff Michelle Cain's "personal rental history"—information that would specifically identify her as having rented a specific movie—was disclosed to any person, not even to Redbox's customer service provider?

**Defendant Redbox says:  YES.**

2.     Whether Redbox is entitled to summary judgment because the disclosure of Plaintiff Radha Sampat's personal rental history to Redbox's customer service provider in order to allow the customer service agent to verify Ms. Sampat's transaction to provide her with free credits falls outside the scope of the VRPA because the statute does not regulate disclosures between a company and its own employees and agents?

**Defendant Redbox says:  YES.**

i

3.     Whether Redbox is entitled to summary judgment on all of the claims in Plaintiffs' Complaint because Plaintiffs consented to Redbox's practices, even assuming they were disclosures within the scope of the Michigan VRPA?

**Defendant Redbox says: YES.**

4.     Whether Redbox is entitled to summary judgment as to all Plaintiffs' claims because any disclosures would be permissible under the federal VPPA's "ordinary course of business" exception that is incorporated into the Michigan VRPA?

**Defendant Redbox says:  YES.**

5.     Whether Redbox is entitled to summary judgment on all of the  claims in Plaintiffs' Complaint because their transactions were governed by Terms of Use to which Plaintiffs are bound, and those Terms require any suit to be filed within one-year of the rental, a time period that expired before this suit was filed?

**Defendant Redbox says:  YES**

6.     Whether Plaintiffs' Complaint is subject to dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs have not suffered any injury in fact and therefore lack Article III standing to bring any claim?

**Defendant Redbox says:  YES**

## <u>CONTROLLING AND MOST APPROPRIATE AUTHORITIES</u>

I.    **Redbox is Entitled to Summary Judgment Against Michelle Cain Because Her Personal Rental History Was Never Disclosed.**

Michigan Video Rental Privacy Act, MCL § 445.1711.

*W. Michigan Univ. Bd. of Control v. State*, 455 Mich. 531 (1997).

II.   **Plaintiff Sampat's Information Was Only Accessed By Redbox's Customer Service Agents, Which Is Not Prohibited By The VRPA.**

Michigan Video Rental Privacy Act, MCL § 445.1712

*St. Clair School Dist. v. Intermediate Educ. Ass'n./Mich. Educ. Ass'n.*, 458 Mich. 540 (1998).

Restatement (Third) of Agency §14.

III.  **Any Disclosure To Redbox's Customer Service Agents Also Falls Within Two Express Exceptions To The VRPA.**

Michigan Video Rental Privacy Act, MCL § 445.1712-13.

Federal Video Privacy Protection Act, 18 U.S.C. § 2710.

*Sterk v. Redbox Automated Retail, LLC*, 11 C 1729, 2013 WL 4451223 (N.D. Ill. Aug. 16, 2013).

IV.   **Plaintiffs' Claims Are Also Time Barred.**

*Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23 (Mich. 2005).

*Medrano v. Prod. Eng'g Co.*, 774 N.E.2d 371 (Ill. App. Ct. 2002).

*Clay v. Kuhl*, 727 N.E.2d 217 (Ill. 2000).

**V.      Plaintiffs' Complaint Should Be Dismissed For Lack Of Article III Jurisdiction Given Plaintiffs Suffered No Injury In Fact.**

*Avio Inc. v. Alfoccino, Inc.*, No. 2:10-cv-10221, 2014 WL 1870108 (E.D. Mich. May 9, 2014).

## INTRODUCTION

Plaintiffs brought this putative Michigan class action alleging Redbox violated their privacy interests as protected by the Michigan Video Rental Privacy Act, MCL § 445.1711, *et seq*. ("VRPA").  The Michigan VRPA, like the federal Video Privacy Protection Act ("VPPA"), prohibits certain disclosures of information that identifies both a specific movie and the specific identity of the person that rented that movie ("personal rental history").  The VRPA makes clear that communication or disclosure of personal rental history among a company's own "employees or agents" falls outside the scope of the VRPA.  Yet, it is precisely that sort of communication that this lawsuit challenges: Redbox's decision to outsource certain core business functions to service providers, such as its customer service provider.

Plaintiffs' claims fail for a multitude of independent reasons, each of which entitles Redbox to summary judgment.  Indeed, as an initial matter, after completing discovery, the factual record indisputably shows that Plaintiff Michelle Cain's personal rental history was not disclosed at all—not even to Redbox's customer service agents.  Thus, even under her own misplaced view of the VRPA, she has no claim.

