# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MICHELLE CAIN and RADHA
SAMPAT, individually and on behalf of
all others similarly situated,

          Plaintiffs,

   v.

REDBOX AUTOMATED RETAIL,
LLC, a Delaware limited liability
company,

          Defendant.

Case No. 2:12-cv-15014-GER-RSW

Hon. Gerald E. Rosen

Mag. Judge R. Steven Whalen

## PLAINTIFFS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Michelle Cain and

Radha Sampat ("Plaintiffs") hereby move for partial summary judgment as to

liability on Plaintiffs' Video Rental Privacy Act claim. Plaintiffs certify that,

pursuant to Local Rule 7.1(a), there was a conference between attorneys for

Plaintiffs and attorneys for Redbox Automated Retail, LLC ("Redbox") on

September 18, 2014 in which Plaintiffs explained the nature and legal bases of

their motion. Plaintiffs requested, but did not obtain, Redbox's concurrence.

**WHEREFORE**, Plaintiffs Michelle Cain and Radha Sampat respectfully

request that this Court enter an Order (i) granting Plaintiffs' Motion for Partial

Summary Judgment, and (ii) providing such other and further relief as the Court

deems reasonable and just.

Dated: September 23, 2014          Respectfully Submitted,

**MICHELLE CAIN and RADHA SAMPAT**, individually and on behalf of all others similarly situated,

By: /s/ Ari J. Scharg
    One of Plaintiffs' Attorneys

Ari J. Scharg                         Brian C. Summerfield (P57514)
ascharg@edelson.com                   bsummerfield@bodmanlaw.com
John C. Ochoa                         BODMAN PLC
jochoa@edelson.com                    1901 St. Antoine Street
J. Dominick Larry                     6th Floor at Ford Field
nlarry@edelson.com                    Detroit, Michigan 48226
Mark S. Eisen                         Tel: 313.259.7777
meisen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MICHELLE CAIN and RADHA SAMPAT, individually and on behalf of all others similarly situated, | Case No. 2:12-cv-15014-GER-RSW |
| Plaintiffs, | Hon. Gerald E. Rosen |
| v. | Mag. Judge R. Steven Whalen |
| REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company, | |
| Defendant. | |

**BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................... 1

STATEMENT OF UNDISPUTED FACTS.......................................... 3

I.     **Redbox Rents Videos while Simultaneously Collecting Consumer Data**........................................................................... 3

II.    **Redbox Discloses Information Concerning Its Customers' Video Rentals that Indicates Its Customers' Identities to Unrelated Independent Contractor ExactTarget** ..................................... 5

    A.   **Redbox Discloses Its Customers' Email Addresses and Movie Rental Histories to ExactTarget** ....................................... 5

    B.   **ExactTarget Is an Unrelated Independent Contractor** ............. 6

III.   **Redbox Discloses Information Concerning Its Customers' Video Rentals that Indicates Its Customers' Identities to Unrelated Independent Contractor Stream**........................................... 7

    A.   **Redbox Discloses Its Customers' Names, Email Addresses, Other Identifying Information, and Movie Rental Histories to Stream via the AR2 Database** ....................................... 8

    B.   **Stream Is an Unrelated Independent Contractor** ...................... 9

IV.    **Redbox Discloses Information Concerning Its Customers' Video Rentals that Indicates Its Customers' Identities to Unrelated Independent Contractors Experian and Adobe** ........................ 10

    A.   **Redbox Discloses Its Customers'** ███████████ ████████████████████ **to Experian and Adobe**................................................................... 11

    B.   **Experian Is an Unrelated Independent Contractor**................. 12

    C.   **Adobe Is an Unrelated Independent Contractor** .................... 13

**V.     Redbox Disclosed Information Concerning Plaintiffs' Video Rentals to ExactTarget, Stream, Experian, and Adobe** ...................................... 14

**ARGUMENT** .................................................................................................. 15

**I.     Legal Standard** ................................................................................ 15

**II.    Redbox Violated the VRPA by Disclosing Information Concerning Plaintiffs' Video Rentals to Independent Third Parties** ................... 17

    **A.     Redbox Disclosed Information Concerning Cain's and Sampat's Video Rentals by Transmitting It Directly to ExactTarget, Experian, and Adobe, and by Disclosing Its Customer Database to Stream** ...................................... 17

    **B.     ExactTarget, Stream, Experian, and Adobe Are Not Redbox's Agents** ........................................................................ 19

    **C.     The Information Redbox Disclosed Concerned Plaintiffs' Movie Rentals and Indicated Their Identities** ......................... 21

**CONCLUSION** ............................................................................................. 25

## TABLE OF AUTHORITIES

### United States Supreme Court Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................................... 16

*Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003)........... 19


### United States Circuit Court of Appeals Cases

*Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949 (10th Cir. 1996) .......................... 18

*Fakouri v. Pizza Hut of Am., Inc.*, 824 F.2d 470 (6th Cir. 1987) .......................... 18

