## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MICHELLE CAIN and RADHA SAMPAT, individually and on behalf of all others similarly situated, | Case No. 2:12-cv-15014-GER-RSW |
| Plaintiffs, | Hon. Gerald E. Rosen |
| v. | Mag. Judge R. Steven Whalen |
| REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company, | |
| Defendant. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Ari J. Scharg
ascharg@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370

Brian C. Summerfield (P57514)
bsummerfield@bodmanlaw.com
BODMAN PLC
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, Michigan 48226
Tel: 313.259.7777

*Counsel for Plaintiffs and the Putative Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................... iv

STATEMENT OF ISSUES PRESENTED ............................................ vii

CONTROLLING AND MOST IMPORTANT AUTHORITY ............................. ix

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 2

    I.     Redbox's Disclosures to ExactTarget .................................... 3

    II.    Redbox's Disclosures to Experian ...................................... 3

    III.   Redbox's Disclosures to Adobe ........................................ 5

    IV.   Redbox's Disclosures to Stream ........................................ 5

ARGUMENT ................................................................... 6

    I.     Redbox Disclosed Plaintiff Cain's Protected Information in Violation of the VRPA. ................................................ 8

    II.    Redbox's Third-Party Vendors Are Not Agents to Whom It Can Disclose Protected Information. ....................................... 12

    III.   Plaintiffs Did Not Consent to the Disclosure of Their Protected Information. ......................................................... 16

            A.    Plaintiffs Are Not Bound by Redbox's Terms of Use. ........... 17

            B.    The Privacy Policy Is Not Incorporated Into the Terms of Use. ................................................................ 19

            C.    Plaintiffs Did Not Provide "Written Permission" As Required by the VRPA. ........................................ 20

    IV.   The VRPA Has No Ordinary Course of Business Exception. .......... 22

V.    The Terms of Use's Limitations Period Does Not Bar Plaintiffs'
      Claims. ............................................................................................ 24

CONCLUSION ...................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................... 7

*Meacham v. Knolls Atomic Power Lab.*,
    554 U.S. 84 (2008) ..................................................................... 16


**United States Court of Appeals Cases**

*Bender v. Newell Window Furnishings, Inc.*,
    681 F.3d 253 (6th Cir. 2012) ....................................................... 20

*Broad. Music, Inc. v. Roger Miller Music, Inc.*,
    396 F.3d 762 (6th Cir. 2005) ....................................................... 23

*Loyd v. Saint Joseph Mercy Oakland*,
    — F.3d —, 2014 WL 4434200 (6th Cir. Sept. 10, 2014)............... 6

*N.L.R.B. v. Pepsi Cola Bottling Co. of Mansfield, Ohio*,
    455 F.2d 1134 (6th Cir. 1972) ..................................................... 14

*Sterk v. Redbox Automated Retail, Inc.*,
    No. 13-3037 (7th Cir.) ........................................................... 12, 23


**United States District Court Cases**

*Avio v. Alfoccino, Inc.*,
    No. 2:10-cv-10221, 2014 WL 1870108 (E.D. Mich. May 9, 2014)............... 7

*Capp v. Nordstrom, Inc.*,
    2013 WL 5739102 (E.D. Cal. Oct. 22, 2013)............................... 11

*Friedman v. Freidberg Law Grp.*,
    44 F. Supp. 2d 902 (E.D. Mich. 1999) ....................................... 15

*Hill v. Dep't of Def.*,
  981 F. Supp. 2d 1 (D.D.C. 2013)................................................................. 25

*In re Hulu Privacy Litig.*,
  2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)....................................... 11, 12

*Sterk v. Redbox Automated Retail, LLC*,
  2013 WL 4451223 (N.D. Ill. Aug. 16, 2013) ............................................ 11

## State Supreme Court Cases

*Briggs Tax Serv., L.L.C. v. Detroit Pub. Sch.*,
  780 N.W.2d 753 (Mich. 2010) ................................................................. 14

*St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ. Ass'n*,
  581 N.W.2d 707 (Mich. 1998) ................................................................. 14

## State Court of Appeals Cases

*Harrison v. Sears, Roebuck & Co.*,
  546 N.E.2d 248 (Ill. App. Ct. 1989) ........................................................ 19

*In re DiMeglio Estate*,
  — N.W.2d —, 2014 WL 3928558 (Mich. Ct. App. Aug. 12, 2014)........... 20

*Turcheck v. Amerifund Fin., Inc.*,
  725 N.W.2d 684 (Mich. Ct. App. 2006).................................................... 20

## Statutes

18 U.S.C. § 2710.................................................................................... 9, 23

M.C.L. § 445.1712................................................................ 8, 10, 12, 13, 22

M.C.L. § 445.1713.................................................................... 16, 21, 22, 23

M.C.L. § 450.838.......................................................................... 17, 21

**Other Authorities**

41 Am. Jur. 2d Independent Contractors § 10 ....................................................... 14

## STATEMENT OF ISSUES PRESENTED

1.      Whether Redbox is entitled to summary judgment where the evidence establishes that Redbox routinely discloses information or records concerning video rentals that indicate its customers' identities (including the identities of both Plaintiffs here) in violation of Michigan's Video Rental Privacy Act ("VRPA"), M.C.L. §§ 445.1711–445.1715.

Plaintiffs' Answer: No.

2.      Whether Redbox is entitled to summary judgment based on its assertion that it only discloses protected information to its agents, when the VRPA does not permit disclosures to agents and, in any event, the evidence establishes that the third-party vendors to whom Redbox discloses its customers' protected information are not its agents.

Plaintiffs' Answer: No.

