# Exhibit 1-B

# In The Matter Of:

*Cain, et al. vs.*
*Redbox Automated Retail, LLC.*

*Radha Sampat*
*May 14, 2014*



Bienenstock
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

**Bingham Farms/Southfield • Grand Rapids**
Ann Arbor • Detroit • Flint • Jackson • Lansing • Mt. Clemens • Saginaw

*Original File SAMPAT_RADHA.txt*
*Min-U-Script® with Word Index*

1           IN THE DISTRICT COURT OF THE UNITED STATES
2              FOR THE EASTERN DISTRICT OF MICHIGAN
3                         SOUTHERN DIVISION
4
5   MICHELE CAIN and RADHA SAMPAT,
6                  Plaintiffs,
7        vs.                    Case No. 2:12-cv-15014-GER-LJM
8                               Hon. Gerald E. Rosen
9                               Mag. Judge Laurie J. Michelson
10  REDBOX AUTOMATED RETAIL, LLC,
11  a Delaware limited liability company,
12                 Defendant.
13  _____
14       CONTAINS CONFIDENTIAL PORTIONS PURSUANT TO
15                    PROTECTIVE ORDER
16
17       The Videotaped Deposition of RADHA SAMPAT,
18       Taken at 500 Woodward Avenue, Suite 3500,
19       Detroit, Michigan,
20       Commencing at 9:24 a.m.,
21       Wednesday, May 14, 2014,
22       Before Kathryn L. Janes, CSR-3442, RMR, RPR.
23
24
25

1      calls for privileged information or work product.
2              MR. ELISEUSON: That's fair.
3  BY MR. ELISEUSON:
4  Q.   And without getting into any communications with your
5       attorney, I'm just asking you your personal opinion as
6       to why you wanted to proceed with a class action as
7       opposed to --
8  A.   It's really --
9  Q.   -- an individual action?
10 A.   It's really a greater good this way to stop what's
11      going on.
12 Q.   Okay. And did you -- did you initially contact the
13      Edelson attorneys about filing a lawsuit?
14 A.   Yes.
15 Q.   And why did you contact the Edelson attorneys?
16 A.   They were a trusted referral.
17 Q.   Okay. And how were they referred to you?
18 A.   From Sam Dua.
19 Q.   Could you spell that, please?
20 A.   Sam Dua.
21 Q.   Okay. So how do you spell the last name?
22 A.   D-U-A.
23 Q.   Okay. And who's Sam Dua?
24 A.   He's a trusted friend.
25 Q.   And why -- well, can you just -- do you recall your

1            conversation with Sam?
2   A.  Yes, he was discussing another case that was just
3        private -- also breaking a privacy law and he
4        mentioned a few other cases including Redbox, and
5        that's how I got interested in the case.
6   Q.  Okay.  And is Sam an attorney?
7   A.  Yes.
8   Q.  Okay.  Is he an attorney with Edelson?
9   A.  No.
10  Q.  Who is he -- who does he work for?
11  A.  His own practice.
12  Q.  Okay.  And why were you talking to Sam about lawsuits?
13  A.  He was bringing up another case that he was involved
14       in just in conversation at the -- at his house, and so
15       we were just discussing other cases and then he
16       mentioned the Redbox case is another case that's out
17       there and I'm a user, so I feel that I should get --
18       get involved to stop what's going on.
19  Q.  Okay.  So had you reached out to Sam about filing a
20       lawsuit?
21  A.  No, we were discussing the cases that were currently
22       going on.
23  Q.  Okay.  And I mean, how did this come up?  Were you
24       just having a friendly conversation and lawsuits came
25       up or?

