# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHELLE CAIN and RADHA SAMPAT,
Individually, and on behalf of all others
similarly situated,

|  |  |
|---|---|
| Plaintiffs, | Case No. 2:12-cv-15014-GER-LJM |
|  | Honorable Gerald E. Rosen |
|  | Mag. Judge Steven Whalen |
| v. |  |
| REDBOX AUTOMATED RETAIL, LLC, |  |
| Defendant. |  |

---

## REDBOX AUTOMATED RETAIL, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
151 S. Old Woodward Ave., Suite 200
Birmingham, Michigan 48009
pkupelian@clarkhill.com
cschley@clarkhill.com

Donna J. Vobornik
John I. Grossbart
Anthony T. Eliseuson
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@dentons.com
john.grossbart@dentons.com
anthony.eliseuson@dentons.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................1

STATEMENT OF FACTS ...............................................................3

ARGUMENT ..................................................................................6

I.      Redbox's Disclosure Of Information To ExactTarget, Adobe,
Experian and Stream Are Not Prohibited By The VRPA Because
They Are Redbox's Agents With Regard To That Information.....................6

      A.    Plaintiffs are wrong that an "independent contractor" cannot
also be an agent; indeed, they are often both. .......................................6

      B.    The Reality of the Relationship Between Redbox and
ExactTarget, Adobe, Experian and Stream Confirm These
Entities' Agent Status For Purposes of the VRPA.............................9

      C.    The other factors relied on by Plaintiffs are legally inapposite
because they arise in the employment context...................................11

II.     Redbox Has Not Disclosed Personal Rental History to Adobe,
Experian, or ExactTarget—Disclosures That Would Be Permitted In
Any Event. ..................................................................................11

      A.    Adobe only receives anonymized information. .................................13

      B.    Redbox never disclosed any movie title or related identifying
information to Experian. ....................................................14

      C.    ExactTarget did not receive Plaintiffs' personal rental
information either, because the undisputed facts show
ExactTarget did not and could not identify Plaintiffs based on
their email addresses. ........................................................16

III.    Plaintiffs' Motion and Claims Also Fail Because They Consented.............19

IV.    Plaintiffs' Claims As To All These Service Providers Are Time
Barred............................................................................20

V.     The Disclosures Are Made In Redbox's "Ordinary Course Of
       Business." ...................................................................................................21

VI.    Any Disclosures To Adobe, Experian, And ExactTarget Are
       Expressly Permitted Because Plaintiffs Were Provided Notice. ...................21

VII.   Plaintiffs' Motion Also Fails Because They Lack Standing And Were
       Not Injured-In-Fact. .....................................................................................23

VIII.  Redbox's Affirmative Defenses Defeat Plaintiffs' Claims. .........................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avio Inc. v. Alfoccino, Inc.*,
　No. 2:10-cv-10221, 2014 WL 1870108 (E.D. Mich. May 9, 2014)....................9

*Books A Million, Inc. v. H & N Enterprises, Inc.*,
　140 F. Supp. 2d 846 (S.D. Ohio 2001) .............................................................24

*Bridgeview Health Care Ctr. v. Clark*,
　No. 09 C 5601, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013)............................8

*City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*,
　982 F.2d 1086 (7th Cir. 1992) ...........................................................................7

*Clay v. Kuhl*,
　727 N.E.2d 217 (Ill. 2000)..................................................................................8

*Cleveland v. Caplaw Enters.*,
　448 F.3d 518 (2nd Cir. 2006) .............................................................................7

*Druyan v. Jagger*,
　508 F. Supp. 2d 228 (S.D.N.Y. 2007) ..............................................................19

*Eyerman v. Mary Kay Cosmetics, Inc.*,
　967 F.2d 213 (6th Cir. 1992) .....................................................................6, 7, 9

*Fteja v. Facebook, Inc*,
　841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..............................................................19

*Grayned v. City of Rockford*,
　408 U.S. 104, 92 S.Ct. 2294, 33 L. Ed. 2d 222 (1972) ....................................15

*Halaburda v. Bauer Publ'g Co.*,
　No. 12-cv-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) ....................21

*In re Hulu Privacy Litig.*,
　2014 WL 1724344 (N.D. Cal. Apr. 28, 2014).................................................18

*Johnson v. City of Saline*,
　151 F.3d 564 (6th Cir. 1998) ...........................................................................11

*Lujan v. Secretary of the Interior*,
    504 U.S. 555 (1992)..................................................................................23

*Medrano v. Prod. Eng'g Co.*,
    774 N.E.2d 371 (Ill. App. Ct. 2002) ..........................................................8

*In re Nickelodeon Consumer Privacy Litig.*,
    2014 WL 3012873 (D.N.J. July 2, 2014) ..................................................18

*Rory v. Cont'l Ins. Co.*,
    703 N.W.2d 23 (Mich. 2005)........................................................................8

*Shah v. Deaconess Hosp.*,
    355 F.3d 496 (6th Cir. 2004) ....................................................................11

*Simpson v. Ernst & Young*,
    100 F.3d 436 (6th Cir. 1996) ....................................................................11

*St. Clair School Dist. v. Intermediate Educ. Ass'n./Mich. Educ. Ass'n.*,
    458 Mich. 540 (1998) ..............................................................................8, 9

*State Farm v. Campbell*,
    538 U.S. 408 (2003)...................................................................................24

*Sterk v. Redbox Automated Retail, LLC*,
    11 C 1729, 2013 WL 4451223 (N.D. Ill. Aug. 16, 2013) ......................8, 13

*United States v. Hudson*,
    491 F.3d 590 (6th Cir. 2007) ......................................................................6

*United States v. Milovanovic*,
    678 F.3d 713 (9th Cir. 2012) ......................................................................8

*United States v. Thompson/Ctr. Arms Co.*,
    504 U.S. 505 (1992)...................................................................................15

*W. Michigan Univ. Bd. of Control v. State*,
    455 Mich. 531 (1997) ..................................................................................8

