# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHELLE CAIN and RADHA SAMPAT,
Individually, and on behalf of all others
similarly situated,

        Plaintiffs,

v.

REDBOX AUTOMATED RETAIL, LLC,

        Defendant.

Case No. 2:12-cv-15014-GER-LJM
Honorable Gerald E. Rosen
Mag. Judge Whalen

## REDBOX AUTOMATED RETAIL, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
151 S. Old Woodward Ave., Suite 200
Birmingham, Michigan 48009
(248) 530-6338
(248) 988-2312 (fax)
pkupelian@clarkhill.com
cschley@clarkhill.com

Donna J. Vobornik
John I. Grossbart
Anthony T. Eliseuson
DENTONS US LLP
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@dentons.com
john.grossbart@dentons.com
anthony.eliseuson@dentons.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

Plaintiffs' response to Redbox's motion for summary judgment closely resembles their cross motion for summary judgment and thus fails for the same reasons set forth in Redbox's response in opposition to that motion ("Opposition Brief," ECF No. 68). The undisputed facts demonstrate that Redbox has not disclosed *any* of Plaintiff Cain's information to anyone, and that the only disclosure of Plaintiff Sampat's information was to Redbox's customer service agent, Stream—disclosures that the Seventh Circuit very recently confirmed are perfectly proper under the related federal Video Privacy Protection Act ("VPPA")'s "ordinary course of business" exception. *Sterk v. Redbox Automated Retail, LLC*, No. 13-3037, 2014 WL 5369416 (7th Cir. Oct. 23, 2014).

Plaintiffs' claims here—under a Michigan statute that was designed to serve the *same* purpose as the federal VPPA and that was enacted in response to the *same* incident—similarly fail for the reasons recognized by the Seventh Circuit, and the numerous other additional reasons as set out in Redbox's motion. Redbox's routine business practices are fully consistent with both federal and state law. The few "new" points Plaintiffs raise in their response brief fail to alter that conclusion.

## I. Plaintiffs Conceded That Disclosures To Agents Are Not Prohibited.

In their Cross-Motion for Summary Judgment, Plaintiffs *affirmatively state and thus concede* that disclosures of personal rental history to "agents" are not prohibited by the VRPA. *E.g.* ECF No. 53 at 17 (stating that the VRPA can only be violated by a disclosure to "any person, other than Plaintiffs, [Redbox's] agents, or

employees"); *id.* at 19 ("the VRPA . . . exempts from liability disclosures Redbox makes to its own agents or employees").  Notwithstanding those unequivocal statements, Plaintiffs' opposition to Redbox's motion schizophrenically argues exactly the opposite.  Pls.' Resp. at 13.  Plaintiffs' first position was correct because the VRPA's text clearly demonstrates that only disclosures to persons *other than* a Redbox "employee or agent," triggers potential liability.  MCL § 445.1712 ("a person, or an *employee or agent of the person*, engaged in the business of . . . renting . . . video recordings shall not disclose to any person, other than the customer . . .") (emphasis added).  If Plaintiffs' "new" interpretation were correct, it would mean not even *employees* of the company itself could use the information for normal business purposes without violating the VRPA, which is nonsensical given that companies can only act through their employees and agents.  *E.g. In re NM Holdings Co., LLC*, 622 F.3d 613, 620 (6th Cir. 2010).  The VRPA necessarily and correctly presumes that agents can, do and will have access to personal rental history to do their jobs and only regulates disclosures beyond that relationship.  Plaintiffs' contrary construction would lead to an absurdity.  *E.g.*, *People v. Lewis*, 302 Mich. App. 338, 341-42 (2013) ("Statutes must be construed to prevent absurd results.").

