# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MICHELLE CAIN and RADHA SAMPAT, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company,<br><br>    Defendant. | Case No. 2:12-cv-15014-GER-RSW<br><br>Hon. Gerald E. Rosen<br><br>Mag. Judge R. Steven Whalen |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Ari J. Scharg
ascharg@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370

Brian C. Summerfield (P57514)
bsummerfield@bodmanlaw.com
BODMAN PLC
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, Michigan 48226
Tel: 313.259.7777

*Counsel for Plaintiffs and the Putative Class*

Redbox admits that its provision of information concerning its customers and their video rentals is a "disclosure" as that term is used in the VRPA, but seeks to avoid partial summary judgment being entered against it by arguing that (1) each of the companies receiving the information is its agent, (2) the information it provides is not protected by the VRPA, and (3) it has stated boilerplate affirmative defenses that remain unaddressed. None of these arguments has merit.

**I.      No Company Receiving Plaintiffs' Information Is An Agent of Redbox.**

Ignoring its contracts and the evidence, Redbox argues that the disclosures to its independent contractors are exempt from the VRPA because those third parties are its agents. That assertion is false.[1]

**A.      *Redbox's Contracts Show ExactTarget and Adobe Are Not Agents:***
While an independent contractor in some instances may be an agent, Redbox's detailed contracts with ExactTarget and Adobe expressly disclaim the existence of an agency relationship, as well as Redbox's right to control the manner in which these companies perform their services. (Dkt. 55-8 at C330; Dkt. 55-16 at C447). Not only is weight given to the disclaimer or acknowledgment of a particular agency status in a contract, *Weary v. Cochran*, 377 F.3d 522, 525 (6th Cir. 2004), but when there is a written agreement "spelling out the relationship in great detail" the Court can determine whether a principal-agent relationship exists. *Birou v.*

---

[1]      In any event, the plain language of the VRPA doesn't even permit disclosures to agents in the first instance. (*See* Pls. Opp. to S.J., Dkt. 60 at 12–13.)

1

*Thompson–Brown Co.*, 241 N.W.2d 265, 268 (Mich. Ct. App. 1976).

      **B.**    *The Evidence Shows Experian and Stream Are Not Agents:*

Experian and Stream are likewise not agents of Redbox. An agency relationship requires "the right of the principal to control the conduct of the agent." *Briggs Tax Serv., L.L.C. v. Detroit Pub. Schs.*, 780 N.W.2d 753, 760 (Mich. 2010).[2] As explained in Plaintiffs' summary judgment motion, Redbox has absolutely no control over Experian or Stream when they perform work for Redbox. (Pls. Mot for S.J., Dkt. 53 at 19–21.) Indeed, Redbox's own witness confirmed this. (Dkt. 55-9 at 124:17–128:2, 117:3–119:7.)

    Redbox does not dispute any of this, instead arguing that the factors to which Plaintiffs point—such as control over employees and facilities—apply only in the employment context and are irrelevant to determining agency here. (Def.'s Opp. to S.J., Dkt. 68 at 11.) Not so. These, and other similar factors listed in the Restatement of Agency, are commonly used "[i]n determining whether the relationship is one of principal and agent, or independent contractor . . ." *Alverson v. Am. Nat'l Ins. Co.*, 30 Fed. App'x 491, 496 (6th Cir. 2002).

    Redbox also impermissibly attempts to carve up its relationship with

---

[2] In addition to the right to control, agency also requires a fiduciary relationship between the parties, and the agent must have the power to alter the legal relations of the principal with third parties. *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 219 (6th Cir. 1992). Redbox points to no evidence in the record supporting the existence of either of those elements.

