# Exhibit 1-C

**Edelson PC**

350 North LaSalle, Suite 1300, Chicago, IL 60654
t 312.589.6370 f 312.589.6378

www.edelson.com

April 22, 2014

**VIA ELECTRONIC MAIL**
Anthony T. Eliseuson
DENTONS US LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
anthony.eliseuson@dentons.com

Re:   *Cain v. Redbox Automated Retail, LLC*, Case No. 2:12-cv-15014 (E.D. Mich.)

Dear Tony:

This letter addresses certain deficiencies in Redbox's responses to Plaintiffs Cain's and Sampat's First Sets of Interrogatories and Requests for the Production of Documents. In particular, Redbox asserted a litany of improper objections, provided incomplete discovery responses, and failed to label its document production to correspond to Plaintiffs' document requests. Pursuant to Local Rule 37.1, we would like to meet and confer on April 24, 2014 at 11:00 a.m. to discuss and work through these issues with you.

**I.   Redbox's General Objections Are Improper and Must be Withdrawn.**

As a preliminary matter, Redbox purports to incorporate a set of "general objections" into each of its discovery responses, including objections based upon attorney-client privilege and work product. However, such blanket objections are improper. *See Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, 2009 WL 2022308, at *2 (E.D. Mich. July 8, 2009) ("boilerplate or generalized objections are tantamount to no objection at all."). Moreover, the general objections are confusing given that Redbox re-raises the same objections in response to some, but not all, of Plaintiffs' discovery requests. We therefore ask that Redbox withdraw its general objections and supplement its responses accordingly.[1]

**II.   Redbox's Responses Are Incomplete and Must Be Supplemented.**

Plaintiffs' lawsuit alleges that Redbox violated the Michigan Video Rental Privacy Act,

---

[1] And to the extent that Redbox is withholding any documents based upon attorney-client privilege or work product, it must produce a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A); *see also Cessante v. City of Pontiac*, 2009 WL 973339, at *3 (E.D. Mich. Apr. 9, 2009) ("To the extent a privilege is asserted, [the defendants] must provide a privilege log"); *Everlight Electronics Co. v. Nichia Corp.*, 2013 WL 5754896, at *2 (E.D. Mich. Oct. 23, 2013) ("A party resisting discovery based on the attorney-client privilege has the burden of showing that the privilege applies"). Thus, we ask that you be prepared to discuss whether any documents have been withheld on account of a privilege, and if so, when a privilege log will be made available.

Illinois / California / Colorado

Edelson PC

*Cain v. Redbox Automated Retail*
April 22, 2014
Page 2 of 4

M.C.L. §§ 445.1711, *et seq.* ("VRPA") by disclosing its customers' personally identifiable rental and purchase histories ("Personal Information") to unrelated third parties without consent. Redbox denies these allegations, arguing in part that (i) it doesn't disclose any of its customers' Personal Information to any third party company aside from Stream, and (ii) to the extent that Redbox does disclose its customers' Personal Information to third party companies, such companies should be considered "agents" of Redbox, and thus, the disclosures aren't actionable. As such, Plaintiffs are plainly entitled to seek discovery regarding the categories of customer information that Redbox discloses to each third party company (to determine whether any Personal Information is, in fact, disclosed), and the relationship between Redbox and each third party that receives its customers' Personal Information (to determine whether such companies are, in fact, agents of Redbox).

Nonetheless, in many instances, Redbox unilaterally re-wrote requests to unreasonably limit their scope, and even flat out refused to answer certain requests that are unquestionably relevant. Thus, as more fully discussed below, we ask that Redbox withdraw its objections and supplement its answers and responses accordingly.

### A.   *Requests Seeking Information Regarding the Categories of Customer Data Disclosed to Third Parties.*

Cain Interrogatory No. 11 and Document Request Nos. 12-14 seek information concerning the categories of customer data that Redbox discloses or makes available to third parties ("Third Party Recipient"). These discovery requests go to the heart of Plaintiffs' VRPA claims, and thus, are highly relevant.

Nonetheless, Redbox failed to provide complete responses to these crucial requests:

- In response to Cain Interrogatory No. 11—which asked Redbox to identify each type or category of Personal Information disclosed to each Third Party Recipient—Redbox produced a "Data Services Schedule" (Bates Nos. 3592-3600) that it entered into with a company called Experian Marketing Solutions, Inc. (a third party that hasn't been identified as a recipient of Redbox's customers' Personal Information), and a set of data correlating to Plaintiff Sampat (Bates Nos. 03610-C03619). Neither of these documents, however, identifies the *categories* of information disclosed or which third parties such information was disclosed to.