Plaintiff Radha Sampat's personal rental history was disclosed only on a single occasion, when Ms. Sampat called Redbox's customer service agent over a year *after* this lawsuit was filed.  But the VRPA does not prohibit  disclosures

between Redox and its employees or agents.  Rather, the VRPA only applies to disclosures made *by* a company and its employees or agents *to other* persons. Redbox's customer service provider is an agent for Redbox.  The customer service agents act under Redbox's control and on Redbox's behalf in interacting with Redbox's customers in ways that bind Redbox.

Plaintiffs' claims also fail because even if such disclosures were subject to the VRPA (which they are not), the disclosures would also fall within two express exceptions in the statute.  First, Plaintiffs gave written permission to Redbox for any disclosures by accepting and agreeing to be bound by express Terms of Use. The Terms of Use referenced Redbox's privacy policy which informed Plaintiffs that their information would be shared with Redbox's service providers.  Plaintiffs' decision to accept those terms constitutes written permission to do exactly what is being complained of in this suit.  Second, the alleged disclosure falls within the federal VPPA's "ordinary course of business" exception—incorporated by reference into the Michigan VRPA—for the same reasons as the court in the Northern District of Illinois held in a similar action (brought by these same Plaintiffs' counsel here).  *Sterk v. Redbox Automated Retail, LLC*, 11 C 1729, 2013 WL 4451223 (N.D. Ill. Aug. 16, 2013) (attached as Exhibit 4).

Finally, Plaintiffs' claims are time-barred by the one-year contractual limitations period contained in Redbox's Terms of Use.  Plaintiffs were on notice

of the allegedly wrongful practices because those practices were explained in Redbox's privacy policy available to them before their initial rentals, which occurred over a year prior to the filing of the Complaint.

Therefore, for all the foregoing reasons, each of which independently bars Plaintiffs' claims, Redbox is entitled to summary judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

### I.    Redbox's Business Model.

Redbox started renting movies to the public in 2002, and is now the nation's leading video rental service of digital video discs ("DVDs") and Blu-ray® discs. *See* Wokosin Decl. at ¶ 3.  Redbox does not have any stores; rather, customers rent through automated, self-service kiosks located in various retail outlets, such as grocery stores, mass merchant retailers, drugstores, restaurants, and convenience stores nationwide.  *Id.* at ¶ 4.  Customers can either go directly to the kiosk and browse the available inventory, or they can reserve a movie in advance through various avenues, including from its website and free mobile applications.  *Id.* After making a selection, consumers swipe a credit card or other payment card, and the kiosk dispenses the DVD or Blu-ray disc selected.  *Id.*  Customers may choose to provide their email address during this transaction in order to receive transactional receipts and notifications, but there is no requirement that they do so. *Id.*

## II.   Plaintiffs Cain's And Sampat's Rental History.

Radha Sampat first rented from Redbox in November 2010, and Michelle (King) Cain first rented in July 2010.  *Id.* at ¶¶ 9-10.  Redbox's only transaction history for Plaintiff Michelle Cain is under her maiden name Michelle King or her current husband's name James Cain II.  *Id.* at ¶ 10.  Both Michelle Cain and Radha Sampat continued to be Redbox customers even after filing this lawsuit in November 2012, and knowingly completed rental transactions even after being aware of the issues in this case.  *See id.* at ¶¶ 9-10; *see also, e.g.,* Ex. 1 hereto, Sampat Dep. Tr. at 51:22-52:5; Ex. 2 hereto, Cain Dep. Tr. at 70:5-71:13; 76:11-14.

## III.   Redbox's Use Of Agents In The Ordinary Course Of Its Business.

Redbox does not sell its customers' information or personal rental history in any manner.  Wokoskin Decl. at ¶ 6.  Nor does Redbox share that information with other companies for use by them for their own purposes.  *Id.* at ¶ 32.  Rather, Redbox's customer information is used only by Redbox for its own purposes.  *Id.* In some instances certain customer information is provided to Redbox's service providers in order to perform core business functions for Redbox.  However, with one permitted exception (discussed below) these companies do *not* receive *any* personal rental histories.

### A.   Service providers that do *not* have *any* personal rental histories.

Redbox uses analytics and email service providers to fulfill certain core

business functions, but Redbox *does **not** provide personal rental history information to any of these companies*.  Each of these companies' relationship with Redbox is governed by a written contract, and in each case Redbox exercises ultimate control over all services provided; any information provided by Redbox remains the exclusive property of Redbox; each service provider acknowledges that such information is confidential and proprietary to Redbox; and each contract mandates that all such information be used solely for Redbox's purposes. Wokoskin Decl. at ¶¶ 32-33.