*Ltd., Inc. v. C.I.R.*, 286 F.3d 324 (6th Cir. 2002)............................................... 18, 22

*Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370 (D.C. Cir. 1980)....... 16–17

*Shah v. Deaconess Hosp.*, 355 F.3d 496 (6th Cir. 2004)....................................... 20

*U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321 (6th Cir. 2013)........... 16


### United States District Court Cases

*Capp v. Nordstrom, Inc.*, 2013 WL 5739102 (E.D. Cal. Oct. 22, 2013)................ 23

*Gordon v. Royal Palm Real Estate Inv. Fund I, LLLP*, 2011 WL 835941
 (E.D. Mich. Mar. 8, 2011) .......................................................................... 22

*Hiken v. Dep't of Def.*, 872 F. Supp. 2d 936 (N.D. Cal. 2012)........................ 23–24

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 682 (E.D. Mich. 2000) ........ 16

*In re Hulu Privacy Litig.*, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .............. 23

*SSI Tech., Inc. v. Compaero Inc.*, 2014 WL 1977138
 (E.D. Mich. May 15, 2014) .......................................................................... 16

*Vander Luitgaren v. Sun Life Assur. Co. of Can.*, 966 F. Supp. 2d 59
    (D. Mass. 2012) ........................................................... 17

*Williams v. Lane*, 129 F.R.D. 636 (N.D. Ill. 1990).................................. 17

*Zdebski v. Schmucker*, 972 F. Supp. 2d 972 (E.D. Mich. 2013)............................ 16


**State Court Cases**

*Birou v. Thompson-Brown Co.*, 241 N.W.2d 265 (Mich. Ct. App. 1976).............. 19

*St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ.
    Ass'n*, 581 N.W.2d 707 (Mich. 1998) ........................................ 20


**United States Statutes**

Children's Online Privacy Protection Act, 15 U.S.C. § 6501(8)(C) ..................... 24

Health Insurance Portability and Accountability Act, 45 C.F.R. § 160.103 ......... 18

Video Privacy Protection Act, 18 U.S.C. § 2710(a)(3) ........................................ 22


**State Statutes**

M.C.L. § 8.3a ................................................................................... 18, 19

Video Rental Privacy Act, M.C.L. §§ 445.1711–15 ............................ 2, 17, 19, 22


**Federal and Local Rules**

Federal Rules of Civil Procedure 56................................................................ 15–16

**Legislative History Materials**

*Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section,
H.B. No. 5331 (Jan. 20, 1989) ........................................................... 2, 21, 22

**Secondary Sources**

Black's Law Dictionary 531 (9th ed. 2009) ........................................................... 18

"Concern." Merriam-Webster Online Dictionary, http://www.merriam-
webster.com/ dictionary/concern (last visited Sept. 22, 2014) .................... 22

Jose Pagliery, *Your Personal Information Just Isn't Safe*, CNN Money (July 28,
2014), http://money.cnn.com/2014/07/25/technology/security/target-
experian/ ....................................................................................................... 11

Lydia DePillis, *Three Insane Ways Marketers Will Reach You in the Future*, The
Washington Post's Wonkblog (Jan. 9, 2014),
http://www.washingtonpost.com/blogs/wonkblog/wp/2014/01/09/three-
insane-ways-marketers-will-reach-you-in-the-future/ ................................. 11

Michigan Non-Standard Jury Instr. Civil § 32:10 ................................................. 17

## **STATEMENT OF ISSUES PRESENTED**

Should the Court grant partial summary judgment as to liability on Plaintiffs' Video Rental Privacy Act claim because Redbox systematically disclosed information concerning Plaintiffs' video rentals that indicated the identity of the Plaintiffs to independent contractors ExactTarget, Inc., Stream Global Services, Inc., Experian Marketing Services, Inc./Cheetahmail, Inc., and Adobe Systems Incorporated?

Plaintiffs' Answer: Yes.

<u>**CONTROLLING AND MOST IMPORTANT AUTHORITY**</u>

**ARGUMENT**

**I.     Legal Standard**

Fed. R. Civ. P. 56

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 682 (E.D. Mich. 2000)

*SSI Tech., Inc. v. Compaero Inc.*, 2014 WL 1977138 (E.D. Mich. May 15, 2014)

*U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321 (6th Cir. 2013)

**II.    Redbox Violated the VRPA by Disclosing Information Concerning Plaintiffs' Video Rentals to Independent Third Parties.**

Video Rental Privacy Act, M.C.L. §§ 445.1712

Michigan Non-Standard Jury Instr. Civil § 32:10

**A.     Redbox Disclosed Information Concerning Cain's and Sampat's Video Rentals by Transmitting it Directly to ExactTarget Experian, and Adobe, and by Disclosing Its Customer Database to Stream.**

Health Insurance Portability and Accountability Act, 45 C.F.R. § 160.103

M.C.L. § 8.3a

*Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949 (10th Cir. 1996)

*Fakouri v. Pizza Hut of Am., Inc.*, 824 F.2d 470 (6th Cir. 1987)

*Ltd., Inc. v. C.I.R.*, 286 F.3d 324 (6th Cir. 2002)

Black's Law Dictionary (9th ed. 2009)

**B.** **ExactTarget, Stream, Experian, and Adobe Are Not Redbox's Agents.**

M.C.L. § 8.3a.