3.      Whether Redbox is entitled to summary judgment where Plaintiffs did not—nor could not consistent with Michigan law—consent at a Redbox kiosk to Redbox's disclosures of their protected information.

Plaintiffs' Answer: No.

4.      Whether Redbox is entitled to summary judgment based on its argument that the Michigan VRPA incorporates an "ordinary course of business" exception from a federal video privacy law, where incorporating the federal

exception would render large portions of the VRPA superfluous.

Plaintiffs' Answer: No.

5.     Whether Redbox is entitled to summary judgment on the basis of a contractual limitations period where Plaintiffs are not and cannot be bound by the purported contract, and many of Redbox's unlawful disclosures took place within the limitations period in any event.

Plaintiffs' Answer: No.

## **CONTROLLING AND MOST IMPORTANT AUTHORITY**

**ARGUMENT**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)

*Loyd v. Saint Joseph Mercy Oakland*,
    — F.3d —, 2014 WL 4434200 (6th Cir. Sept. 10, 2014)

*Avio v. Alfoccino, Inc.*,
    No. 2:10-cv-10221, 2014 WL 1870108 (E.D. Mich. May 9, 2014)

**I.    Redbox Disclosed Plaintiff Cain's Protected Information in Violation of the VRPA.**

Michigan Video Rental Privacy Act,
    M.C.L. § 445.1712

Video Protection Privacy Act,
    18 U.S.C. § 2710(a)(3)

*In re Hulu Privacy Litig.*,
    2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)

*Capp v. Nordstrom, Inc.*,
    2013 WL 5739102 (E.D. Cal. Oct. 22, 2013)

*Sterk v. Redbox Automated Retail, LLC*,
    2013 WL 4451223 (N.D. Ill. Aug. 16, 2013)

*Sterk v. Redbox Automated Retail, Inc.*,
    No. 13-3037 (7th Cir.)

**II.   Redbox's Third-Party Vendors Are Not Agents to Whom It Can Disclose Protected Information.**

Michigan Video Rental Privacy Act,
    M.C.L. § 445.1712

*Briggs Tax Serv., L.L.C. v. Detroit Pub. Sch.*,
        780 N.W.2d 753 (Mich. 2010)

*N.L.R.B. v. Pepsi Cola Bottling Co. of Mansfield, Ohio*,
        455 F.2d 1134 (6th Cir. 1972)

*Friedman v. Freidberg Law Grp.*,
        44 F. Supp. 2d 902 (E.D. Mich. 1999)

**III.    Plaintiffs Did Not Consent to the Disclosure of Their Protected Information.**

Michigan Video Rental Privacy Act,
        M.C.L. § 445.1713

*Meacham v. Knolls Atomic Power Lab.*,
        554 U.S. 84 (2008)

     **A.    Plaintiffs Are Not Bound by Redbox's Terms of Use.**

     Uniform Electronic Transactions Act,
                M.C.L. § 450.838(3)

     **B.    The Privacy Policy Is Not Incorporated Into the Terms of Use.**

     *Harrison v. Sears, Roebuck & Co.*,
                546 N.E.2d 248 (Ill. App. Ct. 1989)

     *Turcheck v. Amerifund Fin., Inc.*,
                725 N.W.2d 684 (Mich. Ct. App. 2006)

     *In re DiMeglio Estate*,
                — N.W.2d —, 2014 WL 3928558 (Mich. Ct. App. Aug. 12, 2014)

     *Bender v. Newell Window Furnishings, Inc.*,
                681 F.3d 253 (6th Cir. 2012)

**C.      Plaintiffs Did Not Provide "Written Permission" As Required by the VRPA.**

Uniform Electronic Transactions Act,
     M.C.L. § 450.838(1)

**IV.    The VRPA Has No Ordinary Course of Business Exception.**

Michigan Video Rental Protection Act,
     M.C.L. §§ 445.1712, 1713(c)

Video Protection Privacy Act,
     18 U.S.C. §§ 2710(a)(2), 2710(b)(2)

*Broad. Music, Inc. v. Roger Miller Music, Inc.*,
     396 F.3d 762 (6th Cir. 2005)

*Sterk v. Redbox Automated Retail, Inc.*, No. 13-3037 (7th Cir.)

**V.      The Terms of Use's Limitations Period Does Not Bar Plaintiffs' Claims.**

*Hill v. Dep't of Def.*, 981 F. Supp. 2d 1, 8 (D.D.C. 2013)

## __INTRODUCTION__

Michigan's Video Rental Privacy Act ("VRPA"), M.C.L. §§ 445.1711–445.1715, prohibits video rental companies from disclosing information concerning video rentals that indicates the renter's identity to anyone but the customer. Despite the clear provisions of this statute, Defendant Redbox Automated Retail, LLC ("Redbox") routinely discloses such information—including that of Plaintiffs Michelle Cain and Radha Sampat ("Plaintiffs")—to multiple third parties without consent. Redbox has now moved for summary judgment, claiming (among other things) that the VRPA doesn't mean what it says, but only prohibits disclosures of a customer's full name along with a specific movie title. In fact, however, not only does the VRPA prohibit more than just the disclosure of a name coupled with a movie title, but Redbox makes disclosures that would be unlawful even under its artificially limited misreading of the statute.