1  A.  Yeah, we were at his house, he was talking about his
2      current cases that he's involved in.
3  Q.  Okay.
4  A.  I asked how's work going, and he was telling me what
5      he's doing currently.
6  Q.  Okay. And -- and what were the cases that he was
7      doing?
8  A.  I don't remember the names.
9  Q.  Okay. But do you think they were class actions?
10 A.  I believe they were.
11 Q.  Okay. And so why didn't you hire Sam?
12 A.  He referred me to the Edelson group. I believe he
13     thinks that they are well involved in this area.
14 Q.  Okay. But -- but Sam prosecutes class actions
15     himself?
16 A.  I don't know.
17 Q.  And Sam, you think he has his own practice here in
18     Detroit?
19 A.  He does, correct.
20 Q.  Okay. You said he's a trusted friend?
21 A.  Yes.
22 Q.  Like a family friend?
23 A.  My boyfriend's brother.
24 Q.  Okay. Is your boyfriend Krishna?
25 A.  No.

1  Q.  Is that your father?
2  A.  Yes.
3  Q.  And so -- so you were just talking -- you may have
4      already answered this, I apologize if so, but you were
5      having a conversation with Sam and he started talking
6      about sort of cases that he had and -- and Redbox came
7      up?
8  A.  He mentioned a few cases and Redbox stood out to me
9      because that's the one I use.
10 Q.  Okay.  And did he ask you if you used Redbox?
11 A.  No, I had mentioned I use Redbox --
12 Q.  Okay.
13 A.  -- because he had mentioned that case and I brought it
14     up.
15 Q.  Okay.  And then what did he say about Redbox?
16              MR. LARRY:  Objection to the extent it
17     calls for privileged communications.
18 BY MR. ELISEUSON:
19 Q.  Well, do you consider Sam to be your attorney?
20 A.  No.
21 Q.  Okay.  So what did -- what did he say about Redbox?
22 A.  He said there could be a privacy leak there, so he
23     mentioned what's going on and I am very -- I was
24     feeling those were incorrect and unlawful, so I got
25     involved.

1  Q.  Okay. Well, do you remember specifically what he said
2      about Redbox?
3  A.  I don't know.
4  Q.  He just said there were lawsuits?
5  A.  I don't remember.
6  Q.  Okay. But he said -- and I apologize if I -- I kind
7      of missed what you said, that you thought you (sic)
8      were doing things that were incorrect and unlawful?
9  A.  Correct.
10 Q.  Okay, but you don't remember specifically what it was?
11 A.  I don't remember. It was two years ago now.
12 Q.  Okay. Did he mention anything about how you maybe can
13     make money by suing?
14 A.  No.
15 Q.  Okay. Did he mention that, if you would make any
16     money if you sued?
17 A.  I don't remember, no.
18 Q.  Well, why did you want to file a lawsuit?
19 A.  To -- to stop a case that's occurring. In my field in
20     medicine, I feel very strong about privacy being kept,
21     HIPAA laws and if we would ever go out and say
22     anything outside, that's a high standard we have to
23     follow, and so I felt this was also not correct.
24 Q.  Okay. So he was -- he mentioned privacy issues; is
25     that fair?

1  A.  I believe so, yes.
2  Q.  Okay. But do you recall, did he mention any specifics
3      about privacy issues?
4  A.  No.
5  Q.  Okay. And so then he told you, Sam told you that you
6      should call the Edelson lawyers?
7  A.  He referred me to them, yes.
8  Q.  Okay. Who did you call at Edelson without getting
9      into the substance of the conversation?
10 A.  I believe it was Nick and Larry, first Nick, then
11     Larry.
12 Q.  Okay.
13 A.  Sorry, first Nick, then Mark.
14             MR. ELISEUSON: You get that a lot, don't
15     you?
16 A.  Sorry.
17             MR. ELISEUSON: It could be worse, you
18     could have a last name like mine which nobody can
19     pronounce.
20             MR. LARRY: Right.
21 BY MR. ELISEUSON:
22 Q.  And -- and what's your understanding of the -- the
23     practices that Redbox engages in that you're
24     challenging in this case?
25 A.  That they're giving out rent histories to third