**Statutes**

Federal Video Privacy Protection Act, 18 U.S.C. § 2710 .........................................8

Michigan Video Rental Privacy Act, MCL § 445.1711 *et seq.*........................passim

## <u>LOCAL RULE 7.1 STATEMENT OF ISSUES PRESENTED</u>

In this putative state wide class action, in which Plaintiffs assert claims against Defendant Redbox Automated Retail, LLC ("Redbox") under the Michigan Video Rental Privacy Act, MCL § 445.1711, *et seq*. ("VRPA") (Count I), and derivative claims for breach of contract (Count II) and unjust enrichment (Count III), the questions presented by Plaintiffs' Motion:

1.      Whether Plaintiffs are entitled to summary judgment based on disclosures to four service providers that are quintessentially acting as agents of Redbox with regard to Redbox's customer information even though—as Plaintiffs concede—the VRPA does not regulate disclosures between a company and its own employees and agents?

**Defendant Redbox says:  No.**

2.      Whether Plaintiffs are entitled to summary judgment regarding the alleged disclosures to Adobe, Experian, and ExactTarget even though the undisputed record demonstrates that the information disclosed is either anonymized (Adobe); does not contain any information regarding what movies Plaintiffs rented (Experian); or did not allow the identification of Plaintiffs (ExactTarget)?

**Defendant Redbox says:  No.**

v

3.      Whether Plaintiffs are entitled to summary judgment even though they expressly consented to Redbox's practices, including the disclosures at issue?

**Defendant Redbox says: No.**

4.      Whether Plaintiffs are entities to summary judgment even though they expressly agreed to be bound by Redbox's Terms of Use, and those Terms require any suit to be filed within one-year of the rental, a time period that expired before this suit was filed?

**Defendant Redbox says:  No.**

5.      Whether Plaintiffs are entitled to summary judgment even though all the disclosures at issue are permissible under the federal VPPA's "ordinary course of business" exception that is incorporated into the Michigan VRPA?

**Defendant Redbox says:  No.**

6.      Whether Plaintiffs are entitled to summary judgment notwithstanding they have suffered no injury-in-fact and thus lack standing under Article III?

**Defendant Redbox says:  No.**

7.      Whether Plaintiffs are entitled to summary judgment even though their motion fails to even address Redbox's Affirmative Defenses, which independently would preclude liability on all Plaintiffs' claims?

**Defendant Redbox says:  No.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

**I.    Redbox's Disclosure Of Information To Exact Target, Adobe, Experian and Stream Are Not Prohibited By The VRPA Because They Are Redbox's Agents With Regard To That Information.**

Michigan Video Rental Privacy Act, MCL § 445.1711.

Restatement (Second) of Agency § 2(3).

Restatement (Second) of Agency § 14N.

*United States v. Hudson,* 491 F.3d 590 (6th Cir. 2007).

*Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213 (6th Cir. 1992).

*St. Clair School Dist. v. Intermediate Educ. Ass'n./Mich. Educ. Ass'n.*, 458 Mich. 540 (1998).

*Shah v. Deaconess Hosp.*, 355 F.3d 496 (6th Cir. 2004).

*Simpson v. Ernst & Young*, 100 F.3d 436 (6th Cir. 1996).

*Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998).

*City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc*., 982 F.2d 1086 (7th Cir. 1992).

**II.    Redbox Has Not Disclosed Personal Rental History to Adobe, Experian, or ExactTarget—Disclosures That Would Be Permitted In Any Event.**

Michigan Video Rental Privacy Act, MCL § 445.1712.

Senate Rpt. No. 100-599 (1988). 1988 WL 243503.

*Grayned v. City of Rockford,* 408 U.S. 104 (1972).

*United States v. Thompson/Ctr. Arms Co.,* 504 U.S. 505 (1992).

*In re Hulu Privacy Litig.*, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014).

*In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873 (D.N.J. July 2, 2014)

**III.   Plaintiffs' Motion and Claims Also Fail Because They Consented.**

Michigan Video Rental Privacy Act, MCL § 445.1713.

**IV.   Plaintiffs' Claims As To All These Service Providers Are Time Barred.**

*Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23 (Mich. 2005).

*Medrano v. Prod. Eng'g Co.*, 774 N.E.2d 371 (Ill. App. Ct. 2002).

*Clay v. Kuhl*, 727 N.E.2d 217 (Ill. 2000).

**V.   The Disclosures Are Made In Redbox's "Ordinary Course Of Business."**

Michigan Video Rental Privacy Act, MCL § 445.1712.

Federal Video Privacy Protection Act, 18 U.S.C. § 2710.

**VI.   Any Disclosures To Adobe, Experian, And ExactTarget Are Expressly Permitted Because Plaintiffs Were Provided Notice.**

Michigan Video Rental Privacy Act, MCL § 445.1713.

**VII.   Plaintiffs' Motion Also Fails Because They Lack Standing And Were Not Injured-In-Fact.**

*Lujan v. Secretary of the Interior*, 504 U.S. 555 (1992).

**VIII. Redbox's Affirmative Defenses Defeat Plaintiffs' Claims.**

*Books A Million, Inc. v. H & N Enterprises, Inc.,* 140 F. Supp. 2d 846 (S.D. Ohio 2001).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## **INTRODUCTION**

Defendant Redbox Automated Retail, LLC ("Redbox") moved for summary judgment explaining that its use of another company, Stream, as its telephone customer service provider did not violate the Michigan Video Rental Privacy Act ("VRPA"). Redbox offered several reasons entitling Redbox to Summary Judgment, including that Stream acted as Redbox's agent with regard to its customer service functions. In response, Plaintiffs have cross-moved for summary judgment *conceding* that any disclosure to an agent falls outside the scope of the VRPA, but arguing that Stream is not an agent, and also arguing that Redbox's use of three other service providers violates the VRPA because they are not agents and that, as Plaintiffs erroneously argue, they receive information subject to the VRPA.