## II.     Adobe, ExactTarget, Experian, And Stream Are All "Agents."

The undisputed facts show that Adobe, ExactTarget, Experian and Stream are all "agents" for purposes of the VRPA.  *See* ECF No. 68 at 6-11.  This analysis is

not altered by provisions in Redbox's agreements with Adobe and ExactTarget (provisions lacking from the Stream or Experian agreements) that indicate no agency relationship is created, because such provisions do not control the analysis. *E.g.*, *Eyerman v. Mary Kay Cosmetics, Inc*., 967 F.2d 213, 219 (6th Cir. 1992) (reiterating that Courts "must look beyond the agreement to the reality of the relationship between the parties" in determining agency, and thus looking beyond the existence of contractual language that "unambiguously declared that [plaintiff] would not be [defendant's] agent" to determine "the reality of the relationship"). Nor is it altered by the fact that "Experian controls its own employees and facilities" (Pls.' Resp. at 15) because the critical fact is that Redbox controls Experian's use of Redbox's customer information, and thus Experian's control of its employees is only derivative of Redbox's control.

### III. Redbox Has Not Disclosed Any Personal Rental History to Adobe, Experian, or ExactTarget.

As Redbox explained in its response to Plaintiffs' summary judgment motion, the kinds of information regulated by the VRPA is not disclosed to Adobe, Experian, or ExactTarget. ECF No. 68 at 11-19. Thus, Plaintiffs' claims fail as to those service providers. Plaintiff Cain's claims also fail as to Stream, because the undisputed record demonstrates her information was never disclosed to Stream. Plaintiffs' only response is to misleadingly argue that the entirety of Redbox's database was purportedly disclosed to Stream based on citations to the *Sterk* federal

VPPA action. But in that case, Redbox argued—and the Seventh Circuit recently agreed—that *any* disclosures to Stream were permissible under the "ordinary course of business" exception and thus, Redbox accepted for the sake of that argument that the entire database was disclosed to Stream, even though that is factually wrong. *Sterk*, 2014 WL 5369416, at *5-6. Here, however, Redbox provided undisputed evidence that affirmatively and unequivocally demonstrates the absence of any showing that Plaintiff Cain's information was in fact disclosed to Stream, which is fatal to her claim. *See* ECF No. 46 at 9-10 (citing, *e.g.,* ECF No. 48 at ¶ 48).

### IV. Plaintiffs Cannot Avoid Their Affirmative Consent—Including Consent After This Litigation Was Filed—Based On An Inapplicable Statute.

Plaintiffs' *only* argument to avoid their repeated and voluntary acceptance of Redbox's Terms of Use, and their consent to the disclosures at issue here, is their reliance on the wholly inapplicable Michigan Uniform Electronic Transactions Act. Pls.' Resp. at 17 (citing MCL § 450.838(3)). This argument fails for many reasons.

As an initial matter, the VRPA merely requires "written permission"; it does not require that permission to be contractually binding. MCL § 445.1713. By definition, in each and every transaction they made, Plaintiffs provided "written permission" by acknowledging Redbox's Terms of Use and Privacy Policies, and completing the transaction. This is particularly true given that they *continued to rent from Redbox even after filing this lawsuit and after being put on specific notice of the Terms of Use in Redbox's Motion to Dismiss.* (ECF No. 48, Wokosin Decl.

¶¶ 9-10.) Given that continuing voluntary post-litigation conduct, these Plaintiffs cannot argue in good faith they did not fully consent to Redbox's practices.

Additionally, Plaintiffs agreed to an Illinois choice of law provision to govern the Terms of Use (ECF No. 48, Wokosin Decl. ¶¶ 12, 20, 28-29), and Illinois has not enacted the Uniform Electronic Transactions Act. Plaintiffs' Response fails to acknowledge that fact, much less raise any argument to avoid this choice of governing law. Second, even ignoring that the Michigan statute is inapplicable to the Terms of Use, it is facially inapplicable to the transaction here because the act only prevents enforcement where a party who is "require[d]" by "a law" to "send information" to another party actively "inhibits" the other party from printing or retaining a copy of the document. MCL § 450.838. Here, Plaintiffs fail to identify any law that required Redbox to send them any information, nor do they identify how Redbox can conceivably be viewed as "inhibiting" them from retaining a copy of the Terms of Use and Privacy Policy. Indeed, the undisputed facts demonstrate that Redbox affirmatively disseminated its Terms of Use and Privacy Policy to Plaintiffs (and the public in general) on its kiosks and its website, and it also specifically included links to its Privacy Policy in its emails with Plaintiffs, including the rental transaction emails that Plaintiffs requested as part of their transactions, presumably so that they could retain such records. *See, e.g.* ECF No. 54, Ex. 23, PageID 1544, Cain 000112; *id.* at PageID 1553, Cain 000317. Thus, Redbox actively facilitated, rather than inhibited, Plaintiffs ability to print or save

- 5 -

these documents.