2

Experian and Stream, arguing that regardless of its lack of control over Experian's performance of targeting emailing and Benchmark Studies for Redbox or Stream's telephonic customer support, "Redbox retains the right to control the service provider's use of Redbox's information." (Dkt. 68 at 9–11.) But Redbox offers "no explanation of why agency for one purpose but not the other makes sense." *See Essex Ins. Co. v. Hoffman*, 168 F. Supp. 2d 547, 559 (D. Md. 2001). Redbox cannot have it both ways and conveniently purport to assert control over Experian and Stream's use of the information to avoid liability while simultaneously lacking control over every other aspect of their performance of the contracted-for services.

While Redbox may dispute certain facts about its level of control that would normally preclude summary judgment for either party, *see Roberts v. Bennett Enters., Inc.*, 04-73540, 2006 WL 3825067, at *4 (E.D. Mich. Dec. 26, 2006) (citation omitted) ("The existence of a principal-agent relationship is for a jury to decide if the record is conflicting."), the facts it disputes here are not relevant to deciding agency.

## II.     Redbox Discloses Rental and Personal Data Covered by the VRPA.

Redbox does not dispute that Stream receives all customers' names and titles of all rentals (Dkt. 68 at 3), that Experian received Plaintiffs' names and email addresses (*id.* at 4–5), and that ExactTarget gets film titles (*id.* at 5), which are all clearly protected from disclosure under the VRPA. MCL § 445.1712. Plaintiffs are

3

therefore entitled to partial summary judgment on these issues.

A. ***Experian Receives Profiled Video Preferences:*** Having admitted it discloses names and emails to Experian, summary judgment against Redbox is proper if it also discloses "information concerning the purchase, lease, rental, or borrowing of" video recordings. MCL § 445.1712. Redbox argues that the VRPA prohibits only the disclosure of titles, or information that reveals something "about the specific video materials rented" (Dkt. 68 at 15), and that that the slew of data it gives Experian about its customers' rentals is insufficient. While Redbox's argument about rental date and location is unsupported by the statute's text,[3] and falsely claims Redbox does not disclose Plaintiffs' genre or video preferences to Experian, the undisputed facts show it does precisely what it admits is prohibited.

Experian sends to Plaintiffs and other Redbox customers "targeted" emails of film "recommendations." (*Id.* at 14; Wokosin Decl., Dkt. 48 ¶ 36; Dkt. 55-15 at C3610–15.) These targeted emails recommend specific new titles *based on the customer's past Redbox rental history*. (*See* Exs. D at 111:8–112:18 and E to the Declaration of Ari J. Scharg ["Scharg Decl."], a true and accurate copy of which is attached hereto as Ex. 1.) For example, Redbox may tell Experian to send an email

---

[3] Redbox's invocation of the rule of lenity to support its reading of the VRPA (Dkt. 68 at 15) is completely unwarranted. As the Supreme Court has explained, "the rule of lenity only applies if, after considering the text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute." *Barber v. Thomas*, 560 U.S. 474, 475 (2010) (internal quotations omitted). Here, there is no ambiguity or uncertainty in the VRPA, let alone a grievous one.

recommending Michael Moore's *Farenheit 9/11* to a customer who previously rented Moore's *Bowling for Columbine*. While Redbox may not disclose the title of the prior rental, its disclosure of the recommendation of another film based on the prior rental clearly reveals to Experian something about the specific materials previously rented by that customer as well as facts about their personal politics.

  **B.**   ***Adobe Receives What Experian Does:*** Redbox argues that it did not provide Adobe with Plaintiffs' names or email addresses, but that assertion completely contradicts Redbox's admission through its own 30(b)(6) witness's testimony that "[w]e provide that same data [that we provide to Experian] to Adobe." (Dkt. 68 at 13 n.6; Dkt. 55-4 at 180:4–7.) Redbox "may not create a factual issue for the purpose of defeating a motion for summary judgment" by contradicting the deposition testimony of its own witnesses. *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991).[4]

  **C.**   ***Plaintiffs' Identities Are Disclosed to ExactTarget:*** Redbox admits it discloses movie titles, among other things, to ExactTarget. (Dkt. 68 at 16.) While Redbox argues that it escapes liability because it discloses only e-mail addresses, not full names, the VRPA "does not say 'identify by name' and thus plainly encompasses other means of identifying a person." *In re Hulu Privacy Litig.*, 2014

---

[4]   While Redbox complains that the deposition discussed here occurred in another case, Redbox specifically stipulated that that testimony could be used in this case. (Scharg Decl., Exs. A at 5:10–6:1, B, and C at 4.)