- In response Document Request Nos. 12-13—which asked Redbox to produce any correspondence it had with Third Party Recipients relating to its customers' (including Plaintiffs') Personal Information—Redbox unilaterally limited the request by indicating that it would produce "data streams" showing information relating to Cain and Sampat that are "shared with Redbox's Agents." Putting aside that Redbox has failed to provide complete "data streams" (and thus, it's unclear which third parties received what information) and that the request isn't limited to Cain and Sampat, these requests asked for *any* correspondence that Redbox had with such Third Party Recipients—not just "data streams." Such correspondence will, at a minimum, assist in analyzing (i) the *categories* of information disclosed to each such

third parties (as opposed to the raw data that was produced), (ii) the relationship between Redbox and such third parties (discussed below), (iii) whether the disclosures were only made to "service providers with whom it contracts to provide services for its own customers," as Redbox contends (Dkt. 10 at 17), (iv) which of the categories of information disclosed to such entities "identifies" specific Redbox customers (to the extent it's not obvious from the categories themselves), (v) the reasons that such information was disclosed, and (vi) how such third parties used the information that it received.

- In response to Document Request No 14—which asked Redbox to produce documents describing the manner in which its customers' Personal Information was disclosed to the Third Party Recipients—Redbox again indicated that it would produce "data streams," which are entirely non-responsive. Indeed, this request seeks information relating to the *manner* in which such data was disclosed. For example, the information could have been transmitted from the kiosk itself to each Third Party Recipient at the time of the rental, or it could have been transmitted later from Redbox's servers, or Redbox could have provided such third party companies with a portal to access its customers' information themselves when needed, etc. This information is relevant to analyze the form of the disclosures themselves, and to determine whether any third party companies—aside from one of the Stream Global Services—had access to Redbox's customers' information through an online portal.

Given that these requests are unquestionably relevant, we ask that Redbox withdraw its boilerplate objections and supplement its responses accordingly.

**B.** ***Requests Seeking Information Regarding the Relationship Between Redbox and Each Third Party Recipient.***

Document Request Nos. 19-20 and 37 seek documents relating to the manner in which Redbox pays each Third Party Recipient and treats such payments for tax purposes (e.g., whether it issues Forms 1099 or W-2 to such third parties). This information is critical to rebutting Redbox's defense (to the extent it is legally valid) that it is allowed to disclose its customers' Personal Information to such third parties because they are Redbox's "agents." *See Nichols v. All Points Transp. Corp. of Michigan, Inc.*, 364 F. Supp. 2d 621, 629 (E.D. Mich. 2005); (two of the factors that Michigan courts *must* consider when analyzing agency are the "method of payment" and "tax treatment of the hired party's compensation"); *see also Brintley v. St. Mary Mercy Hosp.*, 545 F. App'x 484, 487 (6th Cir. 2013). Indeed, as the Court recognized in its Order, "whether [Redbox's] third-party vendors are agents within the VRPA's statutory definition" will be a key issue in this case and "is best left for discovery." (Dkt. 27 at 16-18.) For these reasons, we're puzzled by Redbox's refusal to provide the requested documents.

Accordingly, the way in which Redbox compensates the Third Party Recipients (i.e., through payroll, invoices, etc.) and treats such compensation for tax purposes is highly relevant to this lawsuit. We therefore ask that Redbox withdraw its objections and supplement its responses appropriately.

Edelson PC

*Cain v. Redbox Automated Retail*
April 22, 2014
Page 4 of 4

### III. Redbox Failed To Label Its Documents Production.

Redbox has neither produced its documents as they are kept in the normal course of business, nor has it labeled its production to correspond to Plaintiffs' document requests—leaving Plaintiffs to guess how any given document might, in fact, be responsive. *See* Fed. R. Civ. P. 34(b)(2)(E)(i) ("a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request"). Given that Redbox did not produce documents as they were kept in the usual course of business, it must organize and label its documents to correspond to the categories in the requests. *See Reese v. CNH Am.*, 2014 WL 354254, at *3 (E.D. Mich. Jan. 31, 2014) (ordering producing party to specifically identify which bates-numbered documents correspond to each document request); *see also MSC.Software Corp. v. Altair Eng'g, Inc.*, 2008 WL 5381864, at *4 (E.D. Mich. Dec. 22, 2008) (ordering producing party to "identify the responsive documents previously produced by bates number, or, in a way in which [the plaintiff] can easily locate them"); *In re Plascencia*, 2012 WL 2161412, at *6 (Bkrtcy. N.D. Cal. June 12, 2012) ("the Court directs defendants to make a particularized list showing which bates-numbered pages are responsive to which specific discovery requests, as required by Rule 34(b)(2)(E)(i)").

Accordingly, we ask that Redbox supplement its document production by identifying which bates-numbered documents correspond to each of Plaintiff's document requests.

### IV. Discovery from *Sterk v. Redbox*.

Finally, we want to confirm our understanding that the deposition testimony[2] and documents produced in *Sterk v. Redbox*, No. 11-cv-1729 (N.D. Ill.)—excluding documents related exclusively to the named plaintiffs in that case—are considered to have been "produced" in the instant case as well. Let me know if you disagree.

\*      \*      \*

We look forward to working through these issues with you on the April 24th at 11:00 a.m. If that time doesn't work for you, let us know what time works best and we'll make ourselves available.

Best regards,

EDELSON PC

Ari J. Scharg

---

[2] As we've discussed, allowing Plaintiffs to introduce testimony from the depositions of Messrs. Hoersten and Lullo will help narrow the scope of the upcoming deposition of Redbox's corporate representative.