     ***Analytics companies***.  Redbox provides anonymized transaction information (*i.e.*, information that does not reveal any identifying information about Redbox's customers) to certain analytics companies that Redbox uses (or has used in the past) to allow Redbox to better understand the types of movies it should promote in marketing messages, to better stock kiosks in certain locations, and for similar business purposes. *Id.*  at ¶¶ 34-35.  While these companies receive the movie transactional information for all Redbox customers, it is anonymized because they do not receive any information that would allow them to determine who any of those customers are, much less what movies were rented by any specific person. *Id.*

     ***Email companies***.  Redbox also uses two companies to send emails to its customers.  *Id.* at ¶¶ 36-38; 40-43.  These companies are used by many of the

nation's leading companies for the same purpose, including Redbox competitors in the movie rental industry. *Id.* at ¶¶ 38, 43. Cheetahmail sends Redbox's marketing messages promoting new releases for the week and also movies for the weekend rental period. *Id.* at ¶ 36. Cheetahmail receives no personal rental history because it does not know what movies were rented by any Redbox customer. *Id.*

Redbox also uses ExactTarget to provide transactional receipts to those customers that elect to receive such emails. *Id.* at ¶ 40. Redbox does not provide the customer's name or any similar information to ExactTarget. *Id.* at ¶ 42. Rather, ExactTarget only receives the email address that the customer himself or herself provides during the rental transaction, along with the relevant transactional information that goes into the receipt. *Id.* ExactTarget does not receive any information regarding customers that do not provide an email address. *Id.*

### B. **Redbox's customer service agents may access personal rental history in order to respond to a specific customer's request.**

With regard to personal rental history—the only information at issue here— the *only* service provider that has potential access is the customer service agents at Stream Global Services ("Stream"), a company with whom Redbox contracts to intake and resolve customer service requests and issues. *Id.* at ¶ 44. Redbox, however, does not provide Stream with its entire database; rather, the customer service agents have the ability to search for a customer's rental transaction on a call by call basis where necessary to respond to that customer's request. *Id.* at ¶

46.  Each customer service agent is provided a secure login credential issued by Redbox and can then use a computer monitor to search and pull up limited customer transaction information.  *Id.*  Most often such searches result in a single transaction being provided to the customer service agent—the transaction at issue—but regardless the search is limited to a maximum of 300 results.  *Id.*  That is the only information provided to the customer service agents at Stream during that transaction as no other data beyond what is responsive to the search is sent or transmitted in any manner to Stream.  *Id.*

As such, only a very small fraction of Redbox's customer transactions have ever been accessed by the customer service agents at Stream.  *Id.* at ¶ 47. Importantly, there is no evidence that Plaintiff Michelle Cain's information was ever accessed, and the *only* transaction relating to Plaintiff Radha Sampat accessed by Stream was the one related to a call she made about a year after filing this suit. *Id.* at ¶¶ 48-49.

The customer service agents at Stream effectively perform the same functions that would otherwise be done by Redbox employees.  Indeed, this function was provided by Redbox employees until February 2010 when the growth of Redbox, the increasing call volume, and other cost considerations led Redbox to retain Stream to perform these functions.  *Id.* at ¶ 44.  Redbox's relationship with Stream is governed by a written contract.  *Id.*  Under that contract, Redbox retains

control of the customer services provided to its customers, and substantial procedures and safeguards are undertaken to assure that all personal rental history remains confidential as more fully described *infra* at Point II-B.

## IV. Plaintiffs' Claims.

Plaintiffs assert three claims against Redbox: (1) a single violation of the Michigan VRPA; (2) breach of contract; and (3) unjust enrichment. Doc. 1 at ¶¶ 51-85. All these claims are based on Plaintiffs' allegation that Redbox violated the VRPA by supposedly disclosing Plaintiffs' personal rental history. *Id.* at ¶ 72 (alleging Redbox breach the contract by violating the VRPA); *id.* at ¶ 81 (alleging Redbox was unjustly enriched because it violated the VRPA). The breach of contract and unjust enrichment claims are not claims that stand on their own, but rather are contingent upon the VRPA claim.

## <u>LEGAL STANDARDS</u>

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Avio, Inc. v. Alfoccino, Inc.*, No. 2:10-cv-10221, 2014 WL 1870108, at \*4 (E.D. Mich. May 9, 2014) (quoting Fed. R. Civ. P. 56(a)). "'[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The nonmoving party may not merely rely on allegations or denials; but rather, "must 'cite to particular parts of materials in the record' as establishing that one or more material facts are 'genuinely disputed.'"  *Id.* (quoting Fed. R. Civ. P. 56(c)(1)); *see also Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (same).  The "'mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment.'"  *Id.* at *5 (quoting *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006)).