*Birou v. Thompson-Brown Co.*, 67 Mich. App. 502 (1976)

*Clackamas Gastroenterology Assocs, P.C. v. Wells*, 538 U.S. 440 (2003)

*Shah v. Deaconess Hosp.*, 355 F.3d 496 (6th Cir. 2004)

*St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/ Mich. Educ. Ass'n*, 581 N.W.2d 707 (1998)

**C.** **The Information Redbox Disclosed Concerned Plaintiffs' Movie Rentals and Indicated Their Identities.**

Children's Online Privacy Protection Act, 15 U.S.C. § 6501(8)(C)

Video Rental Privacy Act, M.C.L. § 445.1712

Video Privacy Protection Act, 18 U.S.C. § 2710(a)(3)

*Capp v. Nordstrom, Inc.*, 2013 WL 5739102 (E.D. Cal. Oct. 22, 2013)

*Gordon v. Royal Palm Real Estate Inv. Fund I, LLLP*, 2011 WL 835941 (E.D. Mich. Mar. 8, 2011)

*Hiken v. Dep't of Def.*, 872 F. Supp. 2d 936 (N.D. Cal. 2012)

*In re Hulu Privacy Litig.*, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)

*Ltd., Inc. v. C.I.R.*, 286 F.3d 324 (6th Cir. 2002)

*Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331 (Jan. 20, 1989)

Plaintiffs Michelle Cain and Radha Sampat ("Plaintiffs") respectfully request that this Court grant partial summary judgment as to liability pursuant to Federal Rule of Civil Procedure 56 because it is undisputed that Defendant Redbox Automated Retail, LLC ("Redbox") disclosed information concerning Plaintiffs' video rentals to several third-party marketing and data analytics companies in violation of the Michigan Video Rental Privacy Act, M.C.L. § 445.1712 ("VRPA"). In support of this Motion, Plaintiffs state as follows:

## INTRODUCTION

This lawsuit involves consumer privacy violations that have become increasingly important to the public—and the courts and legislatures—as the data collection practices of governments and companies like Redbox continue to dominate headlines. Specifically, this case concerns the right to control who has access to one's private video viewing history. As Plaintiff Cain stated, "My personal business is just that, personal. If I choose to share that, that's my choice. If I choose not to, that's my choice." (Deposition of Michelle Cain, attached as Ex. 2 to the Declaration of Ari J. Scharg, ["Scharg Decl."], at 68:15 – 17.)[1] Redbox, however, has taken away this choice—and violated the VRPA—by systematically disclosing information concerning Plaintiffs' video rentals to unrelated third party data aggregators, marketers, and analytics companies known for mining vast

---

[1]     The Scharg Declaration is being filed contemporaneously herewith.

1

amounts of consumer data to create profiles for use in a variety of contexts.

The State of Michigan codified Plaintiffs' control over access to information concerning their rental histories by enacting the VRPA, providing that one's video viewing history is a private matter, and the decision to disclose that history is "nobody's business but one's own." (*See* Scharg Decl., Ex. 3 [*Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331 (Jan. 20, 1989)].) The VRPA expands the protections of the federal Video Privacy Protection Act ("VPPA"), which was enacted a year earlier after Supreme Court nominee Judge Robert H. Bork's family rental history was used to create "a profile" by a Washington newspaper. (Dkt. 27, citing S. Rep. No. 100-599, at 5 (1988).) The VRPA provides a straightforward prohibition:

> [A] person, or an employee or an agent of the person, engaged in the business of selling at retail, renting, or lending . . . video recordings shall not disclose to any person, other than the customer, a record or information concerning the . . . rental, or borrowing of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. The VRPA is intentionally broader than the VPPA (which only prohibits disclosure of "specific video materials"), embodying the overarching purpose of "preserv[ing] personal privacy" by protecting reading materials and sound recordings in addition to video, as well as any "information concerning" rental of those media. (Scharg Decl., Ex. 3.)

Despite this clear standard, Redbox disclosed information about Plaintiffs'

video rentals to at least three independent email marketing and data analytics

companies—ExactTarget, Inc. ("ExactTarget"), Experian Marketing Services,

Inc./Cheetahmail, Inc ("Experian"), and Adobe Systems Incorporated ("Adobe")—

and made its entire customer database with complete movie rental histories

available to telephone services provider Stream Global Services, Inc. ("Stream").

    As detailed further below, it is undisputed that Redbox disclosed information

concerning Plaintiffs' video rentals and identifying Plaintiffs, to these companies

in clear violation of the VRPA. Plaintiffs therefore request that the Court grant

partial summary judgment as to liability on this claim.