Beyond this initial tactic, Redbox takes a "kitchen sink" approach and offers a host of other arguments about agency, consent, incorporation, and limitations periods in an attempt to justify its unlawful disclosures, but these arguments are likewise either factually or legally incorrect (and often both). At the end of the day, Redbox cannot deny or excuse that it routinely discloses information concerning its customers' video rentals—including, in many cases, movie titles—to third parties without consent in violation of the VRPA. Consequently, and as explained more

1

fully below, Redbox's motion for summary judgment should be denied.[1]

## BACKGROUND

Redbox is a leading video rental service that allows customers to rent videos through automated, self-service kiosks located in various retail outlets. (Dkt. 46 at 3.) During each and every kiosk transaction, Redbox collects numerous pieces of information about its customers, including Plaintiffs. Specifically, with the swipe of a credit card, Redbox automatically collects the customer's ████████████. ████████████████████████████████████████. (First Deposition of Eric Hoersten, Dkt. 55-4, at 55:2–58:9; Second Deposition of Eric Hoersten, Dkt. 55-5, at 12:22–14:19, 16:2–7, 64:15–67:1; Redbox's Database Records of Plaintiffs' Rental History, Dkts. 55-2, 55-3.) When a customer provides an email address, Redbox ████████████████████████████████████████████████████████████████████. (First Hoersten Dep., Dkt. 55-4, at 58:11–59:17, 65:18–66:12; Second Hoersten Dep., Dkt. 55-5, at 15:11–16, 107:7–16.)

Once the customer information reaches the Redbox database from the kiosk,

---

[1]   Plaintiffs complaint contains three counts: (1) violation of the VRPA, (2) breach of contract, and (3) unjust enrichment. (Dkt. 1.) Redbox's summary judgment motion addresses only the VRPA claim, asserting that the breach of contract and unjust enrichment claims are contingent on the VRPA claim. (Dkt. 46 at 8.) Consequently, because, as set forth in this brief, summary judgment in Redbox's favor on the VRPA claim is unwarranted, Redbox's summary judgment motion should not be granted as to Plaintiffs' common law claims either.

it is automatically disclosed to a number of third party vendors including

ExactTarget, Inc. ("ExactTarget"), Experian Marketing Services, Inc./Cheetahmail,

Inc. ("Experian"), Adobe Systems Incorporated ("Adobe"), and Stream Global

Services, Inc. ("Stream"). (First Hoersten Dep., Dkt. 55-4, at 216:14–217:18.)

## I.      Redbox's Disclosures to ExactTarget



Redbox transmits, among other things, ███████ to ExactTarget in order to enable ExactTarget to ███████. (Declaration of Sarah Hatch, Dkt. 53-2, ¶¶ 8, 10, 12, 14; Plaintiffs' Transaction Emails, Dkts. 55-6, 55-7.) ███████. (*See* Plaintiffs' Transaction Emails, Dkts. 55-6, 55-7.)

There are over 80 instances in which Redbox disclosed Plaintiffs'

transactional and identifying information—including ███████—to ExactTarget. (Plaintiffs' Transaction Emails, Dkts. 55-6, 55-7; Hatch

Decl., Dkt. 53-2, ¶ 18 and Ex. D.)

## II.     Redbox's Disclosures to Experian

Redbox also discloses its customers' protected information to Experian.

Redbox transmits detailed customer information to Experian to enable it to ███

3



. (Redbox's Responses to Cain's First Set of Interrogatories, Dkt. 54-18, No. 9; Experian-Redbox Contract, Dkt. 55-14 at C000385; First Hoersten Dep., Dkt. 55-4, at 161:14–24; Deposition of Michael Wokosin, Dkt. 55-9, at 50:9–51:2.) To perform these functions, Redbox discloses detailed personal and rental information, including

. (Redbox-Experian Data Stream, Dkt. 55-15; First Hoersten Dep., Dkt. 55-4, at 159:15–160:23.)

. (Experian Email Records, Dkt. 55-18; Promotional Emails, Dkt. 55-19.) In order to enable         , Redbox transmitted to Experian Plaintiffs'

. (Redbox-Experian Data Stream, Dkt. 55-15.)

### III.   Redbox's Disclosures to Adobe

Redbox also transmits detailed customer information to Adobe to enable it to █████████████████████████████████████████████████. (Redbox's Responses to Cain's First Set of Interrogatories, Dkt. 54-18, at No. 9; First Hoersten Dep., Dkt. 55-4, at 177:18–23; Wokosin Dep., Dkt. 55-9, at 86:7–88:7.) Further, Redbox transmits to Adobe all the data it transmits to Experian to enable Adobe to ████████████████████████████████. (First Hoersten Dep., Dkt. 55-4 at 177:18–23; Wokosin Dep., Dkt. 55-9, at 86:7–9.)

Plaintiffs' personal and rental information—including ██████████ ████████████████████████████████████████████████████████ ████████████████████—which were transmitted to Experian, were also transmitted to Adobe to ████████████. (Wokosin Dep., Dkt. 55-9 at 86:7–9.)

### IV.   Redbox's Disclosures to Stream

Finally, Redbox discloses every customer's—including *both* Plaintiffs'— personal information and rental history to Stream ████████████████ ████████████████ to operate its call centers. (Deposition of Nick Lullo, Dkt. 55-10, at 38:17–24, 40:18–44:6; Declaration of Jeffrey Scott Padgett, Dkt. 53-3, ¶ 5; Affidavit of Jeffrey Scott Padgett, Dkt. 53-4, ¶¶ 7–10.) Redbox provides Stream ███████████████████████████████████████████ ████████████████████████████████████████████

5



. (Padgett Decl., Dkt. 53-3, ¶ 5.) Further, Stream trainees ███████████████████████████████████.
(Stream Training Manual, Dkt. 55-12, at SGS000130, 141; Padgett Aff., Dkt. 53-4, ¶¶ 7–10.) For example, using actual customer information, trainees ████████

. (Stream Training Manual, Dkt. 55-12 at SGS000130, 141.) Additionally, trainees ██████████████████████████████████████████████████████. (Padgett Aff., Dkt. 53-4, ¶¶ 7–10.)