As a threshold matter, Plaintiffs' motion fails because *all* of these service providers are quintessentially agents with regard to their use of Redbox's customer information, and any disclosure of customer information to an agent is not prohibited as a matter of law (as Plaintiffs concede).

Plaintiffs' Motion also fails because Redbox does not disclose Plaintiffs' VRPA-protected information to Adobe, Experian, or ExactTarget in the first place. Indeed, it is undisputed the information sent to Adobe is completely anonymized; Experian does not receive information that would identify any movie that any customer rented, much less Plaintiffs' movie rentals; and ExactTarget does not

1

receive the name or the customer's identity from Redbox, just the email address that the customer him or herself enters when requesting transactional email receipts.

Furthermore, as Redbox demonstrated in its summary judgment motion, each of these claims is independently barred on several additional bases:  Plaintiffs consented to all of these disclosures, *infra* Point III; Plaintiffs' claims are all time barred by the contractual one-year limitations period in Redbox's terms of use, *infra* Point IV; and the disclosures are all squarely within Redbox's "ordinary course of business," an exception that is incorporated into the VRPA, *infra* Point V.

Additionally, because the disclosure of any information to these three additional service providers is for the exclusive purpose of allowing Redbox to directly market its own goods and services to Plaintiffs, the disclosures are permitted under an express exception to the VRPA that allows such disclosures when, as here, there is notice and an opportunity to opt-out.  *Infra* Point VI.

Finally, Plaintiffs' motion fails because they have not even addressed Redbox's other affirmative defenses and, as the movant, Plaintiffs bear the initial burden of production before that burden may shift to Redbox.

2

# STATEMENT OF FACTS[1]

Like so many other companies, Redbox uses certain service providers to perform routine ordinary course of business functions, such as supplying telephone customer service support, sending email receipts, and providing certain marketing analytics services to allow Redbox to better market its own services to its own customers.  *See generally* ECF No. 48, Declaration of M. Wokosin in Support of Redbox's Motion for Summary Judgment ("Wokosin Decl.").)  Redbox's Motion for Summary Judgment (ECF No. 46) fully addressed Redbox's use of its customer service provider, Stream, which is incorporated herein.  The other three service providers challenged by Plaintiffs' cross-motion are: (1) Adobe Insight; (2) Experian's Cheetahmail service; and (3) ExactTarget.  *See* ECF No. 53 at 5-14.

**Stream.**  As set forth in detail in Redbox's summary judgment, Stream is the *only* service provider that has potential access to the information subject to the VRPA.  (Wokosin Decl. ¶ 44.)  Redbox references and incorporates its prior discussion of Stream in Section III.B of its Facts Section of its Brief in support of its separately pending Motion for Summary Judgment.  (ECF No. 46 at 6-7.)

***Adobe Insight only received anonymized transactional information.***  Until November 2012, Adobe Insight provided analytics services to Redbox that allowed

---

[1] To avoid some duplication, Redbox incorporates it statement of facts from its summary judgment brief and only includes facts pertaining to specific points addressed in this response that were not the focus of Redbox's motion.

Redbox to query customer behavior in the aggregate. (Wokosin Decl. ¶ 35.) The information that was shared with Adobe was anonymized—the transactional information was linked by a random customer ID number or account number that is generated by Redbox and cannot be linked back to a customer except by Redbox. Adobe Insight did *not* receive email addresses, names, or any other identifying information about any Redbox customer. Thus, Adobe could not determine what person or customer rented any particular movie. (*See id.*)

**Experian.** Experian's CheetahMail program provides two services to Redbox in the ordinary course of Redbox's business. The first is marketing email services. Certain limited customer information is shared with Cheetahmail for this purpose, including the email address of those customers for whom Redbox has an email address, and the customer's name for those customers who have a web account that includes their name. Redbox, however, does not share the movie titles rented by any particular customer with Cheetahmail or any other transactional information about any rentals. (*Id.* at ¶ 36.) CheetahMail also provides a service that helps Redbox track promotion code redemptions. Similar to the email service, while some email address and name information is shared in order to link the promotion code, no movie rental transactional information is shared, and therefore, Experian did not receive any record showing what movies any specific customer

4

rented.  The Named Plaintiffs' names and email addresses were sent to CheetahMail based upon promotion codes entered and sign ups for e-mail promotions.  (*See id*.)

*Exact Target.*  ExactTarget generates rental receipts when a customer specifically requests one during their rental transaction.  Indeed, Redbox only discloses information to ExactTarget when the customer makes such a request. Customers may opt for or against a receipt for each rental transaction, or at any other time.  (*Id.* ¶¶ 40-41.)  ExactTarget, by design, has the movie rental information (because it is sending the transactional receipt for that movie), and the associated transactional information that is contained on the rental receipt.  (*Id.* ¶ 42.)  Additionally, ExactTarget receives the email address entered by the customer during the transaction, which is not validated or verified by Redbox.  Redbox does not provide the name of the customer, and ExactTarget is unable to determine the identity of which particular customer rented a particular movie.  (*See id.* ¶ 43.) Indeed, when Plaintiffs' counsel subpoenaed ExactTarget to provide information regarding the information received from Redbox as to the Named Plaintiffs, ExactTarget was unable to locate their information without receiving their email addresses from Plaintiffs' counsel.  (*See* Declaration of S. Hatch of ExactTarget, Ex. A to Plaintiffs' Motion for Partial Summary Judgment ("Hatch Decl."), ECF No. 53-2, ¶¶ 11, 13,15, 18.)

## ARGUMENT

### I. Redbox's Disclosure Of Information To ExactTarget, Adobe, Experian and Stream Are Not Prohibited By The VRPA Because They Are Redbox's Agents With Regard To That Information.