## V. The Disclosures Are Made In Redbox's "Ordinary Course Of Business."

The fact that the "otherwise provided by law" exception of the VRPA incorporates the exceptions of the federal VPPA does not render the specifically listed exceptions "superfluous" as Plaintiffs suggest; rather, they work in harmony. Specifically, the VRPA's specific consent provision broadly allows disclosures with a customer's "written permission," MCL § 445.1713(a), whereas the federal VPPA originally contained a requirement that the written permission be obtained at the time of each disclosure, 18 U.S.C. § 2710(b)(2) (pre-2013 amendment).  Similarly, the VRPA allows disclosure for marketing purposes with merely notice and an opt-out right, MCL § 445.1713(b), whereas the VPPA's marketing provision only allows disclosure of certain information under specific marketing-related circumstances, 18 U.S.C. § 2710(a)(2); 18 U.S.C. § 2710(b)(2).  Thus, it is apparent that the Michigan legislature did in fact intend to fully endorse the exceptions contained in the federal VPPA, and then *broadened* certain of those exceptions in §1713, and, in the case of the debt collection exception, narrowed it by requiring certain specific steps as a condition precedent to such debt collection-related disclosures, intending that specific provision to control that situation.  Notably, Plaintiffs offer no alternative purpose for the phrase "otherwise provided by law," improperly rendering it surplusage.  Redbox's disclosures to Stream fall squarely within the ordinary course of business exception, *Sterk*, 2014 WL 5369416, and so

- 6 -

would any disclosures to Redbox's other service providers because they provide marketing related services (Adobe), rental transaction receipts (ExactTarget), or marketing emails (Experian). *See* VPPA Senate Report No. 100-599, at 14 (1988) (recognizing such practices fall within the "ordinary course of business" exception).

**VI.   Plaintiffs' Claims Are Time Barred.**

Because Plaintiffs are bound by the Terms for all of the reasons discussed in Section IV *supra*, the contractual limitations period in the Terms is valid and enforceable. Plaintiffs' arguments to the contrary are flawed. The definition of "Redbox platforms" specifically includes Redbox kiosks. ECF No. 48-10 at Redbox C01651; 48-16 C03992. Similarly, the limitations period was triggered during the first transaction because they were placed on notice of any claims, which Plaintiffs' cited case demonstrates. *Hill v. Dep't of Defense*, 981 F. Supp. 2d 1, 7 (D.D.C. 2013) (explaining statute of limitations commenced when "plaintiff has received adequate notice that an agency or its employees are engaged in practices inconsistent with the agency's obligations under the Privacy Act").[1]

Dated:  October 31, 2014           Respectfully submitted,
                                   /s/  John Grossbart

*Attorneys for Defendant Redbox Automated Retail, LLC (see cover page)*

---

[1] Plaintiffs' Response also argues—ironically, in a footnote—that Redbox supposedly disclosed their personal information to Iron Mountain (Pls.' Resp. at 12 n.6), the same footnote argument the Seventh Circuit rejected based on waiver and based on Plaintiffs' failure to adequately support through evidence under the federal VPPA. *Sterk*, 2014 WL 5369416, at *7. The argument also fails here.

## CERTIFICATE OF SERVICE

    I, John Grossbart, an attorney, hereby certify that on October 31, 2014, I filed a copy of the foregoing via the CM/ECF system, which will send notification to all parties of record.

/s/ John Grossbart

83256393\V-12