WL 1724344, *7 (N.D. Cal. Apr. 28, 2014); *see also In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, *9 (D.N.J. July 2, 2014) ("The Court . . . reads the statute to comport with common sense—a person can be identified by more than just their name and address.") (internal quotations omitted).

An e-mail address can clearly identify an individual.[5] Often, an individual's name is easily discernable from their e-mail address, as is the case with radhasampat107@yahoo.com.[6] Even where an individual's name is not part of their e-mail address, it can still easily identify the person. For example, plugging Cain's e-mail address, mrklevi@yahoo.com, into www.spokeo.com/email-search quickly reveals her maiden name, along with detailed information about her for a nominal charge. Similarly, the same search at www.emailsherlock.com reveals Cain's first name, age, gender, and home state. It is no surprise, then, that best practices guidelines in both the public and private sectors treat e-mail address as

---

[5] Redbox claims that ExactTarget did not identify Plaintiffs based on their e-mail addresses, but that assertion is both incorrect and irrelevant. The Hatch Declaration on which Redbox relies says nothing of the sort. Further, whether or not the recipient use the disclosed information to identify the customer doesn't matter as statutory violation is the disclosure, not the recipient's use of that information to identify the customer. *See, e.g., Hulu*, 2014 WL 1724344 at *14 ("The emphasis is on disclosure, not comprehension by the receiving person.").

[6] Redbox argues that the "107" in Ms. Sampat's email address suggests that other people have the same name. But the existence of more than one Radha Sampat would actually make the e-mail address a *stronger* identifier than just name, because it is unique to one of the hypothetically multiple Radha Sampats.

personally identifiable information.[7]

### III. Redbox's Affirmative Defenses Don't Prevent Summary Judgment.

Plaintiff "need not preemptively tackle all of [Redbox's] affirmative defenses" given Defendant's "shotgun approach." *Frerck v. Pearson Educ., Inc.*, 2014 WL 3906466, at *2 (N.D. Ill. Aug. 11, 2014). Moreover, Plaintiff has fully addressed each affirmative defense (*see* Dkt. 60) save two: the first, regarding damages, is premature. The other—that Redbox's disclosures to Experian, Adobe, and ExactTarget are exempt as being "for the exclusive purpose of marketing"—is absurd. Experian and Adobe use the disclosed information to perform "benchmark studies" and data analytics for Redbox (*see* Dkt. 53 at 10–11) and ExactTarget uses the information to generate receipts (*see id.* at 5–6, 14). Further, the marketing exception's opt-out notice requirement was not provided by ExactTarget and cannot be included in the Privacy Policy as it is not binding on Plaintiffs. (Dkt. 60 at 16–20.)

Dated: November 11, 2014          Respectfully submitted,

By:  s/ Ari J. Scharg
      One of Plaintiffs' Attorneys

---

[7]    *See* Nat'l Inst. of Standards and Tech., *Guide to Protecting the Confidentiality of PII*, Special Publication 800-122 at 2-2 (Apr. 2010); Online Trust Alliance, *Data Protection & Breach Readiness Guide*, at 11 (Apr. 17, 2014) *available at* http://www.otalliance.org/system/files/files/best-practices/documents/2014otadatabreachguide4.pdf.

7

## CERTIFICATE OF SERVICE

I, Ari J. Scharg, an attorney, certify that on November 11, 2014, I served the above and foregoing ***Plaintiffs' Reply in Support of Motion for Partial Summary Judgment***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

s/ Ari J. Scharg