## **ARGUMENT**

### **I.     Redbox is Entitled to Summary Judgment Against Michelle Cain Because Her Personal Rental History Was Never Disclosed.**

The Michigan VRPA regulates the disclosure of personal rental history to third-parties—*i.e.,* information that would identify a specific individual as having rented a specific movie—subject to numerous exceptions.  MCL § 445.1711, *et seq*.  Thus, a fundamental requirement of Plaintiffs' claims is that some disclosure of personal rental history has occurred.   Redbox has no record of Michelle Cain's personal rental history being disclosed to anyone—not even to Redbox's customer service agents at Stream, which would not be a prohibited disclosure in any event as discussed below.  Wokosin Decl. at ¶ 48.  Michelle Cain, herself, conceded that she has never called Redbox's customer service agents.   Ex. 2 hereto, Cain Dep. Tr. at 77:11-19.  Thus, on this threshold basis—the lack of *any* evidence of *any*

disclosure at all—Redbox is entitled to judgment against Michelle Cain on her

VRPA claim, as well as her derivative common law claims which each rely on an

underlying violation of the VRPA. *See, e.g., Whyde v. Rockwell Int'l Corp.*, 101 F.

App'x 997, 1000 (6th Cir. 2004) (unpublished) (affirming summary judgment to

defendant under Privacy Act because plaintiff failed to proffer any evidence

showing his protected information was actually disclosed and "his own

unsubstantiated belief" was insufficient).

## II.   Plaintiff Sampat's Information Was Only Accessed By Redbox's Customer Service Agents, Which Is Not Prohibited By The VRPA.

### A.   Ms. Sampat's call with Redbox's customer service agent.

Plaintiff Radha Sampat contacted Redbox's customer service agents at

Stream on one occasion—on November 25, 2013, *over a year after she filed this

lawsuit*. *Compare* Ex. 18 to Wokosin Decl. (transcript of Sampat's call on

November 25, 2013) *with* Doc. 1 at ¶¶ 22, 42.  During that call, Ms. Sampat

volunteered information regarding the movie she rented—or the movie allegedly

accidentally rented—claiming she received a certain movie even though she had

intended to rent a different movie.  Ex. 18 to Wokosin Decl.  Redbox's business

record relating to that call shows the customer service agent *only* accessed that

rental transaction and not any other transactions, and that it was accessed in order

to verify the personal rental history that Ms. Sampat already disclosed to the agent.

*Id.* at Ex. 19  (screen shot of call log); *id.* at Ex. 18 (call transcript).

B.    **The VRPA does not prohibit disclosure of information between Redbox and its employees or agents.**

The disclosure of this movie transaction to Redbox's customer service agents at Stream is not prohibited by the VRPA because the plain statutory text does not prohibit a company from disclosing personal rental history to its own employees or agents; rather, it only restricts disclosures by the company *or* its "employees or agents" *to* other "persons."  MCL § 445.1712 ("a person, *or an employee or agent of the person*, engaged in the business of . . . renting . . . video recordings shall not disclose to any person, other than the customer . . .") (emphasis added).  This limitation to the VRPA's scope of prohibition makes sense because a company can only act through its own employees and agents who need access to customer information to perform their functions.

1.    **Redbox's customer service agents are "agents" as that term is ordinarily used.**

The term "agent" is not defined in the VRPA and thus is given its common, ordinary meaning.  *W. Michigan Univ. Bd. of Control v. State*, 455 Mich. 531, 539 (1997) ("[W]here a statute does not define a term, we will ascribe its plain and ordinary meaning."); Mich. Comp. Laws Ann. § 8.3a (same).  In this context, it is apparent that Redbox's customer service agents at Stream are Redbox's "agents" for VRPA purposes as that term is commonly understood because they are performing functions exclusively for Redbox, interacting with Redbox's customers for Redbox, and they are ultimately controlled by Redbox.  Indeed, the fact that

this is an agency relationship is so patent that the district court in *Sterk* specifically described it as such in granting summary judgment to Redbox. *Sterk v. Redbox Automated Retail, LLC*, 11 C 1729, 2013 WL 4451223, at \*5 (N.D. Ill. Aug. 16, 2013) ("The only disclosure made outside of *this agency relationship* [between Redbox and Stream] is the one Stream makes to the customer himself, after the customer requests the information and only after verifying the customer's identity.") (emphasis added) (attached as Exhibit 4).

The customer service agents at Stream perform the same role as Redbox employees previously performed internally prior to February 2010. Wokosin Decl. ¶ 44. Indeed, when Redbox customers contact  customer support by calling the designated Redbox support phone number, the customer service agents thank the caller "for calling Redbox." Wokosin Decl. ¶ 45 (citing Declaration of J.S. Padgett of Stream Global Services ("Padgett Decl."), procured by Plaintiffs in lieu of deposition, at ¶ 3).