## STATEMENT OF UNDISPUTED FACTS

## I.    Redbox Rents Videos while Simultaneously Collecting Consumer Data.

    Redbox operates a nationwide network of automated self-service kiosks that

allow consumers to rent DVD or Blu-Ray videos. (Dkt. 28, ["Answer"] ¶¶ 1, 17.)

These seemingly ubiquitous kiosks are placed at selected grocery stores,

convenience stores, drug stores, and mass-market retailers. (Dkt. 48, ¶ 4.) Through

these kiosks customers select the video they would like to rent using an interactive

touch screen. (Answer, ¶ 17.) The customer then swipes a credit or debit card to

pay and the kiosk dispenses the movie. (*Id.* ¶¶ 18, 19.) When the customer is

finished with the video, he or she can return it to any Redbox rental kiosk. (Dkt.

48, ¶ 4.) Plaintiffs rented videos from Redbox kiosks in this manner. (Scharg Decl.,

3

Exs. 4-5 [Redbox's Transaction Records for Plaintiffs' Rentals].)

## II.    Redbox Discloses Information Concerning Its Customers' Video Rentals that Indicates Its Customers' Identities to Unrelated Independent Contractor ExactTarget.

ExactTarget is a digital marketing and data analytics company that provides Redbox a wide variety services, including sending emails to Redbox customers confirming various actions, such as the return of a video. (*See* Declaration of Sarah Hatch ["Hatch Decl."] ¶¶ 3 – 4, attached hereto as Exhibit A.) These emails also include ads for movie-watching snacks, promotions for other movies available for rental from Redbox, and Redbox's social media offerings. (*See* Scharg Decl., Ex. 8 at CAIN 000274 – 75.) ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████ These emails all appear to be sent by Redbox (rather than ExactTarget), and nothing about the emails indicates that Redbox has shared its customers' identity and video rental history with a third party. (*See* Scharg Decl., Exs. 8 – 9 [Plaintiffs' Transaction Emails].) None of the emails ExactTarget sends contain any notice that the customer's rental information has been disclosed to a third party or that they may have their name removed. (*Id.*)

### A.    Redbox Discloses Its Customers' Email Addresses and Movie Rental Histories to ExactTarget.

██████████████████████████████████████

██████████████████████████████████████



**B.     ExactTarget Is an Unrelated Independent Contractor.**

If ExactTarget were Redbox's agent, these clear disclosures may be excusable. But ExactTarget is an independent contractor for Redbox. (Scharg Decl., Ex. 11 [Redbox-ExactTarget Contract]; Deposition Michael Wokosin, attached as Ex. 12 to the Scharg Decl., at 120:10 – 122:17.)



As explained below, these undisputed facts establish that Redbox's disclosures to ExactTarget violate the VRPA.

### III. Redbox Discloses Information Concerning Its Customers' Video Rentals that Indicates Its Customers' Identities to Unrelated Independent Contractor Stream.

Redbox provides Stream searchable access to its entire customer database, allowing any Stream employee to look up the complete rental history of any customer, including Plaintiffs. (*See* Declaration of Jeffrey Scott Padgett ["Padgett Decl."], attached hereto as Ex. B, ¶ 5.) Since 2010, Stream has used this access to operate call centers that respond to various Redbox customer issues. (Deposition of

7

Nick Lullo, attached as Ex. 13 to the Scharg Decl., at 17:24 – 19:17; *Id.*, Ex. 14 [Stream-Redbox Contract].) This disclosure too indisputably violates the VRPA.

### A. Redbox Discloses Its Customers' Names, Email Addresses, Other Identifying Information, and Movie Rental Histories to Stream via the AR2 Database.

Redbox discloses every customer's rental history to Stream through its "Access Redbox" or "AR2" customer service system, which gives Stream unrestricted access to Redbox's customer database, containing detailed personal information about each customer along with their entire rental history. (Scharg Decl., Ex. 13 at 40:18 – 41:21, 42:18 – 44:6; Padgett Decl. ¶ 5.) From the AR2 system, Stream employees can query any and all customer transactions remotely (*i.e.*, from its facilities). (Scharg Decl., Ex. 13 at 38:17 – 24; Padgett Decl. ¶ 5.)

Stream employees can and do search the AR2 database by any category of customer information—including name, email address, last four digits of a credit card number, state, zip code—which will pull a corresponding list of customers matching that search criteria (*i.e.*, a search of "48104" will bring up the rental history of Ann Arbor, Michigan customers, and a search of "Ford" will bring up the rental history of customers with the last name of Ford) and their corresponding transactional data, including the specific movies rented. (Padgett Decl. ¶ 5.) None of these searches are logged, (*id.* ¶ 11), so Stream employees can search around in Redbox's database for whatever they want without supervision.