Both Cain's and Sampat's names, email addresses, and movie rental histories were maintained on Redbox's customer database, which was disclosed to Stream ████████████. (Redbox's Database Records of Plaintiffs' Rental History, Dkts. 55-2, 55-3; Screenshot of ████████, Dkt. 55-17.)

## ARGUMENT

Summary judgment is proper only "if the record, when viewed in the light most favorable to the nonmovant, reveals that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law." *Loyd v. Saint Joseph Mercy Oakland*, — F.3d —, 2014 WL 4434200, at *5 (6th Cir. Sept. 10,

6

2014). The non-movant's evidence "is to be believed, and all justifiable inferences . . . drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Here, Redbox makes five arguments in support of its motion for summary judgment: First, Redbox asserts that Plaintiff Cain's protected information was not disclosed to anyone (though it concedes that Plaintiff Sampat's protected information was disclosed to Stream). Second, Redbox asserts that any recipient of protected information was an agent of Redbox, and such disclosures do not violate the VRPA. Third, Redbox asserts that Plaintiffs consented to any disclosures of their private information. Fourth, Redbox argues that the disclosures fall within an ordinary course of business exception drawn from a *federal* privacy statute. Finally, Redbox argues that Plaintiffs' claims are time-barred. As explained below, all of these arguments are factually and legally wrong, and Redbox's motion for summary judgment should therefore be denied.[2]

---

[2]     Redbox also re-raises its argument that Plaintiffs lack Article III standing. (Dkt. 46 at 23-24.) As Redbox acknowledges, however, this Court has previously rejected that argument (dkt. 27 at 10-16), and Redbox raises it simply to preserve it. (Dkt. 46 at 23.) While Redbox adds to its previous standing argument an assertion that Plaintiffs had no knowledge of Redbox's disclosures of their protected information prior to filing their lawsuit (dkt. 46 at 24), that assertion is wrong. Both Plaintiffs testified that they learned of Redbox's unlawful disclosures prior to contacting counsel to file this action. (Deposition Transcript of Michelle Cain, a true and accurate copy of which is attached to the Declaration of Ari J. Scharg as Exhibit 1-A, at 24:22–27:7; Deposition Transcript of Radha Sampat, a true and accurate copy of which is attached to the Scharg Decl. as Exhibit 1-B, at 22:12–27:7.) Further, while Redbox cites this Court's recent decision in *Avio v. Alfoccino, Inc.*, No. 2:10-cv-10221, 2014 WL 1870108 (E.D. Mich. May 9, 2014),

## I.   Redbox Disclosed Plaintiff Cain's Protected Information in Violation of the VRPA.

Redbox first argues that it is entitled to summary judgment against Plaintiff Cain because her "personal rental history" was never disclosed. (Dkt. 46 at 9.) Redbox defines "personal rental history" as "information that would identify a specific individual as having rented a specific movie." (*Id*.) But neither "personal rental history" nor Redbox's proposed definition of that phrase requiring a link between a person and a movie title appear anywhere in the VRPA. To the contrary, the VRPA states:

> [A] person . . . engaged in the business of selling at retail, renting, or lending . . . video recordings shall not disclose to any person, other than the customer, *a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer*.

M.C.L. § 445.1712 (emphasis added).

Thus, there are just two elements that a disclosure must have in order to fall within the VRPA's prohibition: The disclosure (1) must be "a record or information concerning" a customer's rental of video recordings, and (2) it must "indicate[] the identity of the customer." *Id*. A record or information can "concern"

---

that case involved an alleged injury of which a plaintiff should be immediately aware: receipt of an unauthorized fax. This case, in contrast, involves disclosures of private information, an injury of which the injured party may not even be aware (and which the disclosing party may be actively concealing). In any event, because Redbox concededly raises Article III standing merely to preserve the issue (though this jurisdictional issue could be raised on appeal regardless), there is no reason for this Court to reconsider its prior ruling on the subject.

a customer's rental even if it does not contain a movie title, for example by revealing where a rental transaction occurred, how many videos were rented, the method of payment used, or any number of other pieces of data relating to the transaction. And if that record or information also "indicates the identity of the customer," its disclosure violates the VRPA. Contrary to Redbox's unsupported assertion, the VRPA's language does not require that the disclosure link a particular customer to a particular movie.

The language of the VRPA prohibiting disclosure of information "concerning" video rentals that "indicates the identity of the customer" stands in stark contrast to the language employed by the federal Video Privacy Protection Act ("VPPA"), which—unlike the VRPA—*does* require the disclosure to include the movie title. Specifically, the VPPA prohibits disclosure of "information which identifies a person *as having requested or obtained specific video materials . . . .*" 18 U.S.C. § 2710(a)(3) (emphasis added). The legislative history of the VRPA confirms that it was not the Michigan legislature's intent to limit the information protected by that statute to video titles. (Legislative History, Dkt. 54-4 [prohibiting disclosures of information "*such as* selections made . . . ."] (emphasis added).).

The Michigan legislature's expansion of the federal statute recognizes that oftentimes the disclosure of information other than movie titles can be just as invasive of privacy. If a customer rents or purchases movies from a store (or kiosk)

9

in a city's red-light district, from a store specializing in right- or left-wing political materials, or from the Disney Store or other children's retailer, then a record concerning that transaction would necessarily include important, private information about that customer, even absent a movie title.

Here, as discussed above, Redbox routinely discloses "information concerning the purchase, lease, rental, or borrowing of [video recordings] by a customer that indicates the identity of the customer." M.C.L. § 445.1712. Redbox discloses to Experian and Adobe ███████████████████████████ ███████████████████████████████████████████ (among other things).