Plaintiffs concede that disclosure of personal rental history to "agents" is not prohibited by the VRPA. *E.g.* ECF No. 53 at 17 (stating that the VRPA can only be violated by a disclosure to "any person, *other than Plaintiffs, [Redbox's] agents, or employees*") (emphasis added); *id.* at 19 ("the VRPA . . . exempts from liability disclosures Redbox makes to its own agents or employees"). Thus, even if Redbox disclosed Plaintiffs' personal rental history information to ExactTarget, Adobe, and Experian—which it does not—such disclosures would be permissible because each of these entities serve as Redbox's agent. This threshold legal issue dooms Plaintiffs' motion and their claims.

### A. Plaintiffs are wrong that an "independent contractor" cannot also be an agent; indeed, they are often both.

Plaintiffs argue the service providers are not agents largely based on contractual provisions contained in some of the service provider contracts that state they are "independent contractors." ECF No. 53 at 19-20. But it is well-established law that the terms "independent contractor" and "agent" are not mutually exclusive. *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 219 (6th Cir. 1992) ("[A] person may be both an independent contractor and an agent.") (citing Restatement (Second) of Agency § 14N); *United States v. Hudson,* 491 F.3d 590, 595 (6th Cir.

6

2007) ("[N]othing about the title independent contractor invariably precludes someone from being an agent under appropriate circumstances.") (citing Restatement (Second) of Agency § 2(3)). Indeed, it is hornbook law that "[a]n independent contractor . . . may or may not be an agent." Restatement (Second) of Agency § 2(3).

Not only can an "independent contractor" be an agent (as is often the case), Plaintiffs are also wrong that contractual provisions labeling a relationship as an agency or non-agency relationship controls (or even creates a presumption) regarding the existence of agency. *See, e.g., Eyerman*, 967 F.2d at 219 (reiterating that Courts "must look beyond the agreement to the reality of the relationship between the parties" in determining agency, and thus looking beyond the existence of contractual language that "unambiguously declared that [plaintiff] would not be [defendant's] agent" to determine "the reality of the relationship"); *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc*., 982 F.2d 1086, 1097-98 (7th Cir. 1992) (contractual language establishing an "independent contractor" relationship insufficient to preclude finding of agency); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 522-23 (2nd Cir. 2006) (reversing judgment below because that held there was no agency as a matter of law, because "the district court focused unduly on the Agreement's" language and "[s]lavish deference to contractual language is inappropriate in the highly-factual and often nuanced agency analysis."). Thus,

7

Plaintiffs' reliance on language in the Adobe and ExactTarget agreements that states there is no agency relationship, does not affect the actual nature of the relationship, which, as discussed below, clearly demonstrates that with regard to customer information, those entities are Redbox's agent and under its control regarding the use of that information.

Indeed, if Plaintiffs' view were correct it would mean that companies could easily escape vicarious liability in other contexts by simply shifting their unlawful practices to "independent contractors" or "non-agents" that they otherwise controlled without risk of any vicarious liability because such liability is generally based on an agency analysis. *See, e.g.*, *Bridgeview Health Care Ctr. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *4-5 (N.D. Ill. Mar. 19, 2013) (holding that the use of an "independent contractor" to send faxes in violation of the TCPA does not preclude vicarious liability under general agency principles); *see also United States v. Milovanovic*, 678 F.3d 713, 724 (9th Cir. 2012) ("the contractual term purporting to establish the testers as 'independent contractors' for avoiding state vicarious civil liability does not foreclose the legal determination [of] an agency relationship").

Rather, as Redbox explained in its summary judgment brief, ECF No. 46 at 12-13, agency can broadly exist when "one person acts for or represents another by his authority.'" *St. Clair School Dist. v. Intermediate Educ. Ass'n./Mich. Educ. Ass'n.*, 458 Mich. 540, 557 (1998) (quotation omitted).  A quintessential example of

8

an agent is one who is a "business representative," that can "bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and a third person." *Id*. The right to control is another key hallmark of an agency relationship—a point Plaintiffs concede. *Id*. at 557-558 & n.18; see also Restatement (Third) of Agency §14; *see also* ECF No. 53 at 13-14 (recognizing control and authority are key to the agency analysis). While certainly the nature of the relationship can be dictated by the obligations and rights contained in the contract, these cases make clear that it is the nature of the contractual relationship that controls not the labels applied by the parties. *E.g.*, *Eyerman*, 967 F.2d at 219.

### B.     The Reality of the Relationship Between Redbox and ExactTarget, Adobe, Experian and Stream Confirm These Entities' Agent Status For Purposes of the VRPA.

As Redbox explained in its summary judgment brief, and as detailed above, each of these service providers' relationship with Redbox is governed by a written contract. ECF No. 49-1 to 5, Wokosin Decl. Ex. 16; *see also* Padgett Aff. Ex. B (Stream Agreement). Under each of these contracts Redbox retains the right to control the service provider's use of Redbox's information, including any customer or transaction information provided.[2] All Redbox information, including customer

---

[2] Hatch Aff. ¶ 6 ("Redbox, with assistance from ExactTarget, determines the content of the emails that ExactTarget sends on behalf of Redbox to Redbox customers."); ECF No. 49-4, ExactTarget Agmt. p. 2, ¶ 3.1 ("Redbox is responsible for all content sent via electronic mailing under this Agreement . . . ."); ECF No. 49-6, Experian Agmt., Redbox C000386, ¶ 6.4 ("Client shall have and retain sole

information, remains the exclusive property of Redbox.[3]  The service providers may "only [use such information] for the purpose for which it was originally disclosed and in any case only for the purpose of fulfilling [the service providers] obligations under this Agreement."[4]  The service providers are also required to keep all information strictly confidential.[5]

Thus, it is apparent that Redbox not only has the "right to control" the service providers use of Redbox information, it in fact does control this process through its

---

responsibility for the content of its mailings, data and transmissions."); ECF No. 49-3, Adobe Agmt., Redbox C000310 ("Customer retains complete discretion and responsibility . . . ."); *id.* at C000317 ("[T]hough Adobe is providing access . . . it acts only as a passive conduit. . . . Customer retains complete discretion and responsibility . . . ."); *see also* Redbox's Summary Judgment Br. at ECF No. 46, at 13-15 (outlining key provisions of control specified in Stream Agreement).