### 2.   Redbox's customer service agents serve as Redbox's primary business representative with its customers.

The Michigan Supreme Court has explained that courts should "consider 'the relations of the parties as they in fact exist under their agreements or acts,'" because "in its broadest sense agency 'includes every relation in which one person acts for or represents another by his authority.'" *St. Clair School Dist. v. Intermediate Educ. Ass'n./Mich. Educ. Ass'n.*, 458 Mich. 540, 557 (1998)

(quotation omitted). A quintessential example is one who is a "business representative," that can "bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and a third person." *Id.*

With regard to Redbox's customers, this is precisely what the customer service agents do: they are the primary link between Redbox and its customers, and carry out Redbox's policies by resolving rental and billing issues, including by potentially providing refunds and credits that bind Redbox, and so forth. Wokosin Decl. ¶ at 45. This is particularly so given that Redbox's business model is based on automated kiosks, and Redbox does not employ sales representatives or staff at the point of rental to interact with its customers. *Id.* at ¶ 4.

**3. Redbox's control of the customer service process further demonstrates the agency relationship for VRPA purposes.**

Another fundamental hallmark of agency is the "right to control." *St. Clair School Dist.*, 458 Mich. at 557-558 & n.18 (internal citations omitted; emphasis added); *see also* Restatement (Third) of Agency §14 (similar principle). Here, Redbox unequivocally maintains control over its customer service agents.

The relationship between Redbox and Stream is set forth in a written contract (the "Stream Agmt.") (attached as Ex. A to Padgett Decl.). Under that contract, Redbox has the right to control Stream with regard to the customer support service that is entrusted to it. For example, Redbox has the right to remove any customer service agent from its account, Stream Agmt. at p. 10, ¶ 1.6; it has

the right, which it exercises, to control the training standards, *id.* at p. 12, ¶ 1.8, *see also* Padgett Decl. ¶ 8; and the customer service agents apply Redbox policies and procedures in responding to customer requests.  *Id.*; Wokosin Decl. ¶ 45.  The customer service agents are also solely dedicated to Redbox's account and do not work for any other Stream client.  Padgett Decl. ¶ 3; *see also* Stream Agmt. p. 12, ¶ 1.8.[1]  In fact, the Code of Conduct for Stream representatives, which is attached to the Stream Agreement, specifically references a Stream representative as an "Agent."  Wokosin Decl. ¶ 45, Stream Agmt. p. 25.

Similarly, all Redbox information, including customer information, remains the exclusive property of Redbox.  Stream Agmt. p. 2, ¶ 5.1.  Stream may "only [use such information] for the purpose for which it was originally disclosed and in any case only for the purpose of fulfilling [Stream's] obligations under this Agreement."  Stream Agmt. at  p. 2, § 5.1.  Stream is required to keep all information confidential, *id.*, and each and every customer service agent signs a non-disclosure agreement before they are allowed access to any Redbox information.  Padgett Decl. ¶ 4; Wokosin Decl. ¶ 46.  The *only* access to Redbox's customer information is through secure credentials that Redbox administers and

---

[1] The contract is between Stream and Coinstar, Inc. (now known as Outerwall Inc.) which is Redbox's parent company.  The contract expressly applies to all affiliates, which includes Redbox as demonstrated by the numerous statements of work that apply to Redbox.  *E.g.* Statement of Work No. 1, Stream Agmt. at p. 9 (referencing types of Redbox-specific calls Stream will handle, including, for example, non-playable DVDs).

controls, which allow limited access to customer transactions that match the search criteria entered by the customer service agent, up to a maximum of 300. Padgett Decl. at ¶ 5; Wokosin Decl. ¶ 46. Thus, it is apparent that Redbox not only has the "right to control" the customer service agents, it in fact does control this process, causing the customer service agents at Stream to qualify as "agents" for purposes of the VRPA.

C.     **No other service provider receives personal rental history.**

As discussed above, *supra* at p. 5, the analytics and email providers used by Redbox do not even receive personal rental history for any customer.[2] In any event, even if Redbox did provide these companies with personal rental history— which it does not—such disclosure would not trigger the VRPA because they too are Redbox agents for VRPA purposes for the same reasons as discussed as to Stream: Redbox contractually controls the services provided; its contract requires any customer information to be treated as confidential; such information remains subject to the ownership and control of Redbox, and can only be used to carry out the functions requested by Redbox; and Redbox at all times retains legal control over the services under the various contracts. *See, supra*, at p. 5.

---

[2] Indeed, as the *Sterk* court noted, these same Plaintiffs' counsel did not even assert these service providers were relevant. *Sterk*, 2013 WL 4451223, at *1 (N.D. Ill. Aug. 16, 2013) ("Redbox hires a number of third-party vendors for internal business and customer service functions . . . plaintiffs challenge only one vendor's access to and use of Redbox's PII database: Stream Global Services.").