8

Stream uses its unfettered access to the AR2 database to allow trainees to access live customer accounts in exercises untethered to customer calls. (Scharg Decl., Ex. 15 [Stream Training Manual] at SGS0000130, 141; Affidavit of Jeffrey Scott Padgett ["Padgett Aff."], attached hereto as Exhibit C, ¶¶ 7 – 10.) For example, Stream trainees engage in AR2 "scavenger hunts" using actual customer information and freely navigate AR2 "Searching . . . for customer information" and "Analyzing Transactions," i.e. viewing personal information of Redbox customers along with their specific renting habits. (Scharg Decl., Ex. 15 at SGS0000130, 141.) Additionally, Stream trainees engage in "mock call" scenarios and enter random last-four-digit credit card numbers into the database, which results in the AR2 displaying any rental transactions, including movie titles, that correspond to that number. (Padgett Aff. ¶¶ 7 – 10.) These seemingly innocuous exercises raise real world problems as it is not hard to imagine trainees or employees searching the names of friends, family members, ex-girlfriends, etc., and discovering every movie those individuals rented from Redbox. Conveniently for Redbox, none of these searches are logged so these incidents can be kept quiet. (Padgett Decl. ¶ 11.)

### B.    Stream Is an Unrelated Independent Contractor.

Stream is an independent contractor for Redbox. (Scharg Decl., Ex. 14; *id.*, Ex. 12 at 117:5 – 120:8; *id.*, Ex. 16 ███████████     ████████████████

███████████████████████

9



In practice as in the contract, Stream's status as an independent contractor is

clear. ███████████████████████████

## IV. Redbox Discloses Information Concerning Its Customers' Video Rentals that Indicates Its Customers' Identities to Unrelated Independent Contractors Experian and Adobe.

Experian—a division of global "big data" giant, Experian plc—provides

email marketing and data analytics services to Redbox. (Scharg Decl., Ex. 17

[Redbox's Responses to Cain's First Set of Interrogatories] at No. 9; *id.*, Ex. 18

[Experian-Redbox Contract].) Specifically, Experian, through its Cheetahmail

division, sends bi-weekly marketing emails ████████████████

█████████████████████████████████. (*Id.*, Ex. 6 at 161:14 – 24; *id.*, Ex. 18 at

C000385.) ████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ This is to be expected from a

company whose purpose is to profile and sell consumer data.[3]

Until late 2012, Adobe provided data analytics services to Redbox. (*Id.*, Ex.

17 at No. 9.) Specifically, Adobe, through its cloud-based Insight system provided

broad analytics of customer transactions and enabled Redbox to query customer

behavior. (*Id.*; *id.*, Ex. 12 at 86:7 – 88:7.) ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

### A.   **Redbox Discloses Its Customers'** ██████████████████
██████████████████████████████ **to Experian and Adobe.**

In order for Experian to send its targeted marketing emails and ████████

██████████████, Redbox discloses to Experian a slew of data about its

---

[3]     Experian collects a staggering amount of consumer information, including
name, address, Social Security number, birthday, banking information, income,
and buying habits. *See* Jose Pagliery, *Your Personal Information Just Isn't Safe*,
CNN Money (July 28, 2014), http://money.cnn.com/2014/07/25/technology/
security/target-experian/ [herein after "Pagliery Article"]; Lydia DePillis, *Three
Insane Ways Marketers Will Reach You in the Future*, The Washington Post's
Wonkblog (Jan. 9, 2014), http://www.washingtonpost.com/blogs/wonkblog/wp/
2014/01/09/three-insane-ways-marketers-will-reach-you-in-the-future/. That said,
Experian has a spotty record in protecting this information. *See* Pagliery Article.

customers, ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

   ██████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

█████████  ██████████████████████████████████

█████████████████████████

## B.    Experian Is an Unrelated Independent Contractor.

The relationship between Redbox and Experian is governed by a series of

interrelated contracts. (Scharg Decl., Ex. 18 [Experian-Redbox Contract].) These

agreements are dictated and prepared by Experian on its standard forms. (*Id.*) ██

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

**C.   Adobe Is an Unrelated Independent Contractor.**

Redbox's relationship with Adobe is governed by the █████████████

████████████████████████████████ (Scharg Decl., Ex. 20 [Adobe-

Redbox Contract].) █████████████████

████████████████████████████████████████

██████████████████████████████████████

██ █████████

In practice as in the contract, Adobe's status as an independent contractor is

clear. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**V.     Redbox Disclosed Information Concerning Plaintiffs' Video Rentals to
ExactTarget, Stream, Experian, and Adobe.**

Cain and Sampat began renting from Redbox in approximately July and
December of 2010, respectively, and made further rentals up until the filing of this
suit and beyond. (Scharg Decl., Exs. 4 – 5.) Since Plaintiffs began renting, Redbox
has systematically disclosed information concerning their movie rentals that also
indicates their identities to ExactTarget, Stream, Experian, and Adobe.