Likewise, Redbox discloses to ExactTarget ███████████████████ ████████████████████████████████████.[3] Again, this is clearly information concerning the rental of videos by a customer that indicates the customer's identity. Indeed, even under Redbox's misreading of the VRPA, which would require a movie title in order to be a prohibited disclosure, the disclosures to ExactTarget are unlawful. Further, the fact that Redbox does not disclose actual customer names to ExactTarget does not remove such disclosures from the VRPA's prohibition given that an email address "indicates the identity of the

_____

[3] ███████████████████████████████████████████ both Plaintiffs Cain and Sampat provided their email addresses to Redbox. (Wokosin Decl., Dkt. 48, ¶¶ 8-10; Dkts. 49-1, 49-2.)

customer." *See, e.g.*, *In re Hulu Privacy Litig.*, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014) (noting that federal VPPA, which prohibits disclosures that "identif[y] a person," "does not say 'identify by name' and thus plainly encompasses other means of identifying a person"); *Capp v. Nordstrom, Inc.*, 2013 WL 5739102, at *6–7 (E.D. Cal. Oct. 22, 2013) (finding email addresses constitute "personal identification information" under California's Credit Card Act because it "permits direct contact and implicates the privacy interests of a cardholder").[4]

Finally, Redbox discloses its customers' names and video rental histories to Stream by providing Stream with unfettered access to the AR2 database. Redbox asserts that it only provides Stream "call-by-call" access to its customer database, and on this basis contends that Cain's information was never disclosed because she never called Stream. (Dkt. 46 at 6, 7, 9–10.)[5] Redbox, however, ignores that by providing Stream unrestricted access to its customer database, Redbox has disclosed the entire database. Courts interpreting the VPPA agree that provision of access (especially knowing that the recipient uses that access) constitutes a disclosure. *See Sterk v. Redbox Automated Retail, LLC*, 2013 WL 4451223, at *6 (N.D. Ill. Aug. 16, 2013) (characterizing Redbox's provision of access to Stream as

---

[4]     Though Redbox contends that email address does not indicate customer identity (dkt. 46 at 6), its own Privacy Policy states otherwise. Redbox's Privacy Policy specifically delineates "email address" as "information that identifies you as a specific individual." (Dkt. 48-12 at C01667.)

[5]     Redbox concedes that Plaintiff Sampat's protected information was disclosed to Stream. (Dkt. 46 at 10.)

11

a "disclosure" of the entire database under the VPPA); *In re Hulu*, 2014 WL 1724344, at *14 (noting that throwing Judge Bork's movie rental list in the trash "knowing that the Washington Post searches your bin" could be a disclosure under the VPPA). There can be no doubt here that Redbox's provision of access to its entire database—knowing that Stream regularly and freely searches it—constitutes a disclosure of the entire database. And because the database undisputedly contains customers' names and rental histories, it is certainly "a record or other information concerning the purchase, lease, rental, or borrowing of [video recordings] that indicates the identity of the customer." M.C.L. § 445.1712. And again, as with ExactTarget, the disclosures to Stream are unlawful even under Redbox's misreading of the VRPA as requiring disclosure of movie titles.

For all these reasons, Redbox's argument that it is entitled to summary judgment against Plaintiff Cain because it never disclosed her protected information—as well as its assertion that it did not disclose Plaintiff Sampat's protected information to anyone other than Stream—is simply wrong.[6]

## II.   Redbox's Third-Party Vendors Are Not Agents to Whom It Can Disclose Protected Information.

Redbox next argues that any recipients of Plaintiffs' protected information

---

[6]    It should also be noted that Redbox discloses backup tapes of its entire customer database to third party Iron Mountain. (*See Sterk v. Redbox Automated Retail, Inc.*, No. 13-3037 (7th Cir.), Dkt. 25 at 3.) Redbox neglects entirely to mention Iron Mountain, its disclosures to whom also defeat Redbox's Motion for Summary Judgment here.

here were Redbox's agents, and that the VRPA does not prohibit a company from disclosing protected information to its agents. (Dkt. 46 at 11-15.) As an initial matter, Redbox's tortured reading of the VRPA as allowing disclosure of protected information to its agents is wrong. The only reference to agents in the statute is in listing who is prohibited from disclosing private information: "a person … *or agent of the person*" engaged in the business of renting video recordings shall not disclose protected information. M.C.L. § 445.1712 (emphasis added). Crucially, however, the statute does not state that video rental companies may disclose protected information *to* their agents. The statute says that video rental companies like Redbox "shall not disclose [protected information] to any person, other than the customer." *Id*. While Redbox would like the statute to read "shall not disclose [protected information] to any person, other than the customer *or any agent of the person making the disclosure*," that is simply not what the statute says.[7]

In any event, whether or not Redbox's reading of the statute is correct is ultimately irrelevant here because none of the third-party vendors to whom Redbox

---

[7]      Because the VRPA prohibits agents from disclosing protected information, one could argue that the statute presumes (and thus permits) that agents will receive such information from their principals. No such presumption is necessary, however, as agents could receive protected information directly from customers. For example, a Redbox customer could call Stream, and during that call voluntarily provide protected information to Stream. Stream would be prohibited from disclosing that protected information under the VRPA. But that fact in no way suggests that—contrary to the plain language of the statute—Redbox can disclose such protected information to Stream (or any other third party).

discloses protected information even *is* an agent of Redbox. As the Michigan Supreme Court has repeatedly noted, "[f]undamental to the existence of an agency relationship is the right of the principal to control the conduct of the agent." *Briggs Tax Serv., L.L.C. v. Detroit Pub. Sch.*, 780 N.W.2d 753, 760 (Mich. 2010) (citing *St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ. Ass'n*, 581 N.W.2d 707, 716 (Mich. 1998)). "Right to control" pertains to the right to control the manner and means of performance, not merely the end result. *See N.L.R.B. v. Pepsi Cola Bottling Co. of Mansfield, Ohio*, 455 F.2d 1134, 1141 (6th Cir. 1972); 41 Am. Jur. 2d Independent Contractors § 10. Here, Redbox does not control the manner and means of performance of any of the third-party vendors to whom it discloses protected information.