[3]  Hatch Decl. ¶ 6; Stream Agmt. p. 2, ¶ 5.1; ECF No. 49-4, ExactTarget Agmt. p. 6, ¶ 8.3; ECF No. 49-6, Experian Agmt., Redbox C000382, ¶ 7(b) ("Nothing contained in this Agreement or in any Schedule shall be deemed to convey to Experian or to any other party any ownership interest in . . . Client Data or Client Support."); ECF No. 49-3, Adobe Agrmt. C000305 (noting return of Redbox data at conclusion of services).

[4]  Stream Agmt. at  p. 2, ¶ 5.1, 8.5; *see also* ECF No. 49-6, Experian Agrmt., Redbox C000363, ¶ 6.1 ("Experian shall use Client Data solely to perform the [services] and for no other purpose."); ECF No. 49-4, ExactTarget Agmt. p. 6, ¶ 7.2 ("[ExactTarget] agrees . . . [it] shall not use . . . [Redbox] Confidential Information for its or their benefit or the benefit of any person. . . ").

[5]  Hatch Decl. ¶ 5; ECF No. 49-4, ExactTarget Agmt. pp. 5-6, ¶¶ 7.1-7.2; ECF No. 49-3, Adobe Agmt. C000304, ¶ 2; ECF No. 49-6, Experian Agmt., Redbox C000379, ¶ 2; Padgett Decl. ¶ 4; *see also* Wokosin Decl. ¶ 46.

10

contractual rights and the service providers' contractual obligations.  Thus, the service providers are "agents" for purposes of the VRPA.

C.    **The other factors relied on by Plaintiffs are legally inapposite because they arise in the employment context.**

Plaintiffs' reliance on factors such as employee benefits, ownership of equipment used, tax treatment, profit sharing, and so forth, *e.g.* ECF No. 53 at 20-21, are completely inapposite here because those are factors courts use in the *employment* context to distinguish between employees and independent contractors; not agents.  *See generally Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir. 2004) (noting these are the common law factors used to determine if a "hired party is an independent contractor or an employee"); *see also Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998) (relying on same factors that Plaintiff purports to use here to determine whether plaintiff was an employee or independent contractor for purpose of Americans with Disabilities Act); *Simpson v. Ernst & Young*, 100 F.3d 436 (6th Cir. 1996) (similar principle).  Thus, these factors are not relevant and certainly do not rebut the other factors discussed above that show the relationship between Redbox and its service providers is quintessentially that of an agency for purposes of the use of customer information.

II.    **Redbox Has Not Disclosed Personal Rental History to Adobe, Experian, or ExactTarget—Disclosures That Would Be Permitted In Any Event.**

The VRPA was enacted with a specific goal—to protect information that would reveal what specific movies, books, and other materials a person rented or

11

purchased.  *See* ECF No. 54-4 (explaining the purpose of the VRPA was to prevent

disclosure if information identifying a person's "choice in videos," because "one's

choice in videos . . . is nobody's business but one's own.").

The focus of the VRPA on protecting disclosure of information revealing

*specific* movie selections actually purchased or rented is unsurprising given that it

was enacted just a few weeks after the federal VPPA, and both statutes were

enacted in direct response to the publication of Supreme Court nominee Judge

Bork's entire movie rental history.  *Id.* ; *see also* Senate Rpt. No. 100-599, at 5-6

(1988), available at 1988 WL 243503 (federal VPPA likewise protects "information

that links the customer or patron to particular materials or services").

As such, the VRPA only prohibits the disclosure of  "a record or information

concerning the purchase, lease, rental, or borrowing of those materials [i.e. video

recordings] by a customer that indicates the identity of the customer."  MCL

§ 445.1712.   In other words, the VRPA only restricts disclosure of information that

both identifies the specific customer and identifies the specific materials or "video

recordings" purchased or rented by that person.  *Id.*  Put another way, no VRPA

issue is raised if a disclosure itself does not provide information that identifies both

the customer and the movie rented.

Here, the undisputed facts demonstrate that only entity that potentially

receives *both* of those pieces of information (referred to herein as "personal rental

history") is Stream, Redbox's customer service provider—as discussed at length in Redbox's summary judgment motion.  ECF No. 46 at 6-8, 11-15.  The remaining disclosures that Plaintiffs' motion raises to Adobe, Experian, and ExactTarget are wholly without merit because those service providers do not even receive personal rental history information.

### A.   Adobe only receives anonymized information.

Adobe does *not* receive *any* customer identifiable information and thus cannot possibly raise a VRPA issue.  (Wokosin Decl. ¶ 35; *see also, e.g.*, Ex. 1 to Rodriguez Declaration (Adobe data stream for Radha Sampat).)  The data streams showing what information was actually sent to Adobe makes clear it only includes an anonymized 14 digit random code, and does not include names or email addresses.[6]  Plaintiffs' argument that Adobe receives email address is wrong as a

---

[6] Plaintiffs assert email addresses are sent to Adobe based on a quotation within the transcript of a Rule 30(b)(6) deposition (taken in 2012 in the related *Sterk* federal VPPA action) in which the witness stated that Redbox "provide[s] th[e] same data to Adobe Insight [that it provided to Experian] . . . ."  *See* ECF No. 53 at 12 (citing Hoersten Dep. Trans., Doc. 55-4 at 180:4-7).  Notably, Plaintiffs' counsel did not argue that email addresses were disclosed to Adobe in that case.  In any event, the quote is out of context because the discussion at that point of the deposition was focused on the fact that Redbox provided the same information regarding what *email messages* it had transmitted through Cheetahmail to Adobe so that Adobe knew what recommendations Redbox had made.  *See id*. at 180:13-17; *see also* 177:14-178:13 (explaining that Adobe "would want to see what e-mails have gone out," so Redbox sends information showing the fact that the email was sent).  As to what information was sent to Adobe, Mr. Hoersten relied on the data stream, *id.* at 172:12-23, which shows the information is totally anonymized.  *See also, e.g.,* Sampat's Adobe data streams, Rodriguez Decl. Ex. 1; Wokosin Decl. ¶ 35.

factual matter and, in any event, would be legally insufficient as explained below

for ExactTarget.  *See, infra*, II-C.  Thus, Plaintiffs' motion with regard to Adobe

fails on this basis alone because Redbox did not disclose any of Plaintiffs' personal

rental information to Adobe.  (As discussed below, Plaintiffs' motion also fails as to

Adobe for several other independent reasons even if Adobe received Personal

Rental Information, which it did not.  *See, infra*, Points III, IV, and V.)