III.   **Any Disclosure To Redbox's Customer Service Agents Also Falls Within Two Express Exceptions To The VRPA.**

Even if the disclosure of personal rental history to Redbox's customer service agent somehow was subject to the VRPA, the disclosure still falls within two exceptions that each independently defeat Plaintiffs' claims: (1) express permission; and (2) the "ordinary course of business" exception.

A.   **Plaintiffs consented to the disclosure of their personal rental histories to Redbox's agents.**

The VRPA expressly provides that Redbox can disclose the personal rental history to anyone "[w]ith the written permission of the customer."  MCL § 445.1713.  Written permission can be provided by agreeing to online terms and use or engaging in transactions with knowledge of the underlying practices.[3]

Here both Plaintiffs were bound by contractual Terms of Use to which they affirmatively agreed, and which were at all times available to them.  (*See* Wokosin Decl. at ¶¶ 11-12, 19-21, 28-30 and Exhibits 4, 8, 9, 14-15 thereto.)  Every single rental transaction made through a Redbox kiosk, including all of Plaintiffs' transactions here, requires the customer to affirmatively agree to be bound by these Terms, stating:  "By pressing 'PAY' or 'USE Credits' you agree to the Terms" (*id.*

---

[3] *E.g., Fteja v. Facebook, Inc*, 841 F. Supp. 2d 829, 836-37 (S.D.N.Y. 2012) (enforcing modified clickwrap terms in which the user is bound to the terms by pressing the "Sign Up" button next to text indicating that pressing such button binds them to the terms, which can only be viewed on a separate page if the user follows a hyperlink).  This is true even though Plaintiffs failed to read the Terms. *Druyan v. Jagger*, 508 F. Supp. 2d 228, 237 (S.D.N.Y. 2007) .

at ¶¶ 16, 18, 31 and Ex. 7 thereto) or that "By clicking on 'Check Out' you agree to the following terms and conditions" (*id.* at ¶¶ 15, 18 and Ex. 6 thereto).

Both Plaintiffs acknowledged this fact and understood that they were bound. Ex. 1 hereto, Sampat Dep. 71:6-72:7 (acknowledging that the screen "looks familiar" and agreeing that "when you're using a Redbox kiosk, you have to hit the pay button"); Ex. 2 hereto, Cain Dep Tr. at 133:16-136:1 (admitting she accepted the terms during her rental transactions and thereby gave Redbox permission to disclose her name and email address, but arguing she did not give permission as to her personal rental history).

The Terms of Use in place at the time of all of Plaintiffs' transactions expressly referenced notified customers of Redbox's written Privacy Policy. While the precise language of that Policy has changed over time, as of June 2011, a year and a half before this case was filed, and before numerous rental transactions by these Plaintiffs, the Privacy Policy stated:

### Third Parties Providing Services on Our Behalf

We may use third party vendors to perform certain services on our behalf, such as hosting a Site, designing and operating a Site's features, ***providing consumer affairs services***, fulfilling and processing orders, assisting with promotions, tracking analytics, enabling Redbox to send you e-mail, or performing other administrative services.  We may provide these companies with access to user information, including Personal Information, to carry out the services they are performing for you or for Redbox.

Wokosin Decl. at ¶ 23 and Exhibits 10-12 thereto (emphasis added); *see also id.* at ¶ 14 (quoting prior version of same provision); *id.* at ¶ 27 and Ex. 13 thereto (current version).

By completing their transactions at the kiosk after being put on notice of Redbox's Privacy Policy, Plaintiffs provided "written permission" to Redbox. *Cf. Travis v. ADT Sec. Servs., Inc.*, 884 F. Supp. 2d 629, 636 (E.D. Mich. 2012) ("'Where additional documents or terms are made a part of a written contract by reference, the parties are bound by those additional terms even if they have never seen them.'") (applying Michigan law, quotation omitted).

Plaintiffs here confirmed the fact they gave written permission by continuing to rent from Redbox even after filing this lawsuit, and after being on notice *and having actually read the Terms of Use and privacy policies. See* Ex. 1 hereto, Sampat Dep. Tr. at 15:13-18:10 (admitting that she read both the Terms and the Privacy Policy at the start of this lawsuit in November 2012, and that she has even read them again since then, and that she "realized the Terms of Use applied" to the over 15 rentals she made after filing this lawsuit); Ex. 2 hereto, Cain Dep. Tr. at 38:5-40:9 (admitting that she read privacy policy and Terms of Use after filing this lawsuit).