For instance, on March 10, 2012, Cain returned a video to a Redbox kiosk.
(*Id*., Ex. 9 at CAIN 000230 – 239.) Redbox transmitted that information, including
her email address, to ExactTarget. ████████████████████████████
████████████ Similarly, on or around November 30, 2012, Radha Sampat rented
a video from a Redbox kiosk. (Scharg Decl., Ex. 8 at CAIN 000296-298.) Upon
returning the film, Redbox instantaneously transmitted the movie title, email
address, and other information to ExactTarget. ████████████████████████
████████ There are over 80 instances in which Redbox disclosed information
identifying both Plaintiffs in connection with specific video rentals to ExactTarget.
(Scharg Decl., Exs. 8 – 9; Hatch Decl., Ex. D.)

Additionally, Cain's and Sampat's names, email addresses, and movie rental
histories were maintained on Redbox's customer database. (Scharg Decl., Exs. 4 –

5.) This database is disclosed to Stream via the AR2 system. (Padgett Decl., ¶ 5; Scharg Decl., Ex. 21 [Sampat AR2 Screenshot].)

Furthermore, Cain and Sampat both received dozens of promotional emails from Experian. (Scharg Decl., Ex. 22 [Experian Email Records]; *id.* Ex. 23 [Promotional Emails].) ███████████████████████

████████████████████████████████

█████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████

## **ARGUMENT**

The undisputed facts show that Redbox is a company engaged in the business of renting video recordings at retail that disclosed records and information concerning Plaintiffs' video rental materials and their identities to ExactTarget, Stream, Experian, and Adobe. Because the undisputed facts further show these marketers and analytics companies are not Redbox's agents, the disclosures violate the plain terms of the VRPA and Plaintiffs are therefore entitled to judgment as a matter of law.

## I.    **Legal Standard**

Under Federal Rule of Civil Procedure 56, "[a] court must grant 'summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326 – 27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). At its core, the inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Further, where the moving party has the burden of proof at trial, the party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Zdebski v. Schmucker*, 972 F. Supp. 2d 972, 981 (E.D. Mich. 2013) (internal quotations and citation omitted).

Partial summary judgment—as Plaintiffs are seeking here—has been recognized as a useful tool to "streamline the issues to be decided at trial" in order to "serve the interests of judicial economy." *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 682, 692 (E.D. Mich. 2000); *see also SSI Tech., Inc. v. Compaero Inc.*, 2014 WL 1977138, at *1 (E.D. Mich. May 15, 2014) ("[S]ummary judgment [is] an integral part of the fair and efficient administration of justice," and "is not a disfavored procedural shortcut.").[4]

---

[4] Because Redbox has moved for summary judgment, (dkt. 47), it has removed any concern regarding the "one-way intervention" rule. *See, e.g.*, *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1382 (D.C. Cir. 1980) ("[A]

16

## II.   Redbox Violated the VRPA by Disclosing Information Concerning Plaintiffs' Video Rentals to Independent Third Parties.

To be entitled to summary judgment under the VRPA, Plaintiffs must establish that Redbox (1) disclosed to any person, other than Plaintiffs, its agents, or employees, (2) a record or information that concerned Plaintiffs' purchase, lease, rental, or borrowing of video rental materials (3) that indicated their identities. M.C.L. § 445.1712; (*see also* Scharg Decl., Ex. 24 [Michigan Non-Standard Jury Instr. Civil § 32:10]). Here, in direct contravention of the VRPA, Redbox disclosed information concerning Cain's and Sampat's video rentals that indicated their respective identities to ExactTarget, Stream, Experian, and Adobe.

### A.   Redbox Disclosed Information Concerning Cain's and Sampat's Video Rentals by Transmitting It Directly to ExactTarget, Experian, and Adobe, and by Disclosing Its Customer Database to Stream.

First, Plaintiffs must show that by transmitting information concerning Plaintiff's video rentals and identities to ExactTarget, Experian, and Adobe, and making available its customer database to Stream, Redbox made "disclosures"

---

defendant may waive the protections Rule 23(c) offers and elect to have the merits decided before the class certification question . . . when, as here, the defendant moves for summary judgment before resolution of the certification issue."); *Williams v. Lane*, 129 F.R.D. 636, 647 (N.D. Ill. 1990) (noting numerous courts have found that "defendants implicitly waive the protections of the rule against one-way intervention by attempting to obtain a favorable decision on the merits."); *Vander Luitgaren v. Sun Life Assur. Co. of Can.*, 966 F. Supp. 2d 59, 61 (D. Mass. 2012) ("[D]efendant has voluntarily waived its right to have class certification decided before the merits, and has asked the Court to evaluate the summary judgment motions first.")

within the plain meaning of the VRPA.