Redbox's contracts with two of the third-party vendors, ExactTarget and Adobe, ███████████████████████████████████████████████.



(*See* ExactTarget-Redbox Contract, Dkt. 55-8, at C000330 ("████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████"); Adobe-Redbox Contract, Dkt. 55-16, at C00447 ("████████████ ████████████████████████████████████████ ████████████████████████████████████████")).) In addition, the

contract between Redbox and Stream states that ███████████████

████████████████████████████████████████████

(Stream-Redbox Contract, Dkt. 55-11, at C00245), that ████████████████

████████████████████████ (*id.*), and that ████████████

████████████████████████████████████ (*id.* at C00256).[8]

As this Court previously noted, "[i]f a written agreement defines the scope of an

agent-principal relationship . . . a Court must determine the nature of the

relationship." (Dkt. 27 at 17.) Thus, even if Redbox's misreading of the VRPA

were correct in allowing disclosures of protected information to agents, its

contracts with ExactTarget, Adobe, and Stream establish that those vendors are not

its agents, ending the inquiry.

In addition, with respect to Experian, Redbox's 30(b)(6) designee testified

that ████████████████████████████████████████████

████. (Wokosin Dep., Dkt. 55-9, at 124:17-128:2.) Experian thus is also not an

agent of Redbox. At the very least, a disputed question of fact exists as to whether

Experian is an agent of Redbox, rendering summary judgment in Redbox's favor

inappropriate. *See Friedman v. Freidberg Law Grp.*, 44 F. Supp. 2d 902, 908 (E.D.

Mich. 1999) ("[I]t is well-settled that questions as to the existence and/or scope of

---

[8]    While Redbox cites *Sterk* for the proposition that Redbox and Stream are in
an "agency relationship," (dkt. 46 at 12), agency was not before the court in *Sterk*,
and the court there did not engage in an agency analysis, let alone under Michigan
law. A stray quote from the Northern District of Illinois bears no weight here.

15

an agency relationship are questions of fact appropriate for the jury's

consideration.").

### III.   Plaintiffs Did Not Consent to the Disclosure of Their Protected Information.

Redbox next argues that Plaintiffs consented to the disclosures at issue. (Dkt.

46 at 16–19.) The VRPA allows disclosure of a customer's protected information

"[w]ith the written permission of the customer." M.C.L. § 445.1713. Because

consent is an exception under the VRPA, Redbox bears the burden of proof. *See*

*Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) ("When a proviso

. . . carves an exception out of the body of a statute or contract those who set up

such exception must prove it.") (internal quotations and citation omitted). Redbox

attempts to establish consent here through an attenuated chain of assertions: that

Plaintiffs are bound by Redbox's Terms of Use, that the Terms of Use incorporate

a Privacy Policy, and that the Privacy Policy in turn states that Redbox may

provide third-party vendors with its customers' information. This argument fails

for at least three reasons. First, under Michigan law, Plaintiffs are not bound by

Redbox's Terms of Use, an electronic document they were unable to print or store

during their kiosk transactions. Second, even if Plaintiffs were bound by the Terms

of Use, it does not—contrary to Redbox's assertion—incorporate the Privacy

Policy. Third, even if the Terms of Use did incorporate the Privacy Policy, Redbox

fails to establish that Plaintiffs provided *written* permission to disclose their

16

protected information as required by the VRPA.

A.    **Plaintiffs Are Not Bound by Redbox's Terms of Use.**

The first prong of Redbox's argument is that Plaintiffs are bound by Redbox's Terms of Use. That is not the case. The Terms of Use is an electronic document that can be accessed during a Redbox kiosk transaction by pressing a button labeled "Terms & Privacy" on the final payment screen. (Wokosin Decl., Dkt. 48, ¶¶ 21, 30.) Under the Uniform Electronic Transactions Act, which has been enacted into Michigan law, an electronic document cannot be enforced against a party who is unable to store or print that record. M.C.L. § 450.838(3). Here, Redbox can point to nothing in the record suggesting that customers can print or otherwise store a copy of the Terms of Use to which Redbox purports to bind them.[9] For this reason alone, customers are not bound by the Terms of Use.

Further, even if the un-storable and un-printable Terms of Use *could* bind Plaintiffs, Redbox fails to establish that Plaintiffs even assented to the Terms of Use. On the final payment screen during a kiosk transaction, customers must press

---

[9]    Redbox may claim that a copy of the Terms of Use was available on their website for customers to store and/or print. However, the "Terms and Conditions" on the website is not identical to the "Terms of Use" electronic document at the kiosk, and it is the kiosk Terms of Use to which Redbox asserts Plaintiffs are bound. (*Compare* Wokosin Decl., Dkt. 48, ¶¶ 19, 28, and Dkts. 48-9, 48-15 (purporting to be the "Terms of Use" available at the kiosks but apparently actually the "Terms and Conditions" available on the website) *with* Wokosin Decl., Dkt. 48, ¶¶ 21, 30, and Dkts. 48-10, 48-16 (images of the Terms of Use screen available at the kiosks)).

one of two buttons to complete the transaction: "PAY [amount]" or "USE CREDITS." (Dkt. 48-8)[10] Under the PAY button, it reads "By pressing 'PAY' or 'USE CREDITS' you agree to the Terms." (*Id*.) However, it is unclear exactly what "Terms" that refers to. While there is a button elsewhere on the final payment screen labeled "Terms & Privacy" that allows a customer to review the Terms of Use and Privacy Policy (Wokosin Decl., Dkt. 48 ¶ 17), the screen also includes actual terms:

> Daily rental charges don't include applicable tax. Discs kept after 9 p.m. the next day, and each day after, are subject to additional daily rental charges. If you keep a disc for the maximum rental period, it's yours to keep, and no further charges apply. See complete Terms for the rules for renting from Redbox. Maximum rental period: DVD (25 days), Blu-ray® (23 days), Games (30 days).