### B. Redbox never disclosed any movie title or related identifying information to Experian.

It is undisputed that Experian did not receive the title or identifying

information relating to any movie that either Plaintiff rented from Redbox (nor does

it receive such information for any customer).  Rather, the limited information

provided to Experian merely allows it track promotion code rentals and to send out

marketing emails that are created by Redbox with recommendations that are also

dictated by Redbox.  Plaintiffs do not even dispute this point, which dooms their

motion and their VRPA claims.  Rather, Plaintiffs attempt to avoid this fatal

problem by stretching the VRPA to an absurd result that bears no connection to the

statutory text or the purpose of the statute.  Specifically, Plaintiffs argue that the

VRPA is violated if any information "concerning" a rental is disclosed, including

information that only contains "the genres of films the customer was interested in,

where the rental was made, when the video was rented and returned, if it was

14

returned at a different location, the zip code associated with the card purchasing the rental, and total number of videos rented."  ECF No. 53 at 22.

But Experian never received any of Plaintiffs' genre preferences or any other information that "concerned" the movies they rented.  Rather, other than the email address Plaintiffs provided, Experian only received the first and last date of Plaintiffs' rentals, the kiosk ID associated with the last rental, and the zip code associated with the payment card.  None of this information reveals anything about the specific video materials rented by Plaintiffs.  As such, there is no conceivable privacy interest in such information, and any proffered interpretation that would stretch the VRPA to cover this generic information would cause the VRPA itself to be unconstitutional.  *See, e.g. Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L. Ed. 2d 222 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.").  Indeed, such an interpretation would be properly rejected under the rule of lenity—a canon of statutory construction that counsels courts to choose the interpretation of an ambiguous statute that is most "lenient" or favorable to the defendant.  *See, e.g., United States v. Thompson/Ctr. Arms Co.,* 504 U.S. 505, 518, n.10 (1992) (in civil action, rule of lenity applies when construing ambiguous statute that "has criminal applications," as does the VRPA).

15

In any event, any reasonable interpretation of the VRPA is clear that the disclosure must identify the specific "materials" rented or purchased, given that the whole purpose of the statute was to prevent disclosure if information identifying a person's "choice in videos," because "one's choice in videos . . . is nobody's business but one's own."  *See* ECF No. 54-4, VRPA Legislative History.  As such, Plaintiffs' claim as to Experian fails because Redbox did not disclose any movie either Plaintiff rented to Experian.

### C.   ExactTarget did not receive Plaintiffs' personal rental information either, because the undisputed facts show ExactTarget did not and could not identify Plaintiffs based on their email addresses.

When a customer rents from a Redbox kiosk and affirmatively elects to receive a receipt for that transaction,[7] Redbox sends the transactional information for that rental to ExactTarget so that it can send the requested receipt.  (Wokosin Decl. ¶ 40.)  This includes the title of the movie rented in that circumstance, as it must of course, to fulfill the customer's request for a receipt for that particular movie transaction.  *Id.*  Redbox does not transmit the name or any other identifying

---

[7] Plaintiffs' Brief misrepresents the Hatch declaration and the record when it states that "for *every* movie Plaintiffs rented, Redbox disclosed their email address in conjunction with specific movie title information, along with other data about the rental, to ExactTarget."  (ECF No. 53 at 24.)  On the contrary, the information was only disclosed to ExactTarget if and when the Named Plaintiffs requested an e-mail in connection with that particular transaction.  *See* Hatch Decl. at ¶ 10 ("When a disc is rented ***and the Redbox customer . . . has requested a confirmation email*** . . . , ExactTarget receives from Redbox . . . .").

16

information it has about that customer to ExactTarget, and does not verify or check the email address entered against its records when the customer enters an email address manually as part of the transaction.[8]

While an email address may in some specific contexts allow a person to be identified (which is why Redbox's privacy policy broadly includes it as a type of potential "personally identifiable information"), it is undisputed on the record here that Plaintiffs' email addresses did *not* allow ExactTarget to identify them, which ends the inquiry. Specifically, ExactTarget's sworn declaration states unequivocally that it was unable to locate Plaintiffs' information based on name alone—rather, it was only able to "identify" the transactions relating to Plaintiffs after Plaintiffs' attorneys provided the email addresses the Plaintiffs inputted at the kiosk. *See* Hatch Decl. at ¶¶ 11, 13, 15, 18 ("This data reflects all such data that ExactTarget was able to reasonably locate relating to Plaintiffs Michelle Cain and Radha Sampat. ExactTarget was able to locate this data *after* being provided Plaintiffs' email addresses by Plaintiffs' counsel as ExactTarget is not provided the names of Redbox customers.") (emphasis added). Thus, the record is undisputed that ExactTarget did not identify Plaintiffs based on the information it received, and

---

[8] If a customer previously signed up for a web account or requested email receipts during a previous rental transaction using the same credit card, Redbox will prepopulate the email address field for the customer's convenience. That email address can be modified or deleted by the customer, or the customer can opt-out of receipts for that transaction by clicking "no thanks". (Wokosin Decl. ¶ 41.)

thus the disclosure did not involve information that "indicate[d] the identity of the customer."  MCL § 445.1712.