These admissions not only confirm the grant of prospective permission, they also serve as ratification of any prior disclosures. *See, e.g., Sw. Airlines Co. v.*

*BoardFirst, L.L.C.*, 3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ("Despite having actual knowledge of the Terms, BoardFirst has continued to use the Southwest site in connection with its business.  In so doing BoardFirst bound itself to the contractual obligations imposed by the Terms.") (attached as Exhibit 5); *Freedberg v. Ohio Nat'l Ins. Co.*, 975 N.E.2d 1189, 1197 (Ill. App. Ct. 2012) (finding ratification of contract when plaintiff continued to accept its benefits even after learning of purported fraud).[4]

B.    **The "ordinary course of business" exception also applies.**

Any disclosure to Redbox's customer service agents at Stream is also permissible for yet another independent reason—it falls within the "ordinary course of business" exception that is incorporated by the VRPA.  The VRPA's statutory text expressly states disclosures are permitted "as provided in section 3 *or as otherwise provided by law*."  MCL § 445.1712 (emphasis added).  This "otherwise provided by law" language was clearly intended to capture any disclosures allowed by other similar statutes as that phrase is often used.  *See United States v. Ntreh*, 279 F.3d 255, 259 (3d Cir. 2002) (holding phrase "as otherwise provided by law" in the statute at issue created additional exceptions by incorporating the terms of related statutes); *Halasa v. ITT Educ. Servs.*, 690 F.3d

_____

[4] These voluntary actions also defeat the common law claims under the voluntary payment doctrine.  *Montgomery Ward & Co. v. Williams*, 330 Mich. 275, 285 (1951) (internal citation omitted); *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1334 (Ill. App. Ct. 1995) (same principle under Illinois law).

844, 852 (7th Cir. 2012) (similar principle); *Certain Underwriters at Lloyd's London v. Warrantech Corp*., 461 F.3d 568, 576 (5th Cir. 2006) (similar principle). Any contrary reading would impermissibly treat the "otherwise provided by law language" as surplusage. *E.g., TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quotation omitted).

The Michigan VRPA's legislative history confirms this plain and ordinary reading because the Michigan legislature was fully aware of the VPPA's status and both statutes were enacted in response to the highly publicized incident involving Judge Bork. *See* Ex. 3 hereto at 2 ("[T]he incident prompted the introduction in Congress of a bill to protect the privacy of those who rent or buy videotapes. Many in Michigan also . . . suggest the enactment of a statute to explicitly protect a consumer's privacy").

Redbox's disclosure of personal rental history to its customer service agents is squarely within the VPPA's "ordinary course of business" provision, just as the district court squarely held in *Sterk*, 2013 WL 4451223 at *5. This exception expressly authorizes disclosure to "any person" if the disclosure is "incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E). The VPPA further defines "ordinary course of business" as "debt

collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2) (emphasis added).

Although the VPPA does not define "request processing," the plain and ordinary meaning of that phrase clearly applies to Redbox's customer service agents as the *Sterk* court concluded and Plaintiffs' own counsel conceded in that litigation.  "It is undisputed that the only functions Stream performs for Redbox are customer support services and that Stream performs these services only in response to customers' requests for information.  It is difficult to imagine a more obvious illustration of 'request processing' given the ordinary meaning of that term." *Sterk*, 2013 WL 4451223 at *4; *see also id.* at *5 (recognizing that Plaintiffs' own counsel conceded that any disclosure to Stream fell within the "lay" and "everyday usage" of the phrase "request processing").   The *Sterk* court's interpretation is also fully consistent with the legislative history that made clear the "ordinary course of business" provision was designed to allow video tape service providers to "use third parties in their business operations."  *Id.* (quoting Senate Report).  Thus, Plaintiffs' claims also fail for this independent reason.

## IV.   Plaintiffs' Claims Are Also Time Barred.

As discussed above, both Plaintiffs repeatedly consented to be bound by Redbox's Terms of Use in each and every rental transaction, including those they completed *after* this litigation was commenced and after they knew Redbox was invoking those terms as a defense, which caused them to read the documents.  *See,*

- 21 -

*supra*, at Point III-A.  Thus, there can be no dispute they are bound by the one-year contractual limitations provision in those terms, which provides that any claim "must be filed within one (1) year after such claim or cause of action arose or be forever barred."  *See* Wokosin Decl. at ¶¶ 12, 20, 28 and Exhibit 4, 8, 14 thereto.