The VRPA does not define "disclose," and "[w]hen the text of a statute contains an undefined term, that term receives its ordinary and natural meaning." *Ltd., Inc. v. C.I.R.*, 286 F.3d 324, 332 (6th Cir. 2002); M.C.L. § 8.3a. Disclose is defined as "making known" or "exposing" previously unknown information. *See* Black's Law Dictionary 531 (9th ed. 2009) (defining "disclosure" as "[t]he act or process of making known something that was previously unknown; a revelation of facts."); *Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949, 952(10th Cir. 1996) (citing various definitions of "disclose," including "to make known," and "to expose"). Under the Health Insurance Portability and Accountability Act—an analogous privacy-focused federal statute—disclosure is defined as "the release, transfer, provision of access to, or divulging in any manner of information outside the entity holding the information." 45 C.F.R. § 160.103. This definition is particularly relevant as "Michigan courts have often considered the interpretation given to federal statutes when interpreting analogous state statutes." *Fakouri v. Pizza Hut of Am., Inc.*, 824 F.2d 470, 474 (6th Cir. 1987) (finding Michigan's Minimum Wage Law's use of "regular rate" consistent with "regular rate" as used in the FLSA).

Here, Redbox clearly made known, released, transferred, provided access to, and divulged information about Plaintiffs and their video rentals to entities outside of Redbox. ██████████████████████████████████████████

18

██████ (Hatch Decl., Exs. A – D; Scharg Decl., Ex. 19; *id.*, Ex. 6 at 177:18 – 23; 180:4 – 7.) Further, Stream was "provided access to," and did in fact access, Redbox's AR2 system that contains Plaintiffs' identities and video rental history by file title and rental date, along with substantial amounts of other compiled data. (Padgett Decl, ¶ 5; Scharg. Decl., Exs. 4 – 5.) Therefore, Redbox made *disclosures* within the meaning of the VRPA to ExactTarget, Stream, Experian, and Adobe.

## B.   ExactTarget, Stream, Experian, and Adobe Are Not Redbox's Agents.

While the VRPA generally prohibits disclosures to any person, it exempts from liability disclosures Redbox makes to its own agents or employees engaged in the business of selling or renting video materials. M.C.L. § 445.1712. The evidence, however, establishes that ExactTarget, Stream, and Experian are not Redbox's agents, but rather are independent contractors as a matter of law.

Although "agent" too is undefined by the VRPA, that term is given its "settled meaning at common law." *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 447 (2003); M.C.L. § 8.3a. As this Court already recognized, under Michigan common law the determination of whether a party is an agent or independent contractor is based on the "written agreement that defines the scope of the agent-principal relationship." (Dkt. 27 at 17 citing *Birou v. Thompson-Brown Co.*, 241 N.W.2d 265, 268 (Mich. Ct. App. 1976)); *see Birou*, 241 N.W.2d at 268

19

("[W]here the relationship of the parties has been defined by written agreement, it is the province of the trial judge to determine the relationship").

Here, the Court need look no further than Redbox's contracts with ExactTarget, Stream, and Adobe because they clearly establish as a matter of law that those entities are independent contractors to which disclosures under the VRPA are prohibited. (*See* Scharg Decl., Exs. 11, 14, 18, 20.) In fact, the ExactTarget, Stream, and Adobe contracts with Redbox each expressly define the relationship as being "independent contractors" and delineate all manner of acts involved in the contractual relationship that Redbox has no "right to control." (*Id.*, Ex. 11 at C000330, Ex. 14 at C00245, Ex. 20 at C00447.) Because the contracts clearly define the scope of these entities' relationship with Redbox, the Court should conclude as a matter of law that they are not agents.[5]

While Redbox's contract with Experian does not use the term "independent contractor" like the others, it is nonetheless apparent that Experian is not acting as anyone's agent, let alone Redbox's. Experian's status as an independent contractor

---

[5]    Even if the Court were to look beyond Redbox's contracts with these entities (it need not), the undisputed facts show that in practice the relationship was that of independent contractor. (*see* Scharg Decl., Ex. 12 at 117:5 – 129:8, 133:19 – 135:15); *see also St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ. Ass'n*, 581 N.W.2d 707, 716 (Mich. 1998) (evaluating the principal's right to control the agent in practice); *see also Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004) (setting forth common law agency factors including the principal's role in hiring and paying employees, the hired party's employee benefits, and the hired party's tax treatment).

becomes more apparent when looking to the undisputed facts about how their
professional relationship functioned:



As such, the disclosures to Experian were equally violative of, and fall outside the
term "agent" as used in, the VRPA.

> **C.     The Information Redbox Disclosed Concerned Plaintiffs' Movie
> Rentals and Indicated Their Identities.**

A disclosure violates the VRPA if it "concern[s] the purchase, lease, rental,
or borrowing of [video recordings]" and "indicates the identity of the customer."
M.C.L. § 445.1712. Here, Redbox disclosed to ExactTarget, Stream, Experian, and
Adobe information concerning Plaintiffs' rentals of video materials that also
indicated their respective identities.

Disclosure of movie rental title in conjunction with customer name is the
paradigmatic VRPA violation. (Scharg Decl., Ex. 3 ["Except as otherwise provided
by law, a retailer, lender, or renter of [video recordings] could not disclose

information—such as *selections made—on a particular customer . . . .*"] (emphasis added).) No credible argument can be made to the contrary. The VRPA, however, is not restricted to disclosures of customers by name, nor is it restricted to disclosures of solely the titles of the videos rented. It is these broader prohibitions that are meant to prevent the consumer profiling being engaged in here.