(Dkt. 48-8.) Thus, even if a customer saw "By pressing 'PAY' or 'USE CREDITS' you agree to the Terms," they could reasonably believe that they were agreeing to the terms actually stated on the final payment screen regarding rental charges and return times, rather than to terms contained on a different screen accessible only by pressing another button not required to complete the transaction.

Regardless, whether or not Plaintiffs actually assented to the Terms of Use, it is not binding against them under the Uniform Electronic Transactions Act, and Redbox's consent argument fails.

---

[10]     Dkt. 48-8 is a screenshot of the final payment screen that has been used on Redbox kiosks since at least September 2011. (Wokosian Decl., Dkt. 48, ¶ 16.)

18

**B.      The Privacy Policy Is Not Incorporated Into the Terms of Use.**

In any event, even if Plaintiffs could be and were bound by the Terms of Use, nothing in the Terms of Use purports to constitute customers' consent to Redbox's disclosure of their protected information to third parties. Instead, Redbox asserts that the Terms of Use incorporates a Privacy Policy, which in turn states that "[w]e may provide [third-party vendors] with access to user information, including Personal Information . . . ." (Dkt. 46 at 17.) But the Privacy Policy expressly defines "Personal Information" simply as "information that identifies you as a specific individual, such as your name, phone number, e-mail address or payment information." (Dkt. 48-12 at C01667.) Nowhere does the Privacy Policy state that it will disclose the *other* kinds of protected information that were disclosed here, such as movie titles, kiosk locations, and dates of rentals. Thus, even if the Privacy Policy applied, it in no way establishes that customers like Plaintiffs consented to the disclosure of information protected by the VRPA but not listed in the Privacy Policy's definition of Personal Information.

Regardless, Redbox's assertion that the Privacy Policy was incorporated into the Terms of Use is wrong. Incorporation by reference requires that a document include express language that it is incorporating another document. *Harrison v. Sears, Roebuck & Co.*, 546 N.E.2d 248, 253 (Ill. App. Ct. 1989) (finding no incorporation where document "does not contain any language indicating that it is

19

'subject to'" another document).[11] Here, the Terms of Use does not expressly

incorporate the Privacy Policy. Instead, it merely encourages customers to

"*[p]lease also read* the Redbox Privacy Policy . . . ." (Dkt. 48-10 at C01648, Dkt.

48-16 at C03987) (emphasis added). A mere reference to the existence of another

document, however, is insufficient to incorporate that document by reference. *See*

*Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 264–65 (6th Cir. 2012)

*cert. denied*, 133 S. Ct. 436 (2012) (denying an incorporation by reference

argument where primary document "[did] not include any explicit incorporation

language"). Thus, even if Plaintiffs could be and were bound by the Terms of Use,

the Terms of Use's mere encouragement that customers "please also read" the

Privacy Policy in no way incorporates that document.

## C.   Plaintiffs Did Not Provide "Written Permission" As Required by the VRPA.

Finally, even if Plaintiffs assented to and could be bound by the Terms of

Use, and even if the Terms of Use incorporated the Privacy Policy, none of that

---

[11]    The Terms of Use contain an Illinois choice of law clause. (Dkt. 48-10 at C01664, Dkt. 48-16 at C04006.) Thus, if the Terms of Use applies (which, as discussed above, it does not), Illinois law would likely govern the question of incorporation by reference. *See Turcheck v. Amerifund Fin., Inc.*, 725 N.W.2d 684, 688 (Mich. Ct. App. 2006) ("It is undisputed that Michigan's public policy favors the enforcement of contractual . . . choice-of-law provisions."). Regardless, Michigan law is in accord. *See In re DiMeglio Estate*, — N.W.2d —, 2014 WL 3928558 (Mich. Ct. App. Aug. 12, 2014) ("'Incorporation by reference' means [a] method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained in the primary one.") (internal quotations omitted).

establishes that Plaintiffs provided their "written permission" to disclose their protected information. In making its consent argument, Redbox relies on M.C.L. § 445.1713(a), which allows disclosure of a customer's protected information "[w]ith the written permission of the customer." Redbox has failed to meet its burden on summary judgment, however, of showing that the undisputed facts establish that Plaintiffs provided their "written consent" to Redbox.

The Uniform Electronic Transactions Act—again, which has been adopted by the Michigan Legislature—states that where a law requires a person "to provide, send, or deliver information in writing to another person, the requirement is satisfied if the information is provided, sent, or delivered in an electronic record capable of retention by the recipient at the time of receipt." M.C.L. § 450.838(1). The act goes on to explain that "[a]n electronic record is not capable of retention by the recipient if the sender or its information processing system inhibits the ability of the recipient to print or store the electronic record." *Id*. Here, Redbox asserts that Plaintiffs provided their "written permission" by "completing their transactions at the kiosk," *i.e.*, by pressing either "PAY" or "USE CREDITS" on the final payment screen. (Dkt. 46 at 18.) But Redbox fails to establish that pressing a button on a kiosk creates "an electronic record capable of retention" by Redbox, *i.e.*, a record of Plaintiffs' permission that can be printed or stored. M.C.L. § 450.838(1). As the movant seeking summary judgment on an exception to an

21

otherwise general statutory prohibition, Redbox has the burden of pointing to undisputed evidence that such is the case, a burden that Redbox has completely failed to meet here.