ExactTarget's inability to identify Plaintiffs is not surprising, particularly in the case of Plaintiff Michele Cain.  The email address that Michelle Cain chose to input in the kiosks to receive rental receipts was mrklevi@yahoo.com—an address that bears no apparent connection to her name.  Similarly, although Ms. Sampat's email address does contain her name—radhasampat107@yahoo.com—the inclusion of a number "107" at the end suggests there are other persons have that same name and ExactTarget had no information that would allow it to determine who that email address belonged to, much less if they were the one that rented that movie.

Plaintiffs' motion completely ignores ExactTarget's sworn and undisputed declaration, and instead focuses generically on the academic proposition of whether an email address can be identifying—an inquiry that would by definition turn on individualized facts.  ECF No. 53 at 23-24.  Indeed, the case upon which Plaintiffs rely regarding the federal VPPA shows that a disclosure is only actionable if it either includes a name that identifies a person or something "akin" to a name.  *See In re Hulu Privacy Litig.*, 2014 WL 1724344, *14 (N.D. Cal. Apr. 28, 2014);  *see also In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, *10 (D.N.J. July 2, 2014) ("'[Personally identifiable information]' is information which must, without more, itself link an actual person to actual video materials.").

18

In any event, there is no need for this Court to tackle this question here given the undisputed facts as set forth in ExactTarget's sworn declaration demonstrate that no identification occurred, and thus the disclosure did not "indicate[] the identity" of either of the Plaintiffs.

## III.   Plaintiffs' Motion and Claims Also Fail Because They Consented.

Even setting aside the fact that all the disclosures are to Redbox's agents, and thus fall outside the scope of the VRPA, and the fact that three of the four service providers raised by Plaintiffs' motion do not even receive Personal Rental History information, Plaintiffs' motion and claims also fail because Plaintiffs expressly consented to such disclosures by repeatedly accepting Redbox's terms of use during each and every rental transaction, as fully explained in Redbox's motion for summary judgment.  *See* ECF No. 46 at 16-19.  The VRPA expressly provides that Redbox can disclose personal rental history to anyone "[w]ith the written permission of the customer."  MCL § 445.1713.  Written permission can be provided by agreeing to online terms and use or engaging in transactions with knowledge of the underlying practices.[9]

---

[9] *E.g., Fteja v. Facebook, Inc*, 841 F. Supp. 2d 829, 836-37 (S.D.N.Y. 2012) (enforcing modified clickwrap terms in which the user is bound to the terms by pressing the "Sign Up" button next to text indicating that pressing such button binds them to the terms, which can only be viewed on a separate page if the user follows a hyperlink).  This is true even though Plaintiffs failed to read the Terms.  *Druyan v. Jagger*, 508 F. Supp. 2d 228, 237 (S.D.N.Y. 2007).

Here, the terms of use and privacy policy not only discuss Redbox's use of a customer service agent provider, but also service providers for "to send you [the customer] email," to "assist[] with promotions," and "track[] analytics.  (ECF No. 48, Wokosin Decl. ¶ 23 and Exhibits 10-12 thereto (emphasis added); *see also id.* at ¶ 14 (quoting prior version of same provision); *id.* at ¶ 27 and Ex. 13 thereto (current version).)[10]  Plaintiffs' consent to these practices is yet another independent reason why their Motion fails as a matter of law.

## IV.    Plaintiffs' Claims As To All These Service Providers Are Time Barred.

Plaintiffs are bound by the one-year contractual limitations in Redbox's Terms—which they repeatedly consented to be bound by Redbox's Terms of Use in each and every rental transaction, including those they completed after this litigation was commenced and after they knew Redbox was invoking those terms as a defense—and both Plaintiffs' first rental transactions occurred well more than one year prior to the date this suite was filed.  Accordingly, this is yet another independent legal basis for granting judgment in Redbox's favor on all Plaintiffs' claims.  Redbox hereby references and incorporates the case law and arguments in Section IV of its Motion for Summary Judgment in further support of this argument.

---

[10] For a further explanation of how Plaintiffs accepted Redbox's Terms at the time of their transactions and therefore consented to the disclosure of their e-mail addresses and personal rental history to ExactTarget for purposes of sending e-mail receipts, Redbox expressly incorporates and references its arguments made in Section III(A) of its Brief submitted in support of its separately pending Motion for Summary Judgment.  (ECF No. 46 at 16-19.)

20

**V.    The Disclosures Are Made In Redbox's "Ordinary Course Of Business."**

Plaintiffs' motion the fact that the VRPA incorporates the "ordinary course of business" exception from the federal VPPA, and that each of the disclosures at issue here fall squarely within Redbox's ordinary course of business as Redbox's explained in its summary judgment brief, which is incorporated herein. *See* ECF No. 48 at 19-21.

**VI.   Any Disclosures To Adobe, Experian, And ExactTarget Are Expressly Permitted Because Plaintiffs Were Provided Notice.**

Plaintiff's Motion for Summary Judgment must fail for yet another reason: Redbox provided an appropriate notice and opt-out opportunity for its marketing-related disclosures.  The VRPA exempts from liability disclosures made for "the exclusive purpose of marketing goods and services directly to the consumer" if the person disclosing the information "inform[s] the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information."  MCL § 445.1713.  *See Halaburda v. Bauer Publ'g Co.*, No. 12-cv-12831, 2013 WL 4012827, at *8 (E.D. Mich. Aug. 6, 2013) (Steeh, J.) (noting that magazine publishers' opt-out notices appearing in the magazine or on the publisher's website "certainly appear to comply with the terms of statute").