Contractual limitations provisions such as this one are valid and enforceable. *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005) ("[W]e hold that an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy."); *Medrano v. Prod. Eng'g Co.*, 774 N.E.2d 371, 382 (Ill. App. Ct. 2002) (holding that a one-year contractual limitations periods that shortened the statute of limitations period must be enforced because it was reasonable) (citation omitted).[5]

Plaintiffs filed this lawsuit on November 13, 2012, yet their first rental transactions—at which time they were put on notice of the alleged wrongful practices through Redbox's Terms of Use and Privacy Policy, *supra* at Point III-A—occurred well more than one year prior to that date:  Cain began renting from Redbox on or around July 2010, and Sampat began renting in November of 2010 (*two* years prior to the filing of this Complaint).  Wokosin Decl. at ¶¶ 9-10.  The claims arose on that date because Plaintiffs either actually knew, or had sufficient information that they should have known of the facts leading to their claims.  *Clay*

---

[5] The Terms of Use include a binding Illinois choice of law provision.  *Id.*

*v. Kuhl*, 727 N.E.2d 217 (Ill. 2000) ("[A] party's cause of action accrues when the party knows or reasonably should know of an injury and that the injury was wrongfully caused.")  Accordingly, this is yet another independent legal basis for granting judgment in Redbox's favor on all Plaintiffs' claims.

## V.    Plaintiffs' Complaint Should Be Dismissed For Lack Of Article III Jurisdiction Given Plaintiffs Suffered No Injury In Fact.

Redbox acknowledges that this Court previously rejected this argument based on this Court's interpretation of binding Sixth Circuit precedent as holding that a mere technical statutory violation without any factual injury satisfies Article III's standing requirement.  Doc. 27 (citing *Beaudry v. TeleCheck Servs., Inc*. 579 F.3d 702 (6th Cir. 2009)).  Redbox respectfully disagrees with the Sixth Circuit's holding regarding this fundamental issue, which is inconsistent with controlling United States Supreme Court precedents as explained in Redbox's prior briefing. *See* Doc. 10 at 10-14; Doc. 20 at 8-9.  Thus, Redbox raises this argument again to preserve it, and to add that discovery has confirmed that the Plaintiffs can point to no actual economic injury in this case, and instead are merely resting on purported statutory violations to claim damages.  *E.g.* Ex. 1 hereto, Sampat Dep. Tr.  59:4-18; 63:18-24 (admitting that she could not think of any way Redbox's practices had caused her economic injury other than unspecified and incredible assertions of "stress"); Ex. 2 hereto, Cain Dep. Tr. at 20:18-21:7 (similar testimony).

Moreover, as this Court recently recognized in a case involving the Telephone Consumer Privacy Act ("TCPA"), where a plaintiff sues for statutory damages yet has no personal knowledge that any actual violation occurred, it has not suffered an injury-in-fact. *Avio Inc. v. Alfoccino, Inc.*, No. 2:10-cv-10221, 2014 WL 1870108, at *5-9 (E.D. Mich. May 9, 2014) (attached as Exhibit 6). So too here; both Plaintiffs conceded that their only knowledge of any alleged disclosures came from their attorneys—they had no personal awareness when they filed this suit that their information was disclosed at all. *E.g.* Sampat Dep. Tr. at 98:15-99:16; Cain Dep. Tr. at 84:23-85:12; 101:24-104:19. Thus, Plaintiffs here, just like the plaintiff in *Avio*, lack standing for this reason as well.

## <u>CONCLUSION</u>

For the reasons stated herein, Redbox respectfully requests that this Court grant its Motion and enter summary judgment in its favor and against Plaintiffs on their claim under the VRPA (Count I), as well as their breach of contract and unjust enrichment claims that are derivative of the VRPA claim (Counts II and III), to the extent this Court finds it has subject matter jurisdiction over those claims.

Dated:  September 5, 2014        Respectfully submitted,

/s/  John Grossbart

| | |
|---|---|
| Peter B. Kupelian (P31812) | Donna J. Vobornik |
| Carol G. Schley (P51301) | John Grossbart |
| CLARK HILL PLC | Anthony T. Eliseuson |
| 500 Woodward Avenue, Suite 3500 | DENTONS US LLP |
| Detroit, MI  48226 | 233 South Wacker Drive, Suite 7800 |
| pkupelian@clarkhill.com | Chicago, IL  60606 |
| cschley@clarkhill.com | (312) 876-8000 |
| | (312) 876-7934 (fax) |
| | donna.vobornik@dentons.com |
| | john.grossbart@dentons.com |
| | anthony.eliseuson@dentons.com |

*Attorneys for Defendant Redbox Automated Retail, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, John Grossbart, an attorney, hereby certify that on September 5, 2014, I filed a copy of the foregoing on the following counsel for Plaintiffs Michelle Cain and Radha Sampat via the CM/ECF system, which will send notification to all parties of record.

<u>/s/ John Grossbart</u>

82184286\V-21

- 26 -