On its face, the VRPA broadly prohibits disclosures "*concern[ing]* the purchase, lease, rental, or borrowing" of video materials. M.C.L. § 445.1712 (emphasis added). And again, because "concern" is undefined, "that term receives its ordinary and natural meaning." *Ltd., Inc.*, 286 F.3d at 332. "Concern" is commonly defined as "to relate to." *See* "Concern." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/concern (last visited Sept. 22, 2014); *see also Gordon v. Royal Palm Real Estate Inv. Fund I, LLLP*, 2011 WL 835941, at *6 (E.D. Mich. Mar. 8, 2011) ("The Oxford English Dictionary defines 'concern' as '[1] relate to; be about[;][2] be relevant to; affect or involve.'"). This language is in stark contrast to the VPPA, which prohibits the disclosure of "information which identifies a person as having requested or obtained *specific video materials* . . . ." 18 U.S.C. § 2710(a)(3). In addition to the plain text, the legislative history also indicates that it was never the legislature's intent to limit the VRPA to video titles. (Scharg Decl., Ex. 3 ["a retailer, lender, or renter of such items could not disclose information—*such as* selections made . . .

22

."].). Accordingly, information "relating to" the rental of video materials, such as the genres of films the customer was interested in, where the rental was made, when the video was rented and returned, if it was returned at a different location, the zip code associated with the card purchasing the rental, and total number of videos rented fall well within the prohibited disclosures of the VRPA.

The VRPA's disclosure prohibitions also extend to identifying information about a person other than their name—the disclosure need only "indicate the identity of the customer." Like the VPPA, the VRPA "does not say 'identify by name' and thus plainly encompasses other means of identifying a person." *In re Hulu Privacy Litig.*, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014) (holding under the VPPA that "the statute, the legislative history, and the case law do not require a name, instead [it] require[s] the identification of a specific person tied to a specific transaction . . . ."). It is unsurprising that the prohibition is not limited to customer names, as there are several other types of information that indicate one's identity. In fact, Redbox acknowledges in its Privacy Policy that email address is personally identifiable information. (Scharg Decl., Ex. 10 at C01667.) The courts and legislatures agree that an email certainly qualifies as personal identification information. *See, e.g.*, *Capp v. Nordstrom, Inc.*, 2013 WL 5739102, at *6-7 (E.D. Cal. Oct. 22, 2013) (finding email addresses constitute "personal identification information" under California's Credit Card Act because "email address permits

23

direct contact and implicates the privacy interests of [an accountholder].”); *Hiken v. Dep't of Def.*, 872 F. Supp. 2d 936, 942 (N.D. Cal. 2012) (noting certain information can be withheld under FOIA, including “personal information that can be identified as applying to particular individuals—including such information as names and email addresses”) (internal quotations and citation omitted); 15 U.S.C. § 6501(8)(C) (defining “personal information” under the Children's Online Privacy Protection Act as “individually identifiable information,” including email address).

As set forth above, Redbox disclosed both information “concern[ing] the purchase, lease, rental, or borrowing of [video recordings]” and “indicate[ing] the identity of the customer.” Starting with the paradigmatic violation, Redbox made available to Stream its entire AR2 database that identified Plaintiffs' names, email addresses, and every video by title they rented. In addition, for every movie Plaintiffs rented, Redbox disclosed their email addresses in conjunction with specific movie title information, along with other data about the rental, to ExactTarget. (Hatch Decl., Exs. A – D.) And finally, for each of Plaintiffs' rentals, Redbox disclosed to Experian and Adobe ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

24

███████████████████████

Accordingly, Redbox disclosed information concerning Plaintiffs' movie rentals that indicated their identities, and Plaintiffs are, therefore, entitled to partial summary judgment as to liability on their VRPA claims.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court enter an order granting partial summary judgment in their favor on their VRPA claims and providing such further relief that the Court deems equitable and just.

Dated:  September 23, 2014                    Respectfully submitted,

MICHELLE CAIN and RADHA SAMPAT, individually and on behalf of all others similarly situated,

By:  /s/ Ari J. Scharg
        One of Plaintiffs' Attorneys

Ari J. Scharg                              Brian C. Summerfield (P57514)
ascharg@edelson.com                        bsummerfield@bodmanlaw.com
John C. Ochoa                              BODMAN PLC
jochoa@edelson.com                         1901 St. Antoine Street
J. Dominick Larry                          6th Floor at Ford Field
nlarry@edelson.com                         Detroit, Michigan 48226
Mark S. Eisen                              Tel: 313.259.7777
meisen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, certify that on September 23, 2014, I served the above and foregoing ***Plaintiffs' Motion for Partial Summary Judgment***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Ari J. Scharg     