## IV.   The VRPA Has No Ordinary Course of Business Exception.

Redbox next argues that its disclosures of protected information to Stream fall within an ordinary course of business exception drawn from a federal privacy statute, the VPPA. (Dkt. 46 at 19-21.) As an initial matter, Redbox does not even argue that its disclosures to ExactTarget, Experian, and Adobe fall within an ordinary course of business exception. Thus, even if the disclosures to *Stream* fall within such an exception, summary judgment would not be warranted given the other disclosures made by Redbox. In any event, the VRPA does not incorporate the federal VPPA's ordinary course of business exception.

Redbox argues that because the VRPA prohibits disclosures of protected information "[e]xcept as provided in section 3 *or as otherwise provided by law*," M.C.L. § 445.1712 (emphasis added), the "as otherwise provided by law" language incorporates exceptions found in the VPPA. (Dkt. 46 at 19.) This argument is nonsensical. Most of the exceptions in the VPPA—though not, crucially, the ordinary course of business exception—are expressly set forth in the VRPA. *Compare* M.C.L. § 445.1713(a), (b), (d), (e) (protected information may be disclosed with the written permission of the customer, pursuant to a court order, for

22

the exclusive purpose of marketing directly to the customer, or pursuant to a search warrant) *with* 18 U.S.C. § 2710(b)(2)(B), (C), (D), (F) (same). If the Michigan legislature had intended simply to incorporate the federal VPPA's exceptions, it would not have needed to individually set out exceptions already contained in the VPPA. Redbox's reading of the VRPA would render those exceptions completely superfluous. *See Broad. Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 760 (6th Cir. 2005) ("Courts are to make every effort to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless."). Indeed, if the VRPA incorporated the ordinary course of business exception, there would have been no need for the Michigan legislature to include a debt collection exception in the VRPA, M.C.L. § 445.1713(c), as the federal statute expressly defines "ordinary course of business" as including "debt collection activities." 18 U.S.C. § 2710(a)(2).[12]

---

[12]     Regardless, even if the Michigan VRPA *did* incorporate the federal VPPA's "ordinary course of business" exception, Redbox's disclosure of its customers' protected information to Stream would not fall within that exception. Both the language and the legislative history of the VPPA establish that Congress intended that exception to be narrowly drawn. This exact question is currently pending before the Seventh Circuit on an appeal between other customers and Redbox. *See generally Sterk v. Redbox Automated Retail, LLC*, No. 13-3037 (7th Cir.). Given the page limits and need to address other issues here, Plaintiffs' position on whether Redbox's disclosures to Stream fall within the federal statutory exception cannot be fully developed in this brief, and consequently, to the extent this Court finds that the Michigan VRPA *does* incorporate the federal VPPA's ordinary course of business exception, Plaintiffs respectfully request that this Court review

23

**V.    The Terms of Use's Limitations Period Does Not Bar Plaintiffs' Claims.**

Finally, Redbox argues that Plaintiffs' claims are time-barred by a one-year limitations period in the Terms of Use. (Dkt. 46 at 22.) As explained above, however, Plaintiffs cannot be and are not bound by the Terms of Use, an electronic document they were unable to store or print at the kiosk and to which they never assented in any event. *See supra* Part III.A. Further, even if the Terms of Use could or did bind Plaintiffs, the one-year limitations period therein does not apply to Plaintiffs' claims here. The Terms of Use states that "any cause of action or claim you may have *with respect to any Redbox platform* must be commenced within one (1) year after such claim or cause of action arises." (Dkt. 48-10 at C01664, Dkt. 48-16 at C04006.) But Plaintiffs do not allege claims with respect to a Redbox platform (defined in the Terms of Use as Redbox's website, kiosk, and mobile applications); they allege claims with respect to Redbox's unlawful disclosure of their protected information to third parties without their consent. The one-year limitations period in the Terms of Use simply does not apply.

Regardless, even if it did, Plaintiffs' suit is timely. While Redbox asserts that Plaintiffs' claims arose on the dates they each began renting movies, Plaintiffs' first rental date is irrelevant. The complained-of conduct here is unlawful disclosure of protected information, and the evidence shows that such disclosures

the appellate briefing in *Sterk* and/or permit additional briefing on that question here.

24

occurred *each time* Plaintiffs rented a movie from Redbox. And because Plaintiffs rented movies from Redbox less than one year prior to filing suit (Wokosin Decl., Dkt. 48, ¶¶ 9–10), their suit was brought within one year of such disclosures. *Cf. Hill v. Dep't of Def.*, 981 F. Supp. 2d 1, 8 (D.D.C. 2013) ("Each disclosure of protected information represents a separate violation of the Privacy Act.").

## CONCLUSION

For the foregoing reasons, this Court should deny Redbox's motion for summary judgment in its entirety.

Dated:  October 10, 2014

Respectfully submitted,

**MICHELLE CAIN and RADHA SAMPAT**,

By:  s/ Ari J. Scharg
One of Plaintiffs' Attorneys

Ari J. Scharg
ascharg@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370

Brian C. Summerfield (P57514)
bsummerfield@bodmanlaw.com
BODMAN PLC
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, Michigan 48226
Tel: 313.259.7777

*Counsel for Plaintiffs and the Putative Class*

25

## <u>CERTIFICATE OF SERVICE</u>

     I, Ari J. Scharg, an attorney, certify that on October 10, 2014, I served the above and foregoing ***Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

s/ Ari J. Scharg