Redbox provided Plaintiffs with the requisite written notice in its Privacy Policy.  The Policy during their initial rentals stated:

> Occasionally, with your permission, we will send marketing information to you, such as discount offers, information about new product offerings,

21

> etc. . . . If you initially elect to receive such materials, but later change your
> mind, you may opt out from receiving such materials in the future by sending
> an e-mail to: questions@redbox.com

ECF No. 48-6, Wokosin Decl. Ex. 5, Redbox Privacy Policy as of 2010; *see also id.*

("You are in control of any personal information you provide to us on-line…. ask us

to delete that that information or stop further use of the information, please email us

at questions@redbox.com").[11]  As noted above and in Redbox's summary judgment

brief, the Privacy Policy also fully disclosed that information would be disclosed to

service providers for purposes of such marketing efforts.  *See* ECF No. 46 at 16-18.

Additionally, the marketing emails received by Plaintiffs, which Plaintiffs

attach to their Motion, specifically provided a link to opt-out from future marketing

communications from Redbox, providing yet another separate notice in compliance

with the VRPA's express exception.  *See, e.g.* ECF No. 54, Ex. 23, PageID 1544,

Cain 000112 ("Don't want to get emails from us? You can unsubscribe here.  To

view our Privacy Policy, click here."); *id.* at PageID 1553, Cain 000317 ("You have

received this email as a registered user of the redbox.com email list . . . . If you do

not wish to continue receiving these notices, please unsubscribe. . . . To view our

Privacy Policy, click here.").)

---

[11] Redbox's Privacy Policy in place as of 2011 reinforced this opt-out availability
by stating "The Redbox.com Site allows you to correct or update certain Personal
Information you have provided and to change your subscriptions or preferences
regarding marketing information you receive from Redbox." and that "You may opt
out of receiving marketing e-mails by following the opt-out instructions to you in
those e-mails."  Wokosin Decl., ECF No. 48-11, at Redbox C00003.

Redbox's disclosures to Experian and Adobe exclusively relate to its ability to directly market its own goods and services directly to its customers. Experian provided direct marketing e-mails to Plaintiffs to encourage further rentals from Redbox and Adobe provided analysis to Redbox (through anonymous data) to help Redbox determine which email and movie recommendations to send. Similarly, ExactTarget provided receipts for transactions, including on-line rental confirmations to encourage the customer to complete the rental process—perhaps the most direct marketing available to a company like Redbox, which operates through automated kiosks. Providing such receipts also helps ensuring customer satisfaction and builds brand loyalty, a form of direct marketing. According, this express exception is yet another independent ground that dooms Plaintiffs' motion.

## VII.  Plaintiffs' Motion Also Fails Because They Lack Standing And Were Not Injured-In-Fact.

Plaintiffs' Motion also fails because they have suffered no injury-in-fact and lack standing to prosecute their claims as demonstrated in Redbox's summary judgment motion. ECF No. 46 at 23-24. Without standing, Plaintiffs cannot prevail on their claims. *See, e.g., Lujan v. Secretary of the Interior*, 504 U.S. 555, 560 (1992). Plaintiffs' Motion fails to even discuss this issue.

## VIII.  Redbox's Affirmative Defenses Defeat Plaintiffs' Claims.

Finally, Plaintiffs' Motion seeking partial summary judgment on liability fails to even address the other affirmative defenses raised by Redbox. *Compare*

ECF No. 53 *with* ECF No. 28 at 21-23 (Redbox's Answer and Additional Defenses).

"In the context of summary judgment, it is well settled that the moving party always

bears the initial responsibility of informing the district court of the basis for its

motion. This initial burden remains with the moving party, even when the issue

involved is one on which the non-movant will bear the burden of proof at trial, such

as the Defendant's affirmative defenses in the present case." *Books A Million, Inc.*

*v. H & N Enterprises, Inc.,* 140 F. Supp. 2d 846, 851 (S.D. Ohio 2001) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986)).

      In any event, several of Redbox's affirmative defenses will turn on disputed

facts and expert testimony that defeat Plaintiffs' motion.  For example, whether the

VRPA's statutory damages of $5,000 are unconstitutionally excessive in violation

of the Fifth and Eighth Amendments to the United States Constitution and Article I,

Sections 16 and 17 of the Michigan Constitution will depend on the alleged nature

and amount of injury that Plaintiffs' claim, which they do not even address in their

motion.  If their injury is zero, then the VRPA would be unconstitutional.  *See, e.g.,*

*State Farm v. Campbell*, 538 U.S. 408, 417 (2003) ("To the extent an award is

grossly excessive, it furthers no legitimate purpose and constitute an arbitrary

deprivation of property.").  Other constitutional affirmative defenses raised by

Redbox are also premature given that Plaintiffs' motion fails to even address them.

Each of these defenses are independently fatal to Plaintiffs' claim under the VRPA and defeat Plaintiffs' motion independent of the numerous other defects discussed above.

## <u>CONCLUSION</u>

For all of the reasons stated herein, and for those stated in the sections incorporated by referenced in Redbox's Motion for Summary Judgment, Redbox respectfully requests that this Court deny Plaintiff's Motion for Partial Summary Judgment on Count I of their Complaint, grant Redbox's Motion for Summary Judgment on this Count, and enter judgment in favor of Redbox.

Dated:  October 21, 2014                    Respectfully submitted,

                                                      /s/  John Grossbart

Peter B. Kupelian (P31812)           Donna J. Vobornik
Carol G. Schley (P51301)             John Grossbart
CLARK HILL PLC                       Anthony T. Eliseuson
151 S. Old Woodward Avenue,          DENTONS US LLP
Suite 200                            233 South Wacker Drive, Suite 7800
Birmingham, Michigan 48009           Chicago, IL  60606
pkupelian@clarkhill.com              (312) 876-8000
cschley@clarkhill.com                (312) 876-7934 (fax)
                                     donna.vobornik@dentons.com
                                     john.grossbart@dentons.com
                                     anthony.eliseuson@dentons.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

25

## **CERTIFICATE OF SERVICE**

I, John Grossbart, an attorney, hereby certify that on October 21, 2014, I filed a copy of the foregoing via the CM/ECF system, which will send notification to all parties of record.


/s/ John Grossbart



